---

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,

        Plaintiff,

v.

                                            Case No. 21-CV-969

DAVID G. BETH, in his individual and official
capacity as Kenosha County Sheriff, DANIEL G.
MISKINIS, in his individual and official capacity
as the former Chief of Police for the Kenosha
Police Department, ERIC LARSEN, in his official
capacity as the acting Chief of Police for the
Kenosha Police Department, JOHN DOE POLICE
OFFICERS of the Kenosha Police Department and
Kenosha County Sheriff's Department, CITY OF
KENOSHA, and COUNTY OF KENOSHA,

        Defendants.

---

## CITY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

---

City Defendants, Daniel G. Miskinis, Eric Larsen, John Doe Police Officers and the City of Kenosha (collectively "City Defendants"), by their attorneys, Stafford Rosenbaum LLP, submit this brief in support of their Motion to Dismiss. City Defendants respectfully request that the Court enter an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all of Plaintiff's federal civil rights claims and state law claims. Each claim should be dismissed for failure to state a claim upon which relief may be granted and/or due to the applicability of qualified immunity, discretionary

immunity, and/or statutory immunity under Wis. Stat. § 893.80(4). Additionally, the action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join Kyle Rittenhouse, a necessary party.

## **INTRODUCTION**

"This is the last warning. You will disperse. This area is closed you are trespassing, leave now." (Dkt. 1, ¶71). These were the law enforcement warnings given during the Kenosha protests prior to the shooting of Anthony Huber on August 25, 2020. As alleged in the Complaint[1], the crowds in downtown Kenosha were subject to an 8:00 p.m. curfew imposed after Kenosha had experienced widespread property damage over the course of the past two nights. (Dkt. 1, ¶¶4, 26-28). According to the Complaint, up to 3,000 private citizens responded to a call from another private citizen to "take up arms and defend our City against the evil thugs." (Dkt. 1, ¶¶3-5, 32, 36). In sum, on the evening of August 25, 2020, downtown Kenosha was "an extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 1, ¶¶ 82, 84). At approximately 11:45 p.m., for unknown and unalleged reasons, Kyle Rittenhouse – a private citizen – shot and killed Joseph Rosenbaum. (Dkt. 1, ¶¶3-5, 50-58). While running from the scene of the first shooting, Rittenhouse stumbled and fell to the ground

---

[1] The allegations and facts discussed herein are accepted from the Complaint solely for the purposes of this motion in order to be consistent with the Court's review of the pleadings. *See e.g., McCauley v. City of Chicago*, 671 F.3d 611, 616, 2011 WL 4975644 (7th Cir. 2011) (In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.). The allegations and facts discussed here are not otherwise admitted in any way by the City Defendants.

where Rittenhouse then shot and killed Anthony Huber – another private citizen – who had decided to attempt to disarm Rittenhouse. (*Id*.). Huber's estate has now brought suit against the County and City Defendants (and, notably, not Kyle Rittenhouse).

As explained below, the entire Complaint should be dismissed. The City Defendants join the Motion to Dismiss filed by County Defendants (respectively, Sheriff Beth and Kenosha County), and adopt and incorporate by reference the arguments made by the County Defendants in their Brief in Support of Motion to Dismiss. (Dkt. 19, 20). To the extent possible, the City Defendants will attempt to avoid repeating arguments made in the County Defendants' briefing, and instead will attempt to only add to existing arguments and/or note additional arguments being made by the City Defendants.

## ARGUMENT

The Complaint fails to state its putative claims for numerous reasons, several reasons of which constitute missing links across multiple counts of the Complaint. As an initial matter, missing links abound in the Complaint's allegations regarding conspiracy. While the Complaint does make numerous claims about the malevolent intent of the unidentified co-conspirators (motivated by racial animus, etc.), the Complaint resorts to general assertions of ultimate facts and skips over even the most basic of facts regarding the alleged conspiracy. For example, the Complaint is devoid of any specific allegation regarding there ever even being any communication to/with Rittenhouse and any other unidentified co-conspirators regarding this alleged plot – and, accordingly, should be dismissed.

Case 2:21-cv-00969-LA   Filed 11/05/21   Page 3 of 29   Document 22

Even more to the point is the complete lack of connection between the unexplained plot (somehow concocted – without communication - between unidentified co-conspirators and Rittenhouse), and what actually occurred. Namely, Rittenhouse shooting Rosenbaum, then Huber (and then Grosskruetz) – all pursuant to that plot. Absent these missing links, the shootings cannot be connected to the alleged conspiracy and the Complaint should be dismissed as explained below.

