UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,

      Plaintiff,

  v.

                                       Case No. 21-CV-969

DAVID G. BETH, in his individual and official
capacity as Kenosha County Sheriff, DANIEL G.
MISKINIS, in his individual and official capacity
as the former Chief of Police for the Kenosha
Police Department, ERIC LARSEN, in his official
capacity as the acting Chief of Police for the
Kenosha Police Department, JOHN DOE POLICE
OFFICERS of the Kenosha Police Department,
Kenosha County Sheriff's Department, Waukesha
County Sheriff's Department, Racine County
Sheriff's Department, Sauk County Sheriff's
Department, Walworth County Sheriff's
Department, Washington County Sheriff's
Department, Menomonee Falls Police Department,
and West Allis Police Department, CITY OF
KENOSHA, COUNTY OF KENOSHA, COUNTY
OF WAUKESHA, COUNTY OF RACINE, COUNTY
OF SAUK, COUNTY OF WALWORTH, COUNTY OF
WASHINGTON, VILLAGE OF MENOMONEE FALLS,
CITY OF WEST ALLIS, and KYLE RITTENHOUSE.

      Defendants.

---

## CITY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
## AMENDED COMPLAINT

---

     City Defendants, Daniel G. Miskinis, Eric Larsen, John Doe Police Officers of the

Kenosha Police Department, Menomonee Falls Police Department, West Allis Police

Department, the City of Kenosha, Village of Menomonee Falls and the City of West Allis, (collectively the "City Defendants"), by their attorneys, Stafford Rosenbaum LLP, submit this brief in support of their Motion to Dismiss Amended Complaint. City Defendants respectfully request that the Court enter an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all of Plaintiff's federal civil rights claims and state law claims. Each claim should be dismissed for failure to state a claim upon which relief may be granted and/or due to the applicability of qualified immunity, discretionary immunity, statutory immunity under Wis. Stat. § 893.80(4), and/or a failure to comply with the notice procedures pursuant to Wis. Stat. § 893.80(1d)(a). Furthermore, the Amended Complaint fails to allege sufficient facts pursuant to Fed. R. Civ. Proc. 8 regarding an alleged conspiracy by failing to identify even the most basic facts pertaining to who agreed to do what, when, where and how; much less linking this alleged conspiracy to Rittenhouse and/or how this alleged conspiracy was linked to the unexplained confrontation and shooting of Rosenbaum (the alleged precipitating actions leading to the shooting of Huber).

## **INTRODUCTION**

"This is the last warning. You will disperse. This area is closed you are trespassing, leave now." (Dkt. 27, ¶91). These were the law enforcement warnings given during the Kenosha protests prior to the shooting of Anthony Huber on August 25, 2020.

As alleged in the Amended Complaint[1], the crowds in downtown Kenosha were subject to an 8:00 p.m. curfew imposed after Kenosha had experienced widespread property damage over the course of the past two nights. (Dkt. 27, ¶¶4, 37-39). According to the Amended Complaint, up to 3,000 private citizens responded to a call from another private citizen to "take up arms and defend our City against the evil thugs." (Dkt. 27, ¶¶3-5, 49, 53). In sum, on the evening of August 25, 2020, downtown Kenosha was "an extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 37, ¶¶ 102, 104). At approximately 11:45 p.m., for unknown and unalleged reasons, Kyle Rittenhouse – a private citizen – shot and killed Joseph Rosenbaum. (Dkt. 27, ¶¶3-5, 68-74). While running from the scene of the first shooting, Rittenhouse stumbled and fell to the ground where Rittenhouse then shot and killed Anthony Huber – another private citizen – who had decided to attempt to disarm Rittenhouse. (*Id.*). Huber's estate has now brought suit against the County and City Defendants (and Rittenhouse).

As explained below, the entire Amended Complaint should be dismissed. The City Defendants join the Motion to Dismiss filed by County Defendants (the remaining defendants other than Rittenhouse), and adopt and incorporate by reference the arguments

---

[1] The allegations and facts discussed herein are accepted from the Amended Complaint solely for the purposes of this motion in order to be consistent with the Court's review of the pleadings. *See e.g., McCauley v. City of Chicago*, 671 F.3d 611, 616, 2011 WL 4975644 (7th Cir. 2011) (In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.). The allegations and facts discussed here are not otherwise admitted in any way by the City Defendants.

made by the County Defendants in their Brief in Support of Motion to Dismiss. (Dkt. 40).[2] To the extent possible, the City Defendants will attempt to avoid repeating arguments made in the County Defendants' briefing, and instead will attempt to only add to existing arguments and/or note additional arguments being made by the City Defendants.

## **ARGUMENT**

The Amended Complaint fails to state its putative claims for numerous reasons, several reasons of which constitute missing links across multiple counts of the Amended Complaint. As an initial matter, missing links abound in the Amended Complaint's allegations regarding conspiracy. While the Amended Complaint does make numerous claims about the malevolent intent of the unidentified co-conspirators (motivated by racial animus, etc.), the Amended Complaint resorts to general assertions of ultimate facts and skips over even the most basic of facts regarding the alleged conspiracy. For example, the Amended Complaint is devoid of any specific allegation regarding there ever even being any communication to/with Rittenhouse and any other unidentified co-conspirators regarding this alleged plot – and, accordingly, should be dismissed.

Even more to the point is the complete lack of connection between the unexplained plot (somehow concocted – without communication – between unidentified co-conspirators and Rittenhouse), and what actually occurred. Namely, Rittenhouse

---

[2] Including the County's discussion of the standard of review and qualified immunity standards. (Dkt. 40, § I).

shooting Rosenbaum, then Huber (and then Grosskruetz) – all pursuant to that plot. Absent these missing links, the shootings cannot be connected to the alleged conspiracy and the Amended Complaint should be dismissed as explained below.

Intertwined with the lack of specific facts concerning the alleged conspiracy, the Amended Complaint also fails to sufficiently allege causation linking how one private citizen shooting another private citizen is caused by the City Defendants (much less who should be responsible for that harm) – especially in light of the allegedly dangerous and volatile environment, the temporal relationship between the first and second shooting (and lack of allegations regarding how the City Defendants could and/or should have intervened in the interim), and the independent decision-making of the private citizens involved (Rosenbaum, Rittenhouse, and Huber).

Instead, as explained in the briefing, neither the law nor the Constitution impose an obligation on law enforcement (or any public actor for that matter) to prevent any and all bad things that one private citizen may do to another private citizen. To the extent the plaintiff argues the Constitution required more from the City Defendants, qualified immunity applies and there was certainly no "clearly established right" sufficiently particular to the unique – and frankly extraordinary – circumstances of this case.

Any other arguments specific to individual and/or state law claims will be discussed below. For the intended convenience of the Court, this brief is organized by the 15 counts of the Amended Complaint and addressed in chronological order below with cross reference to the corresponding arguments made by the County Defendants.

