IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,

       Plaintiff,

           Case No. 21-CV-969

    v.

DAVID G. BETH, in his individual and
official capacity as Kenosha County Sheriff,
DANIEL G. MISKINIS, in his individual
and official capacity as the former Chief of
Police for the Kenosha Police Department,
ERIC LARSEN, in his official capacity as
the acting Chief of Police for the Kenosha
Police Department, JOHN DOE POLICE
OFFICERS of the Kenosha Police
Department, Kenosha County Sheriff's
Department, Waukesha County Sheriff's
Department, Racine County Sheriff's
Department, Sauk County Sheriff's
Department, Walworth County Sheriff's
Department, Washington County Sheriff's
Department, Menomonee Falls Police
Department, and West Allis Police
Department, CITY OF KENOSHA, COUNTY
OF KENOSHA, COUNTY OF WAUKESHA,
COUNTY OF RACINE, COUNTY OF SAUK,
COUNTY OF WALWORTH, COUNTY OF
WASHINGTON, VILLAGE OF MENOMONEE
FALLS, CITY OF WEST ALLIS, and KYLE
RITTENHOUSE,

       Defendants.

**DAVID G. BETH, KENOSHA COUNTY, WAUKESHA COUNTY, RACINE COUNTY, SAUK COUNTY, WALWORTH COUNTY, AND WASHINGTON COUNTY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendants David G. Beth, Kenosha County, Waukesha County, Racine County, Sauk County, Walworth County, and Washington County ("County Defendants"), by their attorneys, Crivello Carlson, S.C., respectfully submit this reply brief in support of their Motion to Dismiss the Amended Complaint.

## ANALYSIS

### I. PLAINTIFF'S OBJECTIONS AND ARGUMENTS CONSISTENTLY LACK MERIT AND SHOULD BE DISREGARDED.

Throughout his Response Brief, Plaintiff repeatedly asserts, without any citation to the record or support in case law, that the County Defendants' arguments are "undeveloped" or "unsupported" and that the County Defendants are merely disputing the facts as pled. These allegations are plainly meritless and should be disregarded in their entirety. But to ensure clarity in their position, the County Defendants reiterate that they accept as true all facts pled in the Amended Complaint solely for purposes of this motion as required. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). They are not otherwise admitted in any way by the County Defendants. None of the County Defendants' positions assert new facts or raise

disputes with the facts as pled. To the contrary, all of the County Defendants' positions rely on the plain language of the Amended Complaint.

To be sure, the pleading standard sets a low bar, but even a low bar must still be cleared. Even with all facts taken as true and every possible reasonable inference drawn in Plaintiff's favor, and under the lowest possible bar of the pleadings standard, when the law is applied to the facts as pled, it is clear that Plaintiff's claims against the County Defendants fail to plausibly suggest an entitlement to relief as is required to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b). *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

## II. PLAINTIFF CONCEDES THAT ALL STATE LAW CLAIMS (COUNTS VIII-XV) AGAINST WAUKESHA COUNTY, RACINE COUNTY, SAUK COUNTY, WALWORTH COUNTY, WASHINGTON COUNTY, AND THEIR OFFICERS MUST BE DISMISSED.

Plaintiff does not dispute that his state law claims against "the non-Kenosha Defendants," including all state law claims against Waukesha County, Racine County, Sauk County, Walworth County, Washington County, and their officers are untimely under Wis. Stat. § 893.80(1d). (Dkt. No. 47, p. 46.) As such, the County Defendants respectfully request that the Court enter an Order dismissing those claims against those defendants accordingly.

## III. COUNTS II, III, AND VI FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

### A. Count II (42 U.S.C. § 1985(3)) Fails Because Mr. Huber Was Not a Member of a Protected Class.

3

Plaintiff claims that he does not need to be a member of a protected class to proceed under 42 U.S.C. § 1985(3), but he has not addressed the binding precedent relied upon by County Defendants confirming the contrary. The animus element of a claim under § 1985(3) is not met merely because the actor is only maliciously motivated. Instead, the animus must be class-based and must be focused on the plaintiff <u>by reason of his membership in that class</u>. *See Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992); *see also Bigbee v. Nalley*, 482 F. Supp. 2d 1092, 1098 (W.D. Wis. 2007); *Moats v. Vill. of Schaumburg*, 562 F. Supp. 624, 631 (N.D. Ill. 1983); *Brainerd v. Potratz*, 421 F. Supp. 836, 839 (N.D. Ill. 1976). In fact, the case relied upon by Plaintiff makes this requirement clear. Plaintiff simply omitted that portion of the parenthetical quote appended to his citation of the *Traveler* decision:

> In *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the Supreme Court held that "racial, or perhaps [some other] class-based invidiously discriminatory animus" must serve as the basis of the conspirator's actions. **Here, Traveler makes no effort to suggest that he falls within <u>any of the recognized classes that support a § 1985(3) claim, such as race, ethnic origin, sex, or religion,</u>** or that the Defendants were motivated by some race or class-based invidious discriminatory intent. This is a fatal omission in the face of a motion to dismiss. Moreover, even if Traveler had asserted that he was disabled, a fact he seemingly does not contend, it would make no difference, as disability-based animus does not constitute the type of animus required by § 1985(3).

*Traveler v. Ott*, No. 1:06-CV-304, 2006 WL 3450602, at *2 (N.D. Ind. Nov. 29, 2006) (internal citations omitted) (emphasis added); (*see* Dkt. No. 47, p. 31).

This is not a "stretch," as Plaintiff asserts. It is well-settled in the Seventh Circuit and in all other Circuits that animus is not enough. Instead, membership in a protected

4

class is required in order to state a claim upon which relief may be granted under 42 U.S.C. § 1985(3). Taking all facts pled as true, Plaintiff has failed to allege that Mr. Huber was a member of ay protected class. His claim ends there and must be dismissed.

### B. Count III (42 U.S.C. § 1983 and § 1985(2)) Fails Because Mr. Huber Was Not a Member of a Protected Class and Does Not Allege That He Was an Individual Singled Out.

For Count III, Plaintiff switches tactics and claims that, in fact, he has pled membership in a protected class for purposes of 42 U.S.C. § 1983 by virtue of his association with a diverse group of protestors. Plaintiff again ignores binding precedent, this time confirming that he is not a member of a protected class. *See D.S. v. E. Porter County Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015); *see also Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1187 (7th Cir. 1986); *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). Plaintiff's reliance on *Hilton v. City of Wheeling* is misplaced, as the *Hilton* Court affirmed this conclusion. *See* 209 F.3d 1005, 1007 (7th Cir. 2000).

