UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,

      Plaintiff,

v.                                                              Case No. 21-CV-969

DAVID G. BETH, in his individual and official
capacity as Kenosha County Sheriff, DANIEL G.
MISKINIS, in his individual and official capacity
as the former Chief of Police for the Kenosha
Police Department, ERIC LARSEN, in his official
capacity as the acting Chief of Police for the
Kenosha Police Department, JOHN DOE POLICE
OFFICERS of the Kenosha Police Department,
Kenosha County Sheriff's Department, Waukesha
County Sheriff's Department, Racine County
Sheriff's Department, Sauk County Sheriff's
Department, Walworth County Sheriff's
Department, Washington County Sheriff's
Department, Menomonee Falls Police Department,
and West Allis Police Department, CITY OF
KENOSHA, COUNTY OF KENOSHA, COUNTY
OF WAUKESHA, COUNTY OF RACINE, COUNTY
OF SAUK, COUNTY OF WALWORTH, COUNTY OF
WASHINGTON, VILLAGE OF MENOMONEE FALLS,
CITY OF WEST ALLIS, and KYLE RITTENHOUSE.

      Defendants.

REPLY BRIEF IN SUPPORT OF THE CITY DEFENDANTS'
MOTION FOR DISMISSAL OF AMENDED COMPLAINT

    City Defendants, Daniel G. Miskinis, Eric Larsen, John Doe Police Officers of the

Kenosha Police Department, Menomonee Falls Police Department, West Allis Police

1

Department, the City of Kenosha, Village of Menomonee Falls and the City of West Allis, (collectively the "City Defendants"), by their attorneys, Stafford Rosenbaum LLP, submit this reply brief in support of their Motion to Dismiss Amended Complaint. City Defendants respectfully request that the Court enter an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all of Plaintiff's federal civil rights claims and state law claims.

Plaintiff concedes that (1) his state law claims against Menomonee Falls Police Department, West Allis Police Department, the City of Kenosha, Village of Menomonee Falls and the City of West Allis for which he filed no notice of claim or notice of injury are in violation of Wisconsin law, and (2) his intentional infliction of emotional distress claim is an intentional tort for which the City of Kenosha cannot be liable. Plaintiff opposes dismissal with respect to his remaining claims against the City Defendants. However, each claim should be dismissed for failure to state a claim upon which relief may be granted and/or due to the applicability of qualified immunity, discretionary immunity, statutory immunity under Wis. Stat. § 893.80(4), and/or a failure to comply with the notice procedures pursuant to Wis. Stat. § 893.80(1d)(a). Furthermore, the Amended Complaint fails to allege sufficient facts pursuant to Fed. R. Civ. Proc. 8.[1]

---

[1] The City Defendants reiterate that the allegations and facts discussed herein are accepted from the Amended Complaint solely for the purposes of this motion in order to be consistent with the Court's review of the pleadings. *See e.g., McCauley v. City of Chicago*, 671 F.3d 611, 616, 2011 WL 4975644 (7th Cir. 2011) (In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal,* we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.). The allegations and facts discussed here are not otherwise admitted in any way by the City Defendants.

The allegations in the Amended Complaint can certainly shock the conscience – alleging that numerous law enforcement agencies conspired together to orchestrate one private individual shooting and killing another private individual – yet, at its crux, the overarching deficiency of the Amended Complaint is that it simply fails to allege sufficient facts pursuant to Fed. R. Civ. Proc. 8 by failing to identify even the most basic facts pertaining to who agreed to do what, when, where and how; much less linking this alleged conspiracy to Rittenhouse and/or how this alleged conspiracy was linked to the unexplained confrontation and shooting of Rosenbaum (the alleged – and attenuated – precipitating actions leading to the shooting of Huber). As explained in the City Defendants' briefing, the plaintiff's alternative theory boils down to the City Defendants failing to intervene to arrest Rittenhouse to prevent the shootings which "increased the danger faced by Huber" (Dkt. 27, ¶¶64, 77). However, this theory not only fails for the same missing causal link but that there is no constitutional duty for the City Defendants to prevent one private individual from harming another private individual as alleged in the Amended Complaint.

In the end, the substantive allegations in the Amended Complaint refer only to groups of law enforcement or municipal Defendants and do not make a specific allegation as to the City of Kenosha, City of West Allis, Village of Menomonee Falls, Menomonee Falls Police Department, and West Allis Police Department. Instead, plaintiff has "alleged that a group of police officers and law enforcement agencies acted as one unit for all intents and purposes, operating under one tactical command." (Dkt. 47, at 9.) Based on plaintiff's

3

admitted group pleading, and absent allegations against individual defendants (for which the Amended Complaint is largely devoid), the City Defendants adopt by reference the arguments made by County Defendants. (Dkt. No. 40, 51). For the intended ease of the Court's reference, the City Defendants attach to this reply brief a numerical chart of the respective causes of action and the respective arguments made by Municipal Defendants.

*ARGUMENT*

## I. COUNT I: CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS, 42 U.S.C. § 1983: PLAINTIFF HAS FAILED TO ALLEGE SPECIFIC, PLAUSIBLE FACTS SUFFICIENT TO RAISE THE RIGHT TO RELIEF ABOVE A SPECULATIVE LEVEL TO SURVIVE A MOTION TO DISMISS.

The Supreme Court has made clear that plaintiffs must plead "'enough facts to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Seventh Circuit has characterized the level of specificity required in federal pleading as follows:

> So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but *some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim*. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). The Seventh Circuit has reinforced *Brooks* in recent decisions that indicate  more demanding pleading requirements for plaintiffs in federal court. See e.g., *Ray v. City of Chicago*, 629 F.3d 660 (7th Cir. 2011) (noting that the plaintiff's burden is to provide the defendants with "fair

4

notice of the claim and its *basis*.") (emphasis added); see also *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (recognizing the "'facts' [that] are actually legal conclusions or elements of the cause of action, may be disregarded on a motion to dismiss.") Essentially, this means that a complaint must establish a strong connection between its claims and actual facts, because pled facts are "the grounds upon which [the claim] rests." *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007).

Consequently, the pleading standard in the Seventh Circuit demands that plaintiffs ground their allegations in actual, plausible facts. In the wake of *Twombly* and *Iqbal*, the Seventh Circuit instructs courts to disregard all legal conclusions, including legal conclusions masquerading as "facts." *McCauley*, 671 F.3d at 617. It is also now apparent that, in the Seventh Circuit, "abstract recitations of the elements of a cause of action or conclusory legal statements" fall far short of the plaintiff's burden and will not survive a Rule 12 motion. *Brooks*, 578 F.3d at 581. In addition, the Seventh Circuit now instructs district courts to ignore facts that are "sketchy or implausible." *Id*.

Thus, to survive a motion to dismiss, plaintiff must ground his claims in specific, plausible facts, and they cannot merely parrot the elements of a cause of action or base their claims on conclusory legal statements with sketchy or implausible facts.

