# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,

       Plaintiff,

v.

DAVID G. BETH, in his individual and
official capacity as Kenosha County
Sheriff, et al.,

       Defendants.

No. 2:21-cv-00969-LA

Hon. Lynn Adelman
United States District Judge

---

## MOTION TO QUASH SERVICE OR
## DISMISS FOR INSUFFICIENT SERVICE OF
## PROCESS AND LACK OF PERSONAL JURISDICTION
## AND TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
## RELIEF MAY BE GRANTED WITH INCORPORATED MEMORANDUM OF LAW

Defendant Kyle Rittenhouse, pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, moves for an order quashing service or dismissing the First Amended Complaint ("FAC") [Dkt. 27] for insufficient service of process and, consequently, lack of personal jurisdiction. Additionally, and alternatively, Rittenhouse, pursuant to Rule 12(b)(6), moves for an order dismissing the FAC, in its entirety, for failure to state a cause of action. In support, Rittenhouse states:[1]

---

[1] This Motion is in part supported by the Declaration of Faith Rittenhouse, a copy of which is attached as **Exhibit 1**, and the Declaration of Kyle Rittenhouse, a copy of which is attached as **Exhibit 2**. Both Declarations are incorporated by reference.

## I. INSUFFICIENT SERVICE AND LACK OF PERSONAL JURISDICTION

## SUMMARY OF THE ARGUMENT

Service should be quashed or the First Amended Complaint ("FAC") dismissed for insufficient service of process and, consequently, lack of personal jurisdiction. Judging by the Proof of Service, it appears Plaintiff attempted substituted service pursuant to Rule 4(e)(2)(B), which required Plaintiff to leave a copy of the Summons and the FAC at Rittenhouse's "dwelling or usual place of abode." As shown in the Declarations of Rittenhouse and his sister Faith, the attempted service address was not Rittenhouse's dwelling or usual place of abode, therefore service was defective. It is fundamental that in the absence of valid service the Court may not exercise personal jurisdiction over Rittenhouse.

## PROCEDURE AND JURISDICTIONAL FACTS

1.      Plaintiff filed this lawsuit on August 17, 2021. [Dkt. 1].

2.      On January 7, 2022, Plaintiff sought leave of Court to file a First Amended Complaint which, among other things, added Rittenhouse as a Defendant. [Dkt. 25].

3.      On February 2, 2022, Plaintiff filed the First Amended Complaint. [Dkt. 27].

4.      On April 28, 2022, Plaintiff moved for an extension of time, through June 1, 2022, to serve an executed summons on Rittenhouse. [Dkt. 45]. That motion was granted by a text only order entered May 3, 2022.

5.      On June 1, 2022, Plaintiff again moved for an extension of time to serve Rittenhouse, this time through July 1, 2022. [Dkt. 48]. This motion, too, was granted via a text only order entered June 6, 2022.

6.      On June 30, 2022, a process server for Plaintiff filed a Proof of Service ("POS"), indicating that earlier that day process was left with Rittenhouse's sister Faith. [Dkt. 53].

7.     At around 11:00 a.m. on June 30, 2022, Rittenhouse's sister Faith answered a knock at the door. F. Rittenhouse Dec., ¶ 2.

8.     When she did, a man asked her if she was "Wendy." Faith replied, "no, I'm her daughter." The man, who is understood to have been a process server working for Plaintiff, handed her a stapled document, said "give this to your brother," and walked away. *Id.*, ¶¶ 3-4.

9.     Faith did not tell the process server that she lived with Rittenhouse or that he lived with her at the attempted service address. *Id.*, ¶ 6.

10.     The process server did not ask Faith whether Rittenhouse lived with her at the attempted service address. Had he, he would have learned that Rittenhouse did not live there. *Id.*, ¶ 7.

11.     The process server did not inform Faith of the contents of the stapled document he handed her. *Id.*, ¶ 8.

12.     Faith does not live with Rittenhouse, nor does he live at the address where service was attempted. *Id.*, ¶ 9.

13.     The address where service was attempted is not Rittenhouse's dwelling or usual place of abode. K. Rittenhouse Dec., ¶ 2; F. Rittenhouse Dec., ¶ 2.

14.     The attempted service is Rittenhouse's mother's home, where she lives with her two daughters. K. Rittenhouse Dec., ¶ 3; F. Rittenhouse Dec., ¶ 2.

15.     Rittenhouse maintains a residence in another State and did so at the time service was attempted. *Id.*, ¶ 4.

16.     Rittenhouse has occasionally visited the attempted service address over the past year. When he did, he slept on a couch. *Id.*, ¶ 5.

3

17.     Over the past year, Rittenhouse has spent roughly 20 to 30 nights, in total, at the attempted service address and has gone more than six months between visits. *Id*., ¶ 6.

18.     He has no room or bed at the attempted service address, and no room is available to him there. *Id*., ¶ 7.

19.     He keeps no clothes or belongings at the attempted service address. *Id*., ¶ 8.

20.     He does not pay rent or utilities at the attempted service address. *Id*., ¶ 9.

21.     He was not staying at the attempted service address when service was attempted. *Id*., ¶ 10.

## MEMORANDUM OF LAW

### I.     Standard on a Rule 12(b)(5) and 12(b)(2) Motion to Dismiss

"A Rule 12(b)(5) motion to dismiss tests the sufficiency of service of process." *Knox v. Pendergast*, No. 06-C-61, 2007 WL 1413681, at *2 (E.D. Wis. May 11, 2007). "Rule 12(b)(2) provides dismissal for lack of personal jurisdiction." *Robinson v. Turner*, 886 F.Supp. 1460, (S.D. Ind. 1995).

The Seventh Circuit "has long recognized that valid service of process is necessary to assert personal jurisdiction over a defendant." *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (citing *Rabiolo v. Weinstein*, 357 F.2d 167 (7th Cir. 1966)). "Moreover, it is well recognized that a defendant's actual notice of the litigation … is insufficient to satisfy Rule 4's requirements." *Id*. (internal quotations and citations omitted). Because valid service is necessary to confer personal jurisdiction over a defendant, Rule 12(b)(5) and Rule 12(b)(2) motions are interrelated and thus governed under the same standard of review. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 891 (N.D. Ill. 2011) (quoting *Mid-Continent Wood Prods., Inc.*, 936 F.2d at 301.); *McDaniel v. North American Indemn., N.V.*, No.

