**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| JOHN HUBER, in his individual capacity | ) | |
| and as Personal Representative of the | ) | |
| ESTATE OF ANTHONY HUBER, | ) | |
|      Plaintiff, | ) | No. 2:21 cv 00969-LA |
|    v. | ) | |
| | ) | |
| DAVID G. BETH, in his individual and | ) | |
| official capacity as Kenosha County Sheriff, | ) | |
| DANIEL G. MISKINIS, in his individual | ) | |
| and official capacity as the former Chief of | ) | |
| Police for the Kenosha Police Department, | ) | |
| ERIC LARSEN, in his official capacity as | ) | |
| the acting Chief of Police for the Kenosha | ) | |
| Police Department, JOHN DOE POLICE | ) | |
| OFFICERS of the Kenosha Police | ) | |
| Department, Kenosha County Sheriff's | ) | |
| Department, Waukesha County Sheriff's Department, | ) | |
| Racine County Sheriff's Department, Sauk County | ) | |
| Sheriff's Department, Walworth County Sheriff's | ) | |
| Department, Washington County Sheriff's | ) | |
| Department, Menomonee Falls Police Department, | ) | |
| And West Allis Police Department, | ) | |
| CITY OF KENOSHA, and | ) | |
| COUNTY OF KENOSHA, COUNTY OF | ) | |
| WAUKESHA, COUNTY OF RACINE, COUNTY | ) | |
| OF SAUK, COUNTY OF WALWORTH, COUNTY | ) | |
| OF WASHINGTON, VILLAGE OF MENOMONEE | ) | |
| FALLS, CITY OF WEST ALLIS, AND | ) | |
| KYLE RITTENHOUSE | ) | |
| | ) | |
|      Defendants. | ) | |

---

**ANSWER OF DANIEL G. MISKINIS, ERIC LARSEN, CITY OF KENOSHA,**
**VILLAGE OF MENOMONEE FALLS,  CITY OF WEST ALLIS**
**AND CERTAIN JOHN DOES TO PLAINTIFF'S FIRST AMENDED**
**COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND**

---

1

Defendants Daniel G. Miskinis, Eric Larsen, City of Kenosha, Village of Menomonee Falls, City of West Allis, and any John Doe Police Officers employed by the City of Kenosha, Village of Menomonee Falls or City of West Allis at the times relevant to this complaint ("Certain John Does"), (collectively "These Answering Defendants"), by their attorneys, Ted Waskowski, Kyle W. Engelke and Clementine Uwabera of Stafford Rosenbaum LLP, submit the following answer to Plaintiff's First Amended Complaint, affirmative defenses, and jury demand as follows:

## **INTRODUCTION**

1. This case involves the tragic death of Anthony Huber, a beloved son and community member, who was shot and killed while committing an act of remarkable heroism.

**RESPONSE**: Deny.

2. On August 25, 2020, in Kenosha, Wisconsin, Huber was participating in protests against police violence which were sparked by the police shooting of Jacob Blake two days earlier. Mr. Blake was a Black man who had been shot in the back seven times by an officer in the Kenosha Police Department, and Huber was among many who peacefully protested the shooting and Kenosha's pattern of racist and violent behavior by police officers and other officials.

**RESPONSE**: As to the first sentence of this paragraph, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; as to second sentence, deny.

3.     During the protests, private citizens took up arms and patrolled the streets of Kenosha, acting as law enforcement agents.  Many of them had posted racist messages and threatened violence on social media before descending upon Kenosha.  They made their plans known to law enforcement officials.

**RESPONSE**:     As to the first sentence of this paragraph, deny; as to the second sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; as to third sentence, deny.

4.     These armed individuals were not Kenosha business owners whose property had been damaged, nor were they hired by any of those businesses to come protect their property.

**RESPONSE**:     Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

5.     One of these armed individuals was Defendant Kyle Rittenhouse, who was then 17 years old.  He crossed into Wisconsin from Illinois, carrying an assault rifle on the streets of Kenosha, in open violation of the law.

**RESPONSE**:     As to the first sentence of this paragraph, admit that Rittenhouse was present and armed and 17 years old; deny sufficient information to form a belief as to the truth of all other allegations, and accordingly, deny same; deny that these answering defendants knew his age on the night in question.

6.     Astonishingly, the Kenosha Police Department, Kenosha County Sheriff's Department, their supervising officials and police officers, and law enforcement officers from surrounding communities did not treat Defendant Rittenhouse or any of the other

armed individuals patrolling the streets as a threat to the safety of themselves or the citizens they were sworn to protect.

**RESPONSE**:        Deny.

7.        Instead, the law enforcement Defendants deputized these armed individuals, conspired with them, and ratified their actions by letting them patrol the streets, armed with deadly weapons, to mete out justice as they saw fit.   In addition, the law enforcement Defendants thanked Defendant Rittenhouse and other armed individuals, gave them water, and allowed them to openly defy the emergency curfew order that was in place.   The law enforcement Defendants even made plans to funnel the protestors toward the armed individuals "deal with them."

**RESPONSE**:        Deny.

8.        As a result, Defendant Rittenhouse fired his assault rifle indiscriminately multiple times at citizens on the street.   He shot and killed two men, seriously injured a third, and narrowly missed a fourth.   At the time Defendant Rittenhouse encountered Anthony Huber, Defendant Rittenhouse had already killed one man.

**RESPONSE**:        As to the first sentence of this paragraph, deny; as to the second and third sentences, deny that Rittenhouse's actions were the result of any actions or inactions by these answering defendants, otherwise admit the allegations.

9.        Anthony Huber is a hero.   He attempted to disarm Defendant Rittenhouse, end the gunfire, stop the bloodshed, and protect his fellow citizens.   Tragically, Anthony died when Defendant Rittenhouse shot him in the chest as Anthony tried to pull the assault rifle from Defendant Rittenhouse's hands.

4

**RESPONSE**: Deny.

10. The conduct of the Defendants in this case directly caused Anthony Huber's death. Anthony's father, John Huber, and his mother, Karen Bloom, now seek justice for the death of their son.

**RESPONSE**: Deny.

## NATURE OF THE ACTION

11. This is a civil action arising under 42 U.S.C. §§ 1983, 1985, and 1986, and under state law, for deprivation of Plaintiff's constitutional, statutory, and state-law rights.

**RESPONSE**: Admit that the action is brought under the statutes cited and state law for claimed constitutional, statutory and state-law deprivation of rights; deny that these answering defendants are responsible for the unfortunate circumstances involving Anthony Huber or that they violated his rights in any way.

## JURISDICTION AND VENUE

12. Jurisdiction of this Court is invoked pursuant 28 U.S.C. §§ 1331 and 1343(a).

**RESPONSE**: Admit that the Court has jurisdiction of this matter.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiff's federal claims.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

14. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, and because all the conduct complained of herein occurred in this District.

**RESPONSE**: Deny as stated; admit that venue is proper.

<u>**PARTIES**</u>

15. Plaintiff JOHN HUBER is the father of Anthony Huber, deceased, ("Anthony"). He sues in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER ("Estate").

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

16. Defendant DAVID G. BETH was the duly elected Sheriff of Kenosha County, Wisconsin. Defendant Beth had the authority to make and enforce policies of the Kenosha County Sheriff's Department.

**RESPONSE**: Admit the allegations of the first sentence; as to the second sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same

17. Defendant DANIEL G. MISKINIS was the Chief of Police for the Kenosha Police Department. Defendant Miskinis had the authority to make and enforce policies of the Kenosha Police Department.

**RESPONSE**: Admit.

18. Defendant ERIC LARSEN is the current Chief of Police for the Kenosha Police Department. He is sued in his official capacity only.

