**UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| JOHN HUBER, in his individual capacity and as representative of the ESTATE of ANTHONY HUBER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 21-CV-969 |
| DAVID G. BETH, et al, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANT KYLE RITTENHOUSE'S ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT**

Defendant Kyle Rittenhouse by his undersigned counsel, hereby answer the First Amended Complaint filed by Plaintiff John Huber ("Plaintiff"). Except as otherwise admitted herein, Defendant Rittenhouse denies each and every allegation in the Complaint, including, without limitation, any allegations contained in its prayer for relief, headings, and subheadings. To the extent that Defendant Rittenhouse denies knowledge or information sufficient to form a belief about the truth of an allegation, that allegation is deemed to be denied. The Answer is based upon Defendant Rittenhouse's investigation to date, and Defendant Rittenhouse expressly reserves the right to amend the Answer to the full extent provided by applicable law.

## I.      INTRODUCTION

1.      This case involves the tragic death of Anthony Huber, a beloved son and community member, who was shot and killed while committing an act of remarkable heroism.

1

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph. Information provided as part of discovery in Kenosha County Case 2020CF983 reflects a damaged and estranged relationship between Anthony Huber and his father, John Huber. Defendant Rittenhouse further denies that Anthony Huber acted heroically by assaulting him with a deadly weapon while Defendant Rittenhouse was attempting to surrender himself to law enforcement.

2.      On August 25, 2020, in Kenosha, Wisconsin, Huber was participating in protests against police violence, which were sparked by the police shooting of Jacob Blake two days earlier. Mr. Blake was a Black man who had been shot in the back seven times by an officer in the Kenosha Police Department, and Huber was among many who peacefully protested the shooting and Kenosha's pattern of racist and violent behavior by police officers and other officials.

**ANSWER**: Defendant Rittenhouse admits in part and denies in part the allegations contained within this paragraph. Specifically, Defendant Rittenhouse denies that the "protesting" which occurred in the evening hours of August 25, 2020 and the preceding dates was "peaceful."

3.      During the protests, private citizens took up arms and patrolled the streets of Kenosha, acting as law enforcement agents. Many of them had posted racist messages and threatened violence on social media before descending upon Kenosha. They made their plans known to law enforcement officials.

**ANSWER**: Defendant Rittenhouse denies: 1): having patrolled the streets of Kenosha, acting as a law enforcement agent; 2). having personally posted any racist messages on social media related to the civil unrest in Kenosha; 3). having personally threatened violence on social media related to the civil unrest in Kenosha; and 4). making any plans to go to Kenosha known to law enforcement. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph.

2

4. These armed individuals were not Kenosha business owners whose property had been damaged, nor were they hired by any of those businesses to come protect their property.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

5. One of these armed individuals was Defendant Kyle Rittenhouse, who was then 17 years old. He crossed into Wisconsin from Illinois, carrying an assault rifle on the streets of Kenosha, in open violation of the law.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively asserts that he was compliant within the law of the state of Wisconsin, pursuant to Wis. Stat. § 948.60(3)(c), while carrying the firearm at issue.

6. Astonishingly, the Kenosha Police Department, Kenosha County Sheriff's Department, their supervising officials and police officers, and law enforcement officers from surrounding communities did not treat Defendant Rittenhouse or any of the other armed individuals patrolling the streets as a threat to the safety of themselves or the citizens they were sworn to protect.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in this paragraph.

7. Instead, the law enforcement Defendants deputized these armed individuals, conspired with them, and ratified their actions by letting them patrol the streets, armed with deadly weapons, to mete out justice as they saw fit. In addition, the law enforcement Defendants thanked Defendant Rittenhouse and other armed individuals, gave them water, and allowed them to openly defy the emergency curfew order that was in place. The law enforcement Defendants even made plans to funnel the protestors toward the armed individuals "deal with them."

3

**ANSWER**: Defendant Rittenhouse admits having received water directly from law enforcement on August 25, 2020. Defendant Rittenhouse denies in part the additional allegations contained in this paragraph and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations. Specifically, Defendant Rittenhouse denies: 1). being "deputized" by any member of law enforcement; 2). conspiring with any member of law enforcement; 3). "patrolling" the streets of Kenosha; 4). meting out any type of "justice"; and 5). having participated in any "plan" by law enforcement to "deal with" any other individual(s) present in Kenosha on August 25, 2020.

8.      As a result, Defendant Rittenhouse fired his assault rifle indiscriminately multiple times at citizens on the street. He shot and killed two men, seriously injured a third, and narrowly missed a fourth. At the time Defendant Rittenhouse encountered Anthony Huber, Defendant Rittenhouse had already killed one man.

**ANSWER**: Defendant Rittenhouse denies firing his rifle "indiscriminately" at any individual. Defendant Rittenhouse admits lawfully firing four shots at Joseph Rosenbaum in an act of self-defense after Rosenbaum threatened and chased him down. Defendant Rittenhouse admits legally firing one shot at Anthony Huber in an act of self-defense, after being assaulted at least twice by Huber with a skateboard. Defendant Rittenhouse admits legally firing two shots at a masked, unidentified individual known as "Jump-Kick Man," in an act of self-defense, in response to being assaulted by that individual and sustaining a head injury. Defendant Rittenhouse admits to successfully disarming Gaige Grosskreutz with one shot from his firearm as an act of self-defense, after Grosskreutz pointed a loaded handgun at Defendant Rittenhouse as he lay in the street.

4

9.      Anthony Huber is a hero. He attempted to disarm Defendant Rittenhouse, end the gunfire, stop the bloodshed, and protect his fellow citizens. Tragically, Anthony died when Defendant Rittenhouse shot him in the chest as Anthony tried to pull the assault rifle from Defendant Rittenhouse's hands.

**ANSWER**: Defendant Rittenhouse denies in part the allegations contained in this paragraph and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations. Anthony Huber attacked Defendant Rittenhouse with a dangerous weapon as he tried to surrender himself to the custody of law enforcement. At no time prior to Huber's attack did Defendant Rittenhouse directly engage with, or threaten Huber in any way. Huber was only shot after he unlawfully attacked, and attempted to disarm Defendant Rittenhouse.

10.      The conduct of the Defendants in this case directly caused Anthony Huber's death. Anthony's father, John Huber, and his mother, Karen Bloom, now seek justice for the death of their son.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph. While attempting to reach law enforcement officers, Defendant Rittenhouse was knocked to the ground and lawfully exercised his right to self-defense after Huber assaulted him with a dangerous weapon and attempted to take his firearm.

## II.      NATURE OF THE ACTION

11.      This is a civil action arising under 42 U.S.C. §§ 1983, 1985, and 1986, and under state law, for deprivation of Plaintiff's constitutional, statutory, and state-law rights.

**ANSWER**: Defendant Rittenhouse admits that Plaintiff has brought an action against Defendant Rittenhouse and that such action purports to assert the listed claims. Defendant

5

Rittenhouse denies that Huber was deprived of any constitutional, statutory, or state-law rights when he assaulted Defendant Rittenhouse with a dangerous weapon.

