UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,
    Plaintiff,

   v.                                          Case No. 21-C-0969

DAVID G. BETH, in his individual and
official capacity as Kenosha County Sheriff,
et al.,
    Defendants.
_____

## DECISION AND ORDER

Plaintiffs John Huber and Paul Prediger filed a motion to compel discovery from defendant the City of Kenosha. The discovery requests relate to missing squad videos of the events surrounding the shooting of plaintiffs.

### I. BACKGROUND

Plaintiff John Huber brings this case on behalf of himself and the estate of his son, Anthony Huber, who was killed by Kyle Rittenhouse during the protests and riots that occurred in Kenosha, Wisconsin, in August 2020, following the shooting of Jacob Blake by City of Kenosha police officers. Plaintiff Paul Prediger, who also was shot by Rittenhouse, brought a separate action that was consolidated with this one. As is relevant here, plaintiffs bring claims under 42 U.S.C. § 1983 and other federal civil-rights statutes alleging that the City of Kenosha is liable for plaintiffs' injuries because it failed to protect them from a state-created danger and conspired with Rittenhouse and others to cause harm to protestors in order to retaliate against them based on race and the content of their speech. *See Huber v. Beth*, 654 F. Supp. 3d 777 (E.D. Wis. 2023).

During discovery, plaintiffs served the City of Kenosha with written discovery requests relating to video recordings made by law-enforcement officers on the nights of the protests and riots. Specifically, plaintiffs served a request for the production of a wide range of video and audio recordings that encompassed any police squad videos relating to the protests that were recorded on the nights of August 23, 2020 through August 26, 2020, and an interrogatory that asked the City of Kenosha to identify any videos from this period that were lost or destroyed. In response to the request for production, the City produced many recordings, but only a few recordings from squad vehicles. In response to the interrogatory, the City stated that squad videos are typically retained for 120 days after the date of an incident, and that they are purged if the incident recorded did not result in an arrest.

After plaintiffs received the City's response, they followed up with the City about the availability of squad videos. Eventually, the City informed plaintiffs that squad videos from the nights of the protests and riots might be stored on a server that is no longer in use but remains in the City's custody. However, after further investigation, the City determined that, although it could recover a log of what video files remain on the server, it could not retrieve the actual videos without engaging a third party to perform a forensic search of the server. The City also determined that if videos could be retrieved from the server, each video would have to be individually reviewed to determine if it related to the protests and riots or if it was recorded by a squad responding to events in other parts of Kenosha.

The City refuses to engage a third party to conduct the forensic search of the server, arguing that the cost of the search and resulting review process would be overly burdensome and not proportional to the needs of the case. As a result, plaintiffs have

filed a motion to compel the City to conduct the search of the server, to determine whether any squad videos of the riots and protests exist, to produce the videos if they do exist, and to clarify whether any squad videos have been lost or destroyed.

## II. DISCUSSION

A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). To be discoverable, information does not need to be admissible in evidence. *Id.* Permissible discovery requests include requests for the production of documents or electronically stored information, *see* Fed. R. Civ. P. 34, and interrogatories, *see* Fed. R. Civ. P. 33. If a party served with discovery requests fails to properly respond, the requesting party may file a motion to compel the response. Fed. R. Civ. P. 37(a)(3)(B). For purposes of this rule, an incomplete response or answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4).

The City contends that it has properly responded to plaintiffs' discovery requests concerning the squad videos. It contends that the squad videos are not relevant to any claim or defense in the case, and that the cost of retrieving the videos from the City's old server and reviewing them would result in a burden that is disproportional to the needs of the case.

Initially, plaintiffs contend that the City has waived its proportionality objection by not stating it with specificity in its initial response to the relevant interrogatory and associated request for production. However, in response to both the interrogatory and the request for production, the City objected that the request was, among other things, "burdensome" and "not proportional to the needs of the case." (Resp. to Interrog. #8; Resp. to Req. for Prod. #9.) During the parties' meet-and-confer process, the City

3

explained to plaintiffs that the squad videos resided on the City's discontinued server and that retrieving them would require engaging a third party capable of performing a forensic search. Later, the City formally amended its discovery responses to state that it objected to the costs of retrieving videos from the discontinued server, but that it was willing to discuss such costs with plaintiffs. (Pl. Ex. K at 15–17.) Eventually, those discissions broke down, and plaintiffs filed this motion. Given this history, it is difficult to see how the City could be deemed to have waived its objection to the burdens associated with retrieving the videos. The City initially objected to the discovery requests on this ground, and as the issues were refined during the meet-and-confer process, the City specifically objected to the cost of retrieving the videos from the discontinued server. Accordingly, the objection is not waived.

However, I will overrule the City's objection on the merits. The City first contends that plaintiffs have not demonstrated that the squad videos would be relevant. But any squad videos depicting the protests and riots on the nights leading up to the shooting are clearly relevant to plaintiffs' claims. Those videos could have recorded conversations that the police had with protestors and the armed individuals with whom the police are alleged to have conspired. The videos thus might provide evidence to support plaintiffs' conspiracy allegations. Further, the videos could provide insight into what the police knew about the danger that the armed individuals posed to the protestors, which would be relevant to plaintiffs' claim that the City had knowledge of a state-created danger. Finally, the videos might support or refute plaintiffs' allegations that police officers treated the armed individuals more favorably than the protestors. Thus, the videos are relevant to the claims and defenses in this suit.

As for proportionality, the City contends that plaintiffs' need for the videos does not outweigh the burden associated with retrieving and reviewing them.[1] The City contends that because it has already produced a large quantity of video evidence from sources other than squad videos, as well as squad videos that were deemed relevant to the investigation associated with the criminal charges that were filed against Rittenhouse,[2] it should not have to retrieve or produce the remaining squad videos. However, the criminal investigation likely focused only on the conduct of Rittenhouse and the men he shot, and there is no evidence that the investigation looked into the other matters that are relevant to this civil-rights suit, such as what police officers knew about the danger posed by the armed individuals or whether police officers collaborated with those individuals. Thus, there is no reason to think that the squad videos deemed relevant to the criminal investigation are the only squad videos that might contain information relevant to the claims and defenses in this litigation. Further, the fact that the City has already produced a large quantity of video evidence does not make plaintiffs' need for the remaining squad videos insignificant. Plaintiffs' conspiracy allegations and their allegations that the police treated the protestors and armed individuals differently are likely to depend in large part on the cumulative effects of the actions of individual officers on the scene. Thus, every

---

[1] In addition to proportionality, the City notes that, under Rule 26(b)(2)(B), a party need not provide discovery of electronic information from sources that the party identifies as not reasonably accessible because of undue burden or cost. I will not separately analyze the City's objection under this rule because it overlaps substantially with the proportionality objection.

[2] The City's witness describes the investigation as the "Rittenhouse investigation," but he does not define this term. (Decl. of Benjamin Antaramian ¶ 9.) I assume that he means the investigation surrounding the criminal charges brought against Rittenhouse, rather than any investigation associated with the present civil-rights suit against Rittenhouse and the law-enforcement defendants.

5

video that depicts an interaction between an officer and a protestor or armed individual on the nights in question is potentially important evidence. Because the squad videos are likely to depict these individual interactions, they are highly relevant and important.

The City contends that the burden of retrieving and producing the squad videos is high because the City would have to retain a third-party vendor to conduct a forensic review of the City's discontinued server. But retaining such a vendor is routine in litigation involving more than modest stakes. This case, which seeks redress for a wrongful death and a serious injury arising out of events that received national attention, is important enough to warrant the expense of retaining a vendor to perform the search.

The City also contends that if any videos could be retrieved, they would have to be individually reviewed for relevance because the videos were not indexed in a way that enables the City to distinguish videos recorded near the protests from videos recorded while squads were responding to routine calls in other parts of Kenosha. The City argues that the review process would itself impose a burden that is not proportional to the needs of the case. Here, however, the City has not attempted to estimate how long it would take to review any videos that could be retrieved from the server, so I am in no position to find that the burden of the review would make the discovery disproportional to the needs of the case. Nonetheless, depending on the results of the forensic search, I would consider limiting the City's review obligation. If the search recovers hundreds of hours of video evidence, I would expect the parties to formulate a review protocol that does not require the City to review every last second of recovered video. For example, the City could forgo its own review and provide the videos directly to plaintiffs and leave it to them to identify

the relevant videos.³ If the parties are unable to agree on such a protocol after the quantity of recoverable video is known, either side may file an appropriate motion to have me determine what the City's review obligations should be.

Accordingly, I will grant plaintiffs' motion to compel the City to further respond to Request for Production No. 8 by conducting a forensic search of the server and attempting to retrieve the squad videos that were previously uploaded to that server. Further, to the extent that the forensic search results in the retrieval of squad videos recorded between August 24 and 26, 2020, the City shall either produce those videos to plaintiffs or confer with plaintiffs and attempt to agree on a protocol for their review and production. Finally, if the forensic search reveals that any video files that were previously uploaded to the server are not retrievable, the City shall supplement its response to Interrogatory No. 9 by identifying the video files that are not retrievable.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiffs' motion to compel discovery (ECF No. 110) is **GRANTED** to the extent that the City shall comply with the instructions stated in this order.

Dated at Milwaukee, Wisconsin, this 4th day of October, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

³ I note that plaintiffs have offered to accept the unreviewed videos and have even offered to provide the City with a drive onto which the videos could be copied. (ECF No. 110 at 15.) The City has not objected to this approach or indicated that it would be impractical.