## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

JOHN HUBER, in his individual capacity
and as Personal Representative of the
ESTATE OF ANTHONY HUBER,

       Plaintiff,

           v.

DAVID G. BETH, et al.,

       Defendants.

Case No. 21-CV-969

---

PAUL HENRY PREDIGER,

       Plaintiff,

           v.

THE CITY OF KENOSHA, et al.,

       Defendants.

Case No. 21-CV-1192

---

## DAVID G. BETH, KENOSHA COUNTY, WAUKESHA COUNTY, RACINE COUNTY, SAUK COUNTY, WALWORTH COUNTY, AND WASHINGTON COUNTY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendants David G. Beth, Kenosha County, Waukesha County, Racine County, Sauk County, Walworth County, and Washington County ("County Defendants"), by and through their attorneys, Crivello, Nichols & Hall, S.C., respectfully submit this response in opposition to Plaintiffs' motion to compel. At the outset, Plaintiffs failed to comply with the meet and confer requirement of Rule 37, requiring the Court to deny their motion. Further, Plaintiffs have failed to identify any legal or factual basis to support their various requests to compel, and therefore the motion should be denied.

## ARGUMENT

### I. PLAINTIFFS FAILED TO COMPLY WITH MEET AND CONFER REQUIREMENTS PRIOR TO FILING THIS MOTION AGAINST THE COUNTY DEFENDANTS.

Plaintiffs seek an order compelling responses and production related to Interrogatory No. 3[1], Request for Production No. 3[2], and various Requests for Admission[3]. Throughout their motion, Plaintiffs frequently refer to "Defendants" and "Defendants' responses" to discovery requests. However, there are three sets of defendants in this case: the City Defendants, the County Defendants, and Defendant Kyle Rittenhouse. This is an important distinction, because Plaintiffs' motion makes several claims against "defendants" that are not universally applicable to all defendants, let alone all municipal defendants. (*See, e.g.*, Dkt. 129-2, p. 4: "On the days at issue in this case, Defendants' officers were sending and receiving text messages.")

It is also a critical distinction when reviewing whether Plaintiffs complied with their obligations prior to filing the present motion against the County Defendants. Federal Rule of Civil Procedure 37(a)(1) provides as follows:

> [A] party may move for an order compelling disclosure or discovery. The motion <u>must</u> include a certification that the movant <u>has in good faith conferred or attempted to confer</u> with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

FRCP 37(a)(1) (emphasis added). Additionally, this Court's Rules also require that the statement "must recite the date and time of the conference or conferences and the names of all parties

---

[1] The County Defendants' responses to this set of Interrogatories are found at Dkts. 129-4, 129-28, and 129-29 (129-28 and 129-29 are duplicates).

[2] Plaintiffs did not file the County Defendants' responses to this set of Requests for Production as an exhibit to their motion. However, the text of Request No. 3 and the text of the County Defendants response can be found at Dkt. 129-21, p. 19-20.

[3] Plaintiffs did not file the County Defendants' responses to this set of Requests for Admission as an exhibit to their motion. For those responses, *see* Exhibit A to the Declaration of Mills.

2

participating in the conference or conferences." Civil L.R. 37. Further, the certification must be sworn under 28 U.S.C. § 1746. *U.S. v. Peters*, 132 A.F.T.R.2d 2023-5972, 2023 WL 6257235, at \*1-2 (E.D. Wis. Sept. 26, 2023). The failure to comply with Civil Local Rule 37 requires the dismissal of a party's motion. *Bell v. Columbia St. Mary's, Inc.*, 2009 WL 187935, \*6 (E.D. Wis. 2009).

Plaintiffs included in their moving brief a "Certification" stating that they made "a good faith effort to resolve the discovery dispute" with the municipal defendants regarding "missing text messages." (Dkt. 129-2, p. 22.) In support of this certification, they cite six correspondence they sent "Defendants" and aver that they spoke with counsel for the City Defendants by phone on one occasion. (*Id.*) While somewhat tedious, a review of each of the six correspondence is necessary to illustrate Plaintiffs' failure to meet and confer specifically with the County Defendants.

On May 20, 2024, Plaintiffs sent the County Defendants a letter, misdated April 20, 2024, outlining objections to the County Defendants' discovery responses. (Dkt. 129-16.) Among other responses, Plaintiffs identified responses to Interrogatory No. 3 and Request for Production No. 3 as being at issue. In their May 20, 2024, letter, Plaintiffs complained that the County Defendants used "boilerplate objections" and had not timely supplemented their response to Request No. 3 given the finalization of ESI protocol. (Dkt. 129-16, p. 1-2, 5.) When the County Defendants originally responded to Request No. 3, the parties had not yet agreed upon ESI protocol. (*See* Dec. of Mills, ¶ 4; Dkt. 129-13.) Therefore, the County Defendants' initial response to Request No. 3 stated that they would supplement the response after a protocol had been finalized. (Dkt. 129-21, p. 19-20.)

On May 31, 2024, the County Defendants provided Plaintiffs with a lengthy response to each of the discovery requests identified in their May 20, 2024, letter. (Dkt. 129-21.) As for the timeliness of the production of ESI, the County Defendants advised that they were working as

3

quickly as possible to obtain, review, and process the voluminous amount of requested ESI. (*Id.*, p. 1.) They also explained that any delay was due to their attempts to ensure that the production was not duplicative or disorganized given the volume of materials being reviewed, and that an organized production would benefit all parties. (*Id.*, p. 1-2.) By the time of their May 31, 2024, response letter, the County Defendants had already produced 44,375 pages of materials and 58 audio/video files. (Dec. of Mills, ¶¶ 4-7.) Regarding the alleged "boilerplate objections," the County Defendants pointed out that they did not employ any such objections, nor had Plaintiffs identified any. (*Id.*, p. 20-21.)

The next correspondence from Plaintiffs was a November 6, 2024, email to counsel for the County Defendants asking about information learned during David Fisher's October 2024 deposition and stating that they did not receive certain body camera footage. (Dkt. 129-42.) Nothing in the email referenced any particular discovery request, nor did it state or imply that it was being sent as part of Rule 37's meet and confer requirement. (*Id.*) Plaintiffs then cite correspondence from December 9, 2024, in support of their certification. However, that communication did not include any counsel of record for the County Defendants and did not pertain to the County Defendants' discovery responses. (*See* Dkt. 129-34.) The same is true for the next correspondence sent to counsel for the City Defendants on February 19, 2025: no one representing the County Defendants was copied. (*See* Dkt. 129-23.)

Next, Plaintiffs cite an email they sent on March 11, 2025, after the County Defendants had supplemented their responses with ESI production, including 2,004 additional pages of materials. (Dec. of Mills, ¶ 7.) Plaintiffs' counsel stated that they believed there was a deficiency in the phone communications produced by Kenosha County. (Dkt. 129-30.) They also asked for additional information that they never memorialized in any formal discovery request. (*Id.*) They did not

4

mention any phone communications from any other counties, they did not identify any particular discovery request, nor did they indicate that their email was intended as an attempt to meet and confer. (*Id.*)

Plaintiffs' certification also states that they sent "Defendants" correspondence on March 19, 2025. (Dkt. 129-2, p. 22.) None of the 49 exhibits filed in support of their motion appear to be correspondence dated March 19, 2025. If Plaintiffs sent correspondence to the City Defendants regarding discovery disputes on that date, counsel for the County Defendants was not copied. Counsel for the County Defendants did not receive any communications regarding discovery from Plaintiffs on or around March 19, 2025. (Dec. of Mills, ¶ 9.)

Plaintiffs state that they then sent the municipal defendants a "final correspondence" on May 2, 2025, attempting to resolve "the disputes" before bringing a motion. (Dkt. 129-2, p. 22.) In the email, Plaintiffs' counsel stated, in part,

> We have discussed the issue of officers' cell phone communications at length, over multiple rounds of written communications and conferrals. … We understand your position continues to be that the … City and County Defendants have no further supplements to their Second Set of Request to Admit regarding the officers' cell phone numbers. We assume we are at an impasse. If City and County Defendants are prepared to remove these objections and supplement, please let us know by Monday, May 5, 2025.

(Dkt. 129-27.) However, while Plaintiffs' counsel may (or may not) have had discussions with the City Defendants about these responses to requests for admissions, the County Defendants were not included or privy and did not have discussions about the responses prior to receiving the May 2nd email. (Dec. of Mills, ¶ 10.)

Thus, on May 5, 2025, and not knowing which requests for admission were even at issue, counsel for the County Defendants responded to Plaintiffs' email: "In order to properly review and respond to your email, please identify the specific discovery requests that you believe require

5

supplementation." (Dec. of Mills, Ex. B.) Opposing counsel then identified the specific requests at issue, and the County Defendants began looking into the issue. The County Defendants had not yet responded with their position on supplementation when Plaintiffs filed the present motion on May 15, 2025.

At no time did Plaintiffs meet and confer with the County Defendants regarding their responses to Plaintiffs' Requests for Admission, which the County Defendants responded to on March 17, 2025. (Dec. of Mills, ¶ 3, Ex. A.) Plaintiffs' first and only communication to the County Defendants about the Requests for Admission was the May 2nd email stating that the parties were "at an impasse." This was news to the County Defendants. In any event, the County Defendants supplemented their responses to those requests on June 3, 2025. (*Id.*) But at no point since serving the requests and before filing the present motion have Plaintiffs conferred with the County Defendants about any specific response, let alone any deficiency.

Similarly, the only conference that occurred regarding the County Defendants' responses to Interrogatory No. 3 and Request for Production No. 3 occurred via Plaintiffs' May 20, 2024, letter and the County Defendants' May 31, 2024, response. In particular, at the time of those communications, the County Defendants were still working on preparing ESI materials for production in response to Request for Production No. 3 and they indicated this to Plaintiffs. (*See* Dkt. 129-21.) As of the date of this response brief, the County Defendants have supplemented their original, September 27, 2023, production (29,313 pages of materials and 14 audio/video files) with an additional 20,414 pages of materials and 381 audio/visual files. (Dec. of Mills, ¶¶ 4-8.) As the County Defendants supplemented those responses, Plaintiffs never communicated any objection to any particular discovery response or suggested that they were conferring for purposes of fulfilling the meet and confer requirement. At most, Plaintiffs indicated in their March 11, 2025, email that

6

they had concerns about Kenosha County and David Beth's ESI production related to text messages. But they <u>never</u> mentioned any concerns with or objections to the productions of Racine County, Sauk County, Washington County, Walworth County, or Waukesha County. (Dkt. 129-30.)

A threshold issue in the review of any motion to compel discovery is whether the movant made adequate efforts to resolve the dispute without court intervention. *See Marshall v. GE Marshall, Inc.*, No. 2:09 CV 198, 2012 WL 5831195, at *4 (N.D. Ind. Nov. 15, 2012); *Cardoza v. Bloomin' Brands, Inc.*, 141 F.Supp.3d 1137, 1145 (D. Nev. 2015). Courts have broad discretion in determining whether the moving party has satisfied the meet-and-confer component of Rule 37. *Id.* (citing *Mintel Intern. Group, Ltd. v. Neerghen*, 2008 WL 4936745, *1 (N.D.Ill. Nov.17, 2008)).

> The [meet-and-confer] communication specifically must address the conflict and appear to involve meaningful negotiations. The motion should be denied where it is obvious that the parties did not engage in a meaningful dialogue, particularly where the non-moving party shows a willingness to compromise. Failure to confer after discovery has been supplemented may be detrimental to the moving party's request.

*Id.* (internal citations omitted); *see also Peters*, 2023 WL 6257235, at *2. Rule 37's meet and confer mandate "is not an empty form of words that in the end can be ignored, allowing counsel merely to dig their heels in and obdurately repeat the very demands they made at the beginning of the conference." *Generation Brands, LLC v. Decor Selections, LLC*, No. 19 C 6185, 2020 WL 6118558, at *3 (N.D. Ill. Oct. 16, 2020).

Here, Plaintiffs have simply failed to comply with their obligations as they pertain to the County Defendants. While they may have believed that communications with counsel for the City Defendants would suffice for purposes of all municipal defendants, such is not the case. Further, a review of Plaintiffs' May 20, 2024, letter and the County Defendants' May 31, 2024, response illustrates more generally the unripe nature of Plaintiffs' complaints. Plaintiffs have done little to identify with any specificity their concerns with the County Defendants' responses; instead, they

7

simply demand that the County Defendants provide more or different information – even if that is not what the request was seeking, even if the County Defendants already provided all information available, and all without citation to any legal support.

The County Defendants are certainly willing and able to work cooperatively with all parties to ensure that the discovery process concludes in a timely manner and with complete transparency. But particularly where there are seven different County Defendants responding to the same discovery requests as the five City Defendants, with over 100,000 pages of materials and multiple terabytes of data having already been produced, this Court should require that Plaintiffs do more to identify <u>specific</u> concerns or objections to the County Defendants' responses before entertaining a motion to compel. After all, that is the purpose of the prerequisites found in Rule 37 and its local rule counterpart. For these reasons, the Court should deny Plaintiffs' motion in its entirety as to the County Defendants.

## II. PLAINTIFFS DO NOT PROVIDE ANY BASIS TO COMPEL SUPPLEMENTATION OF THE COUNTY DEFENDANTS' RESPONSE TO INTERROGATORY NO. 3.

In support of their demand related to Interrogatory No. 3, Plaintiffs quote the County Defendants' response to the interrogatory (Kenosha County "knows that their officers 'had many conversations' during and after the civil unrest…") without providing any context for the statement. (*Id.*, p. 15 (citing Dkt. 129-28, p. 11).) The interrogatory at issue was grossly vague and overbroad, and the County Defendants responded appropriately:

> **INTERROGATORY NO. 3:** Under oath, please identify every Communication that any of your employees or agents had about the Protests or any of the allegations, events, or circumstances described in Plaintiff's Complaint. For each such Communication, please: (a) state with particularity the substance of the Communication; (b) identify everyone involved in the Communication; (c) provide the date of the Communication; and (d) state whether or not the Communication was memorialized in a police report or other Document. If you answer this

8

Interrogatory by referring to Documents, please state under oath that the sum total of Communications responsive to this Interrogatory are contained in the Documents that you reference.

**RESPONSE:** Objection. This Interrogatory is overly broad and unduly burdensome, and therefore it exceeds the permissible scope of discovery as set forth in FRCP 26(b). The law enforcement officers identified in response to Interrogatory No. 1[4] could not even begin to identify every communication they had about the allegations, events, or circumstances described in Plaintiff's Complaint, given the number of other law enforcement officers, protestors, and other individuals present on any given day. Each officer likely had conversations with many persons during and after the civil unrest that in some way relate to the allegations, events, or circumstances described in Plaintiff's Complaint. Absent a specific inquiry to a specific officer, these answering defendants cannot respond to the Interrogatory as written.

(Dkt. 129-28, p. 11.)

As mentioned above, Plaintiffs complained to the County Defendants about their response to Interrogatory No. 3 in their May 20, 2024, letter:

Interrogatory No. 3. requests every Communication that any of Defendants' employees or agents had with any person, including witnesses, Individual Defendants, and other law enforcement and prosecutorial agencies about any of the allegations, events, or circumstances described in Plaintiff's Complaint. Defendants' responses are wholly deficient. Although they acknowledge officers "had conversations with many persons", Defendants suggest they cannot respond unless Plaintiff identifies specific officers. Plaintiff expects a supplemental response to this interrogatory that actually provides the information requested, as this information is not equally available to Plaintiff and County Defendants have an obligation to conduct a reasonable investigation into their employees and agents' communications.

(Dkt. 129-16, p. 2.) The County Defendants responded, at length, as follows:

If you are unhappy with any of the County Defendants' responses because you did not receive the answer or information you were expecting, that does not mean our answers were unresponsive or deficient in any way. Let me be clear: the County Defendants responded to your discovery requests <u>exactly as they were written</u>. It is not our duty to guess what you might be seeking or to provide you with information you did not actually request.

---

[4] Importantly, the County Defendants identified 198 officers in response to Interrogatory No. 1.

9

…

**Your position:** Regardless of whether hundreds of officers responded to the events on August 25, 2020, Plaintiff expects the County Defendants to nevertheless itemize every single conversation every single one of these hundreds of employees had about anything at all at any time related to the allegations in Plaintiff's Complaint.

**Our response:** First, I note that you make no substantive effort to explain your position on our objection to the overbreadth of your request. You refuse to narrow the scope of the interrogatory in any meaningful way—e.g. by time, topic, and specific persons. Instead, you simply assert that "you expect answers" because the information is not equally available to you. You do not seem to appreciate the fact that you served an interrogatory asking the County Defendants to identify <u>every single conversation anyone with any type of relationship with any of the County Defendants ever had "about the Protests" at any time</u>. You offer no explanation at all about how such a request is <u>reasonably calculated</u> to lead to the discovery of admissible evidence, particularly when case law confirms that it is not. *See, e.g., Craigville Tel. Co. v. T-Mobile USA, Inc.*, 2022 WL 1499908, at *1 (N.D. Ill. May 12, 2022). You offer no legal basis for your position at all. Saying, "because I want it" is simply not enough to overcome valid objections to the most egregiously overbroad interrogatory that could possibly be drafted.

Relatedly, you fail to mention whatsoever our objection based on burden under FRCP 26(b). Therefore, our objection stands both because it is unopposed and because it is valid. Even where a municipality is the responding party and must provide any responsive information available to it, it is still only required to conduct a "<u>reasonable inquiry</u>." *See, e.g., Loos v. Cnty. of Perry, Illinois*, 2021 WL 6427716, at *2 (S.D. Ill. Nov. 12, 2021).

Identifying and then interviewing each and every one of the hundreds of county employees, representatives, agents, contractors, etc. to determine whether they ever had any conversation with anyone else on the face of planet Earth "about the Protests or any of the allegations, events, or circumstances described in Plaintiff's Complaint" would take <u>hundreds</u> of hours. In turn, given 1) the amount of time that has passed since the events alleged in the complaint; and 2) the widely varying roles and participation of each of the hundreds of county employees, representatives, agents, contractors, etc. in any of the events surrounding the 2020 protests, it is highly likely that the vast majority—if not all—of these employees, representatives, agents, contractors, etc. will either have no specific recollection of any particular conversation, or they will only generally recall conversations that are not materially relevant to any party's claims or defenses in this matter. Thus, the burden and expense of this proposed discovery very clearly outweighs any likely benefit, and it is foreclosed pursuant to the plain language of FRCP 26(b).

> You have not identified with any particularity any benefit to this discovery at all, nor have you offered any explanation as to why or how the burden of such an unreasonable undertaking could possibly be outweighed by some benefit. Thus, our objections and response stand, and the County Defendants will not be supplementing their response to Interrogatory No. 3.

(Dkt. 129-21, p. 1, 5-6 (underline emphasis in original).) Plaintiffs did not respond in any way to the County Defendants' May 31, 2024, letter, nor did they provide any authority that would support their position or rebut the County Defendants' position. Similarly, they have never made any effort to limit the breadth of the interrogatory in any way.

As Plaintiffs note, the party objecting to a discovery request bears the burden of showing why the request is improper. (Dkt. 129-2 (citing *Dauska v. Green Bay Packaging, Inc.*, 291 F.R.D. 251, 257 (E.D. Wis. 2013).) The County Defendants fulfilled this burden in their May 31, 2024, letter responding to Plaintiffs' position. Plaintiffs never provided any rebuttal, and they do not even meaningfully discuss Interrogatory No. 3 within their brief in support of their motion to compel. For this reason alone, the Court should deny their motion as it relates to Interrogatory No. 3. *See Price v. Board of Educ. of City of Chicago*, 755 F.3d 605, 608 (7th Cir. 2014) (unsupported and undeveloped arguments are deemed waived).

Additionally, the County Defendants' response is legally sound. Indeed, the very case upon which Plaintiffs rely, *Dauska*, confirms that the interrogatory in question was overly broad:

> [T]here are limits to the use of open-ended terms such as "related to," "pertaining to," or "concerning." A discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning" to modify a general category or broad range of documents or information. The reason for this rule is that such broad language makes it extremely burdensome to determine which of numerous documents may conceivably fall within its scope.

*Dauska*, 291 F.R.D. at 261-262 (internal quotations and citations omitted). Overly broad, generalized, and unduly burdensome discovery requests that seek "all" information or

11

communications from anyone at any time that relate to or pertain to a topic are simply not within the permissible scope of discovery set forth in Federal Rule of Civil Procedure 26(b). *See Craigville Tel. Co. v. T-Mobile USA, Inc.*, 2022 WL 1499908 (N.D. Ill. May 12, 2022).

The County Defendants cannot be faulted for Plaintiffs' inability to draft appropriate interrogatories that comport with the principles and requirements of Federal Rules of Civil Procedure 26 and 33. Nor is it this Court's job to rewrite otherwise improper discovery requests. *See Craigville*, 2022 WL 1499908, at *1 (citing *Art Akiane LLC v. Art & SoulWorks LLC*, 2021 WL 5163288, *3 (N.D. Ill. 2021) (quoting Fed.R.Civ.P. 26(b)(1)); and *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 4356594, at *3 (N.D. Ill. 2018)) ("[I]t is not the Court's job to re-write or 'right size' Plaintiffs' RFPs on its own, it declines to do so.").

All that Plaintiffs have done with the present motion is "merely to dig their heels in and obdurately repeat the very demands they made at the beginning of the conference"—exactly what courts have warned against. *See Generation Brands*, 2020 WL 6118558, at *3. Because Plaintiffs have not provided any basis to compel the County Defendants to supplement their response to the overly broad request in Interrogatory No. 3, the Court should deny Plaintiffs' motion.

## III. PLAINTIFFS HAVE NOT PROVIDED ANY BASIS TO COMPEL SUPPLEMENTATION OF THE COUNTY DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 3.

Generally, despite the reference to Interrogatory No. 3, it appears that Plaintiffs' motion is mostly concerned with the production of documents or materials in response to Request for Production No. 3. However, a review of the 49 exhibits filed by Plaintiffs in support of their motion shows that they did not file a copy of those requests and responses with the Court. Nevertheless, Request for Production No. 3 was also excerpted and discussed in the County Defendants' May 31, 2024, letter to Plaintiffs:

12

**REQUEST NO. 3:** All Documents containing, constituting, or memorializing Communications that refer or relate to the Protests or the events described in Plaintiff's Complaint. This Request includes but is not limited to (a) all Communications between any law enforcement officer (including Individual Defendant Officers), and any protester or member of the public; (b) all Communications between law enforcement officers (including but not limited to Individual Defendant Officers and supervising officers); (c) all Communications between officers involved in or assigned to the Protests (from any law enforcement agency); and (d) all Communications between all officers, including other law enforcement agencies, public officials, or witnesses, or any other Person disclosed by the parties under Rule 26 or in response to Interrogatories[5].

**RESPONSE:** Any such communications are contained in the produced documents. See also COUNTY-AMH000077-000132 and COUNTY-AMH017313-017675, which contain deposition testimony (and therefore, arguably communications) taken in *Randall Delaney v. Kenosha County, et al.* This response will be supplemented upon agreement by the parties of ESI protocol to govern electronic discovery in this matter, and it will further be supplemented as responsive materials are received or discovered and as required by FRCP 26(e).

(Dkt. 129-21, p. 19-20.)

Plaintiffs assert that they are seeking the Court's assistance to compel production of "text messages that have somehow disappeared from nearly every officer who was on duty, without any justification." (Dkt. 129-2, p. 2.) However, as discussed below, they have simply assumed that "nearly every officer on duty" was texting about the protests without providing any legal or factual support for their claims.

### a. Kenosha County

It is unclear why Plaintiffs are claiming that Kenosha County has not produced any text messages. Their silence is particularly concerning, because on March 13, 2025, two months before Plaintiffs filed this motion, the County Defendants produced 154 pages of messages found at Bates range COUNTY-AMH046440 – 046593, which contain well over 4,600 messages. (Dec. of Mills, ¶

---

[5] Again, the County Defendants identified 198 officers in response to Interrogatory No. 1.

13

12.) Additionally, the County Defendants produced 15 pages of chat logs at Bates range COUNTY-AMH017703 – 017717 with their original production on September 28, 2023. (*Id.*)

Nevertheless, Plaintiffs assert that "Kenosha County and Sheriff Beth have not (and apparently will not) produce a single text message from Beth, or their hundreds of officers who responded to the Protests." (Dkt. 129-2, p. 15-16.) Even ignoring the thousands of chat messages already produced, Plaintiffs' positions as set forth in their motion rely on numerous, glaring assumptions to support their claim that text messages exist that have not been produced.

For example, Plaintiffs assert that "[t]he City of Kenosha, along with the County of Kenosha, also developed an Incident Communications Plan ('ICS 205') to communicate amongst each other and with neighboring law enforcement agencies, including the other City and County Defendants." (*Id.*, p. 4, 15.) The document they excerpt for this assertion, Dkt. 129-8, is a list of phone numbers with an "operational period" listed of "8/28/20 to 8/29/20." The document is not authenticated in any way[6], and their assumptions about it are entirely devoid of foundation. Notably, it is not dated or signed, and no author is identified. Nothing about the document establishes that the list was ever circulated or used by officers to "communicate amongst each other" <u>via text message,</u> or that text messages about the protests were actually exchanged between anyone on the list. It was not even attached to a declaration from counsel confirming its authenticity, let alone a statement based on personal knowledge about how (or if) it was used as Plaintiffs claim. Thus, it is inadmissible on its face. *See* Fed. R. Evid. 901; *Bruther v. General Elec. Co.*, 818 F.Supp. 1238 (S.D. Ind. 1993).

---

[6] The same is true for all of the exhibits filed by Plaintiffs to support their motion, which were merely attached to the motion itself rather than any type of declaration swearing under penalty of perjury as to authenticity.

Yet, Plaintiffs combine the existence of this unauthenticated phone list; the fact that Kenosha County had a communications policy regarding cell phone use; and the County Defendants' interrogatory response confirming that officers did, indeed, communicate about the civil unrest, as proof of "their obvious use of cell phones." (Dkt. 129-2, p. 15; *see also* p. 6 (citing Dkt. 129-11).) Tellingly, Plaintiffs omit any discussion of deposition testimony from any Kenosha County officer. Plaintiffs deposed Kenosha County Sheriff's Office Lt. Kenneth Urquhart on February 3, 2025. (Dec. of Mills, ¶ 13, Ex. C.) They do not cite his deposition for any testimony confirming or even suggesting that officers had department-issued phones and texted each other about the protests. This is likely because Lt. Urquhart confirmed during that deposition that, as the commander of tactical operations, he communicated <u>verbally</u> both with his superiors and subordinates:

> Q.   Okay. And throughout the protests, how would you communicate with incident command as the commander over tactical operations?
>
> A.   Most of the time it was verbal. Even from the very onset of it on the 23rd, we were always in proximity to incident command. So when we were initially in the parking lot of Bradford, we were established directly outside of the command post. We eventually set up canopies and dry erase boards, and eventually we were able to move both incident and tactical command into the cafeteria of Bradford High School. And at that time, we were literally in a different corner of the same room of the cafeteria.
>
> …
> A.   Everything was verbal. Is that fair?
>
> Q.   I wouldn't say everything I did was verbal, but I believe that there – based on where I was located and my proximity to the incident commander, I don't see that I would have had a need to email or text or call. I just can't be positive on that, but I don't believe that I had need to email or call.

(Ex. C, p. 36-37.) As for his communications with officers on the ground, Lt. Urquhart confirmed that it was done via radio. (*Id.*, p. 55-56; 58-59.)

15

Similarly, Plaintiffs assert, without any support, that Kenosha County is refusing to produce text messages from "their hundreds of officers who responded to the Protests." (Dkt. 129-2, p. 15-16.) Contrary to Plaintiffs' baseless claim, the vast majority of Kenosha County Sheriff's Office deputies did not have department-issued cell phones in 2020, with only five or six top officials being the exception. (Dec. of Tony Gonzalez, ¶ 4-6.) And each of the department-owned phones issued to those Kenosha County deputies has long since been replaced and recycled. (*Id.*, ¶ 7.) To assuage Plaintiffs' concern that responsive materials exist that have not been produced, the County Defendants are including with this response a declaration from Kenosha County Sheriff's Office's Captain of Administrative Services confirming that he reviewed all available records and that the County does not have any data from any of the department-issued phones used in August 2020[7]. (*Id.*, ¶ 8.) All other electronic communications responsive to the request, including voluminous chat logs, were already produced. And deposition testimony confirms that communications amongst officers about the protests occurred verbally or over the radio. Thus, Kenosha County's response is accurate and complete, and Plaintiffs' motion should be denied accordingly.

### b. Racine County

It is undisputed that in the January 16, 2024, ESI protocol filed with the Court, the parties designated the "data repositories and custodians likely to have ESI in the possession, custody, or control of the Parties that is relevant to this matter" as the persons listed in the parties' Rule 26(a)(1) initial disclosures. (*See* Dkt. 107, p. 3.)[8] Thus, Plaintiffs contend that "<u>Defendants have an obligation to produce the text messages for all officers in the party's disclosures</u>, and not just a handpicked

---

[7] To the extent that Plaintiffs raise the specter of spoliation within their motion to compel, the County Defendants reject their claim entirely. Nevertheless, the County Defendants do not address the assertion further herein, because that issue is not properly before the Court. *See* Fed. R. Civ. P. 7(b)(1); *Taylor v. Schwartzhuber*, 132 F.4th 480, 491-2 (7th Cir. 2025).

[8] The dispute about whether the parties' agreed upon ESI protocol included information from anyone's emails or text messages sent to or from <u>personal</u> phones or <u>personal</u> email addresses is addressed elsewhere, *infra*. (*See* Dkt. 129-13.)

few." (Dkt. 129-2, p. 5 (emphasis added).) They continue, "Plaintiffs have acted in the spirit of cooperation and asked the County to produce the text messages <u>for the officers specifically identified in the County's 26(a) disclosures</u>." (*Id.*, p. 16 (emphasis added).)

However, by filing this motion, Plaintiffs have gone well beyond a request for text messages "for the officers specifically identified in the County's Rule 26(a) disclosures" and have instead engaged in the very "handpicking" that they rail against. The County Defendants identified two individuals in their Amended Rule 26(a) disclosures from Racine County: <u>Tommy Sharrett and Timothy Venegas</u>. (*See* Dkt. 129-46, p. 4.) The County Defendants do not dispute that any text messages sent to or received by Tommy Sharrett and Timothy Venegas on any government-issued device fall within the agreed upon scope of the ESI protocol. But Plaintiffs' current demand now expands well beyond the plain language and limits of the protocol <u>that they agreed to</u>. They now demand that the County Defendants produce text messages from <u>at least six people who are not encompassed by the stipulation</u>: "…there were several Racine County officers with [David Fisher] in his Bearcat whose text messages must be produced." (Dkt. 129-2, p. 20-21.) In a footnote, they add "Captain Weidner, Sergeant Butler, Investigator Srnka, Deputy Storm, and Deputy Bower" to their demand for text messages. (*Id.*, p. 21, fn. 11.) All that is required to resolve this dispute is a review of the ESI protocol and the County Defendants' Rule 26(a) initial disclosures. <u>None</u> of the individuals identified by Plaintiffs were listed by the County Defendants. (*See* Dkt. 129-46.)

As for Deputies Sharrett and Venegas, Racine County did not produce any of their text messages, because they do not have any. Deputy Sharrett had a department-issued Android cell phone in August 2020. (Dec. of Sharrett, ¶ 3.) He received a new department-issued cell phone in April 2021, this time an iPhone. (*Id.*, ¶ 4.) Because his new phone was an iPhone, none of the data on his department-issued Android could be transferred to the iPhone. (*Id.*, ¶ 4.) Once Deputy

17

Sharrett's Android was replaced, it was restored to factory default settings and returned to the manufacturer to be recycled. (*Id.*, ¶ 5.) As for Deputy Venegas, he received his current department-issued cell phone in 2021. (Dec. of Madeline Churches, ¶ 3.) Racine County Sheriff's Office's forensic analyst performed a data extraction on that phone and confirmed that the earliest text messages on the phone were from March 27, 2021. (*Id.*)

Furthermore, and contrary to Plaintiffs' claim, Racine County did not receive a notice of claim advising them of potential legal action from either Plaintiff until January 7, 2022[9] (Dkt. 129-10, p. 7), and Racine County was not added as a defendant in this case until the Amended Complaint was filed on February 2, 2022. (*See* Dkt. 27.) Thus, even assuming that Deputies Sharrett and Venegas used their department-issued cell phones to text about the protests in August 2020, Racine County no longer had possession, custody, or control over those messages by the time it learned that legal action was likely imminent. Accordingly, there is no responsive information to produce and no duty to supplement.

The ESI protocol further states that the parties "must continue to identify additional third-party custodians likely to have ESI relevant to this matter, on an ongoing basis, even if they do not appear on the parties' Rule 26(a)(1) disclosures." (Dkt. 107, p. 2.) To the extent that Plaintiffs point to David Fisher's deposition testimony about using his department-issued phone as support for their demand for his text messages, his deposition occurred on October 21, 2024—and Mr. Fisher retired in December 2023. (Dec. of Mills, ¶ 14, Ex. D, p. 20.) When he retired in 2023, Mr. Fisher handed in his department-issued cell phone and it was recycled. Therefore, the County Defendants did not

---

[9] Plaintiffs misrepresent to the Court that "on December 3, 2020, less than four months after the shooting, Plaintiff Huber also sent a notice of claims to the Defendants." As support, they cite Dkt. 129-10, which contains 27 pages of notices of claim, only the first of which is dated December 3, 2020—and it was directed to the City of Kenosha and Kenosha County only. Every single other notice was sent in early 2022. (*See* Dkt. 129-10, p. 4-27.)

identify Mr. Fisher as a custodian likely to have ESI relevant to this matter following his deposition, because the information no longer existed. And as for the other Racine County deputies mentioned by Plaintiff, simply being in proximity to David Fisher does not suggest that other officers in the same Bearcat were texting or are otherwise likely to have ESI relevant to this matter. Plaintiffs' position lacks any basis in fact or even in the language of the ESI protocol, and therefore their motion should be denied.

### c. Sauk County

Plaintiffs' position on the existence of missing text messages from Sauk County officers similarly lacks any support. The only thing Plaintiffs cite is a report from Mark Willer, a <u>City of Baraboo EMT</u> who was a member of Sauk County's Emergency Response Team (*see* Dkt. 129-28, p. 11), in which Mr. Willer stated that he "phoned my commander Matt Burch" after Willer responded to the Rittenhouse shootings. (Dkt. 129-2, p. 21 (citing Dkt. 129-45).) Nothing in this testimony of an employee of the City of Baraboo confirms anything about whether Sauk County employees communicated via text message. Taken at face value, it simply shows that a City of Baraboo employee called a Sauk County employee. Regardless, on June 4, 2025, the County Defendants supplemented their production with 1,772 pages of additional materials, and 40 of those pages contained logs of text messages from Sauk County. (Dec. of Mills, ¶ 8.) Sauk County has produced all responsive information, and any assertion to the contrary is meritless. Therefore, Plaintiffs' motion should be denied.

### d. Waukesha County

Plaintiffs' argument regarding the sufficiency of Waukesha County's production of text messages is particularly illogical and unsupported. (*See* Dkt. 129-2, p. 21.) Plaintiffs <u>confirm</u> that Waukesha County produced text messages, and Plaintiffs describe those text messages as

19

"problematic" (a description that the County Defendants dispute and that will be fully discussed in a future dispositive motion). Yet despite this undisputed production, Plaintiffs assert that the county "failed to conduct a reasonable search and identify the remaining officers' communications." (*Id.*) Plaintiffs offer absolutely no evidence to support this claim or their apparent belief that more text messages exist. Further, the position is illogical on its face: if Waukesha County was withholding text messages in an attempt to hide "problematic" or otherwise damaging evidence, why would it have produced the messages that Plaintiffs call "disturbing?" (*Id.*, p. 5.)

Plaintiffs also claim that Waukesha County has done nothing more than produce the text messages "between two officers." (Dkt. 129-2, p. 21.) This is blatantly false, and Plaintiffs' decision to file a single page of text messages between just two deputies can be nothing short of purposeful misrepresentation to the Court. The County Defendants produced 38 pages of text messages from Waukesha County deputies that clearly included a group text message involving individuals identified by Waukesha County in the County Defendants' Rule 26(a) disclosures, including Nicholas Ollinger and Frank McElderry. (Dec. of Mills, ¶ 15, Ex. E.) Plaintiffs assertion to the contrary is directly rebutted by the very evidence produced in response to the request—evidence that they knowingly chose not to mention to the Court.

Finally, to the extent that Plaintiffs imply that Waukesha County has not made a diligent search for responsive information, they have offered no proof. Indeed, Plaintiffs fail to cite the testimony of Waukesha County Sheriff's Office Deputy Michael Anderson, whose deposition they took on December 3, 2024. During that deposition, Deputy Anderson was asked about methods of communication and texting and <u>confirmed that he provided his text messages related to the protests</u>:

> Q. Okay. So the officers are right outside of the Bearcat, how would they communicate?

A.      It would be—I could either talk to them or I could communicate via radio.

Q.      Okay. And if those officers were more than a few miles away, how would you communicate?

A.      Either radio or with a phone.

Q.      Okay. In your experience, would it be more common to use the radio or the phone?

A.      It depends on the request.

Q.      When you say "it depends on the request," what does that mean?

A.      So it it's a non-immediate thing that I'm looking for a question or an answer, I might call somebody.

Q.      Okay.

A.      If it's an immediate incident on the ground that needs to be relayed, it would typically be done over a radio.

Q.      Okay. Would you ever utilize text?

A.      Yes.

Q.      Okay. And would that be in the instance where it's nonemergency?

A.      Yes.
…

Q.      Okay. In your experience, sir, in what instances might you text another officer as opposed to calling them from the Bearcat?

A.      You mean calling them on the phone from the Bearcat?

Q.      Yes, sir.

A.      Nonpriority questions, nonpriority information.

Q.      That would be when you would elect a text?

A.      Elect a text or make a phone call.

…

21

Q.      Okay. Do you recall ever having to turn your phone in or do any kind of regular data upload?

A.      No. I've never turned my phone in. I've sent messages per open records requests.

Q.      Oh. So is that like if someone – or if someone files a records request that pertains to some kind of communications you made on your phone, then you might look for communications?

A.      Yes.

Q.      Okay. Understood. Would you sent that to the records department or whoever the equivalent at Waukesha County?

A.      Yes.

Q.      Okay. Understood. Do you recall how many times you've done that in your career at Waukesha County?

A.      Once.

Q.      Okay. And do you recall what it was related to?

A.      The Kenosha civil unrest.

(Dec. of Mills, ¶ 16, Ex. F, p. 87-90.)

Plaintiffs have no basis in law or fact to support their claim that Waukesha County failed to conduct a reasonable search or otherwise produce any responsive text messages. Therefore, their motion should be denied.

### e. Walworth County

Plaintiffs appear to understand that Walworth County Sheriff's Office deputies did not have work-issued cell phones during the civil unrest in 2020. (Dkt. 129-2, p. 22; *see also* Dec. of Todd Neumann, ¶ 4.) But they take issue with this fact by posing the rhetorical question, "So what?" And then they petulantly claim—without citation to a single legal authority—that "Plaintiffs are entitled to the text messages for whatever phones they were using during the protests." (*Id.*) This lack of

22

legal footing permeates Plaintiffs' entire brief, but especially their arguments regarding the production of information from non-parties' personal cell phones. (*See* Dkt. 129-2, p. 28-30.) The municipal defendants have collectively and continuously objected to requests for any personal cell phone data of non-parties because it is not within the municipalities' possession, custody, or control. (*See, e.g.*, Dkt. 129-13, p. 1; Dkt. 129-28, p. 3, ¶ 8; Dkt. 129-21, p. 21-24.) The issue of production of personal cell phone data from nonparties is discussed in more detail below. Regardless, Walworth County has already produced all responsive information within its possession, custody, or control and has therefore fulfilled its obligations under the Federal Rules of Civil Procedure.

### f. Washington County

Washington County appears to be a mere afterthought in Plaintiffs' motion, worthy of a single passing reference: "The same goes for Washington County." Plaintiffs have done absolutely nothing to develop their argument, nor have they identified anything to which they are entitled or provided any legal footing for their perfunctory claim. This omission is compounded by the lack of any meaningful pre-motion conference with the County Defendants about any concerns, as discussed above. The County Defendants cannot even meaningfully respond. For this reason, Plaintiffs have waived any further argument. *See Price*, 755 F.3d at 608. Denial of their motion is therefore appropriate.

## IV. THE COUNTY DEFENDANTS DO NOT HAVE POSSESSION, CUSTODY, OR CONTROL OF NONPARTY EMPLOYEES' PERSONAL CELL PHONE DATA AND NEVER AGREED TO PRODUCE IT.

### A. The County Defendants <u>Never</u> Agreed to Include Nonparty Employees' Personal Phone or Email Data in the ESI Protocol's Definition of "Repositories."

As the email communications filed by Plaintiffs make clear, the municipal defendants explicitly stated that the ESI protocol should <u>not</u> define "repositories" to include the personal

23

devices of any municipal employees. (Dkt. 129-13.) Nevertheless, Plaintiffs seem to imply that the municipal defendants' position should be of no matter. Because Plaintiffs "spent months trying to get Defendants to finalize an ESI order," the Court should just adopt Plaintiffs' proposal and require defendants to search employees' personal devices. (Dkt. 129-2, p. 7.) Yet, Plaintiffs also contradict themselves by confirming that they agreed to the proposed order sent by the City Defendants—even though the City Defendants were crystal clear that personal devices were excluded. (*Id.*, p. 8.)

First in Exhibit B regarding the repositories – changed the language from:

- "Repositories for production of ESI shall include all department-issued and department-controlled electronic communication systems, including emails, texts, and mobile data terminals/vehicle communication systems. Repositories should further include any emails and text messages sent to or from personal phone numbers or email addresses, to the extent such were used for any work-related communications."

To:

- "Municipal Defendants shall search their respective department's servers for electronic communications (e.g. emails) pursuant to the search identified in Exhibit B. Municipal Defendants will also search any department issued phones for the time period August 23-September 1st for the search terms identified in Exhibit B."

(Dkt. 129-13, p. 1) Compare with what Plaintiffs claim was agreed to:

> I.    **ESI Data Repositories** (entities that house ESI)
>
> [Defendants should please fill in, to include emails, texts, written dispatches, mobile data terminals/vehicle communication systems, etc. And to include personal text/email if used for any work-related communications.]
>
> Repositories for production of ESI shall include all department-issued and department-controlled electronic communication systems, including emails, texts, and mobile data terminals/vehicle communication systems. Repositories should further include any emails and text messages sent to or from personal phone numbers or email addresses, to the extent such were used for any work-related communications.

(Dkt. 129-14, p. 8.) Once again, Plaintiffs do not cite any evidence to support their assertion that the above language in red text was ever agreed to by any defendant—because it was not. This type of material misrepresentation steps concerningly close to a violation of Federal Rule of Civil Procedure 11(b)(3) and should not be tolerated or condoned.

24

### B. The County Defendants Do Not Have Possession, Custody, or Control of their Employees' Personal Cell Phone Data.

The language of Federal Rule of Civil Procedure 34 and case law interpreting it is uniformly clear: it only applies to documents or tangible things within a party's possession, custody, or control. The <u>requesting party</u> bears the burden of showing that a producing party is, in fact, in possession of a document. *McBryar v. Int'l Union of United Auto. Aerospace & Agr. Impl. Wokers of Am.*, 160 F.R.D. 691, 695 (S.D. Ind. 1993). Lack of such evidence by the moving party is grounds to deny a motion to compel. *Ascom Hasler Mailing Systems, Inc. v. U.S. Postal Service*, 267 F.R.D. 1, 8 (D.D.C. 2010).

"[T]he fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993). Production of personal documents from nonparties—including employees of a corporate defendant—can only be compelled by a subpoena duces tecum served on the individual employee. *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 148 F.R.D. 608 (E.D. Wis. 1993); *Barnes v. Northern Ind. Public Serv. Co.*, 2016 WL 11604339 at *3 (N.D. Ind. 2016). Plaintiffs have not cited a single case suggesting that any of the County Defendants have any <u>legal right or obligation</u> to compel their employees to turn over personal information for use in this litigation.

Similarly, Plaintiffs have not cited any evidence establishing that any given employee actually used a personal cell phone to text any arguably relevant information about the civil unrest. Instead, Plaintiffs just assert that it is inconceivable that employees were not texting. But this does not somehow give the counties a right to demand inspection of all employees' personal devices. Likewise, Plaintiffs' citation to various county policies regarding the use of personal cell phones and employees' expectations of privacy does not change the result. An internal policy does not give a

25

county a legal right to compel its nonparty employee to turn over his or her personal cell phone for inspection and use in litigation—and <u>Plaintiffs have not pointed to any authority otherwise</u>. Where a party "never had possession of the documents in question, then those documents are not in their possession, custody, or control and that party cannot be required to produce something it never had in its possession." *Walston v. Nat'l Retail Sols., Inc.*, No. 24 C 83, 2025 WL 580518, at *7 (N.D. Ill. Feb. 21, 2025). Without such evidence of possession or authority to support their position, Plaintiffs' motion must be denied. *See Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992).

Finally, and perhaps most importantly, "by its terms, Rule 34 applies only to parties." *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006). None of these unidentified county employees—which apparently number in the hundreds, if not more—is a party to this litigation. The Court's scheduling order gave Plaintiffs until December 12, 2023, to add additional parties and amend their pleadings. (Dkt. 91.) The County Defendants served their Rule 26 initial disclosures on July 10, 2023. (Dkt. 129-46.) While the Court has granted several stipulations by the parties to extend discovery and expert disclosure deadlines, there has never been a request to extend the deadline to add parties or amend the pleadings, nor have Plaintiffs ever attempted to amend their operative complaint to substitute any individuals in place of any Doe defendants. Even for the individual employees who Plaintiffs have identified by name, they remain nonparties and can no longer be added to this action. Simply put, there is no mechanism through which Plaintiffs can now force the County Defendants to obtain and produce materials of third parties over which they have no possession, custody, or control. Thus, Plaintiffs' motion must be denied.

26

## V.    REQUESTS FOR ADMISSION

Plaintiffs also complain about responses to their Requests for Admission 1-2, 5, 8-9, 11, 13-19, 21, 23, 25, 27-41, 43, 45, 47 and 49-61. (Dkt. 129-2, p. 2[10].) Request numbers 5, 9, 11, 19, 21, 23, 25, 41, 43, 45, and 47 ask the municipal defendants to admit whether certain phone numbers were the personal cell phone numbers of various City of Kenosha Police Department employees, information that is not within the County Defendants' possession, custody, or control. (Ex. A.) Plaintiffs do not appear to take issue with these responses, so the County Defendants will not discuss them further. (*See* Dkt. 129-2, p. 16.) This leaves Request numbers 1-2, 8, 13-18, 27-40, and 49-61. Half of these requests asked the municipal defendants to admit whether certain phone numbers were "government-issued, work cell phone number[s]" of various Kenosha County Sheriff's Office employees. As explained above, the County Defendants were not even aware of any concerns with their responses until receiving opposing counsel's May 2nd email, and that email was devoid of any information that would explain Plaintiffs' position. Nevertheless, the County Defendants began looking into the issue and had not yet responded with their position when Plaintiffs filed the present motion on May 15, 2025. And on June 3, 2025, the County Defendants served Plaintiffs with amended responses specifically admitting and denying the requests regarding "government-issued, work cell phone number[s]." (Ex. A.)

Given the County Defendants' amended responses served on June 3rd, it appears that the Requests that now remain at issue are those that asked the municipal defendants to admit or deny the alleged personal cell phone numbers of Kenosha County employees. To support their position, Plaintiffs cite two irrelevant documents (Dkt. 129-7, an unauthenticated document that appears to

---

[10] Later in their brief, Plaintiffs mention that they are seeking confirmation about the personal cell phone number of Mark Levin. (Dkt. 129-2, p. 16.) This request was made in Request for Admission No. 7, which was not identified anywhere in Plaintiffs' motion.

be a City of Kenosha Police Department distribution list of some kind; and Dkt. 129-31, which are the County Defendants' original responses to the requests at issue). Ultimately, Kenosha County properly responded to the requests for personal cell phone numbers, even if Plaintiffs do not like the answers they received: after a reasonable inquiry was made, the information known or readily available to the County Defendants was insufficient to allow an admission or denial.

Further explanation on the particulars of why the information was insufficient would require disclosure of attorney-client privileged communications. Regardless, and generally, Kenosha County's phone provider advised that none of the numbers in these requests were associated with any active Kenosha County account, nor were they associated with the county's mobile account in August 2020. Thus, at most, the County Defendants can only confirm that the numbers are not those of a government-issued cell phone. But that information does not allow the County Defendants to admit or deny whether the numbers are any particular person's personal cell phone number. The County Defendants undertook a reasonable inquiry in order to respond to the requests, and Plaintiffs have not provided any legal or factual basis to suggest otherwise—they just do not like the responses. But that is not a basis to grant a motion to compel, and therefore the Court should deny Plaintiffs' motion.

## CONCLUSION

For the reasons stated herein, the County Defendants respectfully request that the Court deny Plaintiffs' motion to compel against the County Defendants in its entirety.


(Signature on next page)


28

Dated this 11th day of June, 2025.

By: /s_____ *Sara C. Mills*_____
SAMUEL C. HALL, JR.
State Bar No. 1045476
SARA C. MILLS
State Bar No. 1029470
MICAELA E. HAGGENJOS
State Bar No. 1118840
Attorneys for Defendants, David G. Beth, Kenosha County, Waukesha County, Racine County, Sauk County, Walworth County, and Washington County
CRIVELLO, NICHOLS & HALL, S.C.
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: (414) 271-7722
Fax: (414) 271-4438
E-mail: shall@crivellolaw.com
smills@crivellolaw.com
mhaggenjos@crivellolaw.com

29