Intertwined with the lack of specific facts concerning the alleged conspiracy, the Complaint also fails to sufficiently allege causation linking how one private citizen shooting another private citizen is caused by the City Defendants (much less who should be responsible for that harm) – especially in light of the allegedly dangerous and volatile environment, the temporal relationship between the first and second shooting (and lack of allegations regarding how the City Defendants could and/or should have intervened in the interim), and the independent decision-making of the private citizens involved (Rosenbaum, Rittenhouse, and Huber).

Instead, as explained in the briefing, neither the law nor the Constitution impose an obligation on law enforcement (or any public actor for that matter) to prevent any and all bad things that one private citizen may do to another private citizen. To the extent the plaintiff argues the Constitution required more from the City Defendants, qualified immunity applies and there was certainly no "clearly established right" sufficiently particular to the unique – and frankly extraordinary – circumstances of this case.

Any other arguments specific to individual and/or state law claims will be discussed below. For the intended convenience of the Court, this brief is organized by the 15 counts of the Complaint and addressed in chronological order below with cross reference to the corresponding arguments made by the County Defendants. Any additional arguments then follow. In addition to joining County Defendants' motion arguing Rittenhouse is a necessary party, the City Defendants also argue (1) to the extent any of the Complaint's allegations fall under a theory of state-created danger, then qualified immunity should apply; (2) that Huber was negligent as a matter of law; and (3) that there is no claim stated against Eric Larsen, who is sued only in his official capacity as current Chief of Police for the City of Kenosha (as opposed to Daniel Miskinis who was Chief of Police as of August 25, 2020).

As explained below, the City Defendants seek dismissal of the Complaint in its entirety, on the merits and with prejudice.

## I.     Count I: Conspiracy to Deprive Constitutional Rights, 42 U.S.C. § 1983 should be dismissed for failure to allege sufficient cause and/or conspiracy.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, and because conspiracy claim is derivative and deficient – in § IV (cause) and § IV.C. (derivative) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24).[2]

---

[2] Like the County Defendants' argue in footnote 3 (Dkt. 20, p. 3-4, n. 3), because the allegations of deputization are made so frequently in the Complaint, the City Defendants note that the facts as pled in the Complaint do not establish that the City Defendants "deputized" any individuals on August 23-25, 2020. A police chief's ability to

The City Defendants also make additional arguments regarding the insufficiency of the allegations regarding conspiracy (which will apply to any Count that plaintiff's theory of liability relies upon alleged conspiracy), and the insufficiency of the allegations regarding causation which applies to the Complaint in its entirety.

### A. *Complaint Lacks Sufficient Allegations Regarding Conspiracy.*

Although the Complaint makes many allegations regarding the purported malevolent intent of a number of identified and mostly unidentified individuals, the Complaint fails to link the alleged respective intentions and/or plans with sufficient knowledge of the respective parties and/or what actually occurred in this case. Fed. R. Civ. Proc. 8. Determining whether a complaint states a plausible claim for relief will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009). The Seventh Circuit has explained the federal pleading standard is intended to address the "burden of discovery imposed on a defendant by implausible allegations perhaps intended merely to extort a settlement" and as a result the "height of the pleading requirement is relative to circumstances." *Cooney v. Rossiter*, 583 F.3d 967, 970–71, 2009 WL 3103998 (7th Cir. 2009) (citations omitted). In *Cooney*, the Seventh Circuit also noted that, even before the Supreme Court's new pleading rule, "conspiracy

---

appoint is a statutorily created power. Pursuant to Wis. Stat. § 62.13(4), a police chief's appointments are subject to approval by the Kenosha Police and Fire Commission. Because the Complaint contains no allegation how this appointment was done and/or under what authority consistent with Wis. Stat. § 62.13, the Court should disregard any allegations of deputization.

allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Id.* (citations omitted).

In Count II (Conspiracy to Obstruct Justice Based on Invidious Discrimination), for example, the Complaint contains the conclusory allegation that City Defendants (among others) were motived by racial animus. (Dkt. 1, ¶121). However, the Complaint does not identify Huber's race, only referencing that Huber was either an individual of color and/or allied with them in protest against racial discrimination. (Dkt. 1, ¶122). The Complaint fails to identify the race of either Rosenbaum or Grosskruetz, nor does it identify if they were protesting like Huber. Even more to the point, nowhere does the Complaint identify which alleged co-conspirators (or even if Rittenhouse) had knowledge of these facts in order to execute on the alleged conspiracy to discriminate based on the conclusory allegations of racial animus. These deficiencies fail to meet the federal pleading standard. Fed. R. Civ. Proc. 8.

The Complaint's allegations regarding conspiracy and related to a state-created danger are similarly pled without sufficient specificity. The Complaint focuses on the amorphous group of "armed individuals" as the co-conspirators with the County and City Defendants. However, nowhere is there an allegation that Chief Miskinis, and/or any other law enforcement decision-maker, ever even communicated with Rittenhouse, Mathewson and/or any other alleged leader of the amorphous group of "armed individuals". Instead, there are impermissible conclusory assertions that unidentified

"Defendants" simply "reached an agreement" with "Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed individuals." (Dkt. 1, ¶109). None of these conclusory assertions withstand scrutiny and should be dismissed. *See Lyttle v. Killackey*, 528 F. Supp. 2d 818, 831-32, 2007 WL 4162811 (N.D. Ill. 2007), *on reconsideration*, 546 F. Supp. 2d 583, (N.D. Ill. 2008) (rejecting an impermissible "blanket assertion" that conspiracy occurred where complaint alleged "Defendants working in concert 'reached an understanding to deprive Plaintiff of his constitutional rights.'").

On its face, the claim that law enforcement conspired to drive protesters to harm at the hands of armed civilians is absurd. *See Wakley v. City of Indianapolis*, 776 F. App'x 376, 378, 2019 WL 4199800 (7th Cir. 2019) (affirming dismissal of conspiracy claim to deprive due process rights because "in addition to its conclusory nature, the [conspiracy] assertion is also implausible on its face."). Regardless of whether this alleged funneling was even possible (and apparently inescapable), alleging that numerous unnamed law enforcement agencies agreed to illegally conspire to 'deputize' armed strangers to harm – and shoot – protesters defies belief. *Iqbal*, 556 U.S. at 679 (requiring courts to draw on "judicial experience" and "common sense"). To withstand judicial scrutiny, such a volatile and defamatory allegation requires much more than inferences to be drawn from vague, general, conclusory assertions of ultimate facts. What exactly was the proposal made? How, and to what extent, did that proposal, if at all, contemplate private citizens shooting other private citizens? Who made the proposal? Who received the proposal?

Who agreed to the plan?  On behalf of whom?  Who/how/when did they communicate regarding this conspiracy?  Most importantly for the purposes of this motion, who communicated with Kyle Rittenhouse and what did he know and agree to as part of this alleged conspiracy?

In *Wakley*, the plaintiff alleged the defendants conspired through "many meetings" and "emails" to deprive him of a lease in violation of his due process rights. 776. F. App'x at 378.  The Seventh Circuit affirmed dismissal because "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citing *Iqbal*, 556 U.S. at 678), and here "that is all that Wakley alleges." *Id*.  The Seventh Circuit further remarked that "suspicion that persons adverse to [plaintiff] had joined a conspiracy" is "legally insufficient." *Id*. (citing *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011), *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009)).

Notably, the Complaint fails to allege any "meetings" and/or "emails" from City Defendants at all (as even *Wakley*'s deficient claim alleged), and is devoid of any specific allegation regarding there ever even being any communication to/with Rittenhouse and any other unidentified co-conspirators regarding this alleged plot – and, accordingly, should be dismissed.  Because the complaint merely states conclusions and ultimate facts, it is insufficient to meet the federal standard on notice pleading. *See Roehl v. Merrilees*, No. 11-C-4886, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012) (dismissing § 1983 conspiracy claim because the plaintiff failed "to allege facts of circumstances upon which

either an express or implied agreement between Defendants could be inferred 'above the speculative level.'") (citing *Twombly*, 550 U.S. at 555).

Moreover, the Complaint fails to link the unexplained/uncommunicated "agreement" and alleged conspiracy (all motivated by racial animus, etc.) to what actually occurred – Rittenhouse's decision to shoot Rosenbaum. (Dkt. 1, ¶50). Why did Rittenhouse shoot Rosenbaum? What race was Rosenbaum (or Grosskruetz for that matter)? Was Rosenbaum a "protester" as the amorphous term is used in the Complaint? Did Rittenhouse know any of these things? Did City Defendants for that matter? What were Rosenbaum's movements that night? Were his movements the result of some alleged conspiracy involving law enforcement? If so, what were they? How were they? Did law enforcement have any affect at all on what Rosenbaum did that night? The questions could go on. Bottom line, the reasons for the confrontation between Rittenhouse and Rosenbaum, and Rittenhouse's decision to shoot Rosenbaum are entirely unknown and unalleged. These missing links are fatal to any conspiracy claims made in the Complaint. *See Lyttle v. Killackey*, 528 F. Supp. 2d 818, 831-32, 2007 WL 4162811 (N.D. Ill. 2007), *on reconsideration*, 546 F. Supp. 2d 583, (N.D. Ill. 2008) (rejecting claim that "conspiratorial agreement may be inferred from circumstantial evidence" because even if the court inferred the existence of an offending policy or plan, it would need to "make the additional jump" to find the plaintiff was arrested pursuant to that policy).

However, importantly, it is the shooting of Rosenbaum that immediately precipitated Huber's decision to attempt to disarm Rittenhouse – which in turn precipitated Huber being shot – not some unexplained conspiratorial agreement between Rittenhouse (apparently a member of an amorphous group of "armed individuals") and the County and City Defendants who never communicated to Rittenhouse any such plan – if it could even constitute one. These arguments blend into arguments regarding causation which will be discussed next; however, the forgoing deficiencies illustrate how the Complaint fails to allege sufficient facts regarding conspiracy (who, what, when, where, how) and linking this alleged conspiracy to what actually occurred (Rittenhouse's decision to shoot Rosenbaum / Huber's decision to disarm Rittenhouse / Rittenhouse's decision to shoot Huber). Accordingly, all allegations regarding conspiracy should be dismissed. Fed. R. Civ. Proc. 8; *see also Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046-47, 2018 WL 509961 (N.D. Ill. 2018) (dismissing § 1983 conspiracy claim because it "is fueled by nothing more than mere suspicion" and failed to meeting pleading standard where it was "not a stretch to image that the events surrounding the denial of her requests are a product of something other than a conspiracy.").

B. **Complaint Lacks Sufficient Allegations of Causal Connection.**

As a general matter, a public actor's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 1004 (1989); *see also Weiland v. Loomis*, 938 F.3d 917 (7th Cir. 2019) ("[T]he Constitution, as a charter of

negative liberties, does not require the government to protect the public from private predators").  In *DeShaney*, Justice Rehnquist began with an acknowledgment that the "facts of this case are undeniably tragic." *DeShaney*, 489 U.S. at 191.  Despite repeated instances of documenting child abuse, and opportunities to intervene and remove Joshua from his father's care, the Winnebago County authorities returned 4-year old Joshua to his abusive father. *Id.* at 192-193.  Joshua suffered permanent injuries when he was subsequently beat into a life-threatening coma, after which his father was tried and convicted of child abuse. *Id.*

Despite this tragic outcome, the United State Supreme Court affirmed dismissal because the Constitution does not require public actors to "protect its citizens from 'private violence, or other mishaps not attributable to the conduct of its employee.'" *DeShaney*, 489 U.S. at 193-94.  The Court goes on to explain that it previously rejected as "too attenuated" a claim based upon a murder victim killed after the State released a parolee. *Id.* at 197, n. 4 (citing *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553 (1980)).  There the Court affirmed dismissal on the ground that claim lacked a sufficient "causal connection" between the public officials' decision and the murder. *Id.*  While there is authority regarding "special relationships" which conceivably could create a duty, the Court explained the rationale underpinning the exception to the general rule of no affirmative duty to protect:

Case 2:21-cv-00969-LA   Filed 11/05/21   Page 12 of 29   Document 22

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*DeShaney*, 489 U.S. at 200.

Although his age is not alleged in the Complaint, Huber is described as a "community member" attending nighttime protests in Kenosha, and a picture of him is included as well. (Dkt. 1, ¶¶1-2, 56). Reasonable inferences drawn from the Complaint support the conclusion that Huber was an adult. *See e.g., Iqbal*, 556 U.S. at 663. In *DeShaney*, a helpless four-year old was returned to the care of his abusive father who subsequently beat him into a coma and inflicted permanent injuries. Nonetheless, the Court found no constitutional duty and/or violation in *DeShaney* and dismissed the complaint. 489 U.S. at 193-94.

In the present case, Huber, an adult, received the following warning and order from the Defendants:

> "This is the last warning. You will disperse. This area is closed you are trespassing, leave now."

(Dkt. 1, ¶71).

Nonetheless, Huber chose to remain in downtown Kenosha, an "extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 1, ¶¶82, 84). Huber also chose to attempt to physically disarm Kyle Rittenhouse – an armed individual carrying an AR-15 style .223 rifle holding 30 rounds of ammunition and

developed as a "weapon of war." (Dkt. 1, ¶¶43, 50-58). Notably, Huber attempted to disarm Rittenhouse in the immediate aftermath of Rittenhouse shooting Joseph Rosenbaum as Rittenhouse ran from the scene of the shooting. (Dkt. 1, ¶¶50-58). Huber's decision to attempt to disarm Rittenhouse was a fateful one as Rittenhouse shot and killed him. (*Id.*).

Nowhere in the Complaint does it explain how the City Defendants caused Huber to remain in Kenosha – despite repeated warning and orders to leave – that fateful evening. Nowhere in the Complaint does it explain how the City Defendants caused Huber to decide to attempt to physically disarm Rittenhouse from carrying an AR-15. In fact, nowhere in the Complaint does it even explain how the City Defendants caused Rittenhouse to shoot Joseph Rosenbaum (instead, the reasons for this shooting are entirely unknown and unalleged), the even more attenuated precursor to Huber's own fateful decision-making.

Unlike *DeShaney*, where the State tragically failed to intervene and remove the helpless four-year old from the care of his abusive father on multiple occasions, the City Defendants had no opportunity to intervene between the time Rittenhouse shot Rosenbaum, and Huber decided to attempt to physically disarm Rittenhouse from carrying an AR-15. *See e.g., Lewis v. Downey*, 581 F.3d 467, 2009 WL 2835414 (7th Cir. 2009) (dismissing claim against for alleged failure to intervene because "the time between the order and the shot was so brief that [the officer] could not respond"). As explained in *DeShaney*, it's doubtful any such constitutional duty would have existed

even if there was an opportunity. *DeShaney*, 489 U.S. at 200 (duty may apply only when state-imposed limitation prevents plaintiff's freedom from acting on their own behalf). To extent the analysis conflates any discussion between duty and causation, what is clear from *DeShaney* is that plaintiff's arguments intended to "shock the conscience" in order to create liability under a state-created danger exception are nonetheless subject to review for causal connection and should be and have been rejected for being "too attenuated." *Id.* at 197, n. 4 (citing *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553 (1980)).

Similarly, even assuming the City Defendant could and should have done more, negligent actions like those alleged in the Complaint do not cause constitutional violation – "as [the court] has said many times . . . [the Due Process Clause] does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202 (citations omitted).

Based on the forgoing, the Complaint fails to allege sufficient causal connection between the City Defendants alleged acts and Huber's decision to attempt to disarm Rittenhouse before Huber was consequently shot and killed. Accordingly, this causal deficiency is fatal to all of Huber's claims, and the Complaint should be dismissed in its entirety.

II.   **Count II: Conspiracy to Obstruct Justice Based on Invidious Discrimination, 42 U.S.C. § 1985(3) should be dismissed for failure to allege sufficient cause, conspiracy, and/or class allegations.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation and because Huber is not a

member of a protected class – in § II.A (class) and § IV. (cause) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 6-8, 15-24).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**III. Count III: Equal Protection, 42 U.S.C. § 1983, 42 U.S.C. § 1985(2) should be dismissed for failure to allege sufficient cause, conspiracy, and/or class allegations.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation and because Huber is not a member of a protected class and no allegation of interference with due course of justice – in § II.B.-C. (class) and § IV (cause) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 8-11, 15-24).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**IV. Count IV: First Amendment Retaliation, 42 U.S.C. § 1983, should be dismissed for failure to allege sufficient cause.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, both due to general causation and failure to allege animus – in § III (cause – animus) and § IV (cause) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 12-24).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**V.      Count V: Deprivation of Due Process, 42 U.S.C. § 1983 should be dismissed for failure to allege sufficient cause, state-created danger exception does not apply, and qualified immunity.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, the inapplicability of the state-created danger exception to general rule of no governmental liability for failure to prevent private harm, and qualified immunity – in § IV (cause), § IV.A.-B. (state-created danger elements not met), § VI (qualified immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-33).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

As discussed above in § I of this brief, plaintiff fails to allege a state-created danger by the City Defendants.  However, even assuming there was such a state-created danger, qualified immunity would still apply. *Weiland v. Loomis*, 938 F. 3d 917, 920 (7th Cir. 2019).  In *Weiland*, the district court had found a state-created danger (in denying motion to dismiss), and the Seventh Circuit reversed finding qualified immunity applied (and also casting doubt on, although not needing to decide, whether the district court correctly determined there was a state-created danger). *Id.* at 919, 921. Like *Weiland*, where the Seventh Circuit rejected plaintiff's arguments that the Constitution imposes an obligation to keep a prisoner under control (as not "clearly established"), the same rationale should apply to the City Defendants' alleged failure to keep Kyle Rittenhouse under control. *Weiland*, 938 F.3d 919-21 (reversing to grant motion to dismiss because

Case 2:21-cv-00969-LA   Filed 11/05/21   Page 17 of 29   Document 22

"even if [defendant police officer] is civilly and criminally liable as a matter of [state] law, he is entitled to qualified immunity from a claim based on the federal Constitution."). As the *Weiland* court explained, "the Due Process Clause generally does not condemn official negligence" and "over and over" the Supreme Court has held that a right is "clearly established" only if defined with specificity and not at a "high level of generality." *Id.* at 919-20.

The Complaint makes broad and general assertions and incorporates by reference many allegations, so the plaintiff's theory of liability is not always clear. However, to the extent any of the Complaint's allegations fall under a theory of state-created danger, then qualified immunity should apply.

## VI. Count VI: Failure to Intervene, 42 U.S.C. § 1986 should be dismissed for failure to allege sufficient cause and/or class allegations, and as an unsupported derivative claim.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, the fact that Huber is not a member of a protected class, and the fact that it is an unsupported derivative claim – in § II.C. (class / derivative), § IV (cause), of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 11-12, 15-24).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**VII. Count VII: Municipal Liability / *Monell* Policy Claim, 42 U.S.C. § 1983 should be dismissed for failure to allege sufficient cause and/or class allegations, and because it is contingent on a non-existent underlying constitutional violation.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, the fact that Huber is not a member of a protected class, and the fact that a *Monell* claim fails for a lack of underlying constitutional claim – in § II (class), § IV (cause), and § V (no underlying violation) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 6-11, 15-24, 25).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**VIII. Count VIII: Intentional Infliction of Emotional Distress should be dismissed for failure to allege sufficient cause, failure to comply with public policy, failure to properly allege harm to Huber, and failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, mispled allegation regarding causing emotional distress to "another" and not Huber, and that Wis. Stat. § 893.80 prohibits intentional torts against municipal entities – in § IV (cause), § VII.A. (public policy), § VII.B. (distress of "another"), § VII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-37, 42).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

### IX. Count IX: Negligent Infliction of Emotional Distress should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity pursuant to Wis. Stat. § 893.80, and/or Huber was more negligent than City Defendants as a matter of law.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, and discretionary immunity pursuant to Wis. Stat. § 893.80 – in § IV (cause), § VII.A. (public policy), § VII.C. (discretionary immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-42).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

As an initial matter, it is not clear, but to the extent that the Complaint alleges a claim for emotional distress on behalf of John Huber in his personal capacity (as opposed to personal representative on behalf of the estate), his claims are barred by Wisconsin law. *Bowen v. Lumbermens Mut. Cas. Co*, 183 Wis. 2d 627, 633, 517 N.W.2d 432, 434-35 (1994) (bystander liability does not apply unless the plaintiff – here John Huber – was with the alleged victim at the scene – an allegation not made in the Complaint).

In addition to the foregoing arguments, the City Defendants also argue that Huber was more negligent than City Defendants as a matter of law. *See* Wis. Stat. § 895.045. In making the arguments herein, the City Defendants rely upon the same factual allegations

and arguments set forth above in § I., namely, that Huber chose to remain in downtown Kenosha, an "extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 1, ¶¶82, 84). Huber also chose to attempt to confront and physically disarm Kyle Rittenhouse – an armed individual carrying an AR-15 style .223 rifle holding 30 rounds of ammunition and developed as a "weapon of war." (Dkt. 1, ¶¶43, 50-58). Notably, Huber attempted to disarm Rittenhouse in the immediate aftermath of Rittenhouse shooting Joseph Rosenbaum as Rittenhouse ran from the scene of the shooting. (Dkt. 1, ¶¶50-58). Huber's decision to attempt to disarm Rittenhouse was a fateful one as Rittenhouse shot and killed him. (*Id.*).

A plaintiff is under an obligation to exercise reasonable care for their own well-being, and summary judgment is appropriate where a plaintiff knowingly fails to exercise reasonable care that leads to foreseeable injury. *See Johnson v. Grzadzielewski*, 159 Wis. 2d 601, 465 N.W.2d 503 (Wis. App. 1990). Wisconsin, like most jurisdictions, does not impose a duty on a person to stop a third from committing harm to another or to himself or herself. *Jankee v. Clark Cty.*, 2000 WI 64, ¶92, 235 Wis. 2d 700, 612 N.W.2d 297 (citing *Shuster v. Alternberg*, 144 Wis. 2d 223, 238 n. 3, 424 N.W.2d 159 (1988)). Where the evidence of the plaintiff's negligence is clear and the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, "it is not only within the power of the court but it is the duty of court to so hold." *Johnson v. Grzadzielewski*, 159 Wis. 2d 601, 608, 465 N.W.2d 503 (Wis. App. 1990); *see also Gross v. Denow*, 61 Wis. 2d 40, 51, 212 N.W.2d 2, 8 (1973) (reversing jury's apportionment of

negligence in part due to failure to keep a proper lookout and noting plaintiff could have "easily" avoided hazard by circumventing it before his fall); *Peters v. Menard, Inc.*, 224 Wis. 2d 174, 589 N.W.2d 395 (1999) (affirming dismissal of complaint based on finding plaintiff contributorily negligent as a matter of law).

In *Peters*, the plaintiff drowned after he waded into a flooded river in an apparent attempt to flee private security chasing the plaintiff on the suspicion of retail theft. *Peters*, 224 Wis. 2d at 196, ¶39. The Wisconsin Supreme Court dismissed the negligence claims as a matter of law based on the plaintiff's failure to exercise ordinary care for his own safety. Here the court reasoned:

> The substantial risk inherent in jumping into a plainly flooded river with fast-moving current would be apparent to an ordinarily prudent person. Any such person would recognize that the river was of unknown depth due to the flooding and had a swift current. It is well known that entering rushing waters can result in serious injuries or drowning. Likewise, Peters knew, or should have known, that his decision to get into the river to evade the security guards involved a substantial risk that he would be seriously injured or would drown. Like the plaintiff in *Brunette,* Peters "placed himself in a position of known danger" by attempting to escape detainment in a risky and unsafe way. *Brunette,* 107 Wis.2d at 364, 320 N.W.2d 43. We conclude that Peters' unreasonable and dangerous behavior constituted a clear and extreme breach of his duty of care for his own safety.

*Peters*, 224 Wis. 2d 174, 196-97.

In the present case, despite warnings and orders to leave and go home, Huber chose to stay in downtown Kenosha in an "extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 1, ¶¶71, 82, 84). Huber also

chose to attempt to confront and physically disarm Kyle Rittenhouse – an armed individual carrying an AR-15 – in the immediate aftermath of Rittenhouse shooting and killing Rosenbaum. (Dkt. 1, ¶¶43, 50-58). In comparison to *Peters* and the plaintiff's fatal decision to wade into flooded river despite its apparent and inherent risks, it is difficult to imagine a more open and obviously dangerous risk than confronting and attempting to disarm a known shooter armed with a "weapon of war." In *Jankee*, the Wisconsin Supreme Court dismissed the plaintiff's complaint because the mental health patient's contributory negligence exceeded hospital's, contractor's, and architect's negligence as a matter of law after plaintiff fell from a window in an attempted escape. *Jankee v. Clark Cty.*, 2000 WI 64, at ¶ 104-105. Here, the court explained:

> [W]hen a reasonable person knows or should know that a course of conduct poses substantial, inherent risks to him or her, ***yet the person persists in the conduct voluntarily*** and suffers injury as a result, the person is negligent and will not be permitted to recover from someone who is less negligent.

*Janke v. Clark Cty.*, 2000 WI 64, at ¶ 53 (emphasis added).

In the context of Huber's voluntary and fateful decision-making (and also the attenuated allegations against the City Defendants discussed herein), Huber was more negligent than City Defendants as a matter of law and any allegations reliant upon City Defendants' negligence should be dismissed.

## X. Count X: Negligence should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity pursuant to Wis. Stat. § 893.80, and/or Huber was more negligent than City Defendants as a matter of law.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, and discretionary immunity pursuant to Wis. Stat. § 893.80 – in § IV (cause), § VII.A. (public policy), § VII.C. (discretionary immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-42).

The City Defendants also incorporate by reference the arguments regarding conspiracy, causation, and the insufficiency of the pleadings made in this brief in § I. These negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief.

## XI. Count XI: Negligent Hiring, Supervision and Training should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity pursuant to Wis. Stat. § 893.80, and/or Huber was more negligent than City Defendants as a matter of law.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, and discretionary immunity pursuant to Wis. Stat. § 893.80 – in § IV (cause), § VII.A. (public policy), § VII.C. (discretionary immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-42).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

These negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief.

### XII. Count XII: Survival should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity, Huber was more negligent than City Defendants as matter of law, and/or failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and/or County.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, discretionary immunity, and that Wis. Stat. § 893.80 prohibits intentional torts against municipal entities – in § IV (cause), § VII.A. (public policy), § VII.C. (discretionary immunity), and/or § VII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-42).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief.

### XIII. Count XIII: Wrongful Death should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity, Huber was more negligent than City Defendants as matter of law, and/or failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and/or County.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, discretionary immunity, and that Wis. Stat. § 893.80 prohibits intentional torts

against municipal entities – in § IV (cause), § VII.A. (public policy), § VII.C. (discretionary immunity), and/or § VII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-42).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief.

**XIV.** **Count XIV: Respondeat Superior should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity, Huber was more negligent than City Defendants as matter of law, and/or failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and/or County.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, discretionary immunity, and that Wis. Stat. § 893.80 immunizes municipal entities from the intentional torts of its officers – in § IV (cause), § VII.A. (public policy), § VII.C. (discretionary immunity), and/or § VII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 20, pp. 15-24, 33-42).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief.

**XV. Count XV: Indemnification should be dismissed because there is no cause of action pursuant to Wis. Stat. § 895.46, and for all of the foregoing reasons set forth in the Defendants' respective briefs.**

Like the County Defendants, the City Defendants move to dismiss this remaining state law claim because Wis. Stat. § 895.46 "does not provide a private cause of action for indemnification" but instead "provides for the [municipality] to pay the damages [if any] on behalf of" their respective public officer or employee. (Dkt. 20, p. 43, n. 4) (citing *Jackson v. Graves*, No. 14-cv-206-pp, 2015 WL 5577527, at *4 (E.D. Wis. Sep. 22, 2015)).

The City Defendants also incorporate by reference all of the forgoing arguments that all of the claims are deficient and should be dismissed (and therefore there is no indemnification).

Finally, the City Defendants argue that indemnification applies only to public officers and does not extend to private individuals like Kyle Rittenhouse. Wis. Stat. § 895.46.

**XVI. Kyle Rittenhouse is a necessary party to this action.**

The City Defendants also join the County Defendants' motion pursuant to F.R.C.P. 12(b)(7) and 19 in arguing that Kyle Rittenhouse is a necessary party to this action. (Dkt. 20, pp. 43-45, § VIII). Rittenhouse is the private citizen who shot Huber when Huber attempted to disarm him. (Dkt. 1, ¶¶50-58). In fact, there over 4 pages of the Complaint dedicated to and detailing Rittenhouse's actions in this matter. (*See e.g.,* Dkt. 1, ¶¶5, 8, 40-58, 101). Rittenhouse's actions – shooting and killing Huber – are

fundamental to the allegations in the Complaint. Omissions from the fundamental framework of the case would not only risk confusion for the jury, but risks (unnecessarily) a flawed result.

## XVII. The Complaint fails to state a claim against current City of Kenosha Chief of Police Eric Larsen, who was sued in his "official capacity" only.

In addition to all of the forgoing arguments, the City Defendants seek the dismissal of Eric Larsen who was sued in his "official capacity" only. (Dkt. 1, ¶18). In fact, the only allegations pertaining specifically to Chief Larsen are that he is the "current" Chief of Police for the Kenosha Police Department. (Dkt. 1, ¶18). The only other allegations even mentioning Chief Eric Larsen generically lump him in as a defendant, but still clarify he is sued in "official capacity" only. (Dkt. 1, ¶¶114, 125). By comparison, those same paragraphs reference the former Chief Daniel Miskinis who is sued in his individual and official capacity (Dkt. 17), and the specific allegations in ¶114 and ¶125 refer to Chief Miskinis' "policymaking capacity[y]" while omitting any such allegation for current Chief Eric Larsen. (Dkt. 1, ¶¶114, 125). The allegations in the Complaint note Chief Miskinis was the Chief of Police at the time of the shooting on August 25, 2020. (*See e.g.,* Dkt. 1, ¶¶ 18, 36-39, 85-86). The Complaint fails to state a claim – nor is there one – against Chief Eric Larsen, who only came into his position after the fact and allegations alleged in the Complaint. *See Walker v. Sheahan*, 526 F.3d 973, 977, 2009 WL 2038891 (7th Cir. 2008) (affirming dismissal of claim against Sheriff for lack of sufficient evidence and explaining "actions against individual defendants in their

official capacities are treated as suits brought against the government entity itself") (citations omitted). Accordingly, the City Defendants respectfully request that defendant Eric Larsen be dismissed as a party to this action.

## <u>CONCLUSION</u>

For the reasons stated herein, the City Defendants respectfully request that the Court enter an Order dismissing Plaintiff's claims, with prejudice, against them in their entirety.

Dated: November 5, 2021.

STAFFORD ROSENBAUM LLP


By *<u>Electronically signed by Kyle W. Engelke</u>*
Kyle W. Engelke
State Bar Number 1088993
Ted Waskowski
State Bar Number 1003254
Clementine Uwabera
State Bar Number 1114847
Attorneys for City Defendants

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email: twaskowski@staffordlaw.com
        kengelke@staffordlaw.com
        cuwabera@staffordlaw.com
608.256.0226