Any additional arguments then follow. In addition to joining County Defendants' motion, the City Defendants also argue (1) to the extent any of the Amended Complaint's allegations fall under a theory of state-created danger, then qualified immunity should apply; (2) that Huber was negligent as a matter of law; and (3) that there is no claim stated against Eric Larsen, who is sued only in his official capacity as current Chief of Police for the City of Kenosha (as opposed to Daniel Miskinis who was Chief of Police as of August 25, 2020).

As explained below, the City Defendants seek dismissal of the Amended Complaint in its entirety, on the merits and with prejudice.

## I. Count I: Conspiracy to Deprive Constitutional Rights, 42 U.S.C. § 1983 should be dismissed for failure to allege sufficient cause and/or conspiracy.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, and because conspiracy claim is derivative and deficient – in § IV (cause) and § IV.C. (derivative) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-26).[3]

The City Defendants also make additional arguments regarding the insufficiency of the allegations regarding conspiracy (which will apply to any Count that plaintiff's

---

[3] Like the County Defendants argue in footnote 4 (Dkt. 40, p. 5, n. 4), because the allegations of deputization are made so frequently in the Amended Complaint, the City Defendants note that the facts as pled in the Amended Complaint do not establish that the City Defendants "deputized" any individuals on August 23-25, 2020. A police chief's ability to appoint is a statutorily created power. Pursuant to Wis. Stat. § 62.13(4), a police chief's appointments are subject to approval by the Kenosha Police and Fire Commission. Because the Amended Complaint contains no allegation how this appointment was done and/or under what authority consistent with Wis. Stat. § 62.13, the Court should disregard any allegations of deputization.

theory of liability relies upon alleged conspiracy), and the insufficiency of the allegations regarding causation which applies to the Amended Complaint in its entirety.

A.  *Amended Complaint Lacks Sufficient Allegations Regarding Conspiracy.*

Although the Amended Complaint makes many allegations regarding the purported malevolent intent of a number of identified and mostly unidentified individuals, the Amended Complaint fails to link the alleged respective intentions and/or plans with sufficient knowledge of the respective parties and/or what actually occurred in this case.  Fed. R. Civ. Proc. 8.  Determining whether a complaint states a plausible claim for relief will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).  The Seventh Circuit has explained the federal pleading standard is intended to address the "burden of discovery imposed on a defendant by implausible allegations perhaps intended merely to extort a settlement" and as a result the "height of the pleading requirement is relative to circumstances."  *Cooney v. Rossiter*, 583 F.3d 967, 970–71, 2009 WL 3103998 (7th Cir. 2009) (citations omitted).  In *Cooney*, the Seventh Circuit also noted that, even before the Supreme Court's new pleading rule, "conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough."  *Id.*  (citations omitted).

In Count II (Conspiracy to Obstruct Justice Based on Invidious Discrimination), for example, the Amended Complaint contains the conclusory allegation that City

Defendants (among others) were motived by racial animus. (Dkt. 27, ¶142). However, the Amended Complaint does not identify Huber's race, only referencing that Huber was either an individual of color and/or allied with them in protest against racial discrimination. (Dkt. 27, ¶143). The Amended Complaint fails to identify the race of either Rosenbaum or Grosskruetz, nor does it identify if they were protesting. Even more to the point, nowhere does the Amended Complaint identify which alleged co-conspirators (or even if Rittenhouse) had knowledge of these facts in order to execute on the alleged conspiracy to discriminate based on the conclusory allegations of racial animus. These deficiencies fail to meet the federal pleading standard. Fed. R. Civ. Proc. 8. Despite the filing of an Amended Complaint, none of these deficiencies (pointed out in the City Defendants' original motion to dismiss) were remedied by the Amended Complaint.[4]

---

[4] Instead, per the City Defendants' review, there are 25 new paragraphs in the Amended Complaint:

- ¶¶22-32: Identifying the new defendants.
- ¶¶41-46: Discussing how the law enforcement defendants organized a response to protests.
- ¶¶57, 82, 96: Allegation pertaining to unidentified officer's report that "'throughout the night' they observed pro-militia groups 'armed, mostly with long guns in the area of 60th and Sheridan.'"
- ¶85: Allegation pertaining to unidentified officer texting "Gotta love counterprotestors. Slashing tires."
- ¶118: Allegation pertaining to unidentified officer texting "Listening to the gun fire. Such a nice night" and reference to an unidentified shooting video with another unidentified text stating "Nice video."
- ¶¶154, 165, 173: Allegations pertaining to causation being added to respective causes of action.

The Amended Complaint also omits ¶81 from the original complaint that referenced Rittenhouse's arrest. (Dkt. 1). Despite plaintiff's omission, this Court can still take judicial notice of Rittenhouse's arrest as

The City Defendants also adopt and incorporate by reference the County Defendants' arguments regarding failure to comply with Rule 8(a) in § VII of the County Defendants' Brief in support of Motion to Dismiss (Dkt. 40, pp. 35-37). Here, the County Defendants' arguments apply with greater force to the City Defendants because even the limited references to Sheriff Beth in the Amended Complaint are inapplicable to these answering City Defendants. Instead, the Amended Complaint includes only a passing reference to Kevin Mathewson emailing Chief Miskinis, but no allegation that Chief Miskinis read, much less responded to, this email. (Dkt. 27, ¶53).

The Amended Complaint's allegations regarding conspiracy and related to a state-created danger are similarly pled without sufficient specificity. The Amended Complaint focuses on the amorphous group of "armed individuals" as the co-conspirators with the County and City Defendants. However, nowhere is there an allegation that Chief Miskinis, and/or any other law enforcement decision-maker, ever even communicated with Rittenhouse, Mathewson and/or any other alleged leader of the amorphous group of "armed individuals" regarding any purported plot. Instead, there are impermissible

---

his criminal charges and subsequent acquittal are a matter of judicial record. *State of Wisconsin vs. Kyle H. Rittenhouse*, Kenosha County Case No. 2020-CF-983. *See e.g., In re Hubbartt*, No. 16-21251-BEH, 2020 WL 1845041, at *1, n. 2 (Bankr. E.D. Wis. Apr. 10, 2020) ("The Court may take judicial notice of the contents of the state court docket under Federal Rule of Evidence 201 because they are matters of public record available via an online database commonly known as CCAP (Consolidated Court Automation Programs) (citations omitted). The CCAP link to Rittenhouse's criminal case is below:

https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CF000983&countyNo=30&index=0&mode=details

conclusory assertions that unidentified "Defendants" simply "reached an agreement" with "Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed individuals." (Dkt. 27, ¶¶ 97, 130). None of these conclusory assertions withstand scrutiny and should be dismissed. *See Lyttle v. Killackey*, 528 F. Supp. 2d 818, 831-32, 2007 WL 4162811 (N.D. Ill. 2007), *on reconsideration*, 546 F. Supp. 2d 583, (N.D. Ill. 2008) (rejecting an impermissible "blanket assertion" that conspiracy occurred where complaint alleged "Defendants working in concert 'reached an understanding to deprive Plaintiff of his constitutional rights.'").

On its face, the claim that law enforcement conspired to drive protesters to harm at the hands of armed civilians is absurd. *See Wakley v. City of Indianapolis*, 776 F. App'x 376, 378, 2019 WL 4199800 (7th Cir. 2019) (affirming dismissal of conspiracy claim to deprive due process rights because "in addition to its conclusory nature, the [conspiracy] assertion is also implausible on its face."). Regardless of whether this alleged funneling was even possible (and apparently inescapable) given that there were four city blocks between 56th and 60th Street, the plaintiff's allegations that numerous unnamed law enforcement agencies agreed to illegally conspire to 'deputize' armed strangers to harm – and shoot – protesters defies belief. *Iqbal*, 556 U.S. at 679 (requiring courts to draw on "judicial experience" and "common sense"). To withstand judicial scrutiny, such a volatile and defamatory allegation requires much more than inferences to be drawn from vague, general, conclusory assertions of ultimate facts and repeated references to unidentified officers and/or undefined groups of armed individuals. What exactly was

the proposal made?  How, and to what extent, did that proposal, if at all, contemplate private citizens shooting other private citizens?  Who made the proposal?  Who received the proposal?  Who agreed to the plan?  On behalf of whom?  Who/how/when did they communicate regarding this conspiracy?  Most importantly for the purposes of this motion, who communicated with Kyle Rittenhouse and what did he know and agree to as part of this alleged conspiracy?  Again, although these deficiencies were noted in the original motion to dismiss (Dkt. 22, p. 8-9), the Amended Complaint fails to address them.

In *Wakley*, the plaintiff alleged the defendants conspired through "many meetings" and "emails" to deprive him of a lease in violation of his due process rights.  776. F. App'x at 378.  The Seventh Circuit affirmed dismissal because "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements do not suffice."  *Id.* (citing *Iqbal*, 556 U.S. at 678), and here "that is all that Wakley alleges."  *Id.*  The Seventh Circuit further remarked that "suspicion that persons adverse to [plaintiff] had joined a conspiracy" is "legally insufficient."  *Id.* (citing *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011), *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009)).

Notably, the Amended Complaint fails to allege any "meetings" and/or "emails" from City Defendants at all (as even *Wakley*'s deficient claim alleged), and is devoid of any specific allegation regarding there ever even being any communication to/with Rittenhouse and any other unidentified co-conspirators regarding this alleged plot – and, accordingly, should be dismissed.  Indeed, most of the City Defendants (including City of

Kenosha, City of West Allis, Village of Menomonee Falls, Menomonee Falls Police Department, and West Allis Police Department) are specifically referred to in the Amended Complaint **exclusively** in the introductory paragraphs setting forth the "Parties" and in the Prayer for relief.  (Dkt. 27, pp. 5-8, 43)  The Amended Complaint folds these City Defendants into "Law Enforcement Defendants," "Additionally Responding Officers," or "Municipal Defendants" (*Id.*, ¶¶ 29-31), but does not allege any act done specifically by any of the parties aside from merely deploying officers to "respond to and control the protests[.]" (*Id.* ¶¶19, 20, 27-28)  The substantive allegations in the Amended Complaint (*i.e.* pages 9-42) refer only to groups of law enforcement or municipal Defendants and do not once make a specific allegation as to the City of Kenosha, City of West Allis, Village of Menomonee Falls, Menomonee Falls Police Department, and West Allis Police Department. (*Id.* at 9-42)

Because the Amended Complaint merely states conclusions and ultimate facts, it is insufficient to meet the federal standard on notice pleading.  *See Roehl v. Merrilees*, No. 11-C-4886, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012) (dismissing § 1983 conspiracy claim because the plaintiff failed "to allege facts of circumstances upon which either an express or implied agreement between Defendants could be inferred 'above the speculative level.'") (citing *Twombly*, 550 U.S. at 555).

Moreover, the Amended Complaint fails to link the unexplained/uncommunicated "agreement" and alleged conspiracy (all motivated by racial animus, etc.) to what actually occurred – Rittenhouse's decision to shoot Rosenbaum.  (Dkt. 27, ¶68).  Why

did Rittenhouse shoot Rosenbaum? What race was Rosenbaum (or Grosskruetz for that matter)? Was Rosenbaum a "protester" as the amorphous term is used in the Amended Complaint? Did Rittenhouse know any of these things? Did City Defendants for that matter? What were Rosenbaum's movements that night? Were his movements the result of some alleged conspiracy involving law enforcement? If so, what were they? How were they? Did law enforcement have any affect at all on what Rosenbaum did that night? The questions could go on. The reasons for the confrontation between Rittenhouse and Rosenbaum, and Rittenhouse's decision to shoot Rosenbaum are entirely unknown and unalleged. Once again, while these deficiencies were noted in the original motion to dismiss (Dkt. 22, p. 9-11), the Amended Complaint fails to allege any facts addressing these deficiencies. These missing links are fatal to any conspiracy claims made in the Amended Complaint. *See Lyttle*, 528 F. Supp. 2d at 831-32 (rejecting claim that "conspiratorial agreement may be inferred from circumstantial evidence" because even if the court inferred the existence of an offending policy or plan, it would need to "make the additional jump" to find the plaintiff was arrested pursuant to that policy).

However, importantly, it is the shooting of Rosenbaum that immediately precipitated Huber's decision to attempt to disarm Rittenhouse – which in turn precipitated Huber being shot – not some unexplained conspiratorial agreement between Rittenhouse (apparently a member of an undefined group of "armed individuals") and the County and City Defendants who never communicated to Rittenhouse any such plan – if it could even constitute one. These arguments blend into arguments regarding causation

which will be discussed next; however, the forgoing deficiencies illustrate how the Amended Complaint fails to allege sufficient facts regarding conspiracy (who, what, when, where, how) and linking this alleged conspiracy to what actually occurred (Rittenhouse's decision to shoot Rosenbaum / Huber's decision to disarm Rittenhouse / Rittenhouse's decision to shoot Huber). Accordingly, all allegations regarding conspiracy should be dismissed. Fed. R. Civ. Proc. 8; *see also Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046-47, 2018 WL 509961 (N.D. Ill. 2018) (dismissing § 1983 conspiracy claim because it "is fueled by nothing more than mere suspicion" and failed to meeting pleading standard where it was "not a stretch to image [*sic*] that the events surrounding the denial of her requests are a product of something other than a conspiracy.").

Ultimately, the Amended Complaint vacillates between two contradictory theories. Under the first theory, the Amended Complaint alleges that law enforcement defendants failed to intervene to arrest Rittenhouse to prevent the shootings which "increased the danger faced by Huber" (Dkt. 27, ¶¶64, 77), versus a second sensational theory that law enforcement did intervene but only to conspire with Rittenhouse to orchestrate the shootings. As explained above, the conclusory assertions of a conspiracy to commit these shootings cannot withstand judicial scrutiny. The other theory regarding a failure to preemptively arrest Rittenhouse (perhaps raising its own constitutional challenges), fails for a number of reasons, including, but not limited to, lack of causation and/or qualified immunity as explained below.

**B.    Amended Complaint Lacks Sufficient Allegations of Causal Connection.**

As a general matter, a public actor's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 1004 (1989); *see also Weiland v. Loomis*, 938 F.3d 917 (7th Cir. 2019) ("[T]he Constitution, as a charter of negative liberties, does not require the government to protect the public from private predators"). In *DeShaney*, Justice Rehnquist began with an acknowledgment that the "facts of this case are undeniably tragic." *DeShaney*, 489 U.S. at 191. Despite repeated instances of documenting child abuse, and opportunities to intervene and remove Joshua from his father's care, the Winnebago County authorities returned 4-year old Joshua to his abusive father. *Id.* at 192-193. Joshua suffered permanent injuries when he was subsequently beat into a life-threatening coma, after which his father was tried and convicted of child abuse. *Id.*

Despite this tragic outcome, the United State Supreme Court affirmed dismissal because the Constitution does not require public actors to "protect its citizens from 'private violence, or other mishaps not attributable to the conduct of its employee.'" *DeShaney*, 489 U.S. at 193-94. The Court goes on to explain that it previously rejected as "too attenuated" a claim based upon a murder victim killed after the State released a parolee. *Id.* at 197, n. 4 (citing *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553 (1980)). There the Court affirmed dismissal on the ground that claim lacked a sufficient

Case 2:21-cv-00969-LA    Filed 03/25/22    Page 15 of 40    Document 42

"causal connection" between the public officials' decision and the murder.  *Id.*  While there is authority regarding "special relationships" which conceivably could create a duty, the Court explained the rationale underpinning the exception to the general rule of no affirmative duty to protect:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*DeShaney*, 489 U.S. at 200.

Although his age is not alleged in the Amended Complaint, Huber is described as a "community member" attending nighttime protests in Kenosha, and a picture of him is included as well.  (Dkt. 27, ¶¶1-2, 74).  Reasonable inferences drawn from the Amended Complaint support the conclusion that Huber was an adult.  *See e.g., Iqbal*, 556 U.S. at 663.  In *DeShaney*, a helpless four-year old was returned to the care of his abusive father who subsequently beat him into a coma and inflicted permanent injuries.  Nonetheless, the Court found no constitutional duty and/or violation in *DeShaney* and dismissed the complaint.  489 U.S. at 193-94.

In the present case, Huber, an adult, received the following warning and order from the Defendants:

> "This is the last warning. You will disperse. This area is closed you are trespassing, leave now."

(Dkt. 27, ¶91).

Nonetheless, Huber chose to remain in downtown Kenosha, an "extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 27, ¶¶102, 104). Huber also chose to attempt to physically disarm Kyle Rittenhouse – an armed individual carrying an AR-15 style .223 rifle holding 30 rounds of ammunition and developed as a "weapon of war." (Dkt. 27, ¶¶ 61, 68-76). More specifically, the Amended Complaint alleges:

> "As Anthony was reaching for Defendant Rittenhouse's rifle to pull it away, without provocation or any legal justification, Defendant Rittenhouse shot him in the chest."

(Dkt. 27, ¶74).

Setting aside the contradiction between Huber reaching to pull away Rittenhouse's rifle and the allegation that Rittenhouse shot Huber "without provocation or any legal justification" (notably, a video of the incident showing Huber's actions was an exhibit in the Rittenhouse criminal trial), the Amended Complaint does not allege that Huber witnessed Rittenhouse shoot Rosenbaum (much less allege why this shooting occurred). (*See* Dkt. 27, ¶68). Similarly, there is no allegation explaining why Huber believed that he needed to disarm Rittenhouse himself (for example, that Rittenhouse was shooting people at random and/or targeting individuals other than those that approached him - ¶¶71-75 noting Huber and Grosskruetz approaching Rittenhouse). In other words, if Huber had not attempted to disarm Rittenhouse, there is no allegation on what would have happened and/or what harm was averted. Instead, Huber attempted to physically disarm Rittenhouse in the immediate aftermath of Rittenhouse shooting Joseph

Rosenbaum as Rittenhouse ran from the scene of the shooting. (Dkt. 27, ¶¶68-76). Huber's decision to attempt to disarm Rittenhouse was a fateful one as Rittenhouse shot and killed him. (*Id.*).

Nowhere in the Amended Complaint does it explain how the City Defendants caused Huber to remain in Kenosha – despite repeated warning and orders to leave – that fateful evening. Nowhere in the Amended Complaint does it explain how the City Defendants caused Huber to decide to attempt to physically disarm Rittenhouse from carrying an AR-15. In fact, nowhere in the Amended Complaint does it even explain how the City Defendants caused Rittenhouse to shoot Joseph Rosenbaum (instead, the reasons for this shooting are entirely unknown and unalleged), the even more attenuated precursor to Huber's own fateful decision-making. Again, these deficiencies, despite being flagged in the original motion to dismiss, remain unchanged and unaddressed by the Amended Complaint.

Unlike *DeShaney*, where the State tragically failed to intervene and remove the helpless four-year old from the care of his abusive father on multiple occasions, the City Defendants had no opportunity to intervene between the time Rittenhouse shot Rosenbaum, and Huber decided to attempt to physically disarm Rittenhouse from carrying an AR-15. *See e.g., Lewis v. Downey*, 581 F.3d 467, 2009 WL 2835414 (7th Cir. 2009) (dismissing claim against for alleged failure to intervene because "the time between the order and the shot was so brief that [the officer] could not respond"). As explained in *DeShaney*, it's doubtful any such constitutional duty would have existed

even if there was an opportunity. *DeShaney*, 489 U.S. at 200 (duty may apply only when state-imposed limitation prevents plaintiff's freedom from acting on their own behalf). To extent the analysis conflates any discussion between duty and causation, what is clear from *DeShaney* is that plaintiff's arguments intended to "shock the conscience" in order to create liability under a state-created danger exception are nonetheless subject to review for causal connection and should be and have been rejected for being "too attenuated." *Id.* at 197, n. 4 (citing *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553 (1980)).

In addition to the foregoing authority, plaintiff's theory that the law enforcement defendants failed to detain, question, arrest and/or disarm Rittenhouse for "illegally carrying a gun" (Dkt. ¶¶63-64, 77) – thus preventing the subsequent shootings – suffers from a number of other factual and legal deficiencies. Most notably, in his criminal case, Rittenhouse's motion to dismiss the charge for illegal possession of a firearm was granted prior to Rittenhouse's acquittal on the homicide and other charges.[5] In other words,

---

[5] As explained above, this Court can take judicial notice of Rittenhouse's criminal case (e.g. dismissal of firearm possession charge on November 15, 2021) as it is a matter of judicial record. *State of Wisconsin vs. Kyle H. Rittenhouse*, Kenosha County Case No. 2020-CF-983. *See e.g., In re Hubbartt*, No. 16-21251-BEH, 2020 WL 1845041, at *1, n. 2 (Bankr. E.D. Wis. Apr. 10, 2020) ("The Court may take judicial notice of the contents of the state court docket under Federal Rule of Evidence 201 because they are matters of public record available via an online database commonly known as CCAP (Consolidated Court Automation Programs) (citations omitted). The CCAP link to Rittenhouse's criminal case is below:

https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CF000983&countyNo=30&index=0&mode=details

between the time of the original and Amended Complaint, a Wisconsin court determined that Rittenhouse was not "illegally carrying a gun" on August 25, 2020.

Regardless of any argument regarding the wisdom of such a policy, Wisconsin statutes read that the prohibition of a minor possessing a firearm "applies only to a person under 18 years of age who possesses or is armed with a rifle or a shotgun if the person is in violation of § 941.28 or is not in compliance with §§ 29.304 and 29.593."  Wis. Stat. 948.60(3)(c).  Someone is in violation of § 941.28 if they have a short-barreled shotgun/rifle, which is inapplicable to Rittenhouse.  As for compliance with §§ 29.304 and 29.593, these sections pertain to hunter safety and hunting restrictions which again are not applicable to facts of the case (or more specifically, the allegations of the Amended Complaint).

"Issues decided during state criminal proceedings have preclusive effect in a later civil rights case, so long as all the state's requirements for applying issue preclusion are met." *Johnson v. Eau Claire Police Dep't*, No. 20-CV-496-JDP, 2020 WL 10702725, at *2 (W.D. Wis. Aug. 18, 2020).  Likewise, the Wisconsin Supreme Court has held that "issue preclusion can apply following a fully litigated criminal conviction, even if the parties in the subsequent action are not identical to the parties in the criminal case." *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, 281 Wis. 2d 448, 465, 699 N.W.2d 54, 62.  This Court applies Wisconsin preclusion law, as the first judgment was entered by a Wisconsin court.  *Hestekin v. Belay*, 371 F. Supp. 3d 548, 553 (W.D. Wis. 2019).  Under that standard, issue preclusion applies if: (1) the issue was "actually litigated and

determined by a valid and final judgment"; (2) "the determination is essential to the judgment"; and (3) it is fundamentally fair to apply issue preclusion. *Id.*; *accord Weinmann v. McClone*, 138 F. Supp. 3d 1043, 1046 (E.D. Wis. 2015).

Here, all the elements are satisfied to conclude that Rittenhouse was not "illegally carrying a gun" on August 25, 2020. Rittenhouse was arrested for precisely the crime Plaintiff alleges he should have been charged with: possession of a dangerous weapon by a minor in violation of Wis. Stat. § 948.60(2)(a). Rittenhouse was prosecuted for numerous alleged crimes, but after the close of evidence and before the verdict, the Honorable Bruce E. Schroeder dismissed the gun possession charge over the prosecution's objection. (*See* November 15, 2021 Docket Entry on CCAP for Kenosha County Case No. 20-CF-983).

As a result, the Amended Complaint's allegations that the law enforcement defendants needed to detain, disarm and/or arrest Rittenhouse prior to the shootings (*see e.g.,* Dkt. ¶77) create their own constitutional questions – namely, whether law enforcement defendants even would have had such authority as alleged by the Amended Complaint. *See Waters v. Barry*, 711 F. Supp. 1125, 1138 (D.D.C. 1989) ("Thus, were a police officer to reasonably conclude that an individual looked 'young'—that he or she looked like a minor—the officer would have 'probable cause' to believe that the individual was engaged in an illegal act, i.e., being on the streets during the curfew period."); *accord Peckman v. City of Wichita*, No. 00-1065-JTM, 2000 WL 1294422, at *5 (D. Kan. Aug. 15, 2000); *Schleifer v. City of Charlottesville*, 963 F. Supp. 534, 550

(W.D. Va. 1997).  Moreover, the Amended Complaint fails to identify any specific times (i.e. whether after curfew period) that law enforcement officers may have had opportunity/contact with Rittenhouse to detain, disarm and/or arrest him.[6]

Plaintiff alleges that the events occurred at night, with the streets flooded with thousands of protesters and armed individuals roaming the streets and causing property damage.  (Dkt. ¶¶4, 34, 53).  The Amended Complaint alleges that Defendants had an *obligation* to spot Rittenhouse in a crowd of thousands, observe that he was months shy of allegedly lawfully carrying a weapon, and detain/arrest/disarm him.  Setting aside the attenuated nature of these allegations, they fall flat because they are all based on the mistaken premise that Rittenhouse was illegally carrying a firearm – which he was not.

Even assuming the City Defendants could and should have done more, negligent actions like those alleged in the Amended Complaint do not cause constitutional violation – "as [the court] has said many times . . . [the Due Process Clause] does not transform every tort committed by a state actor into a constitutional violation."  *DeShaney*, 489 U.S. at 202 (citations omitted).  Based on the forgoing, the Amended Complaint fails to allege sufficient causal connection between the City Defendants' alleged acts and Huber's decision to attempt to disarm Rittenhouse before Huber was consequently shot and killed.

---

[6] Notably, the criminal case also resulted in the court granting Rittenhouse's motion to dismiss Count 7 related to curfew and an alleged failure to comply with an emergency order of local government pursuant to Wis. Stat. § 323.28. *State of Wisconsin vs. Kyle H. Rittenhouse*, Kenosha County Case No. 2020-CF-983.

Accordingly, this causal deficiency is fatal to all of Huber's claims, and the Amended Complaint should be dismissed in its entirety.

## II.     Count II: Conspiracy to Obstruct Justice Based on Invidious Discrimination, 42 U.S.C. § 1985(3) should be dismissed for failure to allege sufficient cause, conspiracy, and/or class allegations.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation and because Huber is not a member of a protected class – in § II.A (class) and § IV. (cause) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 7-9, 17-26).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

## III.    Count III: Equal Protection, 42 U.S.C. § 1983, 42 U.S.C. § 1985(2) should be dismissed for failure to allege sufficient cause, conspiracy, and/or class allegations.

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation and because Huber is not a member of a protected class and no allegation of interference with due course of justice – in § II.B.-C. (class) and § IV. (cause) of the County Defendants' Brief in Support of Motion to Dismiss.  (Dkt. 40, pp. 9-13, 17-26).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**IV.** **Count IV: First Amendment Retaliation, 42 U.S.C. § 1983, should be dismissed for failure to allege sufficient cause.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, both due to general causation and failure to allege animus – in § III (cause – animus) and § IV (cause) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 13-26).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**V.** **Count V: Deprivation of Due Process, 42 U.S.C. § 1983 should be dismissed for failure to allege sufficient cause, state-created danger exception does not apply, and qualified immunity.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, the inapplicability of the state-created danger exception to general rule of no governmental liability for failure to prevent private harm, and qualified immunity – in § IV. (cause), § IV.A.-B. (state-created danger elements not met), § VI. (qualified immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-34).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

As discussed above in § I of this brief, plaintiff fails to allege a state-created danger by the City Defendants. However, even assuming there was such a state-created danger, qualified immunity would still apply. *Weiland v. Loomis*, 938 F. 3d 917, 920

(7th Cir. 2019). In *Weiland*, at the same stage of a motion to dismiss, the district court had found a state-created danger (in denying motion to dismiss), and the Seventh Circuit reversed finding qualified immunity applied (and also casting doubt on, although not needing to decide, whether the district court correctly determined there was a state-created danger). *Id.* at 919, 921. Like *Weiland*, where the Seventh Circuit rejected plaintiff's arguments that the Constitution imposes an obligation to keep a prisoner under control (as not "clearly established"), the same rationale should apply to the City Defendants' alleged failure to keep Kyle Rittenhouse under control. *Weiland*, 938 F.3d 919-21 (reversing to grant motion to dismiss because "even if [defendant police officer] is civilly and criminally liable as a matter of [state] law, he is entitled to qualified immunity from a claim based on the federal Constitution."). As the *Weiland* court explained, "the Due Process Clause generally does not condemn official negligence" and "over and over" the Supreme Court has held that a right is "clearly established" only if defined with specificity and not at a "high level of generality." *Id*. at 919-20.

The Amended Complaint makes broad and general assertions and incorporates by reference many allegations, so the plaintiff's theory of liability is not always clear (as noted above, the plaintiff's Amended Complaint vacillates between a theory of failure to intervene to arrest Rittenhouse before the shootings versus a conspiracy to intervene to orchestrate the shootings). However, to the extent any of the Amended Complaint's allegations fall under a theory of state-created danger, then qualified immunity should apply.

**VI.** **Count VI: Failure to Intervene, 42 U.S.C. § 1986 should be dismissed for failure to allege sufficient cause and/or class allegations, and as an unsupported derivative claim.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, the fact that Huber is not a member of a protected class, and the fact that it is an unsupported derivative claim – in § II.C. (class / derivative), § IV. (cause), of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 12-13, 17-26).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**VII.** **Count VII: Municipal Liability / *Monell* Policy Claim, 42 U.S.C. § 1983 should be dismissed for failure to allege sufficient cause and/or class allegations, and because it is contingent on a non-existent underlying constitutional violation.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, the fact that Huber is not a member of a protected class, and the fact that a *Monell* claim fails for a lack of underlying constitutional claim – in § II (class), § IV (cause), and § V (no underlying violation) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 7-13, 17-26).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I.

**VIII. Count VIII: Intentional Infliction of Emotional Distress should be dismissed for failure to allege sufficient cause, failure to comply with public policy, failure to properly allege harm to Huber, and failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and notice procedures.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, mispled allegation regarding causing emotional distress to "another" and not Huber, and that Wis. Stat. § 893.80 prohibits intentional torts against municipal entities – in § IV. (cause), § VIII.A. (public policy), § VIII.B. (distress of "another"), § VIII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-26, 38-41, 46).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The City Defendants also adopt and incorporate by reference the County Defendants' arguments regarding plaintiff's failure to comply with the notice procedures of Wis. Stat. § 893.80(1d)(a) for state law claims. (*see* Dkt. 40 § IX, p. 47).

In addition to the County Defendants' arguments regarding the notice procedures being 'condition precedent' to filing suit (waiting for a disallowance and/or disallowance period to expire), Wisconsin law requires claimants to timely serve a written notice of the circumstances of a claim upon governmental entities in order to bring suit. Wis. Stat. § 893. 80. If the claimant fails to comply, the plaintiff then carries the burden to prove that the statutory exceptions apply. *Moran v. Milwaukee Cnty.*, 2005 WI App 30, ¶ 3,

Case 2:21-cv-00969-LA   Filed 03/25/22   Page 27 of 40   Document 42

278 Wis. 2d 747, 693 N.W.2d 121.  Where the plaintiff fails to allege compliance with the notice provisions of Wis. Stat. § 893.80(1d)(a), the claim is subject to dismissal. *Bonchek v. Nicolet Unified Sch. Dist.*, No. 19-CV-425-JPS, 2019 WL 7049803, at *14 (E.D. Wis. Dec. 23, 2019) (Granting motion to dismiss on basis that plaintiff 'has not alleged facts upon which the Court can conclude that he provided the requisite notice of claim within 120 days of the "event giving rise to the claim."').

Plaintiff's injury occurred on August 25, 2020, meaning that written notice of the circumstances of a claim needed to be served on or before December 23, 2020.  On August 17, 2021—nearly a year after the injury—plaintiff filed this action excluding Menomonee Falls and West Allis and their respective officers (among other County Defendants).  (Dkt. 1).  Absent allegations that plaintiff complied with the 120-day notice procedures (for all Defendants), plaintiff must allege and meet its burden to show that the statutory exceptions to the notice requirements apply to preserve their state law claims.

In *Moran*, the plaintiff-claimant tripped over a "sign plate" in the parking garage of the Milwaukee airport.  *Moran,* 2005 WI App 30, ¶2.  Within two weeks of the fall, the plaintiff-claimant completed a "Combined Report" with a "heavy handwritten 'X'" next to "incident" that was described as follows: "I tripped and caught right foot which I jammed knee on A [*sic*] bolted sign holder sticking out of ground with no sign on it.  It was unmarked that day."  *Id.* ¶ 4.  The defendant later received a "Notice of Injury under Section 893.80" over a year later. *Id.*

The Court of Appeals affirmed the trial court's decision dismissing the Complaint because the "Combined Report" failed to satisfy the notice procedures. *Moran*, 2005 WI App 30, ¶ 6. The court found that the "Combined Report" failed to satisfy § 893.80 at least in part due to plaintiff's failure to serve the governmental entity pursuant to Wis. Stat. § 801.11. *Id.* ¶ 6. Furthermore, while actual notice may be a substitute for written notice if there is no prejudice to the defendant, the actual notice must be received within the same 120 days as the written notice. *Medley v. City of Milwaukee*, 969 F.2d 312, 320, 1992 WL 165401 (7th Cir. 1992). Constructive notice is not a substitute for actual notice. *Elkhorn Area School Dist. v. East Troy Community School Dist.,* 110 Wis.2d 1, 6, 327 N.W.2d 206 (Wis.Ct.App.1982). In other words, a governmental entity's awareness of a party's concerns is not the equivalent of the governmental entity's awareness that a party intends to pursue a legal claim. *G&D Properties, LLC v. Milwaukee Metro. Sewerage Dist.*, No. 2015AP1906, ¶ 19, 2016 WL 6461300, unpublished slip op. (Wis. Ct. App. Nov. 1, 2016).[7]

For example, in *G&D Properties*, the claimant suffered flooding damage after substantial rainfall and met with the defendant several times within the 120-day period to discuss the cause of the flooding, the resulting damage and strategies for mitigating the damage. *Id.* ¶ 2. Within the 120-day period from the flood, eighty-two other claimants gave the defendant notice of a claim but G&D Properties did not. *Id.* The appellate court

---

[7] This case is cited pursuant to Wis. Stat. § 809.23 for its persuasive value and a copy of the opinion is attached.

Case 2:21-cv-00969-LA    Filed 03/25/22    Page 29 of 40    Document 42

affirmed the dismissal of the trial court which found that even though G&D Properties contacted the defendant to "inquire about responsibility" for the flooding, the inquiry did "not rise to the level necessary to create actual knowledge that G&D intended to pursue a legal claim against the defendants." *Id.* ¶ 8.

In the present case, there are no allegations at all regarding the notice procedures for Wis. Stat. § 893.80. Furthermore, regardless of any knowledge of the facts leading to the shootings, the plaintiff has not alleged that any Municipal Defendant (no notice requirement applies to Defendant Rittenhouse) had actual knowledge of the plaintiff's intent to pursue a legal claim within the required 120 days. Moreover, for any Municipal Defendant that plaintiff fails to allege timely notice and/or actual notice within 120 days, the plaintiff carries the burden of showing the "nonexistence of prejudice." *Moran*, 2005 WI App 30, ¶¶3, 7 ("The purpose of the notice provision" includes permitting the government entity to "be able to fully investigate the circumstances giving rise to a claim."). Again, the Amended Complaint is silent on compliance with Wis. Stat. § 893.80(1d)(a) and the state law claims should be dismissed.

IX. **Count IX: Negligent Infliction of Emotional Distress should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity pursuant to Wis. Stat. § 893.80, failure to comply with notice procedures pursuant to Wis. Stat. § 893.80(1d)(a), and/or Huber was more negligent than City Defendants as a matter of law.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, and discretionary immunity pursuant to Wis. Stat. § 893.80 – in § IV. (cause),

§ VII.A. (public policy), § VIII.C. (discretionary immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-26, 41-45).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I, along with the arguments made in § VIII regarding plaintiff's failure to comply with the notice procedures of 893.80(1d)(a).

As an initial matter, to the extent that the Amended Complaint alleges a claim for emotional distress on behalf of John Huber and/or Karen Bloom in their personal capacities (as opposed to personal representative on behalf of the estate), these claims are barred by Wisconsin law. *Compare* (Dkt. 27, ¶217) with *Bowen v. Lumbermens Mut. Cas. Co*, 183 Wis. 2d 627, 633, 517 N.W.2d 432, 434-35 (1994) (bystander liability does not apply unless the plaintiff – here John Huber and/or Karen Bloom – were with the alleged victim at the scene – an allegation not made in the Amended Complaint).

In addition to the foregoing arguments, the City Defendants also argue that Huber was more negligent than City Defendants as a matter of law. *See* Wis. Stat. § 895.045. In making the arguments herein, the City Defendants rely upon the same factual allegations and arguments set forth above in § I., namely, that Huber chose to remain in downtown Kenosha, an "extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 27, ¶¶ 102, 104). Huber also chose to attempt to confront and physically disarm Kyle Rittenhouse – an armed individual carrying an AR-15 style .223 rifle holding 30 rounds of ammunition and developed as a "weapon of war."

(Dkt. 27, ¶¶ 61, 68-76). Notably, Huber attempted to disarm Rittenhouse in the immediate aftermath of Rittenhouse shooting Joseph Rosenbaum as Rittenhouse ran from the scene of the shooting. (Dkt. 27, ¶¶68-76). Huber's decision to attempt to disarm Rittenhouse was a fateful one as Rittenhouse shot and killed him. (*Id.*).

A plaintiff is under an obligation to exercise reasonable care for their own well-being, and summary judgment is appropriate where a plaintiff knowingly fails to exercise reasonable care that leads to foreseeable injury. *See Johnson v. Grzadzielewski*, 159 Wis. 2d 601, 465 N.W.2d 503 (Wis. App. 1990). Wisconsin, like most jurisdictions, does not impose a duty on a person to stop a third from committing harm to another or to himself or herself. *Jankee v. Clark Cty.*, 2000 WI 64, ¶92, 235 Wis. 2d 700, 612 N.W.2d 297 (citing *Shuster v. Alternberg*, 144 Wis. 2d 223, 238 n. 3, 424 N.W.2d 159 (1988)). Where the evidence of the plaintiff's negligence is clear and the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, "it is not only within the power of the court but it is the duty of court to so hold." *Johnson*, 159 Wis. 2d at 608; *see also Gross v. Denow*, 61 Wis. 2d 40, 51, 212 N.W.2d 2, 8 (1973) (reversing jury's apportionment of negligence in part due to failure to keep a proper lookout and noting plaintiff could have "easily" avoided hazard by circumventing it before his fall); *Peters v. Menard, Inc.*, 224 Wis. 2d 174, 589 N.W.2d 395 (1999) (affirming dismissal of complaint based on finding plaintiff contributorily negligent as a matter of law).

In *Peters*, the plaintiff drowned after he waded into a flooded river in an apparent attempt to flee private security chasing the plaintiff on the suspicion of retail theft.

*Peters*, 224 Wis. 2d at 196, ¶39. The Wisconsin Supreme Court dismissed the negligence claims as a matter of law based on the plaintiff's failure to exercise ordinary care for his own safety. Here the court reasoned:

> The substantial risk inherent in jumping into a plainly flooded river with fast-moving current would be apparent to an ordinarily prudent person. Any such person would recognize that the river was of unknown depth due to the flooding and had a swift current. It is well known that entering rushing waters can result in serious injuries or drowning. Likewise, Peters knew, or should have known, that his decision to get into the river to evade the security guards involved a substantial risk that he would be seriously injured or would drown. Like the plaintiff in *Brunette,* Peters "placed himself in a position of known danger" by attempting to escape detainment in a risky and unsafe way . *Brunette,* 107 Wis.2d at 364, 320 N.W.2d 43. We conclude that Peters' unreasonable and dangerous behavior constituted a clear and extreme breach of his duty of care for his own safety.

*Peters*, 224 Wis. 2d 174, 196-97.

In the present case, despite warnings and orders to leave and go home, Huber chose to stay in downtown Kenosha in an "extremely and obviously dangerous and deadly environment" devoid of "basic law and order." (Dkt. 37, ¶¶91, 102, 104). Huber also chose to attempt to confront and physically disarm Kyle Rittenhouse – an armed individual carrying an AR-15 – in the immediate aftermath of Rittenhouse shooting and killing Rosenbaum. (Dkt. 27, ¶¶61, 68-76). In comparison to *Peters* and the plaintiff's fatal decision to wade into a flooded river despite its apparent and inherent risks, it is difficult to imagine a more open and obviously dangerous risk than confronting and attempting to disarm a shooter armed with a "weapon of war." In *Jankee*, the Wisconsin

Supreme Court dismissed the plaintiff's complaint because the mental health patient's contributory negligence exceeded the hospital's, contractor's, and architect's negligence as a matter of law after plaintiff fell from a window in an attempted escape. *Jankee v. Clark Cty.*, 2000 WI 64, at ¶ 104-105. Here, the court explained:

> [W]hen a reasonable person knows or should know that a course of conduct poses substantial, inherent risks to him or her, ***yet the person persists in the conduct voluntarily*** and suffers injury as a result, the person is negligent and will not be permitted to recover from someone who is less negligent.

*Id.* at ¶ 53 (emphasis added).

In the context of Huber's voluntary and fateful decision-making (and also the attenuated allegations against the City Defendants discussed herein), Huber was more negligent than City Defendants as a matter of law and any allegations reliant upon City Defendants' negligence should be dismissed.

**X.** **Count X: Negligence should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity pursuant to Wis. Stat. § 893.80, failure to comply with notice procedures pursuant to Wis. Stat. § 893.80(1d)(a), and/or Huber was more negligent than City Defendants as a matter of law.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, and discretionary immunity pursuant to Wis. Stat. § 893.80 – in § IV. (cause), § VIII.A. (public policy), § VIII.C. (discretionary immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-26, 38-45).

The City Defendants also incorporate by reference the arguments regarding conspiracy, causation, and the insufficiency of the pleadings made in this brief in § I, along with the arguments made in § VIII regarding plaintiff's failure to comply with the notice procedures of 893.80(1d)(a). These negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief.

**XI.**   **Count XI: Negligent Hiring, Supervision and Training should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity pursuant to Wis. Stat. § 893.80, failure to comply with notice procedures pursuant to Wis. Stat. § 893.80(1d)(a), and/or Huber was more negligent than City Defendants as a matter of law.**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, and discretionary immunity pursuant to Wis. Stat. § 893.80 – in § IV (cause), § VIII.A. (public policy), § VIII.C. (discretionary immunity) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-26, 38-45).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. These negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief, along with the arguments made in § VIII regarding plaintiff's failure to comply with the notice procedures of 893.80(1d)(a).

**XII. Count XII: Survival should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity, Huber was more negligent than City Defendants as matter of law, failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and/or County, and/or failure to comply with notice procedures pursuant to Wis. Stat. § 893.80(1d)(a).**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, discretionary immunity, and that Wis. Stat. § 893.80 prohibits intentional torts against municipal entities – in § IV (cause), § VIII.A. (public policy), § VIII.C. (discretionary immunity), and/or § VIII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss. (Dkt. 40, pp. 17-26, 38-46).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief, along with the arguments made in § VIII regarding plaintiff's failure to comply with the notice procedures of 893.80(1d)(a).

**XIII. Count XIII: Wrongful Death should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity, Huber was more negligent than City Defendants as matter of law, failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and/or County, and/or failure to comply with notice procedures pursuant to Wis. Stat. § 893.80(1d)(a).**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, discretionary immunity, and that Wis. Stat. § 893.80 prohibits intentional torts

against municipal entities – in § IV (cause), § VIII.A. (public policy), § VIII.C. (discretionary immunity), and/or § VIII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss.  (Dkt. 40, pp. 17-26, 38-46).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The negligence claims are also subject to the City Defendants' contributory negligence arguments made in § IX of this brief, along with the arguments made in § VIII regarding plaintiff's failure to comply with the notice procedures of 893.80(1d)(a).

**XIV.** **Count XIV: Respondeat Superior should be dismissed for failure to allege sufficient cause, failure to comply with public policy, discretionary immunity, Huber was more negligent than City Defendants as matter of law, failure to comply with Wis. Stat. § 893.80 in regards to intentional torts alleged against the City and/or County, and/or failure to comply with notice procedures pursuant to Wis. Stat. § 893.80(1d)(a).**

The City Defendants adopt and incorporate by reference the County Defendants' arguments – failure to state claim due to lack of causation, failure to comply with public policy, discretionary immunity, and that Wis. Stat. § 893.80 immunizes municipal entities from the intentional torts of its officers – in § IV. (cause), § VIII.A. (public policy), § VIII.C. (discretionary immunity), and/or § VIII.D. (§893.80 as to County/City) of the County Defendants' Brief in Support of Motion to Dismiss.  (Dkt. 40, pp. 17-26, 38-46).

The City Defendants also incorporate by reference the arguments regarding causation, conspiracy, and the insufficiency of the pleadings made in this brief in § I. The negligence claims are also subject to the City Defendants' contributory negligence

arguments made in § IX of this brief, along with the arguments made in § VIII regarding plaintiff's failure to comply with the notice procedures of 893.80(1d)(a).

## XV. Count XV: Indemnification should be dismissed because there is no cause of action pursuant to Wis. Stat. § 895.46, and for all of the foregoing reasons set forth in the Defendants' respective briefs.

Like the County Defendants, the City Defendants move to dismiss this remaining state law claim because Wis. Stat. § 895.46 "does not provide a private cause of action for indemnification" but instead "provides for the [municipality] to pay the damages [if any] on behalf of" their respective public officer or employee. (Dkt. 40, p. 47, n. 5) (citing *Jackson v. Graves*, No. 14-cv-206-pp, 2015 WL 5577527, at *4 (E.D. Wis. Sep. 22, 2015)).

The City Defendants also incorporate by reference all of the forgoing arguments that all of the claims are deficient and should be dismissed (and therefore there is no indemnification).

Finally, the City Defendants argue that indemnification applies only to public officers and does not extend to private individuals like defendant Kyle Rittenhouse. Wis. Stat. § 895.46.

## XVI. The Amended Complaint fails to state a claim against current City of Kenosha Chief of Police Eric Larsen, who was sued in his "official capacity" only.

In addition to all of the forgoing arguments, the City Defendants seek the dismissal of Eric Larsen who was sued in his "official capacity" only. (Dkt. 27, ¶18). In fact, the only allegations pertaining specifically to Chief Larsen are that he is the

"current" Chief of Police for the Kenosha Police Department. (*Id.*). The only other allegations even mentioning Chief Eric Larsen generically lump him in as a defendant, but still clarify he is sued in "official capacity" only. (Dkt. 27, ¶¶146, 154, 165, 173).[8] By comparison, those same paragraphs reference the former Chief Daniel Miskinis who is sued in his individual and official capacity (*Id.*), and the specific allegations in ¶¶ 135, 146, 154 refer to Chief Miskinis' "policymaking capacit[y]" while omitting any such allegation for current Chief Eric Larsen. (Dkt. 27, ¶¶135, 146, 154). The allegations in the Amended Complaint note Chief Miskinis was the Chief of Police at the time of the shooting on August 25, 2020. (*See e.g.,* Dkt. 27, ¶¶ 17, 52-56, 105-106). The Amended Complaint fails to state a claim – nor is there one – against Chief Eric Larsen, who only came into his position after the fact and allegations alleged in the Amended Complaint. *See Walker v. Sheahan*, 526 F.3d 973, 977, 2008 WL 2038891 (7th Cir. 2008) (affirming dismissal of claim against Sheriff for lack of sufficient evidence and explaining "actions against individual defendants in their official capacities are treated as suits brought against the government entity itself") (citations omitted). Accordingly, the City Defendants respectfully request that defendant Eric Larsen be dismissed as a party to this action.

---

[8] For example, Chief Larsen is entirely omitted from Count XIV (Respondeat Superior) and Count XV (Indemnification) and these counts should be dismissed as to Chief Larsen.

## CONCLUSION

For the reasons stated herein, the City Defendants respectfully request that the Court enter an Order dismissing Plaintiff's claims, with prejudice, against them in their entirety.

Dated: March 25, 2022.

STAFFORD ROSENBAUM LLP

By *Electronically signed by Kyle W. Engelke*
Kyle W. Engelke
State Bar Number 1088993
Ted Waskowski
State Bar Number 1003254
Clementine Uwabera
State Bar Number 1114847
Attorneys for City Defendants

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email: twaskowski@staffordlaw.com
kengelke@staffordlaw.com
cuwabera@staffordlaw.com
608.256.0226