Plaintiff appears to posit that Mr. Huber was "protected by association." He theorizes that a white person sharing a similar viewpoint with (or protesting with) a person of color somehow becomes entitled to protection under 42 U.S.C. § 1983 simply through association with the person of color. But no court has ever extended the reach of 42 U.S.C. § 1983 to such an extreme degree, and Plaintiff has not cited to any precedent suggesting otherwise. Nor does he forward any viable or developed argument that the law should be so extended. Because Mr. Huber was not a member of any protected class, and because Plaintiff has not pled any facts showing that Mr.

5

Huber was entitled to any protections otherwise reserved for protected class members, his equal protection claim under § 1983 fails.

Additionally, Plaintiff appears to confuse the concept of membership in a "protected class" with "suspect class" status. (*See* Dkt. No. 47, p. 33 (discussing protected class status as being subject to heightened scrutiny).) Regardless of his membership in any diverse group of protestors, Plaintiff has not alleged that Mr. Huber was a member of any "suspect class" (race, national origin, alienage, religion) or quasi-suspect class (gender) entitled to closer scrutiny when asserting an equal protection claim. *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) and *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014). As such, any discussion of heightened scrutiny is inapplicable and unavailing.

Finally, Plaintiff has not meaningfully addressed the shortcomings in his pleadings for purposes of a viable class-of-one equal protection claim. To state a class-of-one claim, a plaintiff must assert that he or she was "irrationally singled out, <u>without regard for any group affiliation</u>, for discriminatory treatment." *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (emphasis added). But Plaintiff repeatedly alleges that Mr. Huber was treated differently precisely <u>because of</u> his affiliation with a diverse group of protestors. (*See, e.g.* Dkt. No. 27, ¶ 114, 117, 143, 150, 151, 160.) This is hardly an "overly cabined reading" of the Amended Complaint.

Equal protection claims based on membership in a protected group are distinct from class-of-one equal protection claims. *Moore*, 543 F.3d at 896. Even with every

6

reasonable inference drawn in his favor, nowhere in the Amended Complaint does Plaintiff allege that Mr. Huber was irrationally <u>singled out</u> and discriminated against without regard to any group affiliation. As such, he cannot proceed under 42 U.S.C. § 1983 under a class-of-one theory either and Count III should be dismissed.

**C.    Count III Also Fails Because 42 U.S.C. § 1985(2) Requires an Allegation of Obstruction of Justice.**

Plaintiff also cited 42 U.S.C. § 1985(2) as a basis for County III, but he has not addressed the binding precedent cited by the County Defendants establishing that § 1985(2) applies only to "conspiracies to obstruct the course of justice in state courts." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). Nor has he explained how his Amended Complaint could plausibly be read to assert a claim of unconstitutional interference with state officers, state courts, and state elections. *Id.* at 726. His citation to *Carey-Jones v. Duffin* is unavailing, because it does not address the plain language of the statute at issue at all. (*See* Dkt. No. 47, p. 33, citing No. 82 C 6285, 1985 WL 826, at *3 (N.D. Ill. Apr. 16, 1985).) Because Plaintiff has not pled facts sufficient to allege an equal protection claim under 42 U.S.C. § 1985(2), Count III fails.

**D.    Count VI (42 U.S.C. § 1986) is Derivative of Counts II and III and Therefore Fails, and Plaintiff Cannot Amend his Claim Through his Response Brief.**

Apparently seeing the futility of Count VI because of the failure to state a claim under 42 U.S.C. § 1985, Plaintiff now asserts that he <u>actually</u> pled a claim of failure to

7

intervene under 42 U.S.C. § 1983. (Dkt. No. 47, p. 34.) A simple reading of the Amended Complaint shows that this is not the case.

**COUNT VI:**
**42 U.S.C. §1986**
**FAILURE TO INTERVENE**

175.   Each paragraph of this Complaint is incorporated as if restated fully herein.

176.   In the manner described in this Complaint, Defendants had knowledge that conspiratorial wrongs were about to be committed.

177.   Each of the Defendants had the power to prevent or aid in preventing the commission of those wrongs.

(Dkt. No. 27, p. 35.) While it is true that a plaintiff is not required to plead legal theories or specify the statute or common law principle that was allegedly violated, here Plaintiff has done so. Plaintiff made detailed allegations focusing on specific claims arising under explicitly identified statutes, and he did not assert that he is raising any claim for a failure to intervene under § 1983.

As the Seventh Circuit noted, "the true nature of the claim matters and parties should be precise in their terminology." *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014). Further, "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case." *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993). Here, Plaintiff has already filed an Amended Complaint. In fact, Plaintiff did so **<u>after</u>** the County Defendants filed their original Motion to Dismiss in which they

8

identified the shortcomings of the original pleading—including the lack of any failure to intervene claim under § 1983. As such, Plaintiff had notice that the defendants were reasonably reading Count VI as pled—under 42 U.S.C. § 1985—and Plaintiff could have clarified or added some reference to 42 U.S.C. § 1983 in the Amended Complaint. He did not do so.

Under such circumstances, the district court "can and should hold the plaintiff to his original theory." *See Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). Plaintiff cannot amend his Amended Complaint through his response brief, *see Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir.1997) (holding that a party may not amend its complaint through its response to a dispositive motion), and the defendants cannot be faulted for relying on the explicit language of the Amended Complaint. As such, any attempt to inject a new claim at this juncture must be rejected.

It is "clear that a court may indeed dismiss a complaint based on incorrect legal theories." *Viewpoint Neutrality Now! v. Regents of Univ. of Minnesota*, 516 F. Supp. 3d 904, 915 (D. Minn. 2021) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827 (1989)). "Without doubt, then, a claim may be dismissed if it is 'based on an ... unavailing legal theory.'" *Id*. (quoting *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827). Count VI fails to state a claim under 42 U.S.C. § 1986 and must be dismissed.

Moreover, even if Plaintiff had pled such a claim or was allowed to amend to include reference to § 1983, the claim would still fail to meet the liberal pleading standard. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997)

9

(holding that opportunity to amend should be denied where amendment would be futile). Plaintiff asserts that he "pleaded that Defendants Beth and Miskinis were aware of the intention of armed individuals to patrol the streets of Kenosha, and their threats of violence, and that they had a supervisory role." (Dkt. No. 47, p. 34.) But this is insufficient to state a claim for a failure to intervene under 42 U.S.C. § 1983, because the plaintiff must plead facts demonstrating that the officer had a realistic opportunity to intervene: at minimum, the officer must have been present at the scene of the alleged violation. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)[1].

The associated problems with the theoretical § 1983 claim are myriad and identical to the problems with the Amended Complaint as a whole under Federal Rule of Civil Procedure 8(a) as discussed herein, *infra* at section VIII. In addition to Kyle Rittenhouse, Plaintiff has named nine municipalities and their unidentified officers as defendants. A claim for a failure to intervene is not a *Monell* claim; rather, it is an individual capacity claim that requires personal involvement. *Sanchez v. City of Chicago*, 700 F.3d 919, 928 (7th Cir. 2012). And the vagueness of the facts as pled does nothing but raise questions and confusion: What person(s) did Sheriff Beth or any other County

---

[1] Plaintiff refers to Sheriff Beth's "supervisory role" within this argument. Nevertheless, the allegations in the Amended Complaint would also be insufficient to state a claim for a § 1983 claim for failure to supervise, which Plaintiff also did not plead. A claim for failure to intervene is distinct from a claim for failure to supervise, yet Plaintiff references Sheriff Beth's supervisory role. While both failure to intervene and failure to supervise are individual capacity claims, they are separate forms of liability and not interchangeable. *See Sanchez v. City of Chicago*, 700 F.3d 919, 928 (7th Cir. 2012). Further, Plaintiff alleges Count VI against all Defendants, not just Sheriff Beth and Chief Miskinis, showing that Plaintiff did not intend to plead Count VI as a failure to supervise claim. As such, any belated attempt to restyle the § 1986 failure to intervene claim against all Municipal Defendants into a § 1983 supervisor liability claim against Sheriff Beth and Chief Miskinis should be rejected in its entirety. *Speer*, 123 F.3d at 665.

officer fail to stop and what should they have stopped them from doing? Is Plaintiff asserting that a failure to prohibit the armed militia from gathering in Kenosha generally somehow caused Mr. Huber to try to disarm Mr. Rittenhouse as Mr. Rittenhouse was attempting to flee the scene of a shooting? Or did the alleged failure instead simply cause Mr. Rittenhouse to shoot Mr. Huber? Where in the chain of events was this alleged failure to intervene causal of Plaintiff's injury?

The arguments in Plaintiff's Response Brief only highlight this failure. For example: "When the Law Enforcement Defendants learned that armed individuals had slashed tires in the area, they not only failed to investigate, they condoned the behavior: one of the Law Enforcement Defendants quipped to his colleagues 'Gotta love counter protestors. Slashing tires.'" (Dkt. No. 47, p. 4-5 (citing Dkt. No. 27, ¶ 84-85).) Who is the "they" in this allegation? How is this causally related in any way to Mr. Huber's death?

A review of the cited paragraphs from the Amended Complaint offers no help, as they simply allege:

> Likewise, at 11:26 p.m., callers reported that some of the pro-police armed individuals had "slashed tires" in a nearby area. But the Defendants did nothing in response to this conduct, let alone arrest the perpetrators. To the contrary, one of the Additionally Responding Officers, on a text thread with others titled "Tactical Enforcement Unit Command Only" wrote, "Gotta love counter protestors. Slashing tires."

(Dkt. No. 27, ¶ 84-85.) Is Plaintiff now asserting that someone's (Sheriff Beth's?) failure to chastise these officers somehow caused Mr. Huber's death?

11

The Amended Complaint fails to identify who, when, or how any County Defendant should have intervened and fails to allege that any County Defendant had the opportunity to intervene but failed to do so. Under even the most generous reading of the Amended Complaint, Plaintiff could not proceed even if he had pled Count VI as a violation of 42 U.S.C. § 1983. As such, it must be dismissed.

## IV. COUNT IV FAILS TO STATE A CLAIM OF FIRST AMENDMENT RETALIATION.

Plaintiff has ignored entirely the requirement that he must allege facts that, if taken as true, would establish a sufficient connection between the <u>defendant's retaliatory animus</u> and the <u>perpetrator's actions</u> causing the injury.

> It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must <u>cause</u> the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)) (emphasis in original). Keeping in mind that the injury is Mr. Huber's death at the hands of Mr. Rittenhouse, Plaintiff simply asserts that it "is plausible" that the Law Enforcement Defendants "engaged in actions directed at protestors, of which Anthony was one, 'at least in part' due to his protected speech." (Dkt. No. 47, p. 14.) This misses the mark entirely.

The injury alleged in this case—and in this Count IV specifically—is the death of Mr. Huber. (*See* Dkt. No. 27, ¶ 164.) As such, Plaintiff is required to plead facts showing

12

that it is plausible that the County Defendants' retaliatory animus caused Mr. Rittenhouse to kill Mr. Huber. As the Supreme Court explained, some sort of allegation is needed to "bridge the gap" between the defendant's motive and the perpetrator's action. *See Hartman*, 547 U.S. at 263. But Plaintiff has not alleged that Mr. Rittenhouse was one of the armed individuals toward whom the Law Enforcement Defendants allegedly funneled protestors. Nor is there any allegation that Mr. Huber was one of the protestors who was being funneled toward the armed individuals. Simply engaging "in actions directed at protestors, of which Anthony was one, 'at least in part' due to his protected speech," is not enough. Even if it is assumed that the Law Enforcement Defendants took these actions based on a retaliatory motive, Plaintiff has not pled facts that sufficiently connect those acts with Mr. Rittenhouse's decision to kill Mr. Huber.

Similarly, allowing or even causing Mr. Rittenhouse to patrol the streets because of some retaliatory animus is not the same as causing Mr. Rittenhouse to kill Mr. Huber. The facts pled in the Amended Complaint confirm this: Mr. Rittenhouse was fleeing the scene after shooting Joseph Rosenbaum and fell to the ground where several citizens attempted to disarm him. (Dkt. No. 27, ¶ 70-71.) As Mr. Huber reached for Mr. Rittenhouse's rifle, Mr. Rittenhouse shot him in the chest. (*Id.*, ¶ 74.) There is no assertion or reasonable inference that Mr. Rittenhouse's actions in this specific series of events leading to the alleged injury—Mr. Huber's death—were caused by the County Defendants' retaliatory animus. Under even the most generous reading of the facts

13

alleged, and under the lowest possible bar for pleading, Plaintiff has failed to meet this basic standard.

Moreover, Plaintiff has also failed to meaningfully demonstrate that his claim is cognizable in the first instance[2]. He cites to an employment case discussing causation under the "cat's paw theory," where two mid-level supervisors, with discriminatory animus, were allegedly involved in the chain of events leading to the plaintiff's termination by a higher-level supervisor. (*See* Dkt. No. 47, fn. 5 (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 419-420 (2011)).) The question in *Staub* was whether the mid-level supervisors' employer—the hospital itself, rather than the higher-level supervisor—could be held liable for its role in the constitutional violation. This is not at all analogous or applicable to the argument forwarded by Plaintiff: that unidentified municipal actors with alleged retaliatory animus are liable for a private citizen injuring Mr. Huber. Again, no court has recognized a viable First Amendment retaliation claim under the facts as pled by Plaintiff. As such, this Court should reject Plaintiff's attempt to create a new cause of action.

---

[2] Plaintiff claims that the County Defendants have relied on "wholly inapplicable case law" to support their position. (Dkt. No. 47, p. 15, fn. 5.) However, Plaintiff does not identify <u>which</u> case is allegedly inapplicable, let alone <u>why</u> any case cited by the County Defendants is inapplicable. As such, this argument should be disregarded in its entirety. *See Wine v. Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 538 (7th Cir. 2017).

14

## V.   THE FACTS AS PLED FAIL TO STATE A DUE PROCESS CLAIM FOR RELIEF IN COUNT V.

On a motion to dismiss, a plaintiff is entitled to reasonable inferences establishing that a claim is facially plausible.  Under this standard, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 662, 678. Further, it is unreasonable to infer individual liability of any given defendant based on nothing more than broad and generalized allegations of wrongdoing against a group with which the individuals are associated. *See id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955 (2007)) ("Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"); *see also Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421-422 (7th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

Plaintiff's Due Process claim in Count V fails these basic pleading requirements. The Due Process Clause of the Fourteenth Amendment does not "impose an affirmative obligation on the State" to protect individuals from harm by private actors. *DeShaney v. Winnebago County Dep't. of Soc. Serv.*, 489 U.S. 189, 195-196 (1989)). A limited exception to this rule has been inferred such that a duty to protect an individual <u>may</u> arise when 1) the state, by its affirmative acts, increases a danger faced by an individual; 2) the failure on the part of the state to protect the individual from such danger must be the

15

proximate cause of the injury to the individual; and 3) the state's failure to protect the individual must shock the conscious. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). However, this limited exception to *DeShaney*'s rule of non-liability does not apply where the government "does not monopolize the avenues of relief." *Archie v. City of Racine*, 847 F.2d 1211, 1222 (7th Cir. 1988) (en banc); *see also Estate of Stevens v. City of Green Bay*, 105 F.3d 1169 (7th Cir. 1997).

With these elements in mind, Plaintiff has failed to allege facts that would permit the Court to reasonably infer more than the mere possibility of causal misconduct—which is insufficient to meet the second element. First, Plaintiff implausibly asserts that "[w]ithout the Law Enforcement Defendants' authorization, the illegally armed private individuals hostile to the protestors would not even have been present." (Dkt. No. 47, p. 18 (citing Dkt. No. 27, ¶¶ 79-80, 83, 92-93).) But based on the allegations of the Amended Complaint as a whole, this is an implausible and unreasonable inference. Plaintiff contends that Mr. Huber and other protestors were not "authorized" to be present and in fact were told to leave. (*See* Dkt. No. 27, ¶ 79.) And yet, lacking any authorization, Mr. Huber nevertheless remained present on the streets on August 25, 2020 with hundreds of other protestors. Based on the allegations as pled, it is manifestly unreasonable to infer that the armed individuals would have acted any differently than Mr. Huber did under those same circumstances, or that the Law Enforcement Defendants in any way caused the armed individuals to be present any more than they caused the protestors to be present.

16

Similarly, Plaintiff alleges that without the actions of the Law Enforcement Defendants, "Defendant Rittenhouse would never have interacted with Anthony that night." (Dkt. No. 47, p. 18 (citing Dkt. No. 27, ¶¶ 96-98).) Again, this is an unreasonable and therefore impermissible inference based on the facts as pled. Although Plaintiff cites to his allegations about "funneling protestors" to support this inference, the Amended Complaint as a whole must be considered on a motion to dismiss. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). Regardless of—and taking as true—any allegations about funneling protestors, at about 11:45 p.m., Mr. Rittenhouse used his gun to shoot Joseph Rosenbaum. (Dkt. No. 27, ¶ 68.) Mr. Rittenhouse then ran from the scene with his rifle in his hands. (*Id.*, ¶ 70.) People yelled that Mr. Rittenhouse had just shot someone, and in response "several citizens approached him in an attempt to disarm him." (*Id.*, ¶ 70-71.) Mr. Huber was one of those citizens. As Mr. Rittenhouse ran from the scene of the killing, he stumbled and fell to the ground. (*Id.*, ¶ 71.) Mr. Huber then decided to approach and reach for Mr. Rittenhouse's rifle to disarm him but was fatally shot. (*Id.*, ¶ 72-76.)

In other words, the Amended Complaint plainly alleges that Mr. Rittenhouse and Mr. Huber interacted as Mr. Rittenhouse was **<u>fleeing</u>** protestors—**<u>not</u>** as protestors were "being funneled" toward him and not as Mr. Huber was "being funneled." Based on the plain language of the Amended Complaint and all reasonable inferences derived therefrom, Plaintiff has failed to allege the requisite causal connection between any act of the County Defendants and Mr. Huber's death. Because Plaintiff has not alleged facts

17

that demonstrate any entitlement to relief against the County Defendants as to Count V, it must be dismissed.

Second, even if the Court believes that Plaintiff sufficiently pled proximate causation to fulfill the second element of the claim, Plaintiff's Due Process claim still fails because he has not alleged any facts to suggest that the Law Enforcement Defendants in any way monopolized the avenues of relief available to Mr. Huber. *See Stevens*, 105 F.3d at 1177–78. The same facts alleged in the Amended Complaint discussed above are dispositive here as well:

> 70. Defendant Rittenhouse ran from the scene of the Rosenbaum shooting with his assault rifle in his hands, holding it in a ready position. People were yelling that Defendant Rittenhouse had just shot someone.
>
> 71. Defendant Rittenhouse stumbled and fell to the ground, and several citizens approached him in an attempt to disarm him.
>
> 72. Anthony Huber was one of those individuals. Anthony approached Defendant Rittenhouse to disarm him, stop the shooting, and save the lives of others.
>
> 73. Anthony Huber was a hero.
>
> 74. As Anthony was reaching for Defendant Rittenhouse's rifle to pull it away, without provocation or any legal justification, Defendant Rittenhouse shot him in the chest.

(Dkt. No. 27, ¶¶ 70-74.) Defendant Rittenhouse was running and fell, and Mr. Huber approached and tried to disarm him. The County Defendants are not attempting to dispute facts or even relying on inferences. Simply put, there is absolutely no allegation or reasonable inference that the Law Enforcement Defendants constricted Mr. Huber's

18

access to self-help or otherwise cut off all avenues of aid without providing a reasonable alternative. *See Stevens*, 105 F.3d at 1177–78. As such, Plaintiff has failed to allege a Due Process claim for a state-created danger upon which relief may be granted.

## VI. THE COUNTY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR COUNT V.

In the event the Court believes that Plaintiff adequately pled Count V, the Court should nevertheless dismiss the claim on the basis of qualified immunity. According to Plaintiff, the Court should ignore legal doctrine and look at the County Defendants' alleged conduct when deciding the question of qualified immunity. (Dkt. No. 47, p. 24.) To be clear, even when taking Plaintiff's vague and generalized allegations as true and accepting all reasonable inferences in Plaintiff's favor, the County Defendants are entitled to qualified immunity for Count V. The law pertaining to due process claims alleging injury arising from a state-created danger is far from settled, as set forth in detail in the County Defendants' moving brief. (Dkt. No. 40, p. 26-34.) Plaintiff has not shown that as of as of August 25, 2020 it was clearly established that the facts as pled would constitute unconstitutional conduct under the Due Process clause.

Plaintiff cites to cases discussing state-created danger from 1979, 1989, 1990, 1993, 1998, 2012 and states that they are "fatal" to the argument of qualified immunity because they unequivocally establish settled jurisprudence. (Dkt. No. 47, p. 27-28.) Yet he ignores the far more recent Seventh Circuit jurisprudence of 2019 questioning the very existence of a cause of action arising from a state-created danger and the

19

appropriate elements of such a claim—if one exists. *See Weiland v. Loomis*, 938 F.3d 917 (7th Cir. 2019). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded" that the alleged conduct would violate clearly established law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1095 (1986.) "[B]ut if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* Because officers of reasonable competence could disagree (as the judges of the Seventh Circuit certainly have), Plaintiff has not met his burden in opposing the defense of qualified immunity. *Mannola v. Farrow*, 476 F.3d 453, 357 (7th Cir. 2007). As such, the County Defendants are entitled to qualified immunity on Count V.

**VII.    COUNT I DOES NOT PROVIDE AN INDEPENDENT BASIS OF LIABILITY.**

Plaintiff has not addressed the fact that conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Instead, he focuses on whether he adequately pled Count I. (*See* Dkt. No. 47, p. 36.) While the inadequacy of the Amended Complaint is discussed elsewhere in the County Defendants' moving brief and herein, Count I also fails due to the lack of any actionable claim for an underlying constitutional injury. *Kelley v. Myler*, 149 F.3d 641, 648 (7th Cir. 1998). Therefore, Plaintiff's claim of conspiracy under § 1983 in Count I must be dismissed for this reason.

## VIII. PLAINTIFF'S CLAIMS FAIL TO SUFFICIENTLY PUT THE COUNTY DEFENDANTS ON NOTICE AS REQUIRED UNDER RULE 8(a) AND FAILS TO SUFFICIENTLY ALLEGE PROXIMATE CAUSATION.

In perhaps the most myopic argument of his response brief, Plaintiff alleges that the County Defendants are not entitled to qualified immunity for Count V because the County Defendants "make no attempt to articulate which of them were not adequately on notice that their conduct was clearly established as unconstitutional or what conduct they contend was subject to legal uncertainty…" (Dkt. No. 47, p. 22.) Plaintiff has not pled a single, specific causal act or omission attributable to **any** identifiable individual officer in the entirety of his 229-paragraph Amended Complaint. Plaintiff has not identified what any given officer did or did not do such that any County Defendant could possibly "articulate what conduct they contend was subject to legal uncertainty" with any more specificity than has already been argued. But beyond the issue of qualified immunity, Plaintiff's failure extends to all of his causes of action.

The only identified County Defendant is Sheriff Beth. The only specific allegations against him are that he put in place a curfew on August 24, 2020 (Dkt. No. 27, ¶ 39); that he did not dissuade Mr. Mathewson or any other armed individuals from showing up in Kenosha to patrol the streets (*id*., ¶ 55)[3]; that he was aware that pro-

---

[3] Notably, Wisconsin is an open carry state, *see* Wis. Stat. § 175.60(2)(c), and Plaintiff has not articulated any legal basis upon which Sheriff Beth could prevent any openly armed individual from walking the streets of Kenosha County. If the allegations of a complaint "give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citations omitted).

21

militia, armed individuals intended to patrol the streets (*id.*, ¶ 56); that he directed John Doe Police Officers (*id.*, ¶¶ 135, 146, 154, 165, 173); and that he acted in the scope of his employment while committing those acts (*id.*, ¶ 225). Plaintiff made no attempt whatsoever to identify any specific actions of any John Doe Police Officer and instead vaguely asserts that, essentially, everyone did everything and it was all wrong. He then uses this generalized allegation of wrongdoing to support each of his fifteen causes of action.

Plaintiff acknowledges the requirement that a complaint must, at minimum, identify all of the people involved in order to meet the requirements of Federal Rule of Civil Procedure 8. (Dkt. No. 47, p. 8-9.) However, his reliance on several cases is misplaced, because those cases only confirm the shortcomings of his Amended Complaint. *See*, *e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (allegations of wrongdoing causing an injury are "enough to state a claim on which relief may be granted—if it names the persons responsible for the problem."); *see also Brooks v. Ross*, 578 F.2d 574, 578 (7th Cir. 2009) (while directing allegations at a group of defendants may be sufficient, such a claim still fails if it is merely a formulaic recitation of the cause of action that fails to "put the defendants on notice of what exactly they might have done to violate" the plaintiff's rights).

At one point, Plaintiff asserts that "without discovery Plaintiff cannot identify which Kenosha Police Sergeant directed officers not to dissuade or disperse the armed individuals…" (Dkt. No. 47, p. 10.) Aside from the fact that Plaintiff has an obligation

22

under Federal Rule of Civil Procedure 11 to conduct a reasonable inquiry and investigation into the claims he is asserting, and aside from the fact that Plaintiff could certainly make a public records request under Chapter 19 of the Wisconsin Statutes to investigate the identities of involved officers prior to filing suit, Plaintiff's argument entirely ignores the obvious. Plaintiff did not allege a specific claim against a specific "John Doe Kenosha Police Sergeant" in his Amended Complaint.

Plaintiff has not made any attempt to identify the particular actions of any Doe officers at all. He does not allege that John Doe Police Officer saw that Mr. Rittenhouse was illegally armed but failed to take action. He does not allege that Mr. Huber tried to leave the scene of protests but Jane Doe Police Officer prevented him from doing so. (*See generally* Dkt. No. 27.) Instead, he makes generalized allegations against all nine different law enforcement agencies and their unidentified officers. There is simply no indication in Plaintiff's allegations of "who did what to him, when and where they did it and, if he knows, why they did it." *See Juarez v. Kenosha Sheriff's Dep't.*, 2020 WL 5982881, *6 (E.D. Wis. Oct. 8, 2020); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004).

Even if Plaintiff does not know the names of any John Doe officers, he must still make plausible allegations against them describing the "'who, what, why, where, and how' that form the basis of the claim against that person." *Bentz v. Mears*, No. 19-CV-00799-NJR, 2020 WL 1975167, at *3 (S.D. Ill. 2020) (citing Fed. R. Civ. P. 8(a)(2)). The allegations must be "specific enough to permit the identity of [the Does] to be

23

ascertained after reasonable discovery." *See Perez v. Does 1 – 10*, 931 F.3d 641, 646 (8th Cir. 2019); *Hastings v. Fid. Mortg. Decisions Corp.*, 984 F. Supp. 600, 605 (N.D. Ill. 1997). At present, every single officer from every single agency who was on duty on August 25, 2020 could potentially be implicated by Plaintiff's vague and all-inclusive allegations. As a matter of law, this fails to comply with the notice requirements of Rule 8(a) and each and every claim should be dismissed.

Additionally, even if the Court otherwise construes the Amended Complaint as providing adequate notice under Rule 8(a), Plaintiff nevertheless failed to adequately plead facts asserting causation showing that he is entitled to relief on any of his claims. "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). And unless a statute provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176-177, 129 S.Ct. 2343 (2009). Further, abstract recitations of the elements of a cause of action or conclusory legal statements are insufficient to meet the pleading standards under Rule 8. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The Amended Complaint simply fails in every respect to plausibly suggest but-for causation between the County Defendants' alleged actions and Mr. Huber's death under any theory pled. A careful review of the facts shows the following actions are alleged to have caused Mr. Huber's death:

24

- The Law Enforcement Defendants "did not treat Defendant Rittenhouse or any of the other armed individuals patrolling the streets as a threat…" (Dkt. No. 27, ¶ 6.)

- The Law Enforcement Defendants let the armed individuals patrol the streets. (*Id.*, ¶ 7.)

- The Law Enforcement Defendants thanked the armed individuals and gave them water. (*Id.*)

- The Law Enforcement Defendants allowed the armed individuals to openly defy the emergency curfew order. (*Id.*)

- The Law Enforcement Defendants made plans to funnel protestors toward the armed individuals. (*Id.*)

But as to Mr. Rittenhouse's shooting of Mr. Huber, the Amended Complaint alleges Mr. Rittenhouse was fleeing the scene after shooting Joseph Rosenbaum and fell to the ground where several citizens attempted to disarm him. (Dkt. No. 27, ¶ 70-71.) As Mr. Huber reached for Mr. Rittenhouse's rifle, Mr. Rittenhouse shot him in the chest. (*Id.*, ¶ 74.)

There are simply no facts alleged or reasonable inferences that in any way connect or otherwise bridge the gap between these two things under <u>any</u> legal theory forwarded by Plaintiff. There are no facts pled suggesting that the County Defendants caused Mr. Huber to disobey the curfew order. There are no facts pled suggesting that the County Defendants caused Mr. Huber to try to disarm Mr. Rittenhouse. There are no facts pled suggesting that the County Defendants caused Mr. Rittenhouse to shoot Mr. Huber. While pleading causation may present the lowest possible bar, Plaintiff has

25

nevertheless failed to meet his burden. As such, his claims against the County

Defendants should all be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## IX.    PLAINTIFF "MUST ESTABLISH THAT HE SUFFERED A DEPRIVATION OF A FEDERAL RIGHT <u>BEFORE</u> MUNICIPAL FAULT, DELIBERATE INDIFFERENCE, AND CAUSATION COME INTO PLAY." (COUNT VII).

Plaintiff mischaracterizes or misunderstands the law of municipal liability. In the

Amended Complaint, Plaintiff alleges that his injuries were caused by "the policies,

practices, and customs of the Municipal Defendants, as well as by the actions of policy-

making officials for the Municipal Defendants." (Dkt. No. 27, ¶ 183.) He goes on to

make various allegations of misconduct undertaken pursuant to the policies, practices,

or customs of the Municipal Defendants. (*Id.*, ¶ 190.) To state a cause of action under

*Monell* based on an alleged custom or practice, a plaintiff must show an

unconstitutional act that "implements or executes" an official policy or decision of the

municipal entity. *Glisson v. Indiana Dept. of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017).

The failure to implement a necessary policy as a result of deliberate indifference may

also suffice. *Id.* at 381. As should be obvious, some underlying constitutional

deprivation is required to proceed under this theory. *Gaetjens v. City of Loves Park*, 4 F4th

487, 495-496 (7th Cir. 2021).

Plaintiff appears to conflate the strategic decision to plead an individual capacity

cause of action against an officer for committing the alleged underlying violation—

which is not required but is usually pled—with the foundational requirement under

*Monell* that such an actionable underlying violation exist in the first instance. To be

26

clear: the *Monell* liability asserted against the municipality is distinct from any individual liability of the officer who committed the underlying violation—the municipality is not liable for the bad acts of its officer (*respondeat superior*); rather, the municipality is liable because its custom, policy, or lack thereof <u>caused the officer's underlying unconstitutional actions</u>. *Glisson*, 849 F.3d at 379, 381. A plaintiff may choose to pursue a claim against the officer for the underlying violation, a *Monell* claim against the municipality for causing the officer's underlying violation, or both. This does not obviate the need to plead an actionable underlying constitutional violation in order to proceed under *Monell*.

Plaintiff's reliance on *Glisson*, *Thompson*, *First Midwest Bank*, and *Polk County* does not save him, because these cases only emphasize this requirement.

> These principles are settled and familiar. So too is the requirement that the plaintiff must initially prove that he was deprived of a federal right. That's the first step in every § 1983 claim, including a claim against a municipality under *Monell*. A *Monell* plaintiff must establish that he suffered a deprivation of a federal right **<u>before</u>** municipal fault, deliberate indifference, and causation come into play.

*First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987, (7th Cir. 2021) (emphasis in original). These principles are so well-settled and familiar that a "single sentence" should suffice to explain them (Dkt. No. 47, p. 37), but apparently Plaintiff requires more. Regardless, because each of Plaintiff's alleged constitutional violations fail for the reasons set forth in the County Defendants' moving brief and

herein, *supra*, his *Monell* claim lacks any underlying constitutional violation and must be dismissed.

## X.   PLAINTIFF'S STATE LAW CLAIMS (VIII – XV) FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED[4].

### A.   Public Policy Precludes Recovery on All State Law Claims (Counts VIII – XV)[5]

Although Plaintiff urges the Court to postpone any decision on the applicability of Wisconsin's public policy factors, whether one or more factors bars recovery is a question of law solely for judicial determination that can certainly be determined at this stage. *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 2004 WI 62, ¶ 12, 272 Wis. 2d 46. Plaintiff's arguments against the application of public policy are all based upon unreasonable inferences that must be rejected. For example, he contends that public policy should not be applied because Mr. Huber's death was "the obvious and intended outcome of funneling demonstrators toward armed individuals to 'deal with them.'" (Dkt. No. 47, p. 41.) To reach this conclusion, the Court must ignore the plain language of facts alleged in the Amended Complaint: that Mr. Huber was killed when he attempted to disarm Mr. Rittenhouse of an AR-15 style assault rifle ("a weapon of war")

---

[4] To reiterate, Plaintiff already acknowledged that all state law claims against Waukesha County, Racine County, Sauk County, Walworth County, Washington County, and their officers are barred by Wis. Stat. § 893.80(1d). (Dkt. No. 47, p. 46.) As such, the only state law claims now at issue are those against Kenosha County and its officers.

[5] Plaintiff states that the County Defendants have not cited to any cases where these public policy factors have been applied to Section 1983 claims. (Dkt. No. 47, p. 42.) This is true. The County Defendants are not arguing that Wisconsin's public policy factors are applicable to any claims other than the state law claims in Counts VIII-XV.

28

using a skateboard as Mr. Rittenhouse was attempting to flee the scene. (Dkt. No. 27, ¶¶ 61, 70-74.) Even assuming that the County Defendants knowingly funneled demonstrators toward armed individuals, it is hardly "foreseeable" or "obvious" that these actions would cause Mr. Huber to attempt to disarm Mr. Rittenhouse as Mr. Rittenhouse was attempting to flee. Instead, the facts **as pled** provide the quintessential example of a scenario where the alleged injury is simply too remote from the allegedly wrongful conduct, and in retrospect it appears too highly extraordinary that the negligence should have brought about the harm.

The Court need only invoke one of the six recognized public policy exceptions to preclude liability. *See Fandrey*, 2004 WI 62, ¶ 9-10; *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 829 (7th Cir. 2021). But Plaintiff's claims fit squarely within each of the remaining public policy considerations as well. In particular, allowing Plaintiff to proceed against the County Defendants under the facts as pled would place too unreasonable a burden on law enforcement, and it would eliminate any sensible or just stopping point for liability against law enforcement officers. If Plaintiff's claims are not precluded, any person injured by a private individual during the mayhem of August 25, 2020 in Kenosha, Wisconsin could blame law enforcement simply because of officers' presence and attempts to control the scene.

As such, even if the Court does not dismiss Plaintiff's state law claims because of his failures under Rule 8 or as the result of the application of statutory immunity, all of the claims should nevertheless be dismissed on public policy grounds.

**B.** **None of the Exceptions to Discretionary Immunity Under Wis. Stat. § 893.80(4) Apply to Counts IX – XI, Which Must be Dismissed.**

At the outset, it must be noted that Plaintiff does not contest the fact that the manner in which law enforcement officials carry out their responsibilities is discretionary. *Estate of Perry v. Wenzel*, 185 F.Supp.3d 1087, 1099-1100 (E.D. Wis. 2017). As such, the only way that Plaintiff may proceed on these claims is if he is able to fit them within an enumerated exception to the immunity codified in Wis. Stat. § 893.80(4). Because he has failed to demonstrate that any exception applies, these claims must be dismissed.

            1.       <u>Plaintiff's Attempt to Rewrite Wis. Stat. § 893.80(4)'s Reference to "Intentional Torts" Must be Rejected</u>.

Plaintiff's arguments opposing discretionary immunity ignore the nature of the claims pled. The County Defendants specifically assert that immunity under Wis. Stat. § 893.80(4) bars Plaintiff's state law claims sounding in negligence. (*See* Dkt. No. 40, p. 41-45.) As such, Plaintiff's discussion of the exception to discretionary immunity for actions that are "malicious, willful, and intentional" is inapplicable to these negligent torts.

Plaintiff's only support for his position comes from the nonprecedential decision of *Geboy v. Oneida County*, No. 19-cv-574-BBC, 2020 WL 7398660 (W.D. Wis. 2020). But Plaintiff's attempt to circumvent application of well-established statutory immunity must be rejected. Even the *Geboy* Court appeared uncertain of its decision: "there is

30

some question in the case law whether the exception [for malicious and intentional conduct] applies to negligence claims." *Geboy* at * 10. Ultimately, binding Wisconsin precedent confirms that the *Geboy* decision was incorrect, and the exception to immunity does not apply to the present case. *See Sheridan v. City of Janesville*, 164 Wis. 2d 420, 428, 474 N.W.2d 799 (Ct. App. 1991). Published case law from this District has confirmed the same. *Wilson v. City of Milwaukee*, 138 F. Supp. 2d 1126, 1133 (E.D. Wis. 2001). Notably, the cases relied upon by the *Geboy* Court to reach its holding were each unpublished federal cases applying Wisconsin law. Instead, this Court should rely on and defer to the binding Wisconsin state court decisions, as Wisconsin state courts are in a better position to provide answers on the application of state laws. *See Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 429 (7th Cir. 2012).

Additionally, the language of Wis. Stat. § 893.80 confirms the error of *Geboy*'s holding. Section 893.80 applies to "<u>claims</u> against governmental bodies or officers." Wis. Stat. 893.80 (emphasis added). Further, the exception to discretionary immunity codified in § 893.80(4) applies to "<u>intentional torts</u>"—not to allegations of "malicious, willful, and intentional" conduct. *Id.* (emphasis added). This unambiguous statutory language does not allow the exception to apply to negligent torts simply because the complaint also contains allegations of intentional conduct.

The Wisconsin legislature has determined that public policy considerations "spring from the interest in protecting the public purse and a preference for political rather than judicial redress for the actions of public officers," and they support

31

immunizing government officials from liability under these circumstances. *See Engelhardt v. City of New Berlin*, 2019 WI 2, ¶ 22, 385 Wis.2d 86, 921 N.W.2d 714. This statutory immunity seeks to limit the "drain on valuable time" created by the very initiation of an action in the first instance. *Legue v. City of Racine*, 2014 WI 92, ¶ 41, 357 Wis.2d 250, 849 N.W.2d 837.

Allowing negligence-based claims to proceed forward simply because other claims in the action rely on allegations of intentional conduct would directly contradict the well-established purpose of discretionary immunity that Wisconsin courts have upheld for decades. Simply put, any narrowing of this immunity is not within the province of the courts:

> Finally, we note that the immunity provisions of § 893.80(4), STATS., derive from considerations of public policy. They are designed to protect public officers from being unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability, and, more generally, <u>to ensure that courts will refuse to pass judgment on the policy decisions made by coordinate branches of government</u>.

*Johnson v. City of Edgerton*, 207 Wis.2d 343, 352, 558 N.W.2d 653 (Ct. App. 1996) (emphasis added) (quotations and citations omitted). Neither the language of the statute nor binding precedent interpreting it allow such an application of the exception to discretionary immunity. Plaintiff pled Counts IX – XI as negligent torts. As such, discretionary immunity plainly bars Plaintiff from proceeding on those claims and they must be dismissed.

32

2. The Known Danger Exception to Immunity is Plainly Inapplicable.

Similarly, Plaintiff cannot avoid the application of discretionary immunity through the invocation of the "known danger" exception, because he has not and cannot identify any specific, articulated danger known to any particular public officer that created any ministerial duty to act. Importantly, the duty to act necessary to trigger this exception "is ministerial, requiring a particularized action with a self-evident time, mode and occasion." *Heuser ex rel. Jacobs v. Cmty. Ins. Corp.*, 2009 WI App 151, ¶ 23, 321 Wis. 2d 729, 774 N.W.2d 653. Accordingly, much of this hurdle is created by Plaintiff's own vague and general allegations as discussed herein, *supra*. Who, when, where, and how should any officer have acted in order to prevent Mr. Huber's death?

> As we have noted, a generalized "duty to act," without more, could never be characterized as ministerial in nature, because it is too non-specific and leaves the mode of official action open to discretion. We note again that a ministerial duty, whether imposed by law or arising out of known dangerous circumstances, requires specificity as to time, mode, and occasion for performance so that nothing remains for the exercise of discretion. Despite the sometimes generalized language, the cases finding a known danger sufficient to pierce immunity are premised on conclusions that particularized government responses were required by the dangerous circumstances in question.

*Lodl v. Progressive Northern Ins. Co.*, 2002 WI 71, fn. 7, 253 Wis.2d 323, 646 N.W.2d 314. Plaintiff does not even attempt to identify a time, mode, or occasion for performance or a particularized response, because the facts as alleged in the Amended Complaint make such an argument impossible. As such, the "known danger" exception to immunity under Wis. Stat. § 893.80(4) is inapplicable and Counts IX – XI must be dismissed.

33

### C. Plaintiff Concedes That Kenosha County is Entitled to Immunity From Any Intentional Torts Under Wis. Stat. § 893.80(4).

To the extent that any state law claims may survive the County Defendants'
preceding arguments, Plaintiff acknowledges that Kenosha County is immune from
liability for any intentional torts pursuant to Wis. Stat. § 893.80(4). (Dkt. No. 47, fn. 9.)
Thus, any such remaining claims must be dismissed as against Kenosha County.

### D. Kenosha County is Not Liable For Discretionary Acts of its Officers.

Plaintiff has not addressed the defenses to Count XIV in which he asserts a claim
of *respondeat superior* against Kenosha County. Where the employees are entitled to
discretionary immunity, so too is the governmental employer. *See Estate of Phillips v.
City of Milwaukee*, 123 F.3d 586, 599 (7th Cir. 1997). As such, Kenosha County is entitled
to immunity for all of Plaintiff's state law claims sounding in negligence.

### E. Section 895.46, Wis. Stats., Does Not Give Rise to an Independent Cause of Action, So Count XV Fails to State a Claim.

Plaintiff has not responded to or addressed in any way the fact that Wis. Stat. §
895.46 "does not provide a private cause of action for indemnification" against the
County, but instead "provides for the [municipality] to pay the damages[, if any,] on
behalf of" the public officer or employee. *Jackson v. Graves*, No. 14-cv-1206-pp, 2015 WL
5577527, at *4 (E.D. Wis. Sep. 22, 2015); *see also Ware v. Percy*, 468 F. Supp. 1266 (E.D.
Wis. 1976) (noting that the purpose of the law is to shield state employees from

34

monetary loss in tort suits not to create additional causes of action.). Because Count XV does not state a claim upon which relief may be granted, it must be dismissed.

<u>CONCLUSION</u>

For the reasons stated herein and in their moving brief, Defendants David G. Beth, Kenosha County, Waukesha County, Racine County, Sauk County, Walworth County, and Washington County respectfully request that the Court enter an Order dismissing Plaintiff's claims against them in their entirety.

Dated this 15th day of June, 2022.

By: /s         Sara C. Mills
       SAMUEL C. HALL, JR.
       State Bar No. 1045476
       SARA C. MILLS
       State Bar No. 1029470
       MICAELA E. HAGGENJOS
       State Bar No. 1118840
       Attorneys for Defendants David G. Beth, Kenosha County, Waukesha County, Racine County, Sauk County, Walworth County, and Washington County
       CRIVELLO CARLSON, S.C.
       710 N. Plankinton Avenue, Suite 500
       Milwaukee, WI 53203
       Phone: (414) 271-7722
       Fax: (414) 271-4438
       E-mail:  shall@crivellocarlson.com
             smills@crivellocarlson.com
             mhaggenjos@crivellocarlson.com