### A. *Plaintiff's Allegations of Coordination Are Insufficient To Show That the City Defendants Agreed To Conspire.*

The Court should dismiss Plaintiff's conspiracy claim because Plaintiff has not alleged sufficient facts regarding a § 1983 conspiracy. A conspiracy claim under §1983 requires the plaintiff to "demonstrate that: (1) a state official and private individual(s)

reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1016 (7th Cir. 2000); *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (the private person must have "agreed with a state officer to deprive [another] of constitutional rights"). To prevail, plaintiff must allege facts or circumstances upon which either an express or implied agreement between Defendants could be inferred "above the speculative level." *Twombly*, 550 U.S. at 555.

Here, Plaintiff makes bald allegations that "the Law Enforcement Defendants, Defendant Rittenhouse, and other third-party armed individuals reached an agreement to deprive Anthony of his constitutional rights … , committing overt acts and participating jointly in activity that caused harm to Anthony." (Dkt. No. 47 at 35.) Similarly, Plaintiff generically and in conclusory fashion attempts to link Defendants together by a conspiracy, with literally no factual support. See, e.g., (Dkt. 27, ¶41, 46, 82.) But as the *Cooney* court explained, "Even before [the Supreme Court decisions in *Twombly* and *Iqbal*], a bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim." *Cooney*, 583 F.3d 971 (citing *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir.2006); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991)). Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden; a complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds' with respect to violating the plaintiff's constitutional rights." *Mirbeau of Geneva Lake, LLC v. City of Lake*

*Geneva*, 746 F. Supp. 2d 1000, 1008 (E.D. Wisc. 2010) (quoting *Evers v. Reak*, 21 F. App'x 447, 450 (7th Cir. 2001)). Furthermore, before "defendants become entangled in discovery proceedings" in a case alleging a "vast, encompassing conspiracy ... plaintiff must meet a high standard of plausibility." *Id.* Plaintiff's complaint fails to meet that standard here. Therefore, his claim alleging conspiracies to violate § 1983 against all Defendants must be dismissed.

Plaintiff cites *Walker v. Thompson* in support of his assertion that his complaint is legally sufficient because he has pled "at a bare minimum ... the parties to the conspiracy, its general purpose and the approximate date of the conspiracy." 288 F.3d 1005, 1007–08 (7th Cir.2002). But *Walke*r was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, which impose a plausibility standard on all pleadings. "Further, allegations of conspiracy must be plausible; naked "allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1993) ("A complaint must contain more than mere conclusory allegations of conspiracy; a factual basis for such allegations must be provided."). In conspiracy cases like this one, the plausibility rule sets "a high standard." *Cooney*, 583 F.3d at 971.

Plaintiff fails to address City Defendants' challenge to the sufficiency of his conclusory assertions that unidentified "Defendants" simply "reached an agreement" with "Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed

individuals." (Dkt.42, at 10) (citing *Wakley v. City of Indianapolis*, 776 F. App'x 376, 378, 2019 WL 4199800 (7th Cir. 2019)( affirmed dismissal because "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements do not suffice.") Plaintiff's response brief does not address this argument and/or reliance upon *Wakley*. Failure to respond to an argument waives it. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); see also *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (Forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). Plaintiff's failure to respond must be deemed as an abandonment of the litigation, warranting dismissal of this claim.

## B. Plaintiff's Argument That The Amended Complaint Satisfied Rule 8(a)'s Notice Pleading Requirement Fails.

In his response brief, Plaintiff argues that the paragraphs of allegations in the Amended Complaint are sufficient to put the City Defendants on notice of the claims against them at the pleading stage. A review of plaintiff's Amended Complaint reveals that numerous claims have been asserted against the City Defendants, without any real indication as to how —or in what fashion —many of the defendants are conceivably liable. Though plaintiff lumps everything together and claims that they cannot possibly know anything else without conducting discovery, this runs afoul of the operative pleading standard in the Seventh Circuit regarding complaints. A complaint with sweeping generalizations and conclusions of law is insufficient.

The "primary purpose" of Rule 8(a) is to "give defendants fair notice of the claims against them and the grounds supporting the claims" so that defendants can respond.

*Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 946 (7th Cir. 2013) (citation omitted).

"Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such particulars." *Atkins v. Hasan*, No. 15 CV 203, 2015 U.S. Dist. LEXIS 80176, at *7 (N.D. Ill. June 22, 2015) (Shah, J.) (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

In this case, Plaintiff does not plead any specific allegations against the City Defendants. Rather, Plaintiff merely sets imprecise and bare allegations regarding the underlying incident and then pleads his multiple claims generally against all Defendants. Specifically, Plaintiff alleges that "a group of police officers and law enforcement agencies acted as one unit … carrying out a common plan of control and law enforcement in Kenosha" (Dkt. 47 at 9.) By failing to separate the specific conduct allegedly taken by each Defendant, Plaintiff fails to show the requisite specificity required by Federal Rules of Civil Procedure 8 and 12. The insufficient group pleading forces City Defendant to speculate as to which claims, if any, they must defend. Moreover, it fails to put City Defendants on notice as to which claims are being brought against them.

Plaintiff relies on *Brooks* to support his use of "group pleading." (Dkt. 47 at 9.) However, his reliance on *Brooks* is misplaced.[2] In *Brooks*, the complaint, sounding in 42

---

[2] The other cases cited by Plaintiff are~~is~~ similarly distinguishable. The Court affirmed the use of "group pleading" in cases where plaintiffs adequately connects specific defendants to specific acts. (Dkt. 47 at 11.) For example, *Pursley v. City of Rockford*, 2019 WL 4918139, at *4 (N.D. Ill. Oct. 4, 2019 and *Sanders v. City of Chicago Heights*, 2014 WL 5801181, at *3 (N.D. Ill. Nov. 7, 2014). In Pursley, the court held the complaint's allegations directed towards "defendants officers" collectively were sufficient because he alleged acts of specific individual defendants in numerous

U.S.C. §1983, alleged that "one or more of the Defendants" engaged in certain illegal acts. *Ross*, 578 F. 3d at 580. The Seventh Circuit found this a pleading defect because the complaint at issue did not connect each of multiple defendants to a particular alleged illegal act. Because an individual cannot be held liable under Section 1983 unless he individually participated in a constitutional deprivation, the Court agreed that this vague phrasing did not adequately connect specific defendants to specific acts. *Id.*

In addition to failing to provide defendants with sufficient notice, Plaintiff's group pleading also fails to satisfy the personal involvement requisite for Section 1983 claims. "Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis in original); *Brooks v. Ross*, No. 08 CV 2417, 2008 U.S. Dist. LEXIS 96117, at *22 (Nov. 25, 2008) (quoting *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (citation omitted) (granting motion to dismiss as plaintiff failed to plead the required element of personal responsibility).

When bringing his § 1983 claims, Plaintiff must plead allegations establishing that each Defendant was personally involved in the alleged constitutional violation in order to impose Section 1983 liability. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017).

---

paragraphs of his complaint. *Pursley,* 2019 WL 4918139 at *4-5. Similarly, in *Sanders*, the court held that a certain number of collective references to "Defendants" was permissible where the complaint also attributed specific actions to specific defendants. Sanders, 2014 WL 5801181 at *4. None of these cases allow a plaintiff to lump all defendants together without any allegations attributing specific actions to any individual defendants, as Plaintiffs seek to do here.

See also *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984) ("[i]ndividual liability for damages under [§ 1983] is predicated upon personal responsibility."). The personal involvement requirement is satisfied if an officer "acts or fails to act with deliberate or reckless disregard of a plaintiff's constitutional rights, or if the act causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994).

Here, the lack of any alleged personal involvement, coupled with the deficiencies in Plaintiff's group pleading, supports dismissing City Defendants from this case.

### C. Plaintiff Fails To Rebut City Defendants Arguments Regarding Proximate Causation.

In his responsive brief, plaintiff provides cursory arguments to the City Defendants' lack of causation arguments. In support of his contention that the proximate causation question is reserved for the trier of fact, Plaintiff cites to a number of cases. However, this argument fails to respond to the City Defendants' argument regarding the lack of the causal link between any defendant's action(s) and plaintiff's injury. See *Berman v. Young*, 291 F.3d 976, 982 (7th Cir.2002) (noting that plaintiff must "produce evidence that she sustained actual injury and that her injuries had a causal connection with the alleged [Section 1983] due process violation").

Additionally, the issue of proximate cause can determined by a court as a matter of law when the facts are undisputed and a single inference can be drawn from the facts. *Id.* See e.g., *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010) (finding defendants' actions were not the proximate cause of plaintiff's death); *Berman v. Young*, 291 F.3d 976, 982

11

(7th Cir. 2002), as amended on denial of reh'g (June 26, 2002) (finding that plaintiff failed to establish a causal connection between the alleged inadequate investigation by the defendants and the damages she is asserting in her § 1983 claim).

As argued in City Defendants' initial brief (Dkt. No. 42, §I.B.), nowhere in the Amended Complaint does it explain how the City Defendants caused Huber to remain in Kenosha – despite repeated warning and orders to leave – that fateful evening. *Id*. Nowhere in the Amended Complaint does it explain how the City Defendants caused Huber to decide to attempt to physically disarm Rittenhouse from carrying an AR-15. *Id*. In fact, nowhere in the Amended Complaint does it even explain how the City Defendants caused Rittenhouse to shoot Joseph Rosenbaum (instead, the reasons for this shooting are entirely unknown and unalleged), the even more attenuated precursor to Huber's own fateful decision-making. *Id*. Again, these deficiencies, despite being flagged in the original motion to dismiss, remain unchanged and unaddressed by the Amended Complaint. *Id*.

## II. COUNT II: PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM UNDER 42 U.S.C. § 1985(2)

The Amended Complaint and response brief purports to state a claim under 42 U.S.C. § 1985(2). The essential elements necessary to state a violation of § 1985(2) are: (1) a conspiracy (2) motivated by racial or other class-based invidious discriminatory animus (3) for the purpose of depriving an individual of equal protection of the laws or equal privileges and immunities under the law, (4) an overt act in furtherance of a conspiracy and that (5) plaintiff was thereby injured or deprived of a right. *Griffin v. Breckenridge*, 403 U.S. 88, 102 91 S. Ct. 1790, 1799, 29 L. Ed. 2d 338 (1971). This claim

12

fails because Huber is not a member of a protected class and there is no allegation of interference with due course of justice.[3] For the same reasons set forth below regarding Plaintiff's § 1985(3) claims, Plaintiff's equal protection claim under § 1985(2) should also be dismissed.

### III. COUNT III: PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM UNDER 42 U.S.C. § 1985(3)and § 1983.

#### A. Plaintiff Fails To Allege A Necessary Element Of A Purported Equal Protection Claim – Membership Of A Protected Class.

In the Amended Complaint plaintiff has failed to plead facts sufficient to state a claim under 42 U.S.C. § 1985(3) and § 1983. The essential elements necessary to state a violation of § 1985(3) are: (1) a conspiracy (2) motivated by racial or other class-based invidious discriminatory animus (3) for the purpose of depriving an individual of equal protection of the laws or equal privileges and immunities under the law, (4) an overt act in furtherance of a conspiracy and that (5) plaintiff was thereby injured or deprived of a right. *Griffin v. Breckenridge*, 403 U.S. 88, 102 91 S. Ct. 1790, 1799, 29 L. Ed. 2d 338 (1971).

"[A] successful § 1985(3) claim requires the plaintiff to establish 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

---

[3] Plaintiff's response fails to address the argument that § 1985(2) applies only to conspiracies to obstruct the course of justice in state courts or claim of unconstitutional interference with state officers, state courts, and state elections. (Dkt. 42, at 23.) (adopting and incorporating County Defendants' failure to state a claim due to no allegation of interference with due course of justice). Failure to respond to an argument waives it. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); see also *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (Forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). Plaintiff's failure to respond should be deemed as an abandonment of the litigation, warranting dismissal of this claim.

13

action.' " *Axt v. City of Fort Wayne, N*o. 1:06-CV-157-TS, 2006 WL 3093235, at *4 (N.D. Ind. Oct. 30, 2006). Failure to allege such animus "dooms a plaintiff's claim*." Payton v. Rush-Presbyterian-St. Luke's Med. Ctr*., 184 F.3d 623, 632 (7th Cir. 1999) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). The Seventh Circuit has clarified that "otherwise 'class-based invidiously discriminatory animus' includes 'conspiracies to discriminate against persons based on sex, religion, ethnicity...'" *Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000)* (quoting *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988)). The animus standard requires that the defendants proceeded on their course of conduct "because of, not merely in spite of, its adverse effects upon an identifiable group." Id. at 271–72, 113 S.Ct. 753 (internal quotation marks omitted).

Plaintiff made no effort to allege membership within any of the recognized classes that support a § 1985(3) claim. *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir.1992). Nor has he alleged that his protected class was the reason for City Defendants' conduct. Therefore, Plaintiff's § 1985 claims must be dismissed as a matter of law.[4]

---

[4] Plaintiff is well aware that such a deficiency is fatal to his claim. In fact, he cites *Traveler v. Ott*, which makes this requirement abundantly clear:

> In *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the Supreme Court held that "racial, or perhaps [some other] class-based invidiously discriminatory animus" must serve as the basis of the conspirator's actions. Here, Traveler makes no effort to suggest that he falls within any of the recognized classes that support a § 1985(3) claim, such as race, ethnic origin, sex, or religion, or that the Defendants were motivated by some race or class-based invidious discriminatory intent. This is a fatal omission in the face of a motion to dismiss. Moreover, even if Traveler had asserted that he was disabled, a fact he seemingly does not contend, it would make no difference, as disability-based animus does not constitute the type of animus required by § 1985(3).

14

**B. *Plaintiff Fail To Allege Any Facts Showing That Any City Defendant Joined the Conspiracy for the Purpose of Violating Plaintiff's Civil Rights*.**

Plaintiff's Amended Complaint is equally deficient as to the second requirement of a Section 1985(3) claim: that the City Defendants allegedly joined the conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." *Griffin*, 403 U.S. 88, 102. The Supreme Court has held that a Section 1985(3) claim must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id*. And the intent requirement is demanding; "the defendant [must] do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Bray v. Alexandria Women's* Health Clinic, 506 U.S. 263, 276 (1993).

Here, plaintiff alleges that this conspiracy targeted individuals of color and individuals allied with them in protest against police violence against African Americans and racial discrimination." (*See* Dkt. No. 27, ¶ 143.) Plaintiff pleads that City Defendants were motived by racial animus based on the following alleged conduct: "favoring a group of all-white armed individuals and acting against a group of racially diverse demonstrators, precisely because of the racial makeup of the latter group." (Dkt. No. 47 at 32.) Plaintiff states that Mr. Huber was one of these persons "allied with" the racial diverse demonstrators. *Id.* As proof of the City Defendants racial animus, Plaintiff asserts that law

---

*Traveler v. Ott,* No. 1:06-CV-304, 2006 WL 3450602, at *2 (N.D. Ind. Nov. 29, 2006) (internal citations omitted) (emphasis added); (see Dkt. No. 47, p. 31).

enforcement officers "permit[ed] the all-white armed individuals" to "taunt, threaten, and monitor the diverse group of protestors" and "permit[ed] the all-White armed individuals to patrol the streets like deputized police officers…" (Id.) Plaintiff further alleges that this conduct was "motivated by racial animus." (Id. at ¶¶ 142, 143.)

First, Plaintiff fails to allege a plausible race-based theory under § 1985(3). See *Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937 (holding that complaint did not "contain facts plausibly showing that [the defendants] purposefully adopted" a discriminatory policy even though the complaint alleged that the challenged policy had a disparate impact). Additionally, the allegation that the disparate treatment of the diverse protestors was related to the content of their protest – police violence against African Americans – does not also support a plausible race-based claim under § 1985(3). See e.g., *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (explaining that "discrimination based on the protesting of racial issues, no matter how compelling those issues are, is simply not the same as discrimination based on the race of the protestors." The Court further explained: "our experience and common sense," (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937), tell us that defendant's conduct was likely motivated by the nature and content of the plaintiff's message and that defendant's conduct, therefore, would have been the same had some or even most of the protestors had been white.) Here, that the allegation City Defendants targeted a diverse group of protestors, without more, does not make it plausible that they targeted the protestors because they are members of a protected class.

Similarly, Plaintiff has not alleged that class-based animus motivated the City Defendants' actions. The term "class" in § 1985(3) "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray,* 506 U.S. at 269*; see also Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (holding protestors of police brutality against African Americans did not constitute a sufficient class required for an African American cheerleader at public university to maintain civil rights conspiracy claim against the county sheriff on a class-based theory after the sheriff worked with university officials to stop the cheerleaders from kneeling during the national anthem). Because plaintiffs have failed to show any racial animus or discriminatory purpose on the part of the City Defendants, plaintiff's Section 1985(3) claim against them fails as a matter of law.

### C. Plaintiff's §1983 Equal Protection Claims Also Fail As A Matter of Law

Similarly, Plaintiff fails to state an equal protection claim under § 1983. As discussed in the City Defendants' initial brief, the "classic equal protection" claim fails as a matter of law. (Dkt. 40, at 23) (adopting and incorporating by reference the County Defendants' arguments – failure to state claim because Huber is not a member of a protected class). Plaintiff has not alleged that the County Defendants "withdrew all protection" as would be required for an allegation of unequal police protection. *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995); *Forseth v. Village of Sussex*, 199 F.3d 363, 371 (7th Cir. 2000); and *Levenstein v. Salafsky*, 164 F.3d 345, 352 (7th Cir. 1998)). (Dkt. 40 at 9).

17

Additionally, plaintiff's equal protection claim fails under the theory that of disparate treatment with no rational relationship to a legitimate state objective. In order to establish liability under § 1983, plaintiff must show that City Defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir.1996). Plaintiff does not allege that he is member of a protected class. *D.S. v. E. Porter County Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015); see also *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1187 (7th Cir. 1986); *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). Moreover, as discussed above, his stated class of diverse group protestors of police brutality against African Americans does not constitute a sufficient identifiable class under equal protection.

Lastly, Plaintiff's brief and the Amended Complaint failed to assert support for the Plaintiff's class of one claim under § 1985(3). This theory of equal protection, authorized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), requires some assertion that one of the City Defendants had "personal hostility toward him." For the same reasons set forth in City Defendants initial brief regarding Plaintiff's § 1983 class one claim, here, Plaintiff has plead no such allegation. See (Dkt. 27, ¶79-106.) (plaintiff cites these allegations as support for his class-one theory; however, these allegation fail to allege "personal hostility" toward Mr. Huber.)

18

## IV. COUNT IV: FIRST AMENDMENT RELATION, 42, U.S.C. § 1983 SHOULD BE DISMISSED FOR FAILURE TO ALLEGE SUFFICIENT CAUSE.

Plaintiff likewise fails to plausibly allege that the City Defendants retaliated against him for exercising his First Amendment rights. To state a claim that any City Defendants retaliated against him based on his First Amendment-protected activity, plaintiff must not only allege that the City Defendants had an "improper motive," but also show "evidence of causation." *Crawford-El v. Britton*, 523 U.S. 574 (1998)); see also *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.") (emphasis in original). To require anything less would run the risk of government regulators getting "hauled into federal court as civil-rights violators whenever a regulated party objects to the regulatory process to which he is subject." *Meadows v. Enyeart*, 627 Fed. Appx. 496, 507 (6th Cir. 2015).

Here, plaintiff does not present any facts showing the City Defendants' retaliatory animus supposedly harbored by each Defendant against Plaintiff, let alone that they acted on such beliefs. Instead, plaintiff nakedly asserts that Mr. Huber received discriminatory and retaliatory treatment based on his "opinions critical of police violence," Dkt. 27, ¶157, and points to 150 members of the protestors voicing criticism of racist and violent police conduct were arrested for violating KPD and KCSD's curfew order. (Id ,¶157.)

In sum, these allegations fall far short of even circumstantial basis that plaintiff's First Amendment-protected activity was the motivating factor in the City Defendants' actions. See *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018) (noting for

19

potential retaliatory arrest claim that plaintiff had failed to show that the specific arresting officer had any knowledge of plaintiff's prior speech or motivation to arrest him).

Here, the Amended Complaint does not allege that Mr. Rittenhouse had any knowledge of Mr. Huber's alleged First Amendment activities, shared the City Defendants' alleged retaliatory animus and/or shot Mr. Huber as a result of any allegedly retaliatory motive. Accordingly, plaintiff's claim must fail as a matter of law.

### V. COUNT V: PLAINTIFF'S ALLEGATIONS DO NOT ESTABLISH A VIOLATION OF DUE PROCESS

In order for the Due Process Clause to impose upon the state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual; the state's failure to protect that individual from such a danger must be the proximate cause of the injury to the individual; and the state's failure to protect the individual must shock the conscience. *Id.* (internal quotation marks omitted). The state-created danger exception is a narrow one. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). The court has cautioned that "to create or increase danger" "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." *Id.* (citation omitted) (internal quotation marks omitted). The court must decide whether "the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Com'rs of Vanderburgh County*, 548 F.3d 595, 600 (7th Cir. 2008). The cases in which the Seventh Circuit has either found or suggested that liability attaches under the state-created danger exception are "rare and often egregious." Doe, 782 F.3d at 917.

One of those rare and egregious cases is *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012), as amended on denial of reh'g and reh'g en banc (May 17, 2012). There, the police arrested a young, mentally unstable woman in an area where she was safe and released her from custody just before nightfall in a dangerous neighborhood. 678 F.3d 500, 509 (7th Cir. 2012). The court found the police not only created the extra risk by moving the woman to a known high crime area but did not nothing to mitigate the risk that she was mentally unstable and unable to protect herself. *Id*. at 510.

For comparison, the plaintiff's decedent, Christina Eilman, had been arrested at the airport by the police as a result of erratic behavior she had displayed while experiencing a manic bipolar episode. Id. at 503. About a day and a half after her arrest, plaintiff—still in the manic episode—was released on her own recognizance in a high-crime neighborhood ninety minutes before sunset. Id. at 504–05. Due to her impaired state, plaintiff was raped at knifepoint in a seventh-floor apartment approximately five hours after her release. Id. at 505–06. When she attempted to flee, plaintiff fell from the apartment window and suffered permanent brain damage. Id. at 506.

The Seventh Circuit found that the facts of *Paine* created a constitutional deprivation under Section 1983 because the police put the plaintiff into a more dangerous situation then where they found her. *Paine*, 678 F.3d 510. The court specifically noted that the police took away the plaintiff's cell phone, which prevented her from summoning help when she was dropped off in a dangerous area. *Id*. Given the impaired plaintiff, her inability to seek

help, and the dangerous area where the police put her, the court noted that the police might "as well have released her into the lions' den at the Brookfield Zoo." *Id.*

In the present case, there are no factual allegations to support a conclusion the City Defendants "affirmatively placed the plaintiff in a position of danger." Mr. Huber traveled to Kenosha under his own free will. There are no allegations that any of the defendants placed him there. There is no allegation that he was prevented from leaving. In fact the Amended Complaint alleges that police warned protesters to leave. Therefore, *Paine v. Cason* is inapplicable.

Moreover, the failure of the defendants to arrest or detain Rittenhouse and deter armed protestors from patrolling the street caused his injuries is not an affirmative act that "creates or increases" the danger to Plaintiff that is actionable under *DeShaney*. As fully outlined in City Defendants' initial brief, Plaintiff may not plead around *Deshaney* by characterizing the state actor's choice as an "affirmative act" not to do something. For example, in *Windle* the Seventh Circuit rejected a plaintiff's contention that state actors created a danger by "choosing to stand idle." *Windle v. City of Marion, Ind*., 321 F.3d 658, 662 (7th Cir. 2003) see also *Bright v. Westmoreland Cnty*., 443 F.3d 276, 284-85 (3d Cir. 2006) (holding that plaintiffs could not transform state inaction into action by pleading phrases like "decision not to arrest") Yet this is what Plaintiff here has done. The court should reject this argument.

Even if the Court were to find a constitutional law violation, the individual defendants are nevertheless entitled to qualified immunity. An official is entitled to

immunity if, when he acted, "he reasonably could have believed that his action did not violate a clearly established law." *Cham v. Wodnick*, 123 F.3d 1005, 1008 (7th Cir. 1997). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannola v. Farrow*, 476 F.3d 453, 357 (7th Cir. 2007).

In *White,* the Supreme Court found it "again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality;" instead, it "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. _____, No. 16-67, 2017 WL 69170, *4 (Jan. 9, 2017) (citations omitted). The lower court in *White* had recognized that "this case presents a unique set of facts and circumstances." *Id.* According to the Supreme Court, "[t]his alone should have been an important indication . . . that [the defendant's] conduct did not violate a 'clearly established' right." *Id.* The Court faulted the lower court for "fail[ing] to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.*

In this case, for the proposition that City Defendants violated a clearly established law, Plaintiff cites *Monfils v. Taylor*, 165 F.3d 511, 513-515, 522 (7th Cir. 1998), *Reed v. Gardner*, 986 F.2d 1122, 1123, 1127 (7th Cir. 1993), *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979) and *Ross v. United States*,910 F.2d 1422, 1424-25, 1431 (7th Cir. 1990). At best, these cases merely define the contours of the state-created danger doctrine and stand for the "broad general proposition" that an officer may not, through her affirmative acts, place a person in danger and act with deliberate indifference to that danger. Without more these cases did not place these Officers on notice that their actions were unlawful "in light of the

specific context of [this] case."[5] *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015).

## VII. COUNT VI: THE FAILURE OF PLAINTIFF'S § 1985 CLAM ALSO DOOMS HIS § 1986 CLAIM.

Plaintiff also fails to state a claim under § 1986. The statute provides a cause of action against those who have knowledge of a § 1985 conspiracy and who fail to prevent the harm caused by the conspiracy when they could have prevented the harm by the exercise of reasonable diligence. A claim under § 1986 is, on its face derivative of the existence of a § 1985 conspiracy. There can be no § 1986 claim without a violation of § 1985. *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985). For the reasons set forth above, Plaintiff's § 1985 claim should be dismissed.[6] As such, his § 1986 claim also fails.

---

[5] Plaintiff argues that a complaint is not generally dismissed on qualified immunity grounds. However, there is no hard-and-fast rule against resolving qualified immunity on the pleadings. *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019), holding modified by *Doe v. Samford Univ.*, 29 F.4th 675 (11th Cir. 2022). The existence of qualified immunity is not always dependent on factual development—it is sometimes clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law. Id. In that circumstance, the existence of qualified immunity is a "purely legal question" that the court can address on a motion to dismiss. *Id*. (citing Jacobs v. City of Chicago, 215 F.3d 758, 765 (7th Cir. 2000).

[6] Plaintiff argued that both defendants' briefs fail to address failure to intervene theory under section 1983. In some instances, a state actor's failure to provide protective services to citizens, or to intervene to prevent the deprivation of citizens' civil rights, may be a deprivation of federal rights within Section 1983. The foundation behind the failure to intervene theory of liability is that nonfeasance can be a form of personal involvement in another person's misconduct. Sanchez v. City of Chicago, 700 F.3d 919, 927 (7th Cir. 2012). Failure to intervene are brought under 42 USC § 1983. "Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) 'was committed by a person acting under color of state law' and (2) 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). This claim also fails. Plaintiff's Amended Complaint fails to put City Defendants on notice as to which claims are being brought against them. Rather, Plaintiff merely sets imprecise

24

## VII. COUNT VII: MUNICIPAL LIABILITY/MONELL POLICY CLAIM

Plaintiff contends his *Monell* claim can proceed because he plead multiple theories of municipal liability. Plaintiff is correct that the Seventh Circuit has recognized three paths by which a plaintiff may hold a municipality liable for a § 1983 violation:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'

Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). See also 1A Martin A. Schwartz, Section 1983 Litigation: Claims & Defenses, §7.06[A] (4th ed. 2018-1) (listing a fourth category, "deliberately indifferent training or supervision," which may conceptually be a custom-type claim).

The Supreme Court has made clear that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). The Seventh Circuit has refused to expand *Monell* liability, and has explained, for instance, that, even if better training of municipal employees might have produced a different

---

and bare allegations regarding the underlying incident and then pleads (which did not include a theory for failure to intervene under §1983) his multiple claims generally against all Defendants. See *Ray v. City of Chicago*, 629 F.3d at 662 (the plaintiff's burden is to provide the defendants with "fair notice of the claim and its basis") (emphasis added).

outcome, that still does not does not satisfy the legal standard for *Monell* liability. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 307 (7th Cir. 2010). Official capacity suits are treated as a suit against the municipal entity. *Kentucky Graham*, 473 U.S. 159, 165-66 (1986) (citing *Brandon v. Hold, 469* U.S. 464, 471-72 (1985)); *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 381-82 (7th Cir. 1988).

For *Monell* claims in the Seventh Circuit, "alleged 'facts' that are actually legal conclusions or elements of the cause of action . . . may be disregarded" on a Rule 12 motion. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681) (affirming the dismissal of a § 1983 claim that parroted the *Monell* standards without articulating sufficient facts). The Seventh Circuit has explained that once the conclusory statements and parroted language are disregarded, "the factual allegations . . . must allow us to draw the reasonable inference that the [municipality] established a policy or practice" of intentionally violating the plaintiff's § 1983 rights. *Id.* at 618.

Here, the allegations in Plaintiff's Amended Complaint fall well short of meeting the applicable pleading requirements for Plaintiff's municipal claims, and any such claims must be dismissed.

Plaintiff takes issue with the City Defendants' citation to the long established rule that a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) (citing *King ex rel. King v. E. St. Louis Sch*. Dist. 189, 496 F.3d 812, 817 (7th Cir. 2007); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)). Absent an

affirmative duty on the municipal defendant to act (and as explained above, the City Defendants have no affirmative constitutional duty to protect one private citizen from another private citizen), liability flows through the underlying constitutional violation(s). Because Plaintiff's constitutional rights were not violated (as explained herein), the *Monell* claim cannot succeed.

Relying on *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010) and *Glisson v. Indiana Department of Corrections*, 849 F.3d 372 (7th Cir. 2017) plaintiff asserts that that municipal liability exists, even if no individual municipal employee is responsible for violation of constitutional rights. This assertion is incorrect. The reliance on these two cases was recently rejected by the Seventh Circuit in *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) (holding that plaintiff was unable to establish the first element of a *Monell* claim, a constitutional violation, and the City was entitled to judgment as matter of law.) There, the Court expressly states that *Glisson* and *Thomas* did not remove the plaintiff's burden to prove an underlying constitutional violation. As such, this court should reject Plaintiff's misstatement of the law.

## VIII. COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED FOR FAILURE TO PROPERLY ALLEGE HARM TO HUBER, AND FAILURE TO PLEAD COMPLIANCE WITH WIS. STAT. § 893.80.[7]

As an initial matter, Plaintiff concedes that Intentional Infliction of Emotional Distress is an intentional tort for which a Wisconsin municipality cannot be held liable. (See Dkt. #43 at n.9. (citing Wis. Stat. § 893.80(4)). Therefore, the City of Kenosha, Racine County, Walworth County, Sauk County, Washington County, Waukesha County, Menomonee Falls Police Department, West Allis Police Department, Village of Menomonee Falls, and the City of West Allis are entitled to dismissal with respect to plaintiff's Intentional Infliction of Emotional Distress.

Plaintiff also fails to state a claim against the remaining individual City Defendants. Plaintiff's failure to properly allege harm to Anthony Huber is fatal to his claim. Contrary to Plaintiff's assertion, the City Defendants' argument is neither "incomprehensible" nor "baseless." (Dkt. 47 at 42.) In responding to this objection, Plaintiff points to nine paragraphs of his Amended Complaint – which together contain no details of who suffered

---

[7] City Defendants argued for the dismissal of each of Plaintiff's state law claims based on public policy considerations. (Dkt. 42, at 27.) In his response brief, plaintiff alleged that such a policy consideration is inappropriate on a motion to discuss. However, a court may review public policy and preclude liability before trial in cases where the facts are simple to ascertain and the public policy questions have been fully presented. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 26, 235 Wis.2d 781, 611 N.W.2d 906. (court determined public policy precluded liability for failing to warn a victim or the victim's parents about a third-party's propensity for sexual assault and granted motion to dismiss); *Sawyer v. Midelfort*, 227 Wis.2d 124, 141, 595 N.W.2d 423 (1999)(reviewed factors at summary judgment stage); Bowen, 183 Wis.2d at 655, 517 N.W.2d 432; *Schuster v. Altenberg*, 144 Wis.2d 223, 241, 424 N.W.2d 159 (1988); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 542, 247 N.W.2d 132 (1976).

Case 2:21-cv-00969-LA   Filed 06/15/22   Page 28 of 39   Document 52

emotional distress injuries beyond a bare assertion that "Plaintiffs' injuries were caused by the actions and decisions" of the Defendants. (Dkt. 47 at 42.)

Plaintiff also concedes that the state law claims against Menomonee Falls Police Department, West Allis Police Department, Village of Menomonee Falls and the City of West Allis are untimely. (Dkt. No. 47, p. 46). Although there are no allegations regarding the plaintiff following the notice procedures, the plaintiff's response brief instead attached affidavits of service for the City of Kenosha and Chief Miskinis. Whatever materials the Court considers outside the pleadings, the plaintiff submitted no affidavit regarding Chief Larsen and any state law claims against him should be dismissed as untimely. Wis. Stat. § 893.80(1d)(a).

In any event, Plaintiff's claim must be dismissed even if his affidavits of service and attached materials are considered. Plaintiff failed to plead sufficient facts to support his conclusory assertion that the individual officers acted with "malice, willfulness and reckless indifference"[8] and are therefore not immune from liability. Plaintiff's allegation is an abstract recitations of the (wrong) elements of a legal theory or conclusory legal statements. The Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." Mere labels, conclusions, or formulaic recitations of the elements of a cause of action without factual support are insufficient. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Bissessur,* 581 F.3d at 603.

IX. **COUNT IX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE SUFFICIENT CAUSE, FAILURE TO COMPLY WITH PUBLIC POLICY, DISCRETIONARY IMMUNITY PURSUANT TO WIS. STAT. § 893.80, FAILURE TO COMPLY WITH NOTICE PROCEDURES PURSUANT TO WIS. STAT. § 893.80(1D)(A), AND/OR HUBER WAS MORE NEGLIGENT THAN CITY DEFENDANTS AS A MATTER OF LAW.**

As an initial matter, plaintiff failed to respond to City Defendants' reliance upon *Bowen v. Lumbermens Mut. Cas. Co*, 183 Wis. 2d 627, 633, 517 N.W.2d 432, 434-35 (1994) (finding bystander liability does not apply unless the plaintiff – here John Huber and/or Karen Bloom – were with the alleged victim at the scene – an allegation not made in the Amended Complaint). Thus, any such claim should be dismissed.

Plaintiff argues that his claim should proceed to discovery because it falls squarely within two exception of discretionary: the "malicious, willful and intentional" and "danger exception." (Dkt. 47 at 43). Both exception are inapplicable in this case.

Wisconsin's discretionary immunity statute, Wis. Stat. § 893.80(4), bars suit against government subdivisions and public employees "for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." Police decisions surrounding the arrest and detention of a suspect, are discretionary acts for which immunity is afforded under Wis. Stat. § 893.80(4). *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 427-28, 474 N.W.2d 799, 802 (Ct. App. 1991); *Wilson v. City of Milwaukee*, 138 F. Supp. 2d 1126, 1131 (E.D. Wis. 2001); *Burnley v. Village of Brown Deer*, No. 19-cv-364-jps, 2020 WL 620014, at *8 (E.D. Wis. Feb. 10, 2020). Courts have concluded that the exception does not apply to negligence claims, even if the plaintiff has alleged malicious and intentional

conduct. *Wilson v. City of Milwaukee*, 138 F. Supp. 2d 1126, 1133 (E.D. Wis. 2001); see also *Sheridan*, 164 Wis. 2d at 428 (applying immunity to bar negligence claim allegedly based on malicious and intentional conduct, without discussing exception for malicious, willful and intentional acts).

Plaintiff relies on *Geboy v. Oneida Cnty.*, No. 19-CV-574-BBC, 2020 WL 7398660, at *10 (W.D. Wis. Dec. 17, 2020) to support his argument that the exception for "malicious, willful and intentional" conduct permits his negligence claims to go forward. While the *Geboy* Court may have adopted this application of the exception, it also acknowledged there is some question or doubt in the case law whether the exception applies to negligence claims, for which intent is not an element. *Id.* Whatever weight the Court gives to *Geboy* must be considered in light of the attenuated nature of plaintiff's claims and the fact that plaintiff's arguments regarding the exception (by merely alleging malicious, willful and intentional conduct) swallow the rule when applied to the circumstances of this case.

Moreover, the "known and compelling danger" exception does not apply to the facts of this case. Plaintiff cites *Heuser ex rel. Jacobs* v. Cmty. Ins. Corp., 2009 WI App 151, ¶ 23, 321 Wis. 2d 729, 741, in support of his argument that in this case there existed a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." In order for this exception to apply, the circumstances must be "sufficiently dangerous so as to give rise to a ministerial duty—not merely a generalized 'duty to act' in some unspecified way, but a duty to perform the particular act upon which liability is

premised...." *C.L. v. Olson*, 143 Wis.2d 701, 717, 422 N.W.2d 614 (1988)). In other words, under this exception, there is a ministerial duty to do a particular act in a particular time and manner that arises "not by operation of law, but by virtue of particularly hazardous circumstances" that are both known and "sufficiently dangerous to require an explicit, non-discretionary municipal response." Id., ¶ 39, 422 N.W.2d 614.

The plaintiff also relies on *Baumgardt v. Wausau* Sch. Dist. Bd. of Educ., 475 F. Supp. 2d 800, 811 (W.D. Wis. 2007). This case is distinguishable. In *Baumgardt* case, the court found the duty at issue in that case—to report abuse of children to authorities—more closely resembles the duties that Wisconsin courts in the past have found to be ministerial. One source of this duty is Wis. Stat. § 48.981. The statute created a duty to take a particularized, nondiscretionary action. Plaintiff's brief fails to identify a similar statutorily imposed duty in this case.

Notably, law enforcement officers did give warning to go home. Similarly, the plaintiff cannot ask the Court to impose a duty to act in a particular way under the circumstances presented by the protests back in August 2020, second-guessing particularly ill-suited to the extraordinary circumstances of this case. In short, the narrow exception for known danger does not apply.

Lastly, this claim should be dismissed because Mr. Huber was more negligent than the City as a matter of law. See (Dkt. 42, at 31.) Despite plaintiff's assertions, a case may be dismissed on comparative negligence grounds before trial. See, e.g., *Westlund v. Werner*

*Co.*, 971 F.Supp. 1277, 1281 (W.D.Wis.1997) (citing *Huss v. Yale Materials Handling Corp.*, 196 Wis.2d 515, 535, 538 N.W.2d 630 (Ct.App.1995)).

Plaintiff does not even attempt to distinguish the City Defendants' arguments from their initial brief. (Dkt. No. 42, § IX). In the context of Huber's voluntary and fateful decision-making (and also the attenuated allegations against the City Defendants discussed herein), Huber was more negligent than City Defendants as a matter of law and any allegations reliant upon City Defendants' negligence should be dismissed as argued in the City's initial brief. (Dkt. No. 42 at § IX).

**X.   COUNT X: NEGLIGENCE SHOULD BE DISMISSED FOR FAILURE TO ALLEGE SUFFICIENT CAUSE, FAILURE TO COMPLY WITH PUBLIC POLICY, DISCRETIONARY IMMUNITY PURSUANT TO WIS. STAT. § 893.80, FAILURE TO COMPLY WITH NOTICE PROCEDURES PURSUANT TO WIS. STAT. § 893.80(1D)(A), AND/OR HUBER WAS MORE NEGLIGENT THAN CITY DEFENDANTS AS A MATTER OF LAW.**

The City Defendants incorporate by reference the arguments regarding failing to comply with public policy, discretionary immunity, failure to comply with notice procedures, and Huber was more negligent made in this brief in § IX.

**XI. COUNT XI: NEGLIGENT HIRING, SUPERVISION AND TRAINING SHOULD BE DISMISSED FOR FAILURE TO ALLEGE SUFFICIENT CAUSE, FAILURE TO COMPLY WITH PUBLIC POLICY, DISCRETIONARY IMMUNITY PURSUANT TO WIS. STAT. § 893.80, FAILURE TO COMPLY WITH NOTICE PROCEDURES PURSUANT TO WIS. STAT. § 893.80(1D)(A), AND/OR HUBER WAS MORE NEGLIGENT THAN CITY DEFENDANTS AS A MATTER OF LAW.**

The City Defendants incorporate by reference the arguments regarding failing to comply with public policy, discretionary immunity, failure to comply with notice procedures, and Huber was more negligent made in this brief in § IX.

**XII. COUNT XII: SURVIVAL**

The City Defendants incorporate by reference the arguments regarding failure to allege a cause, failure to comply with public policy, failure to allege harm to Huber,  failure to comply with notice procedures in regards to intentional torts alleged against the City and notice procedures made in this brief in § XIII.

**XIII. COUNT XIII: WRONGFUL DEATH**

The City Defendants incorporate by reference the arguments regarding failure to allege a cause, failure to comply with public policy, failure to allege harm to Huber, failure to comply with notice procedures in regards to intentional torts alleged against the City and notice procedures made in this brief in § XIII.

**XIV. COUNT XIV: RESPONDEAT SUPERIOR**

Plaintiff concedes by his silence that governmental entities are immune from liability for the discretionary acts of their officers. (Dkt. 40, at 47.)

34

## XV.  COUNT XV: PLAINTIFF'S INDEMNIFICATION CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO CAUSE OF ACTION PURSUANT TO WIS. STAT. § 895.46.

Plaintiff also concedes by his silence that his purported Indemnification claim should be dismissed for failure to allege a sufficient cause. *See (*Dkt. 40, at 47 (citing Wis. Stat. § Wis. Stat. § 895.46.))

## XVI.  PLAINTIFF FAILED TO STATE A CLAIM AGAINST CHIEF ERIC LARSEN AND CHIEF MISKINIS.

In their initial briefs, the City Defendants explained why the Court should grant its motion to dismiss as to Chief Larsen and Chief Miskini. *See* (Dkt. 42, at 40).  Plaintiff's failure to respond warrants dismissal of Chief Larsen.

## XVII. PLAINTIFF'S REQUEST TO RE-PLEAD THE COMPLAINT MUST BE DENIED.

In the final sentences of Plaintiff's response brief, he requests that he be allowed an opportunity to amend should the Court find issue with his complaint.  The City Defendants oppose this request. In short, lacking even the most basic factual support and legal arguments as he does, even if re-pled, Plaintiff's claims could not survive another motion to dismiss for failure to state a claim.  Notably, the City Defendants submitted briefing to dismiss the original complaint, yet many fatal deficiencies persisted in the Amended Complaint as explained herein.  A district court does not abuse its discretion in denying leave to amend a complaint if granting the amendment would be futile.  *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994).  Granting leave to amend a pleading is futile if, for example, the plaintiff alleges the same facts using different language; the plaintiff reasserts claims previously determined; or if the plaintiff would not be able to survive a

35

motion to dismiss based on the facts in the amended complaint. *Id.* (citing *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983)). Plaintiff's request to amend his complaint must be denied.

## CONCLUSION

For the reasons stated herein, the City Defendants respectfully request that the Court enter an Order dismissing Plaintiff's claims, with prejudice, against them in their entirety.

Dated: June 15, 2022.

STAFFORD ROSENBAUM LLP

By *Electronically signed by Clementine Uwabera*
Kyle W. Engelke
State Bar Number 1088993
Ted Waskowski
State Bar Number 1003254
Clementine Uwabera
State Bar Number 1114847
Attorneys for City Defendants

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email: twaskowski@staffordlaw.com
       kengelke@staffordlaw.com
       cuwabera@staffordlaw.com
608.256.0226

36

**CROSS REFERENCE BY COUNT OF COMPLAINT FOR ARGUMENTS
ADOPTED BY CITE DEFENDANTS
FEDERAL / CONSTITUTIONAL CLAIMS: Huber, 21-CV-969**

| Plaintiff's Cause of Action | Count No. | Section(s) of County's Motion to Dismiss Amended Complaint (Dkt. 40) |
|---|---|---|
| Conspiracy to Deprive Constitutional Rights, 42 U.S.C. §1983 | I | § IV, p. 17-26 (cause general)<br>§ IV.C, p. 25-26 (derivative)<br>§ VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |
| Conspiracy to Obstruct Justice Based on Invidious Discrimination, 42 U.S.C. §1985(3) | II | § II.A., p. 7-9 (class)<br>§ IV, p. 17-26 (cause general)<br>§ VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |
| Equal Protection, 42 U.S.C. § 1983, 42 U.S.C. §1985(2) | III | § II.B., p. 9-11 (class)<br>-   sub-argument:<br>-   § II.B, p. 9-12 (no class-of-one)<br>-   § II.C, p. 12-13(no allegation of interference with due course of justice)<br>§ IV, p. 17-26 (cause general)<br>§ VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |
| First Amendment Retaliation, 42 U.S.C. §1983 | IV | § III, p. 13-17 (cause – animus)<br>§ IV, p. 17-26 (cause general)<br>§ VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |
| Deprivation of Due Process, 42 U.S.C. §1983 | V | § IV, p. 17-26 (cause general)<br>-   sub-arguments:<br>-   § IV.A, p. 19-23 (state-created danger inapplicable)<br>-   § IV.B, p. 23-25 (state-created danger elements not met)<br>§ VI, p. 26-34 (qualified immunity)<br>§ VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |
| Failure to Intervene, 42 U.S.C. §1986 | VI | § II.C., p. 12-13 (class/derivative)<br>§ IV, p. 17-26 (cause general) |

| | | § VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |
|---|---|---|
| Municipal Liability/Monell Policy Claim, 42 U.S.C. §1983 | VII | § II, p. 7-12 (class)<br>§ IV, p. 17-26 (cause general)<br>§ V, p. 26 (no underlying violation)<br>§ VII, p. 35-37 (Rule 8(a))<br>City Brief, § I, p. 6-23 (conspiracy/cause) |

## STATE LAW CLAIMS: Huber, 21-CV-969

| Plaintiff's Cause of Action | Count No. | Section(s) of County's Motion to Dismiss Amended Complaint (Dkt. 40) |
|---|---|---|
| Intentional Infliction of Emotional Distress | VIII | § VIII. A. p. 38-41 (public policy)<br>§ VIII. B. p. 41 ("another")<br>§ VIII. D. p. 46 (893.80 – County only)<br>§ IX. p. 47-50 (893.80 – non-Kenosha County only)<br>City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX, p. 30-33 (contributory) |
| Negligent Infliction of Emotional Distress | IX | § VIII. A. p. 38-41 (public policy)<br>§ VIII. C. p. 41-45 (discretionary immunity)<br>§ VIII. E. p. 46-47 (discretionary immunity)<br>§ IX. p. 47-50 (893.80 – non-Kenosha County only)<br>City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX, p. 30-33 (contributory) |
| Negligence | X | § VIII. A. p. 38-41 (public policy)<br>§ VIII. C. p. 41-45 (discretionary immunity)<br>§ VIII. E. p. 46-47 (discretionary immunity)<br>§ IX. p. 47-50 (893.80 – non-Kenosha County only)<br>City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX , p. 30-33 (contributory) |
| Negligent Hiring, Supervision and Training | XI | § VIII. A. p. 38-41 (public policy)<br>§ VIII. C. p. 41-45 (discretionary immunity)<br>§ VIII. E. p. 46-47 (discretionary immunity)<br>§ IX. p. 47-50 (893.80 – non-Kenosha County only) |

| | | |
|---|---|---|
| | | City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX , p. 30-33 (contributory), |
| Survival | XII | § VIII. A. p. 38-41 (public policy) <br> § VIII. C. p. 41-45 (discretionary immunity) <br> § VIII. D. p. 46 (893.80 – County only) <br> § IX. 47-50 (893.80 – non-Kenosha County only) <br><br> City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX, p. 30-33 (contributory) |
| Wrongful Death | XIII | § VIII. A. p. 38-41 (public policy) <br> § VIII. C. p. 41-45 (discretionary immunity) <br> § VIII. D. p. 46 (893.80 – County only) <br> § IX. p. 47-50 (893.80 – non-Kenosha County only) <br><br> City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX p. 30-33 (contributory) |
| Respondeat Superior | XIV | § VIII. A. p. 38-41 (public policy) <br> § VIII. C. p. 41-45 (discretionary immunity) <br> § VIII. D. p. 46 (discretionary immunity) <br> § IX. p. 47-50 (893.80 – non-Kenosha County only) <br><br> City Brief, § I, p. 6-23, § VIII, p. 27-30 (893.80 - notice) and § IX p. 30-33 (contributory) |
| Indemnification | XV | § VIII, p. 47, n. 5 (no cause of action) <br><br> City Brief, § XV, p.38 |
| Eric Larsen Improper Defendant | ** | City Brief, § XVI |
| | | |