4

IP-02-C-0422-M/S, 2003 WL 21180638, at *3 (S.D. Ind. March 19, 2003) ("Motions to dismiss pursuant to Rule 12 (b)(2) and Rule 12(b)(5) are interrelated; thus the standards are the same for both motions.") (citing *Robinson*, 886 F. Supp. At 1462).

When service is challenged, "the plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citing *Homer v. Jones–Bey*, 415 F. 3d 748, 754 (7th Cir. 2005)). If that burden is not met, the Court must dismiss the lawsuit or specify a time within which the plaintiff must serve the defendant. *Id.* (internal citation omitted).

## II.     Service Requirements under Rule 4(e), Federal Rules of Civil Procedure

Under Rule 4(e) of the Federal Rules of Civil Procedure, a plaintiff may serve a defendant in one of two ways. First, by serving a defendant in accordance with the service laws of the state where the district court is located or where service is made:

> (e) **Serving an Individual Within a Judicial District of the United States**. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made….[2]

Fed. R. Civ. P. 4(e). Alternatively, a plaintiff can effect service by one of three methods specifically prescribed under Rule 4(e)(2):

> (A) delivering a copy of the summons and of the complaint to the individual personally;

---

[2] Service cannot have complied with Florida or Wisconsin law, because both required putative service in Florida to have been made only by a Florida resident. § 48.021(2)(b), Fla. Stat. (special process server "must be a permanent resident of the state"). *See also* § 810.10, Wis. Stat. ("the summons may be served by any adult resident of the state where service is made …").

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

***

Fed. R. Civ. P. 4(e)(2).

### III. Service Must be Quashed or the First Amended Complaint Dismissed for Insufficient Service of Process and, Consequently, Lack of Personal Jurisdiction

On its face the POS shows Plaintiff did not serve or attempt to serve Rittenhouse directly (under Rule 4(e)(2)(A)) or by service on an authorized agent or person appointed by law (under Rule 4(e)(2)(C)). This left Plaintiff with a final option: complying with Rule 4(e)(2)(B), which allows for substituted service by "leaving a copy of each [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Service did not comply with this requirement because, as shown in the attached Declarations, the attempted service address was not Rittenhouse's "dwelling or usual place of abode" as contemplated by Rule 4(e)(2)(B).

Failure to serve a defendant at his residence does not comply Rule 4's substitute, or "abode" service requirements. *DirectBuy Inc. v. Next Level Marketing, Inc*., No. 2:09 CV 84, 2010 WL 4386525, at *1 (N.D. Ind. Oct. 28, 2010) ("Because Gurmeet did not reside at the residence where DirectBuy served its summons, DirectBuy failed to comply with … Rule 4(e)(2)(B)"); *Llano Fin. Grp., LLC v. Lendzion*, No. 15 C 7091, 2016 WL 930660, at *3 (N.D. Ill. Mar. 11, 2016) (service at a defendant's mother's house is deficient if it is not defendant's usual place of abode); *James v. Russell F. Davis, Inc.*, 163 F. Supp. 253, 256–57 (N.D. Ind. 1958) ("that defendant never resided with his parents at [the address served] other than short leave periods seems conclusive that [the service address] has never been his 'dwelling house or usual place of abode'" as contemplated by Rule 4); *Indymac Bank, F.S.B. v. Visvabharathy*, No. 07 C 6226, 2008 WL 11399566, at *5 (N.D.

6

Ill. Sept. 8, 2008) (service quashed on the grounds that service address was not defendant's "abode" even though it was still his mailing address and he retained an ownership interest).

Rittenhouse does not reside at the Florida address and it is not his usual place of abode. K. Rittenhouse Dec., ¶ 2; F. Rittenhouse Dec., ¶ 9. The attempted service address is his mother's house, where she lives with her two daughters. K. Rittenhouse Dec., ¶ 3; F. Rittenhouse Dec., ¶ 2. He has no room or bed at the attempted service address, and no room is available to him there. K. Rittenhouse Dec., ¶ 7. He keeps no clothes or belongings there. *Id*., ¶ 8. He pays no rent or utilities at the attempted service address. *Id*., ¶ 9.  His only connection to the attempted service address is that occasionally he visits his mother and sisters there, and when he does, he sleeps on a couch. *Id*., ¶ 5. During the last year, he has not spent more than a total of 20 to 30 nights at the attempted service address and has gone more than six months between visits. *Id*., ¶ 6. Moreover, contrary to what the POS suggests, Rittenhouse's sister Faith did not tell the server that she lived with Rittenhouse, or that Rittenhouse lived at the attempted service address. F. Rittenhouse Dec., ¶ 6. The server did not ask Faith whether she lived there with Rittenhouse. *Id*., ¶ 7. Had he done so, she would have advised him that Rittenhouse did not. *Id*., ¶¶ 7, 9.

## II. FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

## SUMMARY OF THE ARGUMENT

To survive a motion to dismiss, the FAC must allege facts that, if true, state claims against Rittenhouse that are plausible on their face. The FAC fails, in every respect, to meet that burden.[3]

The FAC is a hodge-podge of confused, muddled, mismatched, and conclusory allegations. Over the course of 45 pages and 229 paragraphs, Plaintiff, on his own behalf and as the personal

---

[3] This Motion does not address Counts VI, XI, IV, and IV of the FAC because those counts are not directed to Rittenhouse.

representative of his deceased son Anthony Huber's estate ("Huber"), attempts to assert 15 separate claims, based on various and disparate legal theories, against 40 different city, county, municipal and individual defendants, including Rittenhouse. Each count incorporates by reference each and every paragraph of every other count, without regard to whether the facts asserted in those paragraphs bear any relation to the facts or legal theories applicable to that specific count. Making matters worse, Plaintiff shows a similar disregard for precision with respect to the allegations directed at the various Defendants. With few exceptions, Plaintiff's claims refer to these 40 different defendants collectively, as "Defendants," without any attempt to make any distinction between them or explain what each particular Defendant is alleged to have done to entitle Plaintiff to monetary relief. As such, the FAC violates the basic pleading requirements of Rule 8 and Rule 10 of the Federal Rules of Civil Procedure and must be dismissed.

Plaintiff fares no better when it comes to the FAC's individual counts asserted against Rittenhouse. To the extent Plaintiff has standing to bring them,[4] Counts I through VI attempt to assert claims against all Defendants, including Rittenhouse, under various sections of Title 42. These include claims for alleged violations of Huber's constitutional rights under 42 U.S.C. § 1983 (Counts I, III, IV and V), conspiracy to deprive Huber of such constitutional rights under 42 U.S.C. § 1985 (Counts II and III), and failure to intervene in the events that occurred in Kenosha in August of 2020 pursuant to 42 U.S.C. § 1986 (Count VI). While it is doubtful these counts state plausible

---

[4] Plaintiff John Huber, in his individual capacity, lacks standing to assert Section 1983 and related Section 1985, 1986 claims on his son's behalf. *Ray v. Maher*, 662 F.3d 770, 773–74 (7th Cir. 2011) (parents may not sue for constitutional injuries to their son); *Estate of Johnson by Castle v. Libertyville,* 819 F.2d 174, 178 (7th Cir. 1987) (parents cannot recover under § 1983 for injuries to their daughter, but only for injuries to themselves); *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir. 1974) (parent could sue only in a representative and not an individual capacity for a deprivation of her son's constitutional rights); *Huynh v. Truax*, No. 18-CV-1222-PP, 2022 WL 2291200, at *6 (E.D. Wis. June 24, 2022) (no right to bring representative claim for denials of son's constitutional right, no matter how much the parent claims to have suffered).

claims against any of the Defendants, they fail as a matter of law with respect to Rittenhouse. Plaintiff's § 1983 claims cannot survive without plausible allegations that Rittenhouse was engaged in "state action" or acting "under color of state law" when, as alleged by Plaintiff, he stumbled, was set upon by Huber and others who attempted to forcibly take his firearm, and, as a result, fatally shot Huber.[5] Moreover, without an actionable underlying violation of Huber's constitutional rights under § 1983, Plaintiff's claims under §§ 1985 and 1986 likewise fail and must be dismissed.

Leaving aside the lack of plausible allegations of state action or conduct under color of state law, Plaintiff's Title 42 claims also fail to plausibly allege other elements critical to their survival. For example, Count I contends that Rittenhouse was part of a conspiracy to deprive Huber of his constitutional rights, but fails to plausibly allege that Rittenhouse and some state actor reached an understanding to do so and willfully participated in that agreement. Count II asserts another conspiracy claim, this time to obstruct justice based on allegedly invidious discrimination but fails to plausibly allege Huber was a member of a protected class or that any of the Defendants' conduct, much less Rittenhouse's, was motivated by racial or other class-based animus. Count III alleges a § 1985(2) conspiracy to deprive Huber of the equal protection of the laws, but again fails to establish his membership in a protected class or that he suffered a disparate impact from other similarly situated persons that night in Kenosha.

Count IV claims Rittenhouse retaliated against Huber based on Huber's "opinions critical of police violence." This claim is objectively frivolous. Such claims are typically brought following an arrest or other negative government action by law enforcement or other governmental official. Not only does this claim fail because Rittenhouse is not and is not alleged to be a police

---

[5] As explained *infra*, Huber did more than forcibly attempt to take Rittenhouse's firearm.

officer or government official, Plaintiff's own allegations relating to Rittenhouse's and Huber's interaction that night in Kenosha belie any assertion that it had anything to do with speech, opinions, or conduct protected by the First Amendment. Quite the contrary. Plaintiff concedes that Rittenhouse made no contact whatsoever with Huber until Rittenhouse, after stumbling, falling in the street, and finding himself on his back, was approached by Huber and others who tried to take his firearm. These allegations of course leave out the critical fact that Huber, just moments earlier, struck Rittenhouse with a skateboard, at full force, and with both hands, causing lasting injuries. Be that as it may, even these limited and self-serving allegations negate Plaintiff's claim for First Amendment retaliation as to Rittenhouse.

Plaintiff's final two Title 42 claims are equally flawed. Count V alleges a claim for deprivation of due process but must be dismissed as to Rittenhouse because Plaintiff has not and cannot plausibly allege state action as to him. And Count VI, which alleges a failure to intervene, cannot stand in the absence of plausible allegations of an actionable underlying constitutional violation by Rittenhouse.

Plaintiff also asserts a bevy of state law claims against Rittenhouse. None of these claims makes any particularized allegations as to what Rittenhouse, as opposed to any of the other Defendants, is alleged to have done to justify the relief Plaintiff seeks. Additionally, none of Plaintiff's state law claims adequately allege their requisite elements. In Counts VIII and IX, for example, Plaintiff asserts claims for intentional and negligent infliction of emotional distress but fails to specify whether Plaintiff has brought them on his own behalf or as a representative of Huber's estate, does not allege the requisite intent and other elements of these claims, and does not allege that Plaintiff witnessed Huber's death or the moments following it. In Count X, Plaintiff claims Rittenhouse was negligent, but never specifies the source of any duty, what standard of care

was allegedly breached, or how such a breach led to the damages Plaintiff claims he's suffered. And finally, Counts XI and XII, which purport to state claims for survival and wrongful death, fail because they are derivative claims and thus cannot proceed absent an identifiable underlying tort for which Huber could have sued Rittenhouse, had he survived.

## MEMORANDUM OF LAW

### I.     Standard on a Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a pleading mut contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not due." *Id*. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Determining whether a complaint satisfies the plausibility standard requires the court to "excis[e] the allegations not entitled to the presumption [of truth to] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The complaint must provide more than "a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and

plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). Legal conclusions, threadbare recitals of the elements of a claim, and conclusory statements need not be accepted as true. *See id*. Only a "complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. Making this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]" — "that the pleader is entitled to relief." *Id*. (citing Fed. R. Civ. P. 8(a)(2)).

## II.    Argument

### A.    The FAC engages in excessive incorporation by reference and fails to distinguish between various claims and multiple Defendants.

The FAC should be dismissed, or a more definite statement required, because it employs excessive levels of incorporation by reference in violation of the most basic federal pleading requirements. As discussed *supra*, Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Additionally, Rule 10(b) requires that claims be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and state "each claim founded on a separate transaction or occurrence … in a separate count" where "doing so would promote clarity." Fed. R. Civ. P. 10(b).

It is difficult to imagine a pleading that could be more violative of the letter and spirit of Rules 8 and Rule 10 than the FAC is here. Over 229 paragraphs spanning 45 pages, the FAC purports to assert 15 different counts on behalf of two legally distinct Plaintiffs[6] against a total of 40 separate private individual, city, municipal, and law enforcement defendants. Every count incorporates by reference all paragraphs of each and every preceding count, all 128 paragraphs of

---

[6] This lawsuit is purportedly filed on behalf of Mr. Huber, individually, and in his capacity as personal representative of the decedent's estate.

the FAC's general allegations, and all paragraphs of counts pleaded later in the FAC: "Each of the Paragraphs of this Complaint is incorporated as if restated fully herein." *See* FAC, ¶¶ 129 (Count I), 137 (Count II), 148 (Count III), 156 (Count IV), 167 (Count V), 175 (Count VI), 181 (Count VII), 191 (Count VIII, 197 (Count IX), 202 (Count X), 206 (Count XI), 211 (Count XII), 215 (Count XIII), 220 (Count XIV), and 223 (Count XV). The FAC is the quintessence of an impermissible shotgun pleading.

Plaintiff's claims are predicated on widely divergent legal theories. They range from alleged federal civil rights violations (Counts I through VI), to state statutory and common law claims under the *Monell* claims (Count VII), intentional and negligent infliction of emotional distress (Counts XIII and IX), negligence (Count X), negligent hiring, supervision and training (Count XI), survival and wrongful death (Counts XII and VIII), indemnification (Count XIV), and even a separate count alleging "damages" (Count XV). FAC, ¶¶ 129–229; pp. 26–45.

Federal courts "discourage" complaints that violate Rules 8 and 10 and often refer to them as "shotgun" pleadings. The term describes complaints where, like here, "each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading." *CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 1004 (N.D. Ill. 2011) (citing *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir. 2010)). This makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *CareerBuilder*, 813 F.Supp.2d at 1004 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Where excessive incorporation by reference effectively deprives a defendant of "adequate notice" of the claims against him or her, dismissal is appropriate. *CareerBuilder*, 813 F.Supp.2d at 1004.

13

The FAC also suffers from another frequently criticized pleading defect insofar as it alleges "that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims and does not identify which specific facts are allocated to which claim." *Hughey v. Camacho*, No. 2:13-CV-2665-TLN-AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014); *see also Baez v. CitiFinancial Equity Servs., Inc.*, No. 6:13-CV-1272-ORL-36-GJK, 2014 WL 12866970, at *3 (M.D. Fla. Mar. 5, 2014) (a proposed amended complaint that "indiscriminately lumps all defendants together in each claim as the "Defendants" fails, on its face, to comply with Rule 8). Like those defective pleadings, the FAC makes little to no effort to distinguish among the 40 different individual, municipal, city, and law enforcement defendants named and their conduct that is claimed to give rise to liability under the various legal theories. In fact, on more than two-dozen occasions in just the individual counts alone, the FAC indiscriminately refers to the "Defendants" as a group, without specifying which Defendant is alleged to have done what to trigger liability under any of the 15 different legal theories Plaintiff attempts to proceed under. FAC, pp. 26-45. This effectively prevents all Defendants, and Rittenhouse in particular, from receiving the requisite "adequate notice" of the claims against them. The *Baez* court's admonition about such indiscriminate pleading practices is instructive on this point:

> Where multiple claims are raised against multiple defendants or each claim is raised against multiple defendants, a plaintiff should take particular care in providing a short and plain statement of each distinct claim and the grounds upon which it rests as to each discrete defendant. If a plaintiff fails to identify which claims are brought against which particular defendants, and the grounds upon which plaintiff is entitled to relief against each defendant, then those defendants do not have fair notice as to the claims against them. Throughout the proposed second amended complaint, Plaintiffs indiscriminately lump all defendants together in each claim as the "Defendants." By doing so, Plaintiffs' factual allegations fail to give each defendant fair notice as to the claims against them and the grounds upon which the Plaintiffs' claims rest

*Baez*, 2014 WL 12866970, at \*3. The FAC's lack of specificity is especially problematic given the multiple constitutional rights claims alleged. As the District Court of Utah recently explained in *Ecker v. Haddon*:

> The complaint must clearly state what each defendant—typically, a named government employee—did to violate Plaintiff's civil rights. To state a claim, a complaint must make clear exactly *who* is alleged to have done *what* to *whom*. Each cause of action, together with the facts and citations that directly support it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. Indeed, because § 1983 is a vehicle[ ] for imposing personal liability … we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants.

No. 2:20-CV-35-HCN, 2022 WL 294825, at \*1-3 (D. Utah Feb. 1, 2022) (internal quotations and citations omitted). The FAC should be dismissed and an amended pleading that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure required.

**B.      Plaintiff's Section 1983 claims (Counts I, III, IV, at V) all fail to plausibly allege state conduct or action under color of state law as to Rittenhouse.**

Counts I, III, IV, and V purport to assert claims under 42 U.S.C. § 1983 against Rittenhouse and all the other named Defendants for various claimed violations of Huber's federal rights. Count I claims a conspiracy to deprive Huber of his constitutional rights. FAC, ¶¶ 129-136. Count III claims Huber was denied equal protection of the law. *Id.*, ¶¶ 148-55.[7] Count IV claims Huber was a victim of discriminatory retaliation over his First Amendment-protected "opinions critical of police violence."[8] FAC, ¶¶ 156-166. And Count V is styled as a claim for deprivation of Huber's due process rights, but that allegation appears nowhere in the count itself. *Id.*, ¶¶ 167–174.

---

[7] This count also fails insofar is it is brought under 42 U.S.C. § 1985(2), as discussed *infra*.

[8] Attempting to murder a person fleeing for his life by smashing that person's skull with a skateboard is not an "opinion," nor is it conduct protected by the First Amendment. Moreover, Huber does not plausibly allege membership in a protected class that would allow his estate to bring an action under Section 1983 to begin with. *See, infra*.

15

These counts, and in particular Count I,[9] all fail to adequately allege a Section 1983 conspiracy claim against Rittenhouse, who Plaintiff concedes is a private citizen. FAC, ¶ 32.[10] "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right, privilege, or immunity secured by the Constitution of the United States, and that the violation was committed by an individual acting under color of state law." *Washington v. Experian*, No. 1:07-CV-301 RM, 2008 WL 1840709, at *2 (N.D. Ind. Apr. 22, 2008). A private citizen generally cannot be held liable under Section 1983. *Id*. (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000)). *See also Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). To sue a private citizen under Section 1983, a plaintiff must "establish … that the alleged deprivation was committed under color of state law." *Spiegel*, 916 F.3d at 616 (citing *Am Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). "The under-color-of-state-law element means that Section 1983 does not permit suits based on private conduct, 'no matter how discriminatory or wrongful.'" *Spiegel*, 916 F.3d at 616 (citing *Sullivan*, 526 U.S. at 50). A private citizen acts under color of law only if there is "evidence of a *concerted effort* between a state actor and that individual." *Spiegel*, 916 F.3d at 616 (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)). While this is often referred to as the "conspiracy theory" of Section 1983 liability, *Spiegel*, 916 F.3d at 616, "mere allegations of joint action or a conspiracy do not demonstrate that the defendant[] acted under color of state law and are not sufficient to survive a motion to dismiss." *Id*. at 616. Instead, "[t]o establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official

---

[9] Count I is pleaded as a straight Section 1983 "conspiracy to deprive constitutional rights" claim. Counts III–IV, while ostensibly asserting slightly different theories, like Count I also require allegations establishing a conspiracy or understanding between a private citizen defendant and a state official to deprive someone of their constitutional rights. Thus, while Counts III and IV fail for this and other reasons discussed *infra*, Count I is subject to dismissal for this reason alone.

[10] "Defendant KYLE RITTENHOUSE is a citizen of Illinois …."

16

and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id.*

Plaintiff does not support Counts I, III, IV, and V with allegations which, if true, would plausibly show the required "concerted effort" between a state actor and Rittenhouse or any of the elements of a Section 1983 conspiracy claim. Instead, the FAC offers only sporadic, general, and conclusory allegations of an undefined conspiracy between all "Defendants." FAC, ¶¶ 7, 65, 78, 99, 102, 103. Indeed, of the four Section 1983 counts Plaintiff asserts, only Count I offers a conclusory allegation of a "conspiracy" between the Defendants. *Id.*, ¶ 139. Counts III–IV do not even make a passing reference to a conspiracy.

Where Plaintiff does attempt to add some specifics, the FAC again falls flat. For example, it alleges that undefined "officers and deputies" spoke with "armed individuals" at certain points during the several-day protests, *see* FAC, ¶¶ 87, 90, or that on some undescribed occasions those unnamed "armed individuals" were asked by some unspecified "officers" if they needed water. *Id.*, ¶ 88. In one instance, the FAC recounts an alleged interview where yet another unnamed "armed individual" allegedly recounted a hearsay conversation with another unnamed law enforcement officer. *See Id.*, ¶¶ 94, 95. During that interview, it was suggested that the unidentified officers had warned this unidentified armed individual that protestors would be directed further south, ostensibly toward a group of other armed individuals. *Id.*

On their face, these allegations are insufficient. The FAC, whether taken as a whole or in looking at these individual counts, does not establish that any state official and private citizen defendant reached an agreement or understanding to deprive Huber of his constitutional rights, let alone that Rittenhouse, specifically, reached such an understanding with a state official. Similarly,

the FAC does not establish that Rittenhouse was plausibly acting under color of law. Accordingly, Count I and Counts III–V must be dismissed.

### C. Count II fails to allege a plausible conspiracy or conduct motivated by racial or other class-based animus and lacks the requisite underlying constitutional violation.

In Count II, Plaintiff attempts to assert a claim under 42 U.S.C. § 1985(3), which "provides a cause of action for persons who are victims of a conspiracy to deprive them of the equal protection of the laws or equal privileges and immunities under the laws." *Milchtein v. Milwaukee Cnty*, No. 21-2955, 2022 WL 3040897, at *9 (7th Cir. Aug. 2, 2022) (citing *Bowman v. City of Franklin*, 980 F.2d 1104, 1108-09, 1108 n.4 (7th Cir. 1992) (internal quotation marks omitted)). A plaintiff bringing a Section 1985(3) claim must plead the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Milchtein*, 2022 WL 3040897, at * 9 (citing *Utd. Bhd. of Carps. v. Scott*, 463 U.S. 828-29 (1983)). Additionally, the plaintiff must plead that the conspiracy was motivated by some racial or otherwise class-based "invidiously discriminatory animus." *Id.*

Count II must be dismissed. Plaintiff fails to adequately allege the elements of a Section 1985 conspiracy. Plaintiff does not establish that Huber was a member of a protected class or the victim of a conspiracy motivated by racial or other class-based animus. And, even if Plaintiff had sufficiently alleged these elements of a Section 1985 claim, it nonetheless would fail for lack of a plausibly alleged underlying constitutional violation.

18

1.       *The FAC fails to allege a plausible Section 1985(3) conspiracy.*

Surviving a motion to dismiss on the conspiracy element of a Section 1985 claim requires allegations plausibly showing "an express or implied agreement among the defendants to deprive [plaintiff] of [his] constitutional rights." *Milchtein*, 2022 WL 3040897, at * 9 (citing *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir. 1992)). Here, the FAC again offers a bare legal conclusion, claiming that the "Defendants" and other actors who are not named in the lawsuit "acted in concert" and "reached an agreement" to deprive Huber of his constitutional rights and equal protection of the laws. FAC, ¶ 139. The only other allegations of a conspiracy or unlawful agreement are equally threadbare. In fact, they are the same conclusory allegations that Plaintiff offered to support his other Title 42 claims, including those supporting Count I, which as discussed earlier, are insufficient. *See* Motion, Sections II.B.1 and II.B.2, *supra*.

Similarly, Plaintiff attempts to support the "overt-act" element which can only charitably be termed a threadbare recitation: Plaintiff alleges that "each of the co-conspirators committed overt acts" in furtherance of the claimed conspiracy. FAC, ¶ 143. Plaintiff never explains precisely what those overt acts were, or who among the various unspecified "Defendants" and multiple unnamed "co-conspirators" committed them. Conclusory and threadbare allegations like these are not entitled to a presumption of truth on a motion to dismiss. *McCauley*, 671 F.3d at 616.

2.       *The FAC fails to allege membership in a protected class or racial or other class-based animus.*

To withstand a motion to dismiss, Plaintiff also must "allege facts demonstrating that class-based discrimination was the reason for the defendants' conduct." *Love v. Bolinger*, 927 F. Supp. 1131, 1140 (S.D. Ind. 1996) (citing *Wright v. Ill. Dept. of Children & Family Ser*vices, 40 F.3d 1492, 1507 (7th Cir. 1994)); *Martin v. Youngstown Sheet & Tube Co*., 911 F.2d 1239, 1245 (7th Cir. 1990) ("[A]ctions" under 42 U.S.C. §§ ... 1985(2) [and] 1985(3) rely on the existence of

racial or other class-based invidious discriminatory animus). The FAC fails to meet these requirements.

Huber does not allege he is a member of a protected class. Nor could he. Plaintiff clumsily attempts to plead around this barrier to Section 1985 relief by alleging instead that "Defendants targeted individuals of color and individuals allied with them … including Huber," who Plaintiff claims were simply out to "protest against racial discrimination …." FAC, ¶ 143. But Plaintiff does not allege Huber was a member of a protected class. And there is no authority to support the proposition that being allied with a person of a protected class, whatever the class and whatever the reason for the alliance, confers protected class status for Section 1985 purposes. *See Hicks v. Resol. Tr. Corp.*, 767 F. Supp. 167, 171 (N.D. Ill. 1991), *aff'd*, 970 F.2d 378 (7th Cir. 1992) ("Plaintiff further lacks standing to bring a section 1985(3) claim on behalf of blacks and other minorities living in low-income areas…. Assuming these individuals constitute a discrete and insular minority, plaintiff is neither a member of the class nor is he being discriminated against because of a class-based invidiously discriminatory motive."); *see also Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 721 (9th Cir. 1981) ("… the plaintiff must be a member of the class discriminated against to claim the benefits of s 1985(3)"). This Count should be dismissed with prejudice.

3.    *The FAC fails to allege any underlying constitutional violation.*

Even if Plaintiff had otherwise adequately pleaded Count II, he cannot bring a conspiracy claim under § 1985(3) without an underlying actionable constitutional violation. *Azroui v. Hahs*, No. 10 C 4772, 2011 WL 3876948, at *5 n. 2 (N.D. Ill. Aug. 30, 2011) (citing *Sow v. Fortville Police Dept.*, 636 F.3d 293, 305 (7th Cir.2011) (holding that the absence of any underlying violation of plaintiff's rights precludes the possibility of plaintiff succeeding on a Section 1985

20

claim)); *Kitchen v. Burge*, No. 10 C 4093, 2011 WL 1485301, at *13 (N.D.Ill. Apr.19, 2011) (holding that plaintiff's Section 1983 claims are the underlying predicate violations of a constitutional right for plaintiff's Section 1985 and 1986 conspiracy claims)). Here, as discussed in Section II.A. of this Motion, all of Plaintiff's Section 1983 claims fail to state claims on which relief can be granted for various reasons, but none more central than the fact that Plaintiff has not sufficiently alleged state action or action under color of law by Rittenhouse. For this reason, too, Count II should be dismissed.

### D. Count III fails to plausibly allege conduct by the state, discrimination against a protected class, or disparate impact.

Count III is intended as an Equal Protection claim pursuant to 42 U.S.C. §§ 1983 and 1985. FAC, p. 29. But to state a Section 1983 Equal Protection Claim, Plaintiff, in his capacity as Huber's estate representative, is required to allege that "**a state actor** intentionally discriminated against [Huber] because of [Huber's] membership in a protected class." *Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 704–05 (E.D. Mo. 2012) (emphasis added). If a plaintiff cannot establish membership in a protected class, as Plaintiff cannot do of Huber, here, he must be able to state a "class-of-one" equal protection claim. To do that, a plaintiff must show that "(1) **a state actor** has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (emphasis added). An allegation of "disparate impact alone," moreover, "does not satisfy the pleading requirements [to establish intent] for either § 1983 or § 1985(3)." *Majeske v. Fraternal Ord. of Police, Loc. Lodge No.* 7, 94 F.3d 307, 311–12 (7th Cir. 1996).

To the extent Plaintiff intends to direct this count to Rittenhouse, which is not at all clear from Plaintiff's shotgun pleading, it must be dismissed. Count III, like every other Section 1983 claim Plaintiff tries to assert against Rittenhouse, fails to offer any allegations plausibly

establishing that Rittenhouse was acting under color of law with the intent to deprive Huber of his constitutional rights.

Furthermore, even if Plaintiff had alleged Rittenhouse was acting under color of law, Count III still fails. It does not make plausible allegations that Rittenhouse singled Huber out or treated Huber differently from anyone situated similarly to Huber during the Kenosha protests. Quite the contrary. Plaintiff's allegations, accepted as true for the sake of argument only, suggest precisely the opposite. Plaintiff concedes that Rittenhouse only had cause to interact with Huber because Huber approached Rittenhouse and tried to forcibly take his firearm:

> [Huber] attempted to disarm Defendant Rittenhouse, end the gunfire, stop the bloodshed, and protect his fellow citizens. Tragically, Anthony died when Defendant Rittenhouse shot him in the chest as Anthony tried to pull the assault rifle from Defendant Rittenhouse's hands.

FAC, ¶ 9. This allegation of course omits the well-established, publicly known fact that Huber struck Rittenhouse on the head with his skateboard, at full force, using both hands, as he lay in the street. Be that as it may, however, this allegation undermines Plaintiff's claim. Huber's interaction with Rittenhouse, as alleged, is consistent with how others situated similarly to Huber are alleged to have interacted with Rittenhouse—*i.e.*, another "protestor" who threatened to kill Rittenhouse multiple times, chased him, and tried to steal his firearm, *see, e.g.*, FAC, ¶ 68, and another who has admitted under oath he was pointing a pistol directly at Rittenhouse's chest at close range. *See, e.g.,* FAC, ¶ 75. This cause of action is insufficiently pleaded, internally inconsistent, and baseless. It should be dismissed.

### E. Count IV does not and cannot plausibly allege a claim for First Amendment retaliation against Rittenhouse.

Although it is difficult to tell given Plaintiff's jumbled allegations and lumping together all Defendants in nearly every count of the FAC, it appears Count V is intended as a First Amendment

retaliatory arrest claim against *all* Defendants, including Rittenhouse. FAC at p. 31. Provided that is the case, Plaintiff's claim is fatally flawed and must be dismissed as to Rittenhouse.

Generally, "'the First Amendment prohibits **government officials** from subjecting an individual to retaliatory actions' for engaging in protected speech." *Holifield v. Kulwich*, No. 18-CV-0801-BHL, 2020 WL 5877683, at *3 (E.D. Wis. Oct. 2, 2020) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)) (emphasis added). To survive dismissal, Plaintiff had to plausibly establish the following elements: (1) Huber engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in **the police officer's** decision." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012) (emphasis added). And to prevail on such a claim, there must be "'a causal connection' between **the government defendant's** *'retaliatory animus'* and the plaintiff's 'subsequent injury.'" *Nieves*, 139 S. Ct. at 1722 (quoting *Hartmann v. Moore*, 547 U.S. 250, 259 (2006)) (emphasis added). Additionally, the retaliatory "motive must cause the injury." *Id.*

Plaintiff has not plausibly alleged, and cannot plausibly allege, any of these elements as to Rittenhouse. There are no allegations that Rittenhouse is a government official or police officer. Plaintiff has himself admitted that Huber's First Amendment activity was *not* at all a factor in Huber's interactions with Rittenhouse that night in Kenosha, as self-serving and incomplete as Plaintiff's allegations concerning that interaction may be. FAC, ¶¶ 71–74. And there are no allegations that Huber's interaction with Rittenhouse that evening would deter protected First Amendment activity in the future. *Id*. Count IV must be dismissed, too.

**F.      Count V does not and cannot state a plausible claim for deprivation of Due Process against Rittenhouse.**

Again, the way the FAC is pleaded makes it nearly impossible to tell, but Count V appears intended as another 42 U.S.C. § 1983 claim, this time for deprivation of Due Process, against *all* Defendants, including Rittenhouse. FAC, p. 33. This count, too, must be dismissed as a matter of law as to Rittenhouse.

"In a section 1983 claim for a violation of procedural due process, a plaintiff must show a deprivation by **state action** of a constitutionally protected interest in 'life, liberty, or property' without due process of law. *Arneson v. Jezwinski*, 225 Wis. 2d 371, 391, 592 N.W.2d 606, 615 (1999) (emphasis added). Again, Plaintiff has not plausibly alleged that Rittenhouse is a state actor or that his interactions with Huber that evening were undertaken under the color of state law. Count V must be dismissed as to Rittenhouse.

**G.      Count VI fails to state a § 1986 claim for failure to intervene in the absence of an actionable underlying constitutional violation by Rittenhouse.**

The Seventh Circuit has held that where plaintiffs had failed to state a claim under Section 1985, it "is equally clear that [they] have no cause of action under 42 U.S.C. § 1986, since that section merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985." *Kolpak v. Bell*, 619 F. Supp. 359, 374 (N.D. Ill. 1985) (quoting *Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir.1980). *See also Doyle v. Unicare Health Services, Inc.,* 399 F. Supp. 69, 75–76 (N.D.Ill.1975), *aff'd,* 541 F.2d 283 (7th Cir.1976). As established in Sections II.A–F of this Motion, Plaintiff has not plausibly alleged an actionable underlying constitutional violation of Huber's rights by Rittenhouse. Accordingly, Count VI fails as a matter of law and must be dismissed as to Rittenhouse.

### H. Count VIII fails to plausibly state a claim for intentional infliction of emotional distress against Rittenhouse.

Count VIII attempts to state a claim for intentional infliction of emotional distress. "A claim for intentional infliction of emotional distress contains four elements: (1) the defendant intended to cause emotional distress by his or her conduct; (2) the conduct was extreme and outrageous; (3) the "conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme disabling response to the defendant's conduct." *Rabideau v. City of Racine*, 2001 WI 57, ¶ 33, 243 Wis.2d 486, 501, 627 N.W.2d 795, 802-803. "The plaintiff must establish," moreover, "that the purpose of the conduct was to cause emotional distress." *Id*. at 803.

This count continues the FAC's pattern of shotgun pleading and mismatched allegations indiscriminately directed to all "Defendants." FAC, ¶¶ 191–96. This makes it impossible to understand whether Count IX is alleged against *all* Defendants, some subset of the named Defendants, or Rittenhouse individually. This of course is reason enough to dismiss this count.

The FAC's poor draftsmanship and confused allegations create another problem. It is equally impossible to tell for precisely *whose* emotional distress Plaintiff is seeking recovery. As discussed, Plaintiff has brought this action in his individual capacity, as the decedent's father, and as putative representative of Huber's estate. Does Plaintiff seek recovery for his own alleged emotional distress? Or does he instead seek compensation for distress he claims Huber suffered before he died? The answers to these questions are critical for Defendants and Rittenhouse specifically to know, but without more precise allegations, the parties are not on adequate notice of the nature of the claim being asserted against them. As such, Count VIII should be dismissed.

Leaving that defect aside, Count VIII also must be dismissed because Plaintiff has not plausibly alleged the elements of a claim for intentional infliction of emotional distress as to Rittenhouse. In fact, what Plaintiff alleges earlier in the FAC belies them. Again, while Plaintiff's

25

allegations are self-serving and incomplete, even he has alleged very clearly that Rittenhouse shot Huber only after Huber and several others tried to take Rittenhouse's firearm after Rittenhouse "stumbled and fell onto the ground" and lay vulnerable, on his back, in the middle of a Kenosha street. FAC, ¶¶ 71–74. Nowhere does Plaintiff allege that Rittenhouse's conduct, specifically, was intended to cause Plaintiff emotional distress, that it was extreme under the circumstances as they are presented in the FAC, or that Rittenhouse's conduct specifically caused Plaintiff emotional distress or to suffer an extreme disabling response. Any such allegations are, instead, directed generally and indiscriminately to *all* Defendants. FAC, ¶¶ 191–96. This is not sufficient. Accordingly, Count XIII should be dismissed.

## I. Count IX fails to state a claim for negligent infliction of emotional distress against Rittenhouse.

In Count IX, Plaintiff again seemingly alleges a claim against all Defendants for negligent infliction of emotional distress. FAC, p. 39. A claim for negligent infliction of emotional distress requires three elements: (1) that defendant's conduct fell below the applicable standard of care; (2) that the plaintiff suffered an injury; and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury. *Terry v. J. Broad. Corp.*, 2013 WI App 130, ¶ 38, 351 Wis. 2d 479, 514, 840 N.W.2d 255, 271 (citing *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis.2d 627, 632, 517 N.W.2d 432 (1994)). This count must be dismissed for several reasons.

First, this count suffers from a central problem of Plaintiff's prior count; namely, Plaintiff does not specify whether he is bringing it individually or on behalf of Huber's estate. Either way, however, Plaintiff has failed to state a claim. To recover individually, Plaintiff has to have been present and witnessed Huber's death or arrived shortly after and seen Huber's body. *Bowen*, 517 N.W.2d at 442–43 (witnessing a death or its immediate aftermath, on one hand, verses learning of a death through indirect means, "is an appropriate place to draw the line between recoverable and

non-recoverable claims"). Here, Plaintiff has not and likely cannot allege that he witnessed Huber's death or Huber's body in the moments immediately after. As such, Count IX must be dismissed insofar it is brought on behalf of Plaintiff, individually.

Count IX also fails even if it is intended as a claim on behalf of Huber through his estate. Here, Plaintiff alleges that the shot that killed Huber was fatal. FAC, ¶ 76. Plaintiff does not allege, however, that Huber experienced apprehension and fear at any point during this event, let alone between the shot and his death. The Wisconsin Supreme Court has held that allowing recovery in situations where there is a nearly instantaneous death from an alleged wrongful act leaves no time for the requisite "apprehension and fear" to support a claim for negligent infliction of emotional distress. *Bowen*, 517 N.W. 2d at 446. In *Bowen*, the Wisconsin Supreme Court affirmed a lower court's dismissal of a claim for negligent infliction of emotional distress brought by the estate of a victim of a fatal car accident. *Id*. "It is mere speculation," the *Bowen* court explained, "that [decedent] knew of the impending impact or suffered severe emotional distress in the moments before impact." *Id*. "Allowance of recovery under the circumstances of this case would be too likely to open the way to fraudulent claims." *Id*.

Even if Count IX did not fail for these reasons, it nonetheless should be dismissed because Plaintiff, unlike the estate plaintiff in *Bowen*, has not sufficiently alleged the elements of the claim. There is no allegation that any Defendant, let alone Rittenhouse specifically, departed from the requisite standard of care. FAC, ¶¶ 197–201. In fact, Plaintiff does not even establish what he believes the requisite standard of care to have been given the circumstances alleged. *Id*. Furthermore, while Plaintiff supplies a rote listing of words indicating he and Huber *individually* suffered injuries, *see* FAC, ¶ 200–01, Plaintiff does not provide sufficient allegations to explain how any such injuries are legally cognizable given the foregoing authorities.

Finally, Count IX is comprised of just five paragraphs, each of which is a mere recitation of what Plaintiff thinks are the elements of his claim. FAC, ¶¶ 197–201. But paragraph 202 (like the first paragraph of all 14 other counts) incorporates by reference each and every other paragraph of the entire FAC, presumably even of counts that come later in the pleading. In this way, Count X is just the latest variation on a recurring theme. But, given its lack of detail, it may suffer more acutely than any other count from Plaintiff's serial uses of excessive incorporation by reference, his refusals even to attempt to distinguish among the 40 different county, city, law enforcement, and individual defendants, including Rittenhouse, and his penchant for offering threadbare recitals in place of factually supportable, clear and concise allegations. For these reasons, too, Count X should be dismissed.

**J.    Count X fails to adequately state a claim for negligence against Rittenhouse.**

Count X purports to be a claim for negligence against all Defendants, presumably, including Rittenhouse. FAC, p. 40. Under Wisconsin law, a plaintiff must establish four elements to state a claim for negligence: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the breach and the alleged injury; and (4) an actual loss or damages resulting from the injury. *Schuler v. United States*, No. 18-C-1664, 2020 WL 1904491, at *2 (E.D. Wis. Apr. 17, 2020). Plaintiff fails to sufficiently allege these elements.

Count X is comprised of just four paragraphs, the first of which merely reincorporates all other paragraphs of the FAC. *Id.* at ¶ 202. There are no particularized allegations relating to Rittenhouse. *Id.* at ¶¶ 202-205. Plaintiff does not allege what duty Rittenhouse owed to Huber in the context of their alleged interaction with one another that night in Kenosha, nor does he explain how any such duty was breached in light of those circumstances. *Id.* Moreover, Plaintiff does not, as the law requires, allege that any such *breach* of a purported duty to Huber by Rittenhouse caused

Plaintiff damages. *Id*. These allegations are not sufficient to state a claim for negligence against Rittenhouse. Count X should be dismissed.

### K. Counts XI and XII fail to state claims for survival and wrongful death due to a lack of an actionable underlying tort.

Counts XI and XII assert claims against the Defendants, including Rittenhouse, under theories of survival and wrongful death, respectively. Under Wisconsin law, however, for these counts to survive a motion to dismiss, Plaintiff had to offer allegations to show that Huber would have an actionable tort claim against Rittenhouse had Huber survived the shooting. Because Plaintiff has not done so, Counts XI and XII also must be dismissed.

"A wrongful death action may be brought by certain relatives of tort victims to recover the damages that the death caused them." *Est. of de Ruiz by Ruiz v. ConAgra Foods Packaged Foods*, LLC, No. 21-CV-387-SCD, 2022 WL 1448696, at *8 (E.D. Wis. May 3, 2022). "Contrastingly, a survival action is brought by the decedent's estate or personal representative to recover damages suffered by the decedent prior to death. *Ruiz*, 2022 WL 1448696, at *8. "The threshold determination in either action is "whether the decedent would have been entitled to maintain an action and recover damages had [she] lived." *Id*. "In other words, the plaintiff in a wrongful death or survival action has no cause of action if the decedent would not have been able to demonstrate 'all the elements of the tort that resulted in his death.'" *Id. See also Schuler v. United States*, No. 18-C-1664, 2020 WL 1904491, at *2 (E.D. Wis. Apr. 17, 2020) ("Under Wisconsin law, wrongful death is a derivative tort, and plaintiff's wrongful death claim requires her to establish that [the decedent] would be entitled to recover if his death had not occurred") (citing § 895.03, Wisc. Stat.).

Here, as detailed above, Plaintiff has failed to establish sufficient allegations for any of the various state law torts he claims Rittenhouse has committed. As a result, Plaintiff's survival and wrongful death claims fail to state a claim on which relief can be granted and should be dismissed.

## **CONCLUSION**

For the reasons stated above, service should be quashed or the FAC dismissed for insufficient service of process and, as a consequence, lack of personal jurisdiction. Additionally, and alternatively, the FAC should be dismissed in its entirety as to Rittenhouse for failure to state a claim on which relief may be granted.


Date: August 18, 2022

*s/ Shane P. Martin*
Mark F. Raymond
Shane P. Martin
NELSON MULLINS RILEY
& SCARBOROUGH LLP
2 South Biscayne Boulevard, Suite 21
Miami, FL 33131
Telephone: 305.373.9425
Fax: 305.995.6384
mark.raymond@nelsonmullins.com
shane.martin@nelsonmullins.com

Isaac W. Messmore
NELSON MULLINS RILEY
& SCARBOROUGH LLP
1600 Utica Avenue South, Suite 750
Minneapolis, MN 55416
Telephone: 612.464.7622
Fax: 612.255.0739
ike.messmore@nelsonmullins.com

***Counsel for Defendant Kyle Rittenhouse***