**RESPONSE**: As to the first sentence of the paragraph, deny; state that the allegations of the second sentence need no response.

19.    Defendants JOHN DOE POLICE OFFICERS are unknown law enforcement officers employed by the Kenosha Police Department, Kenosha County Sheriff's Department, Waukesha County Sheriff's Department, Racine County Sheriff's Department, Sauk County Sheriff's Department, Walworth County Sheriff's Department, Washington County Sheriff's Department, Menomonee Falls Police Department, and West Allis Police Department, who were deployed to respond to the protests on August 25, 2020.

**RESPONSE**:        Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.  Hereafter, John Doe police officers employed by the City of Kenosha, the Village of Menomonee or the City of West Allis during the times relevant to the complaint will be referred to as "Certain John Does."

20.    Defendant CITY OF KENOSHA is a Wisconsin municipal corporation, which operates the Kenosha Police Department ("KPD"), which in turn sets city-wide policies for the conduct of police officers employed by the City of Kenosha.  The KPD deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE**:        Admit that the City of Kenosha is a Wisconsin municipal corporation which operates the Kenosha Police Department; as to the allegation "which in turn sets city-wide policies … Kenosha," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.  As to the second sentence of this paragraph, deny.

7

21.    Defendant COUNTY OF KENOSHA is a governmental entity within the State of Wisconsin, an arm of which is the Kenosha County Sheriff's Department ("KCSD"), which in turn sets policies for the conduct of sheriff's deputies employed by the Kenosha County Sheriff's Department.  The KCSD deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE**:        Admit that the County of Kenosha is a governmental entity, an arm of which is the Kenosha County Sheriff's Department; as to the allegation "which in turn sets policies … Kenosha County Sheriff's Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.  As to the second sentence of this paragraph, deny.

22.    Defendant COUNTY OF WAUKESHA is a governmental entity within the State of Wisconsin, an arm of which is the Waukesha County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Waukesha County Sheriff's Department.  The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE:**        Admit that the County of Waukesha is a governmental entity, an arm of which is the Waukesha County Sheriff's Department; as to the allegation "which in turn sets policies … Waukesha County Sheriff's Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to

8

admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

23. Defendant COUNTY OF RACINE is a governmental entity within the State of Wisconsin, an arm of which is the Racine County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Racine County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE:** Admit that the County of Racine is a governmental entity, an arm of which is the Racine County Sheriff's Department; as to the allegation "which in turn sets policies … Racine County Sheriff's Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

24. Defendant COUNTY OF SAUK is a governmental entity within the State of Wisconsin, an arm of which is the Sauk County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Sauk County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE:** Admit that the County of Sauk is a governmental entity, an arm of which is the Sauk County Sheriff's Department; as to the allegation "which in turn sets policies … Sauk County Sheriff's Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided

9

a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

25. Defendant COUNTY OF WALWORTH is a governmental entity within the State of Wisconsin, an arm of which is the Walworth County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Walworth County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE:** Admit that the County of Walworth is a governmental entity, an arm of which is the Walworth County Sheriff's Department; as to the allegation "which in turn sets policies … Walworth County Sheriff's Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

26. Defendant COUNTY OF WASHINGTON is a governmental entity within the State of Wisconsin, an arm of which is the Washington County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Washington County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE:** Admit that the County of Washington is a governmental entity, an arm of which is the Washington County Sheriff's Department; as to the allegation "which in turn sets policies … Washington County Sheriff's Department," these answering

defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

27.　　Defendant VILLAGE OF MENOMONEE FALLS is a governmental entity within the State of Wisconsin, an arm of which is the Menomonee Falls Police Department, which in turn sets policies for the conduct of officers employed by the Menomonee Falls Police Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**RESPONSE:**　　Admit that the Village of Menomonee Falls is a governmental entity, an arm of which is the Menomonee Falls Police Department; as to the allegation "which in turn sets policies … Menomonee Falls Police Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

28.　　Defendant CITY OF WEST ALLIS is a governmental entity within the State of Wisconsin, an arm of which is the West Allis Police Department, which in turn sets policies for the conduct of officers employed by the West Allis Police Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

11

**RESPONSE:** Admit that the City of West Allis is a governmental entity, an arm of which is the West Allis Police Department; as to the allegation "which in turn sets policies … West Allis Police Department," these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied. As to the second sentence of this paragraph, deny.

29. Hereinafter, all the law enforcement officers and departments set forth above are referred to, collectively, as the "Law Enforcement Defendants."

**RESPONSE:** State that the allegations need no response.

30. Hereinafter, the Waukesha County Sheriff's Department, Racine County Sheriff's Department, Sauk County Sheriff's Department, Walworth County Sheriff's Department, Washington County Sheriff's Department, Menomonee Falls Police Department, and West Allis Police Department, and their officers, are referred to as "Additionally Responding Defendants" or "Additionally Responding Officers."

**RESPONSE:** State that the allegations need no response.

31. Hereinafter, the City of Kenosha, County of Kenosha, County of Waukesha, County of Racine, County of Sauk, County of Walworth, County of Washington, Village of Menomonee Falls, and City of West Allis are referred to as the "Municipal Defendants."

**RESPONSE:** State that the allegations need no response.

32. Defendant KYLE RITTENHOUSE is a citizen of Illinois who shot and killed Anthony Huber on August 25, 2020.

**RESPONSE:** As to the citizenship of Kyle Rittenhouse, deny sufficient information to form a belief as to the truth of the allegation, and accordingly, deny same; admit that Kyle Rittenhouse shot and killed Anthony Huber on August 25, 2020.

## FACTS

### Kenosha Police Shoot Jacob Blake, Sparking Protests

33. On August 23, 2020, in Kenosha, Wisconsin, KPD officer Rusten Sheskey shot Jacob Blake in the back seven times without justification.

**RESPONSE:** Deny.

34. Neighbors and other concerned residents of Kenosha demonstrated in protests against the shooting of Jacob Blake. Demonstrators initially gathered at the site where Mr. Blake was shot. When video of the KPD's shooting of Blake was released, it rightly sparked public outrage. That evening hundreds of additional demonstrators gathered in downtown Kenosha to protest.

**RESPONSE:** As to the first and second sentences of this paragraph, these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied; as to the third sentence, deny; as to the fourth sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

35. Officers from the KPD and the KCSD were dispatched to monitor the demonstrations, police the actions of individuals present, and disperse the crowds.

**RESPONSE:** Deny.

13

36.     The KPD and KCSD officers at the scene were antagonistic toward the demonstrators, who were voicing their outrage at the racist and systemic violence conducted by the very officers who were policing the demonstrations.

**RESPONSE**:          Deny.

37.     An emergency overnight curfew of 10:15 p.m. was put in place.  The curfew was aimed at protestors and not actually directed at, or enforced against, others in the City violating the order.

**RESPONSE**:          As to the first sentence of this paragraph, admit; as to the second sentence, deny.

38.     Officers from the KPD and KCSD fired tear gas and rubber bullets into the crowds to break up the demonstrations, and they arrested many demonstrators.

**RESPONSE**:          Deny.

39.     On Monday, August 24, 2020, the demonstrations continued.  Defendant Beth put in place an 8 p.m. curfew.  Again, the curfew was aimed at protestors.

**RESPONSE**:          As to the first sentence of this paragraph, deny as stated; as to the second sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; as to the third sentence, deny.

40.     That curfew remained in effect on August 25, 2020.

**RESPONSE**:          Admit.

**KPD and KCSD Coordinate Their Response and Control of the Protests with Departments and Officers from Neighboring Communities**

41.     On August 25, 2020, in addition to the officers from KPD and KCSD, the Additionally Responding Departments deployed officers and equipment to participate in the response and control of the protests in Kenosha.  The Additionally Responding Officers joined forces with the KPD and KCSD and worked under their coordination and tactical command.

**RESPONSE:**        As to the first sentence, deny; as to the second sentence, these answering defendants state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

42.     The Waukesha, Racine, Sauk, Walworth and Washington County Sheriff's Departments deployed Special Weapons and Tactics (SWAT) teams to coordinate with KPD and KCSD to respond to and control the protests in Kenosha.

**RESPONSE:**        Deny.

43.     In addition to officers, the Additionally Responding Departments also deployed equipment, including service weapons and crowd control tools such as pepper spray, tear gas and so-called non-lethal weapons such as bean bag shotguns and rubber bullets.  The Additionally Responding Departments also provided armored military vehicles designed for use in war, including BearCats and Mine-Resistant Ambush Protected trucks (MRAPs).

15

**RESPONSE:** As to the first sentence, admit that the Additionally Responding Departments deployed equipment, including service weapons and tools such as pepper spray and tear gas; deny that they deployed bean bag shotguns and rubber bullets; as to the second sentence, deny.

44. At various times, KPD, KCSD and Additionally Responding Departments used all these tools on or against protestors.

**RESPONSE:** Deny.

45. Tear gas is a chemical weapon that the United States military is banned from using under the 1925 Geneva Protocol and the United Nations Chemical Weapons Convention that went into effect in 1997. The KPD, KCSD, and Additionally Responding Departments deployed it repeatedly on protestors in Kenosha between August 23 and 25.

**RESPONSE:** As to the first sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; as to the second sentence, deny.

46. On the night of August 25, the Additionally Responding Officers all coordinated with and acted under a shared tactical command KPD and KCSD.

**RESPONSE:** Deny.

### Defendants Know Armed Individuals Plan to Patrol Kenosha And Have Threatened Harm to Citizens

47. The demonstrations continued into August 25, 2020.

**RESPONSE**: Deny any implication that what occurred on August 25, 2020 was merely a demonstration; admit that demonstrators were present.

16

48. That evening, armed individuals descended on Kenosha. They could be seen patrolling the streets in and around the demonstrations, brandishing weapons, threatening residents, and pointing weapons at peaceful demonstrators without provocation.

**RESPONSE**: State that the allegations are broad and vague. Accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

49. The armed individuals had arrived in part based on a Facebook post by Kevin Mathewson on behalf of a militia group he formed called the Kenosha Guard. Mathewson put out a call on Facebook for "patriots willing to take up arms and defend our City tonight against the evil thugs." He received hundreds of online responses, including many hundreds of people indicating that they would be attending.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

50. The responders to Mathewson's post made clear that they intended to patrol the demonstration armed, and with the intent to kill. Responses included the following:

   a. "Counter protest? Nah. I fully plan to kill looters and rioters tonight. I have my suppressor on my AR[Assault Rifle], these fools won't even know what hit them."

   b. "It's about time. Now it's time to switch to real bullets and put a stop to these impetuous children rioting."

   c. "Use hollow points, they expand on contact."

   d. "Armed and ready. Shoot to kill tonight."

17

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; admit only that many people present at the unrest in Kenosha were not exercising their first amendment rights but instead were committing criminal acts.

51. Defendants knew about the plans and intentions of the armed individuals, including the social media posts, and the plans and intentions of the pro-militia armed individuals that descended on downtown Kenosha.

**RESPONSE**: Deny.

52. Mathewson is a former Kenosha alderman, was known to the Defendants, and speaks regularly with Defendant Miskinis.

**RESPONSE**: Admit that Mathewson is a former Kenosha alderman; as to the remaining allegations, state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied; specifically deny that Miskinis sought advice or counsel from Mathewson.

53. Mathewson, calling himself the Commander of the Kenosha Guard, emailed Defendant Miskinis and Joseph Nosalik, KPD's Public Information Officer. The email stated, "Chief Miskinis: As you know, I am the Commander of the Kenosha Guard, a local militia. We are mobilizing tonight and have about 3,000 RSVP's. We have volunteers that will be in Uptown, downtown, and at the entrances to other neighborhoods." Matthewson also posted the email as an open letter to the Kenosha Chief of Police on social media.

18

**RESPONSE**: Admit that Mathewson sent the email described; deny any allegation that Chief Miskinis or Lt. Nosalik saw the email or social media post or were aware of their contents at any time in August of 2020; deny sufficient information to form a belief as to the truth of all other allegations, and accordingly, deny same.

54. The email and social media post made clear that these "volunteers" would not be there to protect their own homes or businesses, and that they had not been hired by any local business to secure property. Instead, they intended to patrol the streets, acting as armed law enforcement officials.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

55. Neither Defendant Miskinis nor Defendant Beth made any attempt to dissuade Mathewson or any other armed individuals from showing up in Kenosha to patrol the streets.

**RESPONSE**: Deny.

56. Defendants Miskinis and Beth acknowledged that the KPD and KCSD were aware that pro-militia, armed individuals intended to patrol and then did patrol downtown Kenosha.

**RESPONSE**: Deny.

57. The Additionally Responding Departments and their Officers were also fully aware that there were pro-militia armed individuals were patrolling downtown Kenosha. This was obvious to them when on scene. Indeed, one of the Additionally Responding Officers wrote in his report from the night of August 25, 2022 that "throughout the night"

19

they observed pro-militia groups "armed, mostly with long guns in the area of 60th and Sheridan."

**RESPONSE:** As to the first and second sentences, deny; as to the third sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

## Rittenhouse Shoots Anthony Huber and Two Others

58. Among the armed individuals who arrived in Kenosha on August 25 was Defendant Kyle Rittenhouse.

**RESPONSE**: Admit.

59. Defendant Rittenhouse was a 17-year-old from Antioch, Illinois.

**RESPONSE**: Admit that Rittenhouse was 17 years old on August 25, 2020 but deny any allegation that these answering defendants were aware of that on the night in question; as to "from Antioch, Illinois," state that the allegation is vague; accordingly, the these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

60. By his appearance, Defendant Rittenhouse was obviously a minor.

**RESPONSE**: Deny.

61. Defendant Rittenhouse possessed a Smith & Wesson AR-15 style .223 rifle, with a magazine holding 30 rounds of ammunition. This weapon was developed in the late 1950s as a weapon of war.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations of this paragraph, and accordingly, deny same.

20

62.     Defendant Rittenhouse was brandishing his gun openly and conspicuously, strapping it over his shoulder using a tactical sling designed to position the rifle at the center of his chest for rapid elevation and positioning.  The rifle was visible at all times across his body or in his hands.

**RESPONSE**:     State that the allegations are broad and vague.  Accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied; subject to the foregoing, these answering defendants have no information that Mr. Rittenhouse's rifle was not visible at all times across his body or in his hands.

63.     Defendant Rittenhouse was in clear violation of the law, which prohibits a minor from possessing or displaying such a gun.

**RESPONSE**:     Deny.

64.     Numerous KPD and KCSD officers saw Defendant Rittenhouse before and after the shootings that night, as did many of the Additionally Responding Officers. Despite being in clear violation of Wisconsin law, Defendant Rittenhouse was not asked for identification, was not questioned, was never detained, and was not disarmed.

**RESPONSE**:     As to the first sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; as to the second sentence, deny.

65.     Instead, the Law Enforcement Defendants allowed Defendant Rittenhouse to patrol the streets of downtown Kenosha with his deadly assault rifle, they invited him in, deputized him, conspired with him, and ratified his actions.

**RESPONSE**:        Deny.

66.    As a result of the Law Enforcement Defendants' actions, within the zone they controlled, Defendant Rittenhouse shot at four Kenosha-area residents, killing two of them and seriously injuring a third.

**RESPONSE**:        Deny.

67.    At around 11 p.m., without provocation or any legal justification, Defendant Rittenhouse pointed his gun at an unarmed demonstrator heading to his car to go home.

**RESPONSE**:        Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

68.    Around 11:45 p.m., Defendant Rittenhouse shot Joseph Rosenbaum in the parking lot of an auto dealership.  Rosenbaum was killed.

**RESPONSE**:        Admit.

69.    Instead of seeking medical attention, or any other form of aid, Defendant Rittenhouse called his friend Dominic Black, told Black that he had just killed someone, and then ran.

**RESPONSE**:        Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

70.    Defendant Rittenhouse ran from the scene of the Rosenbaum shooting with his assault rifle in his hands, holding it in a ready position.  People were yelling that Defendant Rittenhouse had just shot someone.

**RESPONSE**:        As to the first sentence of the paragraph, deny; as to the second sentence, state that the allegations are broad and vague; accordingly, these answering

22

defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

71. Defendant Rittenhouse stumbled and fell to the ground, and several citizens approached him in an attempt to disarm him.

**RESPONSE**: Admit that Rittenhouse fell to the ground; deny sufficient information to form a belief as to the truth of all other allegations, and accordingly, deny same.

72. Anthony Huber was one of those individuals. Anthony approached Defendant Rittenhouse to disarm him, stop the shooting, and save the lives of others.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

73. Anthony Huber was a hero.

**RESPONSE**: Deny.

74. As Anthony was reaching for Defendant Rittenhouse's rifle to pull it away, without provocation or any legal justification, Defendant Rittenhouse shot him in the chest:

**RESPONSE**: Admit that Rittenhouse shot Mr. Huber in the chest; state that the remaining allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

75. After Anthony was shot, Gage Grosskreutz approached Defendant Rittenhouse with his hands up, pleading with him to stop his shooting rampage. Without

provocation or any legal justification, Defendant Rittenhouse shot at Grosskreutz from point-blank range, hitting him in the arm.  Thankfully, Grosskreutz survived.

**RESPONSE**:  As to the first sentence of this paragraph, deny; as to the second sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; as to the third sentence, admit.

76.  But the shot that Defendant Rittenhouse fired at Anthony's chest was fatal.

**RESPONSE**:  Admit.

### The Law Enforcement Defendants Authorize Defendant Rittenhouse's Shootings

77.  The Law Enforcement Defendants did nothing to stop Defendant Rittenhouse's illegal conduct.  They did not arrest him for illegally carrying a gun.  They did not disarm him.  They did not limit his movement in any way.  They did not question him.  They did not stop him from shooting individuals after he started.  They did not arrest him, detain him, or question him even after he had killed two people.

**RESPONSE**:  State that these answering defendants did not arrest Mr. Rittenhouse or disarm him that night; as to all other allegations, the allegations contain implications and assumptions which prevent these answering defendants from providing a further response, and, accordingly, the allegations are denied.

78.  Instead, the Law Enforcement Defendants deputized Defendant Rittenhouse and other armed individuals, conspired with them, and ratified their actions by allowing them to patrol the streets armed illegally with deadly weapons and shoot and kill innocent citizens.

24

**RESPONSE**:        Deny.

79.        Among other things, the Law Enforcement Defendants directed their curfew order only at people protesting the Law Enforcement Defendants' own police violence, and not at Defendant Rittenhouse and others, who were supporters of law enforcement.

**RESPONSE**:        Deny.

80.        Defendant Rittenhouse and others were subject to a different set of rules and were allowed to move about freely in areas controlled by the Law Enforcement Defendants.

**RESPONSE**:        Deny.

81.        For example, at 9:57 p.m., a Kenosha Police Sergeant sent a message to all officers through the Department's internal messaging system noting the presence of armed individuals patrolling the streets in violation of the curfew order.

**RESPONSE**:        Deny.

82.        The Additionally Responding Officers were also fully aware of the presence of armed individuals patrolling the streets in violation of the curfew order, based on their observation of their presence "throughout the night" and their participation in a coordinated tactical command.

**RESPONSE:**        State that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

83.        Rather than take any steps to detain, dissuade, or disarm these armed individuals, a KPD Sergeant made clear that the pro-police armed individuals were not to

be detained, dissuaded, or disarmed, calling the armed individuals in blatant violation of the curfew order "very friendly."

**RESPONSE**: Deny.

84. Likewise, at 11:26 p.m., callers reported that some of the pro-police armed individuals had "slashed tires" in a nearby area. But the Defendants did nothing in response to this conduct, let alone arrest the perpetrators.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations and, accordingly, deny same.

85. To the contrary, one of the Additionally Responding Officers, on a text thread with others titled "Tactical Enforcement Unit Command Only" wrote, "Gotta love counter protestors. Slashing tires."

**RESPONSE**: State that this paragraph lacks context with which the alleged statement was made; accordingly, the allegations are broad and vague, and these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

86. Instead, at approximately 11:30 p.m., about fifteen minutes before Defendant Rittenhouse shot Rosenbaum, Huber and Grosskreutz, several Law Enforcement Defendants were talking to Defendant Rittenhouse and the other armed individuals who had congregated in the parking lot of a private business.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

26

87.     Despite the fact that the armed individuals were in violation of the curfew order, the officers and deputies communicated their full support and appreciation for Defendant Rittenhouse and others.

**RESPONSE**:          Deny.

88.     In video footage taken at the scene, officers can even be heard asking armed individuals if they needed water.  Defendant Rittenhouse can be seen telling the officers that they did need water, which officers gave them.

**RESPONSE**:          Admit only that some officers from unidentified jurisdictions, gave water to some individuals; deny sufficient information to form a belief as to whether these answering defendants were involved in that activity and, accordingly, deny any allegation that they were.

89.     Defendant Rittenhouse walked right up to the police vehicles.  Despite his obviously tender age, he was not asked for identification to demonstrate that he could lawfully possess an assault rifle.

**RESPONSE**:          As to the first sentence of this paragraph, state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied; as to the second sentence, deny.

90.     Officers working for the Law Enforcement Defendants not only provided armed individuals with water, but they voiced their support and appreciation for the actions of Defendant Rittenhouse and others, saying:  "We appreciate you guys, we really do."

**RESPONSE**:          Deny.

91.     Needless to say, the Law Enforcement Defendants did not offer assistance or appreciation to any protestors.  At the same time the officers were handing out assistance and praise to the armed individuals, including Defendant Rittenhouse, they can be heard over loudspeakers in their armored vehicles ordering the protestors to disperse:  "This is the last warning.  You will disperse."  And:  "This area is closed you are trespassing, leave now."

**RESPONSE**:     As to the first sentence of this paragraph, deny; as to the remaining allegations of the paragraph, state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied; admit only that the announcement quoted was made during the unrest in Kenosha; deny any allegation that it was directed only to protestors.

92.     No such warnings or threats were made to the armed individuals.

**RESPONSE**:     Deny.

93.     The Law Enforcement Defendants deliberately orchestrated these circumstances.  A clear message was sent that perceived protestors were required to disperse, while armed individuals who supported law enforcement could roam free and assist the officers.  These events directly led to Anthony Huber's death.

**RESPONSE**:     Deny.

94.     Before the fatal shootings, one of the armed individuals was interviewed.  He said the following:  "You know what the cops told us today?  They were like, 'We're gonna push 'em down by you, 'cause you can deal with them, and then we're gonna leave.'"

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

95. And that is exactly what happened. The Law Enforcement Defendants ordered the protestors to move south, funneling them into a confined area, where they were met by the violence perpetrated by Defendant Rittenhouse and the other armed individuals.

**RESPONSE**: Deny.

96. Internal communications and reports from members of the Law Enforcement Defendants reveal that they knew the pro-police armed individuals had gathered around 60th and Sheridan, yet they deliberately funneled protestors out of the park near 56th and Sheridan and forced them South right into the militia group they knew to be pro-police, in violation of the curfew order, slashing tires, and armed with long guns.

**RESPONSE:** Deny.

97. At all times, the Law Enforcement Defendants, Defendant Rittenhouse, and others knew and understood what it meant when they told heavily armed private citizens to "deal with" the protestors. In this manner, the Law Enforcement Defendants, Defendant Rittenhouse, and others arrived at a plan to collectively use force and state authority against the protestors.

**RESPONSE**: Deny.

98. For example, Defendant Rittenhouse's own lawyers stated that the police "maneuvered a mass of individuals down the street towards the auto shops" where the armed individuals had gathered.

29

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; deny the statement, if made, is true.

99. As a result, the Law Enforcement Defendants invited, deputized, authorized, conspired with, and ratified the actions of Defendant Rittenhouse, a boy illegally in possession of an assault rifle, who roamed the street in violation of an emergency curfew order, shooting innocent civilians, killing two, seriously injuring a third, and narrowly missing a fourth.

**RESPONSE**: Deny.

100. To make matters worse, when Huber and Grosskreutz were shot, the Law Enforcement Defendants were at the scene. Protestors yelled to the officers that Defendant Rittenhouse had just shot people. Remarkably, the officers did nothing to stop Defendant Rittenhouse, let alone question him, or arrest him. Instead, officers spoke to Defendant Rittenhouse and then let him walk away.

**RESPONSE**: As to the first sentence, deny; as to the second, third and fourth sentences, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

101. The only reason the Law Enforcement Defendants allowed Defendant Rittenhouse to walk away after shooting three people was because he was white and because he was affiliated with the armed individuals, who had the Law Enforcement Defendants' explicit support.

**RESPONSE**: Deny.

102. By inviting, deputizing, conspiring with, and ratifying the actions of armed individuals, who were empowered to patrol the streets of Kenosha, the Law Enforcement Defendants created an extremely and obviously dangerous and deadly environment, which led directly and foreseeably to the shootings of Anthony Huber and others.

**RESPONSE**: Deny.

103. The Law Enforcement Defendants' open support of and coordination with the armed individuals in the minutes and hours before the shootings deprived Anthony Huber and the other protestors of the basic protections typically provided by police. It was a license for the armed individuals to wreak havoc and inflict injury.

**RESPONSE**: Deny.

104. Defendant Rittenhouse's own lawyers have blamed the shootings on the Law Enforcement Defendants, highlighting their "abject failure to ensure basic law and order to citizens."

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; deny that the statements, if made, are true.

105. The Law Enforcement Defendants have continued their disparate treatment of Black people, even after the deaths of Huber and Rosenbaum. For example, Defendant Miskinis has refused to publicly condemn the crimes of Defendant Rittenhouse or the other armed individuals, and instead has ratified that misconduct. Indeed, he has defended the armed individuals as citizens exercising their constitutional rights. The protestors received the opposite treatment from Defendant Miskinis.

**RESPONSE**: Deny.

31

106.    Moreover, in his first press conference after the shooting, Defendant Miskinis refused to make any statements condemning or even dissuading the armed individuals, even when he was specifically asked if he wanted armed vigilante groups to be present again the next night of protests.

**RESPONSE**:    Deny.

## Racial Discrimination and Viewpoint Discrimination

107.    If Defendant Kyle Rittenhouse were Black, the Law Enforcement Defendants would have acted much differently.

**RESPONSE**:    Deny.

108.    If a Black person had approached police with an assault rifle, offering to patrol the streets with the police, he most likely would have been shot dead.

**RESPONSE**:    Deny.

109.    If a Black man had shot three citizens with an assault rifle and was seen walking away from the scene of the shooting with the assault rifle in hand, while other citizens yelled he was an active shooter, he would have been shot dead.

**RESPONSE**:    Deny.

110.    In none of these circumstances would the Law Enforcement Defendants have permitted the individual to roam the streets, illegally and heavily armed, shoot civilians, and then walk past a dozen officers, talk to them, and simply go home.

**RESPONSE**:    Deny.

111.    One need not look any further than the very event that gave rise to the protest at which Anthony Huber was killed: although Jacob Blake was not at the site of a shooting,

32

possessed no gun, brandished no weapon, had not shot or hurt anyone, and was climbing into his own car with two children, Blake was shot in the back seven times by officers employed by Defendant KPD.

**RESPONSE**:        Deny.

112.    By contrast, Defendant Rittenhouse was walking away from the scene of a double homicide with an assault rifle in his arms, and he was permitted to simply walk away.

**RESPONSE**:        Deny.

113.    Jacob Blake is Black.  Defendant Kyle Rittenhouse is White.

**RESPONSE**:        Admit.

114.    Moreover, the demonstrators were a diverse group of citizens protesting police violence against Black people, which included many Black-Americans and other people of color.  They were protesting, in part, the racial discrimination of Defendants KPD and KCSD, and their officers, as exemplified by the shooting of Jacob Blake.

**RESPONSE**:        Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

115.    The armed individuals were all White.

**RESPONSE**:        Deny.

116.    Similarly, the protestors were advocating a viewpoint critical of the police, including Defendants KPD and KCSD.  The armed individuals espoused a viewpoint that was avowedly pro-police.

**RESPONSE**: State that the allegations are broad and vague. Accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

117. The difference in treatment of the two groups was stark. The White, pro-police armed individuals were allowed by the Law Enforcement Defendants to patrol the streets with weapons of war, participating in the police action, and threatening and inflicting violence on innocence civilians; while the diverse group of protestors criticizing police actions were ordered to disperse because they were violating the curfew order. No such orders were given to the pro-police individuals, who were in violation of the curfew as well, and known to be slashing tires.

**RESPONSE**: Deny.

118. The reaction of some of the Law Enforcement Defendants to the shooting of three individuals by one of the pro-police armed individuals was openly callous. One of them texted on the night of August 25, shortly after Huber and the others had been shot by Defendant Rittenhouse, "Listening to gun fire. Such a nice night." He then linked a livestream of the shooting on Twitter, and texted, "Nice Video."

**RESPONSE**: State that this paragraph lacks context with which the alleged statement was made; accordingly, the allegations are broad and vague, and these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

119. The protestors were also treated differently than the armed individuals in terms of who was subject to arrest. In the days after the protests began, more than 150

34

protestors were arrested for allegedly violating the curfew order. Not even a single one of the armed individuals was arrested by the Law Enforcement Defendants for violating the same curfew order.

**RESPONSE**: As to the first and second sentences of this paragraph, deny; as to the third sentence, deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

120. Many of the armed individuals with whom the Law Enforcement Defendant departments had allied themselves were avowed racists.

**RESPONSE**: Deny.

121. Among the armed individuals present at the protest was Ryan Balch, a member of the Boogaloo Bois who could be seen patrolling the streets with Defendant Rittenhouse. The Boogaloo Bois are a right-wing militia group whose adherents include neo-Nazis and white supremacists. According to Balch, as many as 32 members of the Boogaloo Bois were in Kenosha patrolling the streets.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

122. In the months after he killed Anthony Huber, Defendant Rittenhouse was seen in a bar in his hometown flashing an "OK" sign, a symbol of white supremacy/white power.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

35

### Systematic Racial Discrimination in the Kenosha Police Department and Kenosha Sheriff's Department

123. Defendant KPD's support of, and coordination with, the armed individuals was a product of its systemic, racially discriminatory policies and practices.

**RESPONSE**: Deny.

124. The KPD has just eight Black police officers, out of a force of more than 200 officers. It has never had a Black person in top leadership positions, including police chief, assistant chief, or police inspector.

**RESPONSE**: As to the first sentence of this paragraph, the allegations are correct as of August 25, 2020; as to the second sentence, state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied.

125. Christopher Carter, a former Black police officer in the KPD who retired in 2011, has said he was consistently subject to racist aggression, including being called a "n*****," was discriminated against during his time at the KPD, and witnessed racist policing practices toward civilians.

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

126. In a recent article in the Washington Post, six current and former officers "described a department at odds with people of color, both inside and outside its ranks, with some officers routinely using racist language and excessive force." One of the former

officers stated, "You have officers there who openly admit to pulling someone over because they're Black and driving a nice car. And these are officers who train new officers."

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same; state that article in the Washington Post speaks for itself; deny that racist conduct or behavior is condoned or encouraged by the Kenosha Police Department.

127. Just eleven days before Jacob Blake was shot, a woman was arrested for filming police officers engaging in threats and physical abuse during the arrest of a Black man. Her video footage captured a KPD officer punching a man in the ribs twice after he had already been handcuffed. When she was ordered to disperse, she responded, "we're not moving until we know he's safe!" An officer responded, "Do you want to get shot?"

**RESPONSE**: As to the first and second sentences, deny; as to the remaining sentences, state that the allegations misstate the facts and context of the encounter and are denied; deny any allegation or implication that these answering defendants threatened her with a firearm.

128. For his part, Defendant Beth has his own history of racially discrimination conduct as the Kenosha County Sheriff. In 2018, two Black woman and three Black men were apprehended after a shoplifting incident and a high-speed chase. The youngest individual arrested was 16 years old. In comments after the arrest, Defendant Beth stated that it was time to "stop being politically correct," and that "these people have to be warehoused."

37

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

## LEGAL CLAIMS

### COUNT I:
**42 U.S.C. § 1983**
**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

129. Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-128 in full here.

130. Defendants acting in concert with each other and other co-conspirators—including Defendant Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed individuals—reached an agreement among themselves to deprive Huber of his constitutional rights, all as described in the various paragraphs of this Complaint.

**RESPONSE**: Deny.

131. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Huber of these rights.

**RESPONSE**: Deny.

132. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**RESPONSE**: Deny.

38

133.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**RESPONSE**:        Deny.

134.    As a direct and proximate result of the illicit prior agreement referenced above, Huber's rights were violated and he suffered injuries, including emotional distress and death.

**RESPONSE**:        Deny.

135.    Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**RESPONSE**:        Deny.

136.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**RESPONSE**:        Deny.

## COUNT II:
## 42 U.S.C. § 1985(3)
## CONSPIRACY TO OBSTRUCT JUSTICE BASED ON INVIDIOUS DISCRIMINATION

137.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**:        These answering defendants reallege and incorporate by reference their answers to paragraphs 1-136 in full here.

138.    Defendants are "persons" as that term is used in 42 U.S.C. § 1985.

**RESPONSE**:        State that the allegation is a legal conclusion to which no response is required; to the extent a response is required, deny sufficient information to form a belief as to the truth of the allegation and, accordingly, deny same.

139.    Defendants, acting in concert with each other and other co-conspirators—including Defendant Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed individuals—reached an agreement among themselves to deprive Huber of his constitutional rights and equal protection of the laws, all as described in the various paragraphs of this Complaint.

**RESPONSE**:        Deny.

140.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means.    In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Huber of these rights.

**RESPONSE**:        Deny.

141.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

40

**RESPONSE**:        Deny.

142.    The conspiracy between Defendants and the other co-conspirators set forth above, and the actions taken in furtherance thereof, were motivated by racial animus.

**RESPONSE**:        Deny.

143.    Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Huber, by creating a dangerous environment in which injury to Huber and others was highly likely.  They did this by permitting the all-white armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them."  Moreover, in the week or so after the protests began, more than 150 members of the racially diverse group of protestors were arrested for violating Defendants' curfew order.  Not a single one of the all-white armed individuals was arrested for violating the same curfew order.

**RESPONSE**:        Deny.

144.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**RESPONSE**:        Deny.

41

145.   As a direct and proximate result of the illicit prior agreement referenced above, Huber's rights were violated and he suffered injuries, including emotional distress and death.

**RESPONSE**:      Deny.

146.   Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**RESPONSE**:      Deny.

147.   The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**RESPONSE**:      Deny.

<div align="center">

**COUNT III:**
**42 U.S.C. § 1983, 42 U.S.C. § 1985(2)**
**EQUAL PROTECTION**

</div>

148.   Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**RESPONSE**:      These answering defendants reallege and incorporate by reference their answers to paragraphs 1-147 in full here.

42

149.   In the manner described in this Complaint, Defendants denied Huber equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.

**RESPONSE**:        Deny.

150.   Defendants' conduct was motivated by racial animus and constituted purposeful discrimination, and it also affected Huber and the racially diverse group of protestors in a grossly disproportionate manner as compared to similarly situated White individuals.

**RESPONSE**:        Deny.

151.   Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Huber, by creating a dangerous environment in which injury to Huber and others was highly likely.  They did this by permitting the all-white armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them."  Moreover, in the week or so after the protests began, more than 150 members of the racially diverse group of protestors were arrested for violating the KPD and KCSD's curfew order.  Not a single one of the all-White armed individuals was arrested for violating the same curfew order.

43

**RESPONSE**:         Deny.

152.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**RESPONSE**:         Deny.

153.    As a direct and proximate result of the conduct referenced above, Huber's was deprived of equal protection of the laws, and he suffered injuries, including emotional distress and death.

**RESPONSE**:         Deny.

154.    Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**RESPONSE:**         Deny.

155.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**RESPONSE**:         Deny.

44

## COUNT IV:
## 42 U.S.C. § 1983
## FIRST AMENDMENT RETALIATION

156.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**:        These answering defendants reallege and incorporate by reference their answers to paragraphs 1-155 in full here.

157.    In the manner described in this Complaint, Defendants subjected Huber and the other protestors to discriminatory and retaliatory treatment based on their opinions critical of police violence, in violation of the First Amendment of the United States Constitution.

**RESPONSE**:        Deny.

158.    Huber and the other protestors participated in rallies and demonstrations in downtown Kenosha advocating a viewpoint critical of the police, including Defendants KPD and KCSD, similar to the national and worldwide protests against police violence that began in the summer of 2020.  Such conduct is protected by the First Amendment of the United States Constitution.

**RESPONSE**:        As to the first sentence of this paragraph, state that the allegations are broad and vague; accordingly, these answering defendants are not provided a reasonable opportunity to understand what they are asked to admit and accordingly, the allegations are denied; as to the second sentence, admit only that peaceful protest is protected by the First Amendment of the United States Constitution; deny any other allegations.

159. The armed individuals espoused a viewpoint that was avowedly "pro-police."

**RESPONSE**: Deny sufficient information to form a belief as to the truth of the allegations, and accordingly, deny same.

160. Defendants subject Huber and other peaceful protestors to discrimination and retaliation because of their viewpoints critical of police. They did this by permitting "pro-police" armed individuals to taunt, threaten and monitor the diverse group of protestors without consequence, by permitting the "pro-police" armed individuals to patrol the streets like deputized police officers, by offering the "pro-police" armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the "pro-police" armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the protestors voicing criticism of racist and violent police conduct were arrested for violating KPD and KCSD's curfew order. Not a single one of the "pro-police" armed individuals was arrested for violating the same curfew order.

**RESPONSE**: Deny.

161. The protected speech of Huber and the other protestors, and the viewpoint critical of police that they expressed, was a motivating factor in Defendants' disparate, discriminatory, and retaliatory treatment of the protestors.

**RESPONSE**: Deny.

162. The Defendants' retaliatory actions in response to Huber and the other protestors' protected speech have had a chilling effect that acts as a deterrent to free speech.

**RESPONSE**: Deny.

163.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**RESPONSE**: Deny.

164.   As a direct and proximate result of the conduct referenced above, Huber's First Amendment rights were violated, and he suffered injuries, including emotional distress and death.

**RESPONSE**: Deny.

165.   Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**RESPONSE:** Deny.

166.   The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**RESPONSE**: Deny.

47

## COUNT V:
## 42 U.S.C. § 1983
## DEPRIVATION OF DUE PROCESS

167.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**:    These answering defendants reallege and incorporate by reference their answers to paragraphs 1-166 in full here.

168.    In the manner described in this Complaint, Defendants allowed Rittenhouse and other illegally armed individuals to patrol the streets of downtown Kenosha with deadly weapons, inviting those individuals to use police powers, deputizing them, conspiring with them, and ratifying their actions.

**RESPONSE:**    Deny.

169.    Defendants even informed Defendant Rittenhouse and these armed individuals that they would funnel demonstrators toward them to be dealt with.

**RESPONSE**:    Deny.

170.    The misconduct described in this Count increased the danger faced by Huber and other peaceful demonstrators who were present.

**RESPONSE**:    Deny.

171.    In addition, the misconduct described in this Count shocked the conscience and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**RESPONSE**:    Deny.

172.    As a direct and proximate result of the conduct referenced above, Rittenhouse shot and killed Huber.

**RESPONSE**: Deny.

173. Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**RESPONSE:** Deny.

174. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**RESPONSE**: Deny.

### COUNT VI:
### 42 U.S.C. § 1986
### FAILURE TO INTERVENE

175. Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-174 in full here.

176. In the manner described in this Complaint, Defendants had knowledge that conspiratorial wrongs were about to be committed.

**RESPONSE**: Deny.

49

177.   Each of the Defendants had the power to prevent or aid in preventing the commission of those wrongs.

**RESPONSE**:        Deny.

178.   Defendants neglected to prevent or aid in preventing these wrongful acts where the wrongful acts were committed and could have been presented by reasonable diligence.

**RESPONSE**:        Deny.

179.   As a direct and proximate result of the conduct referenced above, Huber's constitutional rights were violated, and he suffered injuries, including emotional distress and death.

**RESPONSE**:        Deny.

180.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent them in court proceedings and incurred expenses associated with these proceedings and prosecuting the instant case.

**RESPONSE**:        Deny.

<div align="center">

**COUNT VII:**
**42 U.S.C. § 1983**
**Municipal Liability/*Monell* Policy Claim**

</div>

181.   Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**:        These answering defendants reallege and incorporate by reference their answers to paragraphs 1-180 in full here.

182.   As described more fully herein, the Municipal Defendants and the Additionally Responding Departments are themselves liable for the violation of Huber's constitutional rights.

**RESPONSE**:        Deny.

183.   Plaintiff's injuries were caused by the policies, practices, and customs of the Municipal Defendants, as well as by the actions of policy-making officials for the Municipal Defendants.

**RESPONSE**:        Deny.

184.   At all times relevant to the events described above and for a period of time prior and subsequent thereto, the Municipal Defendants failed to promulgate proper or adequate rules, regulations, policies, and procedures to ensure the protection of equal protection, first amendment and other constitutional rights of protestors and other individuals engaged in demonstrations and rallies on issues of public interest; to protect protestors and other individuals engaged in demonstrations and rallies on issues of public interest, including from counter-protestors and other individuals whose actions and presence is likely to create danger and result in violence; to ensure the equal enforcement (or non-enforcement) of curfew orders; to ensure decision-making free of racial discrimination as related to the monitoring and supervision of protests and demonstrations; to ensure decision-making free of viewpoint discrimination as related to the monitoring and supervision of protests and demonstrations; to protect the free speech rights of all persons regardless of race or viewpoint; and to protect against the likely violence attributable to the presence and threats of armed individuals deputizing themselves with

police duties. In addition, or alternatively, the Municipal Defendants failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of their officers and agents, with respect to the foregoing topics.

**RESPONSE**: Deny.

185. These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Municipal Defendants.

**RESPONSE**: Deny.

186. In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the Municipal Defendants had notice of widespread practices by their officers and agents to discriminate and retaliate against racial minorities and their allies, and against protestors challenging discriminatory and violent conduct by police officers including members of the Kenosha Police Department and Kenosha County Sheriff's Department and the Additionally Responding Departments; and to favor the view of "pro-police" groups such as the Kenosha Guard and the other armed individuals; and to subject favored and unfavored groups to different treatment.

**RESPONSE**: Deny sufficient information with respect to the County of Kenosha to form a belief as to the truth of the allegations, and accordingly, deny same; as to these answering defendants, deny.

187. These widespread practices, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the Municipal Defendants directly encouraged and were thereby the moving force behind the very type of misconduct at issue.

**RESPONSE**: Deny sufficient information with respect to the County of Kenosha to form a belief as to the truth of the allegations, and accordingly, deny same; as to these answering defendants, deny.

188. The above widespread practices and customs, so well settled as to constitute *de facto* policies of the Municipal Defendants were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**RESPONSE**: Deny sufficient information as to the County of Kenosha to form a belief as to the truth of the allegations, and accordingly, deny same; as to these answering defendants, deny.

189. In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, in that the constitutional violations committed against Huber were committed with the knowledge or approval of persons with final policymaking authority for the Municipal Defendants or were committed by persons with such final policymaking authority.

**RESPONSE**: Deny sufficient information as to the County of Kenosha to form a belief as to the truth of the allegations, and accordingly, deny same; as to these answering defendants, deny.

190. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the Municipal Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

53

**RESPONSE**:        Deny.

## COUNT VIII:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

191.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**:        These answering defendants reallege and incorporate by reference their answers to paragraphs 1-190 in full here.

192.    In the manner described in this Complaint, Defendants engaged in extreme and outrageous conduct.

**RESPONSE**:        Deny.

193.    Defendants' actions set forth above were rooted in an abuse of power or authority.

**RESPONSE**:        Deny.

194.    Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and death, and with reckless disregard of that probability.

**RESPONSE**:        Deny.

195.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

**RESPONSE**:        Deny.

196.    Defendants' conduct intentionally or recklessly caused severe emotional distress to another.

**RESPONSE**:        Deny.

54

## COUNT IX:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

197. Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-196 in full here.

198. In the manner described in this Complaint, Defendants were negligent.

**RESPONSE**: Deny.

199. Plaintiff was impacted by the incidents related to Defendants' negligence.

**RESPONSE**: Deny.

200. Plaintiff suffered serious emotional distress of the type that a reasonable person would expect to occur.

**RESPONSE**: Deny sufficient information form a belief as to the truth of the allegations, and accordingly, deny same.

201. As a direct and proximate result of the conduct referenced above, Huber suffered injuries, including emotional distress and death.

**RESPONSE**: Deny sufficient information form a belief as to the truth of the allegations, and accordingly, deny same.

## COUNT X:
## NEGLIGENCE

202. Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-201 in full here.

203.    Defendants had a duty to Huber and the other protestors to act with ordinary care and prudence so as not to cause harm or injury to Huber.

**RESPONSE**:        State that these allegations contain a legal conclusion to which no response is required; to the extent a response is required, deny that these answering defendants violated any legal duty to Mr. Huber or others.

204.    By engaging in the manner described in this Complaint, Defendants failed to act with ordinary care and breached their duty of care owed to Huber.

**RESPONSE**:        Deny.

205.    As a direct and proximate result of the conduct referenced above, Huber suffered injuries, including emotional distress and death.

**RESPONSE**:        Deny.

## COUNT XI:
## NEGLIGENT HIRING, SUPERVISION AND TRAINING

206.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE**:        These answering defendants reallege and incorporate by reference their answers to paragraphs 1-205 in full here.

207.    Huber suffered damages from foreseeable misconduct of employees and agents supervised by the Law Enforcement Defendants.

**RESPONSE**:        Deny.

208.    The Law Enforcement Defendants' employees in supervisory roles had a duty to properly supervise officers and to oversee their treatment of Huber and other protestors.

56

**RESPONSE**: State that these allegations contain a legal conclusion to which no response is required; to the extent a response is required, deny that these answering defendants failed in any legal duty to Mr. Huber or others.

209. The Law Enforcement Defendants blatantly disregarded the high probability that, by permitting their officers and agents to deputize and conspire with armed individuals, Huber would suffer injuries including death. These Defendants were therefore negligent in their non-discretionary duties to supervise individual officers in their agencies.

**RESPONSE**: Deny.

210. As a direct and proximate result of the negligent supervision described above, Huber suffered injuries, including emotional distress and death.

**RESPONSE**: Deny.

## COUNT XII:
## SURVIVAL

211. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-210 in full here.

212. In the manner described in this Complaint, Defendants' committed unlawful conduct as a result of which Defendant Kyle Rittenhouse fatally shot Anthony Huber. Between having been shot and when he ultimately passed, Huber suffered "other damage" to his person pursuant to Wis. Stat. § 895.01(1)(am).

**RESPONSE**: Deny.

57

213. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**RESPONSE**: Deny.

214. As a result of these actions, Huber suffered severe injuries, including physical pain, emotional distress, and ultimately death.

**RESPONSE**: Deny.

## COUNT XIII:
## WRONGFUL DEATH

215. Each of the paragraphs of this Complaint is incorporated as if fully stated herein.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-214 in full here.

216. In the manner described in this Complaint, Defendants intentionally and unjustifiably caused the death of Anthony Huber, and Huber therefore had a valid claim for damages against the Defendants at the time of his death.

**RESPONSE**: Deny.

217. As a consequence, Huber's parents—John and Karen Bloom—have suffered, and continue to suffer, significant emotional distress and harm, including but not limited to the loss off society and companionship with Huber.

**RESPONSE**: Deny.

218. Plaintiff is the personal representative of the Estate of Anthony Huber, and the proper party to pursue wrongful death damages.

**RESPONSE**: Deny sufficient information form a belief as to the truth of the allegations, and accordingly, deny same.

219. The described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**RESPONSE**: Deny.

<u>**COUNT XIV:**</u>
**RESPONDEAT SUPERIOR**

220. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**RESPONSE**: These answering defendants reallege and incorporate by reference their answers to paragraphs 1-219 in full here.

221. In committing the acts alleged in the preceding paragraphs, Defendants Miskinis, Beth and John Doe Police Officers were agents, members, or employees of the Municipal Defendants, acting at all relevant times within the scope of their employment and under color of law.

**RESPONSE**: These answering defendants incorporate their denials and responses to previous paragraphs and specifically deny that they acted improperly or illegally during the unrest in Kenosha in August of 2020; the acts that they did take were within the scope of their employment and under color of law; deny any other allegations.

222. These Defendants are liable as principals for all torts committed by their agents.

**RESPONSE**: Deny.

## COUNT XV:
## INDEMNIFICATION

223.  Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**RESPONSE**:  These answering defendants reallege and incorporate by reference their answers to paragraphs 1-222 in full here.

224.  Wisconsin law, Wisc. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

**RESPONSE**:  State that these allegations contain a legal conclusion to which no response is required; to the extent a response is required, state that the statute described is a portion of the law and an incomplete statement of the law; deny any other allegations.

225.  During all times relevant to this complaint, Defendants Miskinis, Beth and John Doe Police Officers were employees of the Municipal Defendants, who acted within the scope of their employment in committing the acts described herein.

**RESPONSE**:  Admit only that these answering defendants were employees of their respective municipalities who acted within the scope of their employment during the unrest in August of 2020; deny that they committed improper or illegal acts and incorporate by reference their denials and responses to previous paragraphs; deny sufficient information to form a belief as to the truth of the allegations as to John Doe defendants, and accordingly, deny same.

60

## DAMAGES

226.     Under 42 U.S.C. §§ 1983, 1985 and 1986, and supplemental state law claims, Plaintiff is entitled to an award of compensatory damages against the Defendants.

**RESPONSE**:          Deny.

227.     In the wrongful acts or omissions described in this complaint, defendant acted with fraud, oppression, and malice.

**RESPONSE**:          Deny.

228.     By reason of Defendants' acts or omissions described in this complaint, Plaintiff is entitled to recover punitive and exemplary damages.

**RESPONSE**:          Deny.

229.     Under 42 U.S.C. § 1988, if Plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorneys' fees, non-taxable expenses and costs.

**RESPONSE:**          Deny.

230.     Deny any allegation not specifically admitted in this answer.

231.     Deny that plaintiffs are entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

These answering defendants affirmatively allege as follows:

1.       Plaintiffs may have failed to state a claim upon which relief can be granted against any and/or all defendants.

2.      Any alleged state-law based claims and/or damages may be limited or barred in whole or in part by the Wisconsin Statutes, including but not limited to Wis. Stat. § 893.80.

3.      One or more of the plaintiff's claims may be barred by the doctrines of claim and/or issue preclusion.

4.      These answering defendants are qualifiedly immune from any and all liability in this case.

5.      These answering defendants at all times acted in good faith.

6.      The defendants enjoy all the immunities, privileges and limitations on actions afforded by common law and state and federal constitutions, statutes and regulations and local laws and regulations.

7.      Anthony Huber's injuries were caused in whole or in part by his failure to use ordinary care for his own safety or by the conduct and behavior of third parties and through no fault on the part of these answering defendants.

8.      These answering defendants' acts were reasonable in light of the totality of circumstances facing them at all times relevant to this action.

9.      These answering defendants are immune from suit and liability for action performed in discharge of official duties, which were discretionary in nature, performed in good faith and in belief that they were necessary to discharge his duties.

10.     Plaintiffs are not entitled to punitive damages against these answering defendants.

11.     None of the answering defendants' alleged actions were taken with a deliberate indifference to any alleged risk that a violation of a person's constitutional or statutory right will follow the action.

12.     None of the alleged injuries or damages, including constitutional injuries, occurred because of, due to, or arose out of any policy or custom of these answering defendants.

13.     Plaintiffs may have failed to mitigate their damages, if any.

14.     The answering defendants state that discovery has not yet commenced and, as a result, that they reserve the right to assert additional affirmative defenses as may be appropriate under the facts as they are developed in discovery.


WHEREFORE, defendants Daniel G. Miskinis, Eric Larsen, City of Kenosha, Village of Menomonee Falls, City of West Allis and Certain John Does demand judgment dismissing all claims stated in the Complaint against them on their merits and with prejudice, together with the costs, disbursements and attorneys' fees which they incur in the defense of this action and which are allowed by law.


## JURY DEMAND

Defendants demand a trial by jury of twelve in this matter.

Dated:  March 16, 2023.

<div style="margin-left: 40%;">

STAFFORD ROSENBAUM LLP

 *Electronically signed by Ted Waskowski*
Ted Waskowski (SBN: 1003254)
Kyle W. Engelke (SBN: 1088993)
Clementine Uwabera (SBN: 1114847)

Attorneys for Defendants Daniel G. Miskinis,
Eric Larsen, City of Kenosha, Village of
Menomonee Falls, City of West Allis and
any John Doe Police Officers employed by the
City of Kenosha, Village of Menomonee Falls
or the City of West Allis

</div>

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email:          twaskowski@staffordlaw.com
                kengelke@staffordlaw.com
                cuwabera@staffordlaw.com
608.256.0226