## III.   JURISDICTION AND VENUE

12.     Jurisdiction of this Court is invoked pursuant 28 U.S.C. §§1331 and 1343(a).

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because they are part of the same case and controversy described by Plaintiff's federal claims.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required.

14.     Venue is proper in this District, pursuant to 28 U.S.C. §1391, and because all of the conduct complained of herein occurred in this District.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required.

## IV.   PARTIES

15.     Plaintiff, JOHN HUBER is the father of Anthony Huber, deceased. ("Anthony") He sues in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER. ("Estate")

**ANSWER**: Upon representations of counsel, Defendant Rittenhouse admits that John Huber is the father of Anthony Huber, deceased, and that he is the Personal Representative of the Estate of Anthony Huber.

6

16. Defendant DAVID G. BETH was the duly elected Sheriff of Kenosha County, Wisconsin. Defendant Beth had the authority to make and enforce policies of the Kenosha County Sheriff's Department.

**ANSWER**: Upon representations of counsel, Defendant Rittenhouse admits that David G. Beth was the duly elected Sheriff of Kenosha County, Wisconsin, on August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

17. Defendant DANIEL G. MISKINIS was the Chief of Police for the Kenosha Police Department. Defendant Miskinis had the authority to make and enforce policies of the Kenosha Police Department.

**ANSWER**: Upon representations of counsel, Defendant Rittenhouse admits that Daniel G. Miskinis was the Chief of Police for the Kenosha Police Department on August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

18. Defendant ERIC LARSEN is the current Chief of Police for the Kenosha Police Department. He is sued in his official capacity only.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

19. Defendants JOHN DOE POLICE OFFICERS are unknown law enforcement officers employed by Defendant Kenosha Police Department, Kenosha County Sheriff's Department, Waukesha County Sheriff's Department, Racine County Sheriff's Department, Sauk County Sheriff's Department, Walworth County Sheriff's Department, Washington County

7

Sheriff's Department, Menomonee Falls Police Department, and West Allis Police Department, who were deployed to respond to the protests on August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

20.     Defendant CITY OF KENOSHA is a Wisconsin municipal corporation, which operates the Kenosha Police Department ("KPD"), which in turn sets city-wide policies for the conduct of police officers employed by the City of Kenosha. The KPD deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

21.     Defendant COUNTY OF KENOSHA is a governmental entity within the State of Wisconsin, an arm of which is the Kenosha County Sheriff's Department ("KCSD"), which in turn sets policies for the conduct of sheriff's deputies employed by the Kenosha County Sheriff's Department. The KCSD deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

22.     Defendant COUNTY of WAUKESHA is a governmental entity within the State of Wisconsin, an arm of which is the Waukesha County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Waukesha County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

8

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

23.     Defendant COUNTY OF RACINE is a governmental entity within the State of Wisconsin, and arm of which is the Racine County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Racine County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

24.     Defendant COUNTY OF SAUK is a governmental entity within the State of Wisconsin, an arm of which is the Sauk County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Sauk County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

25.     Defendant COUNTY OF WALWORTH is a governmental entity within the State of Wisconsin, an arm of which is the Walworth County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Walworth County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

9

26.     Defendant COUNTY OF WASHINGTON is a governmental entity within the State of Wisconsin, an arm of which is the Washington County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Washington County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

27.     Defendant VILLAGE OF MENOMONEE FALLS is a governmental entity within the State of Wisconsin, an arm of which is the Menomonee Falls Police Department, which in turn sets policies for the conduct of officers employed by the Menomonee Falls Police Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

28.     Defendant CITY OF WEST ALLIS is a governmental entity within the State of Wisconsin, an arm of which is the West Allis Police Department, which in turn sets policies for the conduct of officers employed by the West Allis Police Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

29.     Hereinafter, all the law enforcement officers and departments set forth above are referred to, collectively, as the "Law Enforcement Defendants."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

30.     Hereinafter, the Waukesha County Sheriff's Department, Racine County Sheriff's Department, Sauk County Sheriff's Department, Walworth County Sheriff's Department, Washington County Sheriff's Department, Menomonee Falls Police Department, and West Allis Police Department, and their officers, are referred to as "Additionally Responding Departments" or "Additionally Responding Officers."

**ANSWER**: Defendant Rittenhouse asserts that no answer is required in response to this paragraph.

31.     Hereinafter, the City of Kenosha, County of Kenosha, County of Waukesha, County of Racine, County of Sauk, County of Walworth, County of Washington, Village of Menomonee Falls, and city of West Allis are referred to as the "Municipal Defendants."

**ANSWER**: Defendant Rittenhouse asserts that no answer is required in response to this paragraph.

32.     Defendant KYLE RITTENHOUSE is a citizen of Illinois who shot and killed Anthony Huber on August 25, 2020.

**ANSWER**: Defendant Rittenhouse denies in part the allegations contained in this paragraph. Defendant Rittenhouse shot and killed Anthony Huber in a lawful act of self-defense, after Huber attacked him at least twice.

## V.     FACTS

### A.     Kenosha Police Shoot Jacob Blake, Sparking Protests

33.     On August 23, 2020, in Kenosha, Wisconsin, KPD officer Rusten Sheskey shot Jacob Blake in the back seven times without justification.

11

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

34. Neighbors and other concerned residents of Kenosha demonstrated in protests against the shooting of Jacob Blake. Demonstrators initially gathered at the site where Mr. Blake was shot. When video of the KPD's shooting of Blake was released, it rightly sparked public outrage. That evening hundreds of additional demonstrators gathered in downtown Kenosha to protest.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

35. Officers from the KPD and the KCSD were dispatched to monitor the demonstrations, police the actions of individuals present, and disperse the crowds.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

36. The KPD and KCSD officers at the scene were antagonistic toward the demonstrators, who were voicing their outrage at the racist and systemic violence conducted by the very officers who were policing the demonstrations.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

37. An emergency overnight curfew of 10:15 p.m. was put in place. The curfew was aimed at protestors and not actually directed at, or enforced against, others in the City violating the order.

**ANSWER**: Defendant Rittenhouse denies that any curfew put in place was either lawful, or legally enforceable. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

38.     Officers from the KPD and KCSD fired tear gas and rubber bullets into the crowds to break up the demonstrations, and they arrested many demonstrators.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse requests further definition of the word "many."

39.     On Monday, August 24, 2020, the demonstrations continued. Defendant Beth put in place an 8 p.m. curfew. Again, the curfew was aimed at protestors.

**ANSWER**: Defendant Rittenhouse denies that any curfew put in place was either lawful, or legally enforceable. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

40.     That curfew remained in effect on August 25, 2020.

**ANSWER**: Defendant Rittenhouse denies that any curfew put in place was either lawful, or legally enforceable.

**B.     KPD and KCSD Coordinate Their Response and Control of the Protests with Departments and Officers from Neighboring Communities**

41.     On August 25, 2020, in addition to the officers from KPD and KCSD, the Additionally Responding Departments deployed officers and equipment to participate in the response and control of the protests in Kenosha. The Additionally Responding Officers joined forces with the KPD and KCSD and worked under their coordination and tactical command.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

13

42.     The Waukesha, Racine, Sauk, Walworth, and Washington County Sheriff's Departments deployed Special Weapons and Tactics (SWAT) teams to coordinate with KPD and KCSD to respond to and control the protests in Kenosha.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

43.     In addition to officers, the Additionally Responding Departments also deployed equipment, including service weapons and crowd control tools such as pepper spray, tear gas, and so-called non-lethal weapons such as bean bag shotguns and rubber bullets. The Additionally Responding Departments also provided armored military vehicles designed for use in war, including BearCats and Mine-Resistant Ambush Protected trucks (MRAPs).

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

44.     At various times, KPD, KCSD, and the Additionally Responding Departments used all these tools on or against protestors.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

45.     Tear gas is a chemical weapon that the United States military is banned from using under the 1925 Geneva Protocol and the United Nations Chemical Weapons Convention that went into effect in 1997. The KPD, KCSD, and Additionally Responding Departments deployed it repeatedly on protestors in Kenosha between August 23 and 25.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

14

46.     On the night of August 25, the Additionally Responding Officers all coordinated with and acted under a shared tactical command with KPD and KCSD.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

## C.     Defendants Know Armed Individuals Plan to Patrol Kenosha and Have Threatened Harm to Citizens

47.     The demonstrations continued on August 25, 2020.

**ANSWER**: Defendant Rittenhouse admits that demonstrations continued during daylight hours on August 25, 2020.

48.     That evening, armed individuals descended on Kenosha. They could be seen patrolling the streets in and around the demonstrations, brandishing weapons, threatening residents, and pointing weapons at peaceful demonstrators without provocation.

**ANSWER**: Defendant Rittenhouse denies in part the allegations contained in this paragraph and lacks sufficient knowledge or information as to form a belief as to the truth of the additional allegations. A significant number of individuals who participated in the lawful, daytime protests and demonstrations in Kenosha on August 25, 2020 were either openly carrying, or concealed carrying firearms. A significant number of "demonstrators" present in the City of Kenosha during the evening of August 25, 2020 were also either openly carrying, or concealed carrying firearms. Furthermore, the actions directed by citizens at law enforcement, governmental property, and private property during the evening of August 25, 2020 far exceeded the scope of simple "demonstrations."

49.     The armed individuals had arrived in part based on a Facebook post by Kevin Mathewson on behalf of a militia group he formed called the Kenosha Guard. Mathewson put out a call on Facebook for "patriots willing to take up arms and defend our City tonight against the

15

evil thugs." He received hundreds of online responses, including many hundreds of people indicating that they would be attending.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as he was never a member of the purported "Kenosha Guard" Facebook group; never saw the post referenced in this paragraph until it was turned over as part of discovery in Kenosha County Case 2020CF983; and had never met, personally corresponded with, or otherwise interacted with Kevin Mathewson or any of his known agents or associates, prior to the filing of this action.

50.     The responders to Mathewson's post made clear that they intended to patrol the demonstration armed, and with the intent to kill. Responses included the following:

     a.     "Counter protest? Nah. I fully plan to kill looters and rioters tonight. I have my suppressor on my AR [Assault Rifle], these fools won't even know what hit them."

     b.     "It's about time. Now it's time to switch to real bullets and put a stop to these impetuous children rioting."

     c.     "Use hollow points, they expand on contact."

     d.     "Armed and ready. Shoot to kill tonight."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively denies that none of the responses to the post at issue were made or seen by him.

51.     Defendants knew about the plans and intentions of the armed individuals, including the social media posts, and the plans and intentions of the pro-militia armed individuals that descended on downtown Kenosha.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Prior to arriving at Car Source during the early evening of August 25, 2020, Defendant Rittenhouse had never met, spoken with, or otherwise interacted with any individuals known to be armed in the city of Kenosha on August 25, 2020, except Jonathan Smith and Dominick Black.

52. Mathewson is a former Kenosha alderman, was known to the Defendants, and speaks regularly with Defendant Miskinis.

**ANSWER**: Defendant Rittenhouse denies that Kevin Mathewson was known to him on, or prior to, August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

53. Mathewson, calling himself the Commander of the Kenosha Guard, emailed Defendant Miskinis and Joseph Nosalik, KPD's Public Information Officer. The email stated, "Chief Miskinis: As you know, I am the Commander of the Kenosha Guard, a local militia. We are mobilizing tonight and have about 3,000 RSVP's. We have volunteers that will be in Uptown, downtown, and at the entrances to other neighborhoods." Matthewson [sic] also posted the email as an open letter to the Kenosha Chief of Police on social media.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

54. The email and social media post made clear that these "volunteers" would not be there to protect their own homes or businesses, and that they had not been hired by any local business to secure property. Instead, they intended to patrol the streets, acting as armed law enforcement officials.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

55.     Neither Defendant Miskinis nor Defendant Beth made any attempt to dissuade Mathewson or any another other armed individuals from showing up in Kenosha to patrol the streets.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

56.     Defendants Miskinis and Beth acknowledged that the KPD and KCSD were aware that pro-militia, armed individuals intended to patrol and then did patrol downtown Kenosha.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

57.     The Additionally Responding Departments and their Officers were also fully aware that there were pro-militia armed individuals patrolling downtown Kenosha. This was obvious to them when on scene. Indeed, one of the Additionally Responding Officers wrote in his report from the night of August 25, 2020 that "throughout the night" they observed pro-militia groups "armed, mostly with long guns in the area of 60th and Sheridan."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

**D.     Defendant Rittenhouse Shoots Anthony Huber and Two Others**

58.     Among the armed individuals who arrived in Kenosha on August 25 was Defendant Kyle Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph. Defendant Rittenhouse stayed overnight in Kenosha on August 24, 2020 at the home of Dominick Black, as he did frequently during that time period.

59.     Defendant Rittenhouse was a 17-year old from Antioch, Illinois.

18

**ANSWER**: Defendant Rittenhouse denies in part the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse admits to being 17 years old on August 25, 2020. Defendant Rittenhouse admits that his primary residence was with his mother in Antioch, Illinois, however, Defendant Rittenhouse was employed in Kenosha County, and periodically stayed at either his father's residence in the city of Kenosha, or at Dominick Black's residence.

60. By his appearance, Defendant Rittenhouse was obviously a minor.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph. Defendant Rittenhouse was approximately seventeen and a half years old on August 25, 2020, and experienced no noticeable change in appearance when he turned 18 years old, 131 days later.

61. Defendant Rittenhouse possessed a Smith & Wesson AR-15 style .223 rifle, with a magazine holding 30 rounds of ammunition. This weapon was developed in the late 1950s as a weapon of war.

**ANSWER**: Defendant Rittenhouse admits possessing a Smith & Wesson AR-15 style .223 rifle, with a magazine holding 30 rounds of ammunition on August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

62. Defendant Rittenhouse was brandishing his gun openly and conspicuously, strapping it over his shoulder using a tactical sling designed to position the rifle at the center of his chest for rapid elevation and positioning. The rifle was visible at all times across his body or in his hands.

**ANSWER**: Defendant Rittenhouse denies "brandishing his" firearm at any time.

63. Defendant Rittenhouse was in clear violation of the law, which prohibits a minor from possessing or displaying such a gun.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse was compliant within the law of the state of Wisconsin, pursuant to Wis. Stat. § 948.60(3)(c), at all times he possessed the firearm at issue.

64.     Numerous KPD and KCSD officers saw Defendant Rittenhouse before and after the shootings that night, as did many of the Additionally Responding Officers. Despite being in clear violation of Wisconsin law, Defendant Rittenhouse was not asked for identification, was not questioned, was never detained, and was not disarmed.

**ANSWER**: Defendant Rittenhouse denies that his open carrying of the firearm at issue was a violation of Wisconsin Law. *See* Wis. Stat. § 948.60(3)(c). Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in the rest of this paragraph of the Complaint.

65.     Instead, the Law Enforcement Defendants allowed Defendant Rittenhouse to patrol the streets of downtown Kenosha with his deadly assault rifle, they invited him in, deputized him, conspired with him, and ratified his actions.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

66.     As a result of the Law Enforcement Defendants' actions, within the zone they controlled, Defendant Rittenhouse shot at four Kenosha-area residents, killing two of them and seriously injuring a third.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse shot at four individuals only after they first attacked and/or threatened him.

67.     At around 11 p.m., without provocation, Defendant Rittenhouse pointed his gun at an unarmed demonstrator heading to his car to go home.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

68.     Around 11:45 p.m., Defendant Rittenhouse shot Joseph Rosenbaum in the parking lot of an auto dealership. Rosenbaum was killed.

**ANSWER**: Defendant Rittenhouse admits that Joseph Rosenbaum waited to ambush Defendant Rittenhouse as he proceeded down Sheridan Ave. Defendant Rittenhouse admits he was threatened and chased by Joseph Rosenbaum. Defendant Rittenhouse admits that when he could run no further in a safe manner, he lawfully acted in self-defense and shot Rosenbaum.

69.     Instead of seeking medical attention, or any other form of aid, Defendant Rittenhouse called his friend Dominic Black, told Black that he had just killed someone, and then ran.

**ANSWER**: Defendant Rittenhouse admits that he called his friend after the shooting. Defendant also admits that he ran to seek assistance from law enforcement after the shooting and was then chased down by a mob and repeatedly assaulted.

70.     Defendant Rittenhouse ran from the scene of the Rosenbaum shooting with his assault rifle in his hands, holding it in a ready position. People were yelling that Defendant Rittenhouse had just shot someone.

**ANSWER**: Defendant Rittenhouse admits that he ran from the scene of the Rosenbaum shooting towards the established police line, with his weapon affixed to his body.

71.     Defendant Rittenhouse stumbled and fell to the ground, and several citizens approached him in an attempt to disarm him.

**ANSWER**: Defendant Rittenhouse denies that he stumbled and fell to the ground. Defendant Rittenhouse admits that while he was running towards the police line, a mob formed behind him, and he was struck in the head and neck area by Huber's skateboard. Defendant Rittenhouse admits that after being struck by Huber's skateboard, he was also struck in the back of the head by an unknown object, and then fell to the ground. Defendant Rittenhouse also admits that after being knocked to the ground, Huber again struck Defendant Rittenhouse with his skateboard, while other individuals performed assaultive actions, such as jump-kicking Defendant Rittenhouse in the face.

72.     Anthony Huber was one of those individuals. Anthony approached Defendant Rittenhouse to disarm him, stop the shooting, and save the lives of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph. Anthony Huber attacked Defendant Rittenhouse with a dangerous weapon (i.e., his skateboard) and attempted to illegally disarm him, after Defendant Rittenhouse had already been knocked to the ground.

73.     Anthony Huber was a hero.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

74.     As Anthony was reaching for Defendant Rittenhouse's rifle to pull it away, without provocation or any legal justification, Defendant Rittenhouse shot him in the chest.

**ANSWER**: Defendant Rittenhouse admits that he fired one shot at Huber after Huber struck him twice in the head and neck area with a large skateboard and attempted to unlawfully disarm him.

75.     After Anthony was shot, Gage [sic] Grosskreutz approached Defendant Rittenhouse with his hands up, pleading with him to stop his shooting rampage. Defendant Rittenhouse shot at Grosskreutz from point-blank range, hitting him in the arm. Thankfully, Grosskreutz survived.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Grosskreutz was only shot after he raised his firearm, pointed it at Defendant Rittenhouse, and moved in for the kill.

76.     But the shot that Defendant Rittenhouse fired at Anthony's chest was fatal.

**ANSWER**: Defendant Rittenhouse admits the allegations in this paragraph of the Complaint.

**E.     The Law Enforcement Defendants Authorize Defendant Rittenhouse's Shootings**

77.     The Law Enforcement Defendants did nothing to stop Rittenhouse's illegal conduct. They did not arrest him for illegally carrying a gun. They did not disarm him. They did not limit his movement in any way. They did not question him. They did not stop him from shooting individuals after he started. They did not arrest him, detain him, or question him even after he had killed two people.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse was lawfully carrying his weapon under Wis. Stat. § 948.60(3)(c).

78.     Instead, the Law Enforcement Defendants deputized Defendant Rittenhouse and other armed individuals, conspired with them, and ratified their actions by allowing them to patrol the streets armed illegally with deadly weapons and shoot and kill innocent citizens.

**ANSWER**: Defendant Rittenhouse denies that he was ever "deputized" by any member of law enforcement. Defendant Rittenhouse affirmatively states that he was compliant with Wisconsin state law at all times while carrying the firearm on August 25, 2020.

79.     Among other things, the Law Enforcement Defendants directed their curfew order only at people protesting the Law Enforcement Defendants' own police violence, and not at Defendant Rittenhouse and others, who were supporters of law enforcement.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

80.     Defendant Rittenhouse and others were subject to a different set of rules and were allowed to move about freely in areas controlled by the Law Enforcement Defendants.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. After leaving the business to assist in providing medical aid and extinguish fires, Defendant Rittenhouse was prohibited by law enforcement from returning to the car source location where his friends Dominick Black and Jonathan Smith were located.

81.     For example, at 9:57 p.m., a Kenosha Police Sergeant sent a message to all officers through the Department's internal messaging system noting the presence of armed individuals patrolling the streets in violation of the curfew order.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

82.     The Additionally Responding Officers were also fully aware of the presence of armed individuals patrolling the streets in violation of the curfew order, based on their observation of their presence "throughout the night" and their participation in a coordinated tactical command.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

83.     Rather than take any steps to detain, dissuade, or disarm these armed individuals, a KPD Sergeant made clear that the pro-police armed individuals were not to be detained, dissuaded, or disarmed, calling the armed individuals in blatant violation of the curfew order "very friendly."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, and notes that many of the rioters were also armed, including Gaige Grosskreutz, who was caught on video illegally carrying a concealed firearm.

84.     Likewise, at 11:26 p.m., callers reported that some of the pro-police armed individuals had "slashed tires" in a nearby area. But the Defendants did nothing in response to this conduct, let alone arrest the perpetrators.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

85.     To the contrary, one of the Additionally Responding Officers, on a text thread with others titled "Tactical Enforcement Unit Command Only" wrote, "Gotta love counter protestors. Slashing tires."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

86.     Instead, at approximately 11:30 p.m., about fifteen minutes before Defendant Rittenhouse shot Rosenbaum, Huber and Grosskreutz, several Law Enforcement Defendants were talking to Defendant Rittenhouse and the other armed individuals who had congregated in the parking lot of a private business.

**ANSWER**: Defendant Rittenhouse questions the relevance of this question and affirmatively states that he was on private property at the time of this interaction.

87.     Despite the fact that the armed individuals were in violation of the curfew order, the officers and deputies communicated their full support and appreciation for Defendant Rittenhouse and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

88.     In video footage taken at the scene, officers can even be heard asking armed individuals if they needed water. Defendant Rittenhouse can be seen telling the officers that they did need water, which officers gave them.

**ANSWER**: Defendant Rittenhouse admits the allegations in this paragraph of the Complaint.

89.     Defendant Rittenhouse walked right up to the police vehicles. Despite his obviously tender age, he was not asked for identification to demonstrate that he could lawfully possess an assault rifle.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. As mentioned previously, Defendant Rittenhouse was lawfully in possession of the firearm at issue at all times during August 25, 2020.

90.     Officers working for the Law Enforcement Defendants not only provided armed individuals with water, but they voiced their support and appreciation for the actions of Defendant Rittenhouse and others, saying: "We appreciate you guys, we really do."

**ANSWER**: Defendant Rittenhouse lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained within this paragraph and asserts that the

allegations in this paragraph fail to show any evidence of conspiracy or coordination with law enforcement.

91.     Needless to say, the Law Enforcement Defendants did not offer assistance or appreciation to any protestors. At the same time the officers were handing out assistance and praise to the armed individuals, including Defendant Rittenhouse, they can be heard over loudspeakers in their armored vehicles ordering the protestors to disperse: "This is the last warning. You will disperse." And: "This area is closed you are trespassing, leave now."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

92.     No such warnings or threats were made to the armed individuals.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse was warned and threatened by law enforcement officers in the manner described in paragraph 91 when he attempted to return to Car Source, prior to the shootings.

93.     The Law Enforcement Defendants deliberately orchestrated these circumstances. A clear message was sent that perceived protestors were required to disperse, while armed individuals who supported law enforcement could roam free and assist the officers. These events directly led to Anthony Huber's death.

**ANSWER**: Defendant Rittenhouse denies the allegations contained within this paragraph of the Complaint.

94.     Before the fatal shootings, one of the armed individuals was interviewed. He said the following: "You know what the cops told us today? They were like, 'We're gonna push 'em down by you, 'cause you can deal with them, and then we're gonna leave.'"

27

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

95.     And that is exactly what happened. The Law Enforcement Defendants ordered the protestors to move south, funneling them into a confined area, where they were met by the violence perpetrated by Defendant Rittenhouse and the other armed individuals.

**ANSWER**: Defendant Rittenhouse denies the allegations contained within this paragraph of the Complaint. The rioters were free to go in any direction, other than North, based upon the location of the police line.

96.     Internal communications and reports from members of the Law Enforcement Defendants reveal that they knew the pro-police armed individuals had gathered around 60th and Sheridan, yet they deliberately funneled protestors out of the park near 56th and Sheridan and forced them South right into the militia group they knew to be pro-police, in violation of the curfew order, slashing tired, and armed with long guns.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse denies being involved with any slashing of tires.

97.     At all times, the Law Enforcement Defendants, Defendant Rittenhouse, and others knew and understood what it meant when they told heavily armed private citizens to "deal with" the protestors. In this manner, the Law Enforcement Defendants, Defendant Rittenhouse, and others arrived at a plan to collectively use force and state authority against the protestors.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

98.     For example, Defendant Rittenhouse's own lawyers have stated that the police "maneuvered a mass of individuals down the street towards the auto shops" where the armed individuals had gathered.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse requires additional which attorney made this statement and what specific action by police was referenced.

99.     As a result, the Law Enforcement Defendants invited, deputized, authorized, conspired with, and ratified the actions of Defendant Rittenhouse, a boy illegally in possession of an assault rifle, who roamed the street in violation of an emergency curfew order, shooting innocent civilians, killing two, seriously injuring a third, and narrowly missing a fourth.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint and, again, affirmatively states that he was in lawful possession of his firearm on August 25, 2020 pursuant to Wis. Stat. § 948.60(3)(c).

100.    To make matters worse, when Huber and Grosskreutz were shot, the Law Enforcement Defendants were at the scene. Protestors yelled to the officers that Defendant Rittenhouse had just shot people. Remarkably, the officers did nothing to stop Defendant Rittenhouse, let alone question him, or arrest him. Instead, officers spoke to Defendant Rittenhouse and then let him walk away.

**ANSWER**: Defendant Rittenhouse denies that he spoke with officers and that he was allowed to just "walk away." Defendant Rittenhouse was pepper sprayed in the face when he attempted to speak with officers. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

101.    The only reason the Law Enforcement Defendants allowed Defendant Rittenhouse to walk away after shooting three people was because he was white and because he was affiliated with the armed individuals, who had the Law Enforcement Defendants' explicit support.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

102.    By inviting, deputizing, conspiring with, and ratifying the actions of armed individuals, who were empowered to patrol the streets of Kenosha, the Law Enforcement Defendants created an extremely and obviously dangerous and deadly environment, which led directly and foreseeably to the shootings of Anthony Huber and others.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

103.    The Law Enforcement Defendants' open support of and coordination with the armed individuals in the minutes and hours before the shootings deprived Anthony Huber and the other protestors of the basic protections typically provided by police. It was a license for the armed individuals to wreak havoc and inflict injury.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

104.    Defendant Rittenhouse's own lawyers have blamed the shootings on the Law Enforcement Defendants, highlighting their "abject failure to ensure basic law and order to citizens."

30

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse's lawyers blames the unprovoked attacks on Defendant Rittenhouse as the cause of their troubles.

105. The Law Enforcement Defendants continued their disparate treatment of Black people, even after the deaths of Huber and Rosenbaum. For example, Defendant Miskinis refused to publicly condemn the crimes of Defendant Rittenhouse or the other armed individuals, and instead has ratified that misconduct. Indeed, he has defended the armed individuals as citizens exercising their constitutional rights. The protestors received the opposite treatment from Defendant Miskinis.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

106. Moreover, in his first press conference after the shooting, Defendant Miskinis refused to make any statements condemning or even dissuading the armed individuals, even when he was specifically asked if he wanted armed vigilante groups to be present again the next night or protests.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

107. If Defendant Kyle Rittenhouse were Black, the Law Enforcement Defendants would have acted much differently.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as it is pure speculation.

108. If a Black person had approached police with an assault rifle, offering to patrol the streets with the police, he most likely would have been shot dead.

31

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as it is pure speculation.

109.    If a Black man had shot three citizens with an assault rifle and was seen walking away from the scene of the shooting with the assault rifle in hand, while other citizens yelled he was an active shooter, he would have been shot dead.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as it is pure speculation.

110.    In none of these circumstances would the Law Enforcement Defendants have permitted the individuals to roam the streets, illegally and heavily armed, shoot civilians, and then walk past a dozen officers, talk to them, and simply go home.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as it is pure speculation.

111.    One need not look any further than the very event that gave rise to the protest at which Anthony Huber was killed; although Jacob Blake was not at the site of a shooting, possessed no gun, brandished no weapon, had not shot or hurt anyone, and was climbing into his own car with two children, Blake was shot in the back seven times by officers employed by Defendant KPD.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint as it is pure speculation.

112.    By contrast, Defendant Rittenhouse was walking away from the scene of a double homicide with an assault rifle in his arms, and he was permitted to simply walk away.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint, as he was pepper sprayed when he attempted to surrender himself to police.

113.    Jacob Blake is Black. Defendant Kyle Rittenhouse is White.

**ANSWER**: Defendant Rittenhouse admits that he is White.

114.    Moreover, the demonstrators were a diverse group of citizens protesting police violence against Black people, which included many Black-Americans and other people of color. They were protesting, in part, the racial discrimination of Defendants KPD and KCSD, and their officers, as exemplified by the shooting of Jacob Blake.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

115.    The armed individuals were all White.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

116.    Similarly, the protestors were advocating a viewpoint critical of the police, including Defendants KPD and KCSD. The armed individuals espoused a viewpoint that was avowedly pro-police.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

117.    The difference in treatment of the two groups was stark. The White, pro-police armed individuals were allowed by the Law Enforcement Defendants to patrol the streets with weapons of war, participating in the police action, and threatening and inflicting violence on innocence [sic] civilians; while the diverse group of protestors criticizing police actions were ordered to disperse because they were violating the curfew order. No such orders were given to the pro-police individuals, who were in violation of the curfew as well, and known to be slashing tires.

**ANSWER:** Defendant Rittenhouse denies the allegations contained within this paragraph. The "diverse group of protestors" were ordered to disperse because they were starting fires, destroying property, and throwing projectiles at law enforcement.

118.     The reaction of some of the Law Enforcement Defendants to the shooting of three individuals by one of the pro-police armed individuals was openly callous. One of them texted on the night of August 25, shortly after Huber and the others had been shot by Defendant Rittenhouse, "Listening to the gun fire. Such a nice night." He then linked to a livestream of the shooting on Twitter, and texted, "Nice video."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

119.     The protestors were also treated differently than the armed individuals in terms of who was subject to arrest. In the days after the protests began, more than 150 protestors were arrested for allegedly violating the curfew order. Not even a single one of the armed individuals was arrested by the Law Enforcement Defendants for violating the same curfew order.

**ANSWER:** Defendant Rittenhouse denies the allegations contained within this paragraph.

120.     Many of the armed individuals with whom the Law Enforcement Defendant departments had allied themselves were avowed racists.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

121.     Among the armed individuals present at the protests was Ryan Balch, a member of the Boogaloo Bois who could be seen patrolling the streets with Defendant Rittenhouse. The Boogaloo Bois are a right-wing militia group whose adherents include neo-Nazis and white

supremacists. According to Balch, as many as 32 members of the Boogaloo Bois were in Kenosha patrolling the streets.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

122.    In the months after he killed Anthony Huber, Defendant Rittenhouse was seen in a bar in his hometown flashing an "OK" sign, a symbol of white supremacy /white power.

**ANSWER:** Defendant Rittenhouse denies that the "OK" symbol is solely a symbol of white supremacy and affirmatively asserts that it is also a symbol meaning "okay." Defendant Rittenhouse also denies that Racine, the location of the bar referenced, is in his "hometown." Defendant Rittenhouse questions why Plaintiff now accuses him of residing in Racine, WI, when Plaintiff previously alleged in paragraph 59 that Defendant Rittenhouse is "from Antioch, Illinois."

123.    Defendant KPD's support of, and coordination with, the armed individuals was a product of its systemic, racially discriminatory policies and practices.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

124.    The KPD has just eight Black police officers, out of a force of more than 200 officers. It has never had a Black person in top leadership positions, including police chief, assistant chief, or police inspector.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph. Defendant Rittenhouse additionally questions the relevance of this allegation.

125.    Christopher Carter, a former Black police officer in the KPD who retired in 2011, has said he was consistently subject to racist aggression, including being called a "n*****," was

discriminated against during his time at the KPD, and witnessed racist policing practices toward civilians.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph. Defendant Rittenhouse additionally questions the relevance of this allegation.

126.    In a recent article in the Washington Post, six current and former officers "described a department at odds with people of color, both inside and outside its ranks, with some officers routinely using racist language and excessive force." One of the former officers stated, "You have officers there who openly admit to pulling someone over because they're Black and driving a nice car. And these are officers who train new officers."

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph. Defendant Rittenhouse additionally questions the relevance of this allegation.

127.    Just eleven days before Jacob Blake was shot, a woman was arrested for filming police officers engaging in threats and physical abuse during the arrest of a Black man. Her video footage captured a KPD officer punching a man in the ribs twice after he had already been handcuffed. When she was ordered to disperse, she responded, "We're not moving until we know he's safe!" An officer responded, "Do you want to get shot?"

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph. Defendant Rittenhouse additionally questions the relevance of this allegation.

128.    For his part, Defendant Beth has his own history of racially discrimination [sic] conduct as the Kenosha County Sheriff. In 2018, two Black women and three Black men were

36

apprehended after a shoplifting incident and a high-speed chase. The youngest individual arrested was 16 years old. In comments after the arrest, Defendant Beth stated that it was time to "stop being politically correct," and that "these people have to be warehoused."

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph. Defendant Rittenhouse additionally questions the relevance of this allegation.

## VI.  CAUSES OF ACTION

### A.  Count 1: Conspiracy to Deprive Constitutional Rights

129.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

130.    Defendants acting in concert with each other and other co-conspirators—including Defendant Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed individuals—reached an agreement among themselves to deprive Huber of his constitutional rights, all as described in the various paragraphs of this Complaint.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

131.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Huber of these rights.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

37

132.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

133.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

134.    As a direct and proximate result of the illicit prior agreement referenced above, Huber's rights were violated and he suffered injuries, including emotional distress and death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

135.    Plaintiff's' injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

136.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County

38

Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

**B.** **Count II: Conspiracy to Obstruct Justice Based on Invidious Discrimination**

137.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

138.    Defendants are "persons" as that term is used in 42 U.S.C. §1985.

**ANSWER**: Defendant Rittenhouse admits that he is a "person" as that term is used in the relevant statute.

139.    Defendants, acting in concert with each other and other co-conspirators—including Defendant Rittenhouse, Mathewson, members of the Kenosha Guard and other non-party armed individuals—reached an agreement among themselves to deprive Huber of his constitutional rights and equal protection of the laws, all as described in the various paragraphs of this Complaint.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

140.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Huber of these rights.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

141.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

142.    The conspiracy between Defendants and the other co-conspirators set forth above, and the actions taken in furtherance thereof, were motivated by racial animus.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

143.    Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Huber, by creating a dangerous environment in which injury to Huber and others was highly likely. They did this by permitting the all-white armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the racially diverse group of protestors were arrested for violating Defendants' curfew order. Not a single one of the all-white armed individuals was arrested for violating the same curfew order.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

144.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

145.     As a direct and proximate result of the illicit prior agreement referenced above, Huber's rights were violated and he suffered injuries, including emotional distress and death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

146.     Plaintiff's' injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Plaintiff's injuries were caused by his unlawful attempts to disarm Defendant Rittenhouse and by repeatedly assaulting Defendant Rittenhouse with a dangerous weapon.

147.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

41

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

C.      **Count III: Equal Protection**

148.    Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

149.    In the manner described in this Complaint, Defendants denied Huber equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent that an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph.

150.    Defendants' conduct was motivated by racial animus and constituted purposeful discrimination, and it also affected Huber and the racially diverse group of protestors in a grossly disproportionate manner as compared to similarly situated White individuals.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

151.    Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Huber, by creating a dangerous environment in which injury to Huber and others was highly likely. They did this by permitting the all-white armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering

42

protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the racially diverse group of protestors were arrested for violating Defendants' curfew order. Not a single one of the all-White armed individuals was arrested for violating the same curfew order.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

152.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

153.    As a direct and proximate result of the conduct referenced above, Huber's [sic] was deprived of equal protection of the laws, and he suffered injuries, including emotional distress and death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

154.    Plaintiff's injuries were caused by the actions and decision of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

155.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

**D.     Count IV: First Amendment Retaliation**

156.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

157.     In the manner described in this Complaint, Defendants subjected Huber and the other protestors to discriminatory and retaliatory treatment based on their opinions critical of police violence, in violation of the First Amendment of the United States Constitution.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent that an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph.

158.     Huber and the other protestors participated in rallies and demonstrations in downtown Kenosha advocating a viewpoint critical of the police, including Defendants KPD and KCSD, similar to the national and worldwide protests against police violence that began in the summer of 2020. Such conduct is protected by the First Amendment of the United States Constitution.

44

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

159.    The armed individuals espoused a viewpoint that was avowedly "pro-police."

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

160.    Defendants subject Huber and other peaceful protestors to discrimination and retaliation because of their viewpoints critical of police. They did this by permitting "pro-police" armed individuals to taunt, threaten and monitor the diverse group of protestors without consequence, by permitting the "pro-police" armed individuals to patrol the streets like deputized police officers, by offering the "pro-police" armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the "pro-police" armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the protestors voicing criticism of racist and violent police conduct were arrested for violating Defendants' curfew order. Not a single one of the "pro-police" armed individuals was arrested for violating the same curfew order.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

161.    The protected speech of Huber and the other protestors, and the viewpoint critical of police that they expressed, was a motivating factor in Defendants' disparate, discriminatory and retaliatory treatment of the protestors.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

162.    Defendants' retaliatory actions in response to Huber and the other protestors' protected speech have had a chilling effect that acts as a deterrent to free speech.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

163.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

164.    As a direct and proximate result of the conduct referenced above, Huber's First Amendment rights were violated, and he suffered injuries, including emotional distress and death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Huber was injured while attacking Defendant Rittenhouse as part of a mob, while Defendant Rittenhouse was attempting to surrender to police.

165.    Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official policymaking capacities; Larsen acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint

166.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. To the extent that an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph.

### E.     Count V: Deprivation of Due Process

167.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

168.     In the manner described in this Complaint, Defendants allowed Defendant Rittenhouse and other illegally armed individuals to patrol the streets of downtown Kenosha with deadly weapons, inviting those individuals to use police powers, deputizing them, conspiring with them, and ratifying their actions.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph. Defendant Rittenhouse was not illegally armed, did not exercise police powers, was not deputized by police, and did not conspire with law enforcement. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

169.     Defendants even informed Defendant Rittenhouse and these armed individuals that they would funnel demonstrators toward them to be dealt with.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

170.     The misconduct described in this Count increased the danger faced by Huber and other peaceful demonstrators who were present.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

171.     In addition, the misconduct described in this Count shocked the conscience and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Huber and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

172.     As a direct and proximate result of the conduct referenced above, Defendant Rittenhouse shot and killed Huber.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse shot and killed Anthony Huber in a lawful act of self-defense, after he had already been attacked by Huber and other members of a violent mob.

173.     Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; Larsen, acting in his official capacity; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskins; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

174.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

**F.    Count VI: Failure to Intervene**

175.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

176.    In the manner described in this Complaint, Defendants had knowledge that conspiratorial wrongs were about to be committed.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

177.    Each of the Defendants had the power to prevent or aid in preventing the commission of those wrongs.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

178.    Defendants neglected to prevent or aid in preventing these wrongful acts where the wrongful acts were committed and could have been prevented by reasonable diligence.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

179.    As a direct and proximate result of the conduct referenced above, Huber's constitutional rights were violated, and he suffered injuries, including emotional distress and death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Huber suffered injuries as a direct and proximate result of his choice to assault Defendant Rittenhouse with a dangerous weapon and unlawfully disarm him.

180.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent them in court proceedings and incurred expenses associated with these proceedings and prosecuting the instant case.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

### G.    Count VII: Municipal Liability/*Monell* Policy Claim

181.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

182.    As described more fully herein, the Municipal Defendants and the Additionally Responding Departments are themselves liable for the violation of Huber's constitutional rights.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

183.    Plaintiff's injuries were caused by the policies, practices, and customs of the Municipal Defendants, as well as by the actions of policy-making officials for the Municipal Defendants.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

184.    At all times relevant to the events described above and for a period of time prior and subsequent thereto, Municipal Defendants failed to promulgate proper or adequate rules, regulations, policies, and procedures to ensure the protection of equal protection, first amendment and other constitutional rights of protestors and other individuals engaged in demonstrations and rallies on issues of public interest; to protect protestors and other individuals engaged in demonstrations and rallies on issues of public interest, including from counter-protestors and other individuals whose actions and presence is likely to create danger and result in violence; to ensure the equal enforcement (or non-enforcement) of curfew orders; to ensure decision-making free of racial discrimination as related to the monitoring and supervision of protests and demonstrations; to ensure decision-making free of viewpoint discrimination as related to the monitoring and supervision of protests and demonstrations; to protect the free speech rights of all persons regardless of race or viewpoint; and to protect against the likely violence attributable to the presence and threats of armed individuals deputizing themselves with police duties. In addition or alternatively, the Municipal Defendants failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of their officers and agents, with respect to the foregoing topics.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

185.    These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Municipal Defendants.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

186.     In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the Municipal Defendants had notice of widespread practices by officers and agents of the Kenosha Police Department and Kenosha County Sheriff's Department to discriminate and retaliate against racial minorities and their allies, and against protestors challenging discriminatory and violent conduct by police officers including members of the Kenosha Police Department and Kenosha County Sheriff's Department and the Additionally Responding Departments; and to favor the views of "pro-police" groups such as the Kenosha Guard and the other armed individuals; and to subject favored and unfavored groups to different treatment.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

187.     These widespread practices, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the Municipal Defendants directly encouraged and were thereby the moving force behind the very type of misconduct at issue.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

188.     The above widespread practices and customs, so well settled as to constitute *de facto* policies of the Municipal Defendants were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

189.     In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, in that the constitutional violations committed against Huber were committed with the knowledge or approval of persons with final policymaking authority for the Municipal Defendants or were actually committed by persons with such final policymaking authority.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

190.     Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the Municipal Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

**H.     Count VIII: Intentional Infliction of Emotional Distress**

191.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

192.     In the manner described in this Complaint, Defendants engaged in extreme and outrageous conduct.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

193.     Defendants' actions set forth above were rooted in an abuse of power or authority.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

53

194.    Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and death, and with reckless disregard of that probability.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

195.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

196.    Defendants' conduct intentionally or recklessly caused severe emotional distress to another.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

I.    **Count IX: Negligent Infliction of Emotional Distress**

197.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates their responses to all preceding paragraphs of the Complaint by reference.

198.    In the manner described in this Complaint, Defendants were negligent.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

199.    Plaintiff was impacted by the incidents related to Defendants' negligence.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

54

200.    Plaintiff suffered serious emotional distress of the type that a reasonable person would expect to occur.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

201.    As a direct and proximate result of the conduct referenced above, Huber suffered injuries, including emotional distress and death.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

**J.    Count X: Negligence**

202.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

203.    Defendants had a duty to Huber and the other protestors to act with ordinary care and prudence so as not to cause harm or injury to Huber.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

204.    By engaging in the manner described in this Complaint, Defendants failed to act with ordinary care and breached their duty of care owed to Huber.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

205.    As a direct and proximate result of the conduct referenced above, Huber suffered injuries, including emotional distress and death.

**ANSWER:** Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

### K.    Count XI: Negligent Hiring, Supervision and Training

206.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

207.    Huber suffered damages from foreseeable misconduct of employees and agents supervised by Defendants.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

208.    The Law Enforcement Defendants' employees in supervisory roles had a duty to properly supervise officers and to oversee their treatment of Huber and other protestors.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

209.    The Law Enforcement Defendants blatantly disregarded the high probability that, by permitting their officers and agents to deputize and conspire with armed individuals, Huber would suffer injuries including death. These Defendants were therefore negligent in their non-discretionary duties to supervise individual officers in their agencies.

**ANSWER**: Defendant Rittenhouse denies that he was deputized or conspired with law enforcement. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

210.    As a direct and proximate result of the negligent supervision described above, Huber suffered injuries, including emotional distress and death.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

L.     **Count XII: Survival**

211.     Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant incorporates their responses to all preceding paragraphs of the Complaint by reference.

212.     In the manner described in this Complaint, Defendants' [sic] committed unlawful conduct as a result of which Defendant Kyle Rittenhouse fatally shot Anthony Huber. Between having been shot and when he ultimately passed, Huber suffered "other damage" to his person pursuant to Wis. Stat. § 895.01(1)(am).

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

213.     The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

214.     As a result of these actions, Huber suffered severe injuries, including physical pain, emotional distress, and ultimately death.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

M.     **Count XIII: Wrongful Death**

215.     Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

216.    In the manner described in this Complaint, Defendants intentionally and unjustifiably caused the death of Anthony Huber, and Huber therefore had a valid claim for damages against the Defendants at the time of his death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

217.    As a consequence, Huber's parents—John and Karen Bloom—have suffered, and continue to suffer, significant emotional distress and harm, including but not limited to the loss off society and companionship with Huber.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

218.    Plaintiff is the personal representative of the Estate of Anthony Huber, and the proper party to pursue wrongful death damages.

**ANSWER**: Under representations of counsel, Defendant Rittenhouse admits the allegations in this paragraph of the Complaint.

219.    The described in this Count [sic] was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

### N.    Count XIV: Respondeat Superior

220.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

58

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

221.    In committing the acts alleged in the preceding paragraphs, Defendants Miskinis, Beth and John Doe Police Officers were agents, members, or employees of the Municipal Defendants, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

222.    These Defendants are liable as principals for all torts committed by their agents.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

**O.    Count XV: Indemnification**

223.    Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

224.    Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

225.    During all times relevant to this Complaint, Defendants Miskinis, Beth and John Doe Police Officers were employees of the Municipal Defendants, who acted within the scope of their employment in committing the acts described herein.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

## VII.    DAMAGES

226.    Under 42 U.S.C. §§ 1983, 1985 and 1986, and supplemental state law claims, Plaintiff is entitled to an award of compensatory damages against the Defendants.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

227.    In the wrongful acts or omissions described in this Complaint, defendant [sic] acted with fraud, oppression, and malice.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

228.    By reason of Defendants' acts or omissions described in this Complaint, Plaintiff is entitled to recover punitive and exemplary damages.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

229.    Under 42 U.S.C. § 1988, if Plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorneys' fees, non-taxable expenses and costs.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required.

## VII.    PRAYER

WHEREFORE, Defendant Rittenhouse denies that Plaintiff is entitled to any of the relief sought and respectfully request that the Court:

A.    Dismiss the Complaint with prejudice;

B.    Award to Defendant Rittenhouse costs and expenses incurred in defending this action; and

C.    Grant such other and further relief as the Court deems just and proper.


DATED at Racine, Wisconsin this 17th day of March, 2023.

Respectfully Submitted,


s/Mark D. Richards
Mark D. Richards, WI Bar #1006324
RICHARDS & ASSOCIATES, S.C.
209 8th Street
Racine, WI 53403
(262) 632-2200 (P)
(262) 632-3888 (F)
mdr@richardslawracine.com
*Attorneys for Defendant Kyle Rittenhouse*

s/Natalie L. Wisco
Natalie L. Wisco, WI Bar #1101661
RICHARDS & ASSOCIATES, S.C.
209 8th Street
Racine, WI 53403
(262) 632-2200 (P)
(262) 632-3888 (F)
wisco@richardslawracine.com
*Attorneys for Defendant Kyle Rittenhouse*