**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| JOHN HUBER, in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER, <br>     Plaintiff, <br>   v. <br><br> DAVID G. BETH, in his individual and Official capacity as Kenosha County Sheriff, et al., <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:21-cv-00969-LA |
| PAUL HENRY PREDIGER, <br>     Plaintiff, <br>   v. <br><br> THE CITY OF KENOSHA, et al., <br>     Defendants. | ) ) ) ) ) ) ) ) | No. 2:21 cv 01192-LA (Consolidated with No. 2:21-cv-00969-LA) |

**DECLARATION OF CLEMENTINE UWABERA IN SUPPORT OF RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO ANSWER DISCOVERY REQUESTS FOR THEIR OFFICER'S TEXT MESSAGES FROM THE KENOSHA PROTESTS**

I, CLEMENTINE UWABERA, declare as follows:

1. I am an adult resident of the State of Wisconsin. I am a partner with Stafford Rosenbaum LLP, and licensed to practice law in the State of Wisconsin and the United States District Court for the Eastern District of Wisconsin. My colleagues and I represent the City Defendants in the above-captioned matter before this Court.

2. I make this declaration based on my personal knowledge.

1

Case 2:21-cv-00969-LA     Filed 06/11/25     Page 1 of 11     Document 141

3. In regard to document (only) production, between October 2, 2023 and July 26, 2024, City Defendants have produced 74,817 pages to plaintiffs (CITYDEF000174-CITYDEF074991). In addition, between July 27, 2024 and May 9, 2025, City Defendants produced another 986 pages to plaintiffs (CITYDEF074992-CITYDEF075977. The document production includes, but is not limited to, the following:

    a. The 678 pages of the Rittenhouse investigatory police report was produced on October 2, 2023 as CITYDEF000666-CITYDEF001544. In addition, unredacted reports from August 25, 2020 requested by plaintiffs were provided on December 19, 2024, as CITYDEF075871-CITDEF075877.

    b. Thousands of MDC chat messages exchanged during the unrest were provided in Excel spreadsheets which were produced on October 3, 2023 as CITYDEF003055-CITYDEF003310.

    c. Thousands of pages of email correspondence from Menomonee Falls and West Allis Police Department was produced on May 29, 2024 as CITYDEF009207-CITYDEF013650.

    d. Tens of thousands of pages of email correspondence from the City of Kenosha and Kenosha Police Department was produced on June 28, 2024 as CITYDEF013651-CITYDEF073213.

    e. Prior to July 26, 2024, cell phone data was provided from both Kenosha and West Allis Police Department phones, including both the foregoing email/ESI productions and additional productions of CITYDEF009093-

2

CITYDEF009101, CITYDEF009108-CITYDEF009206, and CITYDEF074974-CITYDEF074991. Additional cell phone data was produced on December 19, 2024, and May 9, 2025, as CITYDEF0075878-CITYDEF075977.

4. The foregoing productions were made upon review of hundreds of thousands of documents, including, but not limited to, an extensive ESI review and production.

5. On October 2, 2023, City Defendants produced an unbates-stamped file containing thousands of radio clips in 10 zipped folders comprising the dispatch communications during the unrest in August 2020.

6. In regard to audio and video production, between October 2, 2023 and July 15, 2024, City Defendants have produced the following 85 video files (CITYDEF900001-CITYDEF900085) including, but not limited to, all of the squad videos in evidence from August 23, 2020 to August 26, 2020:

    a. West Allis Swat Officers body-cam footage included 30 videos (13.5 GB) produced on October 2, 2023 and bates-numbered as CITYDEF900001-CITYDEF900016.

    b. Fixed wing aerial video captured during the unrest included 9 files (29.4 GB) produced on October 3, 2023 as CITYDEF900017-CITYDEF900025.

    c. Kenosha squad videos included 18 folders (40.3 GB) produced on October 6, 2023 as CITYDEF900032-CITYDEF900064.

3

d. CITYDEF900073-CITYDEF900085 (produced on May 29, 2024) was 13 videos (10.8 GB) of Kenosha Squad Videos from August 23, 2020.

7. On March 21, 2025, the City Defendants also produced 45 videos from August 23-26, 2020, which were recovered by Iron Oak Discovery from the server hosting the Kenosha squad camera system, as CITYDEF900086-CITYDEF900130.

8. City Defendants also produced an unbates-stamped hard drive containing a folder named ATF Cases Files – Audio & Video Files. The audio and video files were collected by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") as part of the ATF's investigation into the arson events that occurred in Kenosha between August 23 and 25, 2020. The City of Kenosha produced the entire collection of ATF audio and video files on July 26, 2024.

9. The ATF folder contains 555 GB of audio and video data, as well as two Leica scans, consisting of 17,613 files, organized into 210 folders. The Leica scan folders contain approximately 6.2 GB of data; the two Leica scan folders and associated files provide 3D renderings of fire-damaged buildings, which were created by the ATF as part of the investigation into the origin and cause of the fires. The audio recordings comprise approximately 237 MB of data, contained in roughly 10 files; the audio recordings—recorded interviews, phone calls, and voice mails—document the ATF's investigation of suspects after the arson events. Subtracting the Leica scans (6.2 GB) and the audio recordings (237 MB) from the total set of data (555 GB) leaves more than 548 GB of video files that document the civil unrest and arson in Kenosha between August 23 and 25, 2020.

10. The ATF video files consist of a wide variety of video footage that captures the events that unfolded in Kenosha between August 23 and 25, 2020. These videos include:

    a. Drone videos and photographs (150 files containing approximately 9 GB of data) capturing civil unrest outside the Kenosha County Courthouse and fires throughout the city.

    b. Security camera video from businesses in the vicinity of the arson events.

    c. Cell phone videos of individuals on the streets in Kenosha, downloaded from Facebook live, YouTube, and other social media platforms. These videos document civil unrest, property damage, and arson.

11. Because the drone videos and photographs consist of 150 files containing 9 GB of data, the remaining 539 GB, consisting of more than 17,000 files, is split roughly evenly between security camera video and cell phone video from individuals on the street. It is difficult to estimate the total hours of footage, but it is safe to say the cell phone and security camera videos contain hundreds of hours of footage. To illustrate, one 4.67 GB file containing cell phone video captures over 9 hours of events.

12. Additionally, the County Defendants produced documents, communications and videos to the plaintiffs. Similarly, Defendant Rittenhouse made productions to the plaintiffs, including, but not limited to, extensive materials and video from the criminal trial.

13. After City Defendants produced significant discovery in Fall 2023, the parties negotiated and reached an ESI Agreement. Attached hereto as **Exhibit A** is a true

5

and correct copy of email correspondence between counsel memorializing the parties' understanding: that ESI searches would cover only department-issued phones and emails for non-party officers identified in the City's Rule 26(a)(1) disclosures, and personal devices would be subject to search only for named Defendants for any relevant, work-related communications. City Defendants objected to search of personal devices of non-parties because it exceeds what City Defendants could reasonably access or produce, particularly where such devices are outside their custody or control. These concerns, including burdensomeness and privacy, were raised and resolved during the 2023 ESI negotiations. At no time did City Defendants agree to search the personal or department-issued phones or email accounts of *every* officer involved in the protests. In fact, City Defendants expressly objected to such a request in Fall 2023. Nevertheless, the version Plaintiffs filed on January 16, 2024 (ECF. 107) excluded these key terms that had been explicitly negotiated.

14. Attached hereto as **Exhibit B** is a true and correct copy of the draft ESI Agreement dated December 8, 2023, with track changes made by the City Defendants, which was circulated to the parties for filing. Plaintiffs agreed to the City Defendants' tracked changes but later filed a different version. Despite flagging this agreement on ESI – and prior omission in plaintiffs' filing to the Court (*see* ECF No. 107) – to plaintiffs' counsel multiple times in the meet and confer process, it is the plaintiffs that once again completely omit this information to the Court in their motion to compel.

15. After the agreement on ESI was reached in January 2024, the plaintiffs then served notice of video depositions for 18 witnesses (including 10 for City Defendants) on

6

February 2, 2024 and scheduling and preparation began in earnest. At first, the deposition of Mayor Antaramian was sought but that was ultimately called off before an official notice was sent. Then the deposition of Officer Krueger was sought as the first deposition and a specific notice was sent for his deposition on February 22, 2024 but then this deposition was cancelled the day before it was set to take place.

16. The plaintiffs then sought that the ESI review and production be completed before any depositions take place. This was a significant undertaking across multiple agencies. In the interim, the parties jointly moved to extend discovery in April. (ECF No. 108). The City Defendants ultimately complete their collection, review and production of ESI materials on June 28, 2024.

17. Plaintiffs served notice of video depositions for four witnesses (including 2 for City Defendants) on October 16, 2024, and scheduling and preparation began. On October 31, 2024, Plaintiffs noticed another City witness for a December deposition. On November 26, 2024, Plaintiffs served notices for ten additional video depositions (including 5 for City Defendants). The depositions took place between October 21, 2024 and March 31, 2025.

18. After City Defendants produced significant discovery in Fall 2023, they continued to supplement discovery in good faith, including producing supplemental productions of cell phone data from the Kenosha and West Allis Police Departments on December 19, 2024, and May 9, 2025, and producing an additional 45 Kenosha squad videos (from August 23–26, 2020) recovered by Iron Oak Discovery on March 21, 2025. They also prepared and served a privilege log.

19. Attached as **Exhibit C** is a true and correct copy of email correspondence regarding the City Defendants' December 19, 2024 response (and supplemental production) to Plaintiffs' November 18, 2024 request for phone records from **ALL** City officers involved in the Kenosha protests, including Officers Nosalik, Miskinis, and Larsen, as well as officers from Menomonee Falls and West Allis. Plaintiffs also requested body camera footage, MRAP/Bearcat videos, and reports from Menomonee Falls officers.

20. City Defendants also produced the unredacted police reports for Officers Moretti and Krueger as requested, with the relevant Bates numbers CITYDEF075871–CITYDEF075877) on December 19, 2024.

21. Attached as **Exhibit D** is a true and correct copy of email correspondence in which City Defendants confirmed (and identified for plaintiffs' convenience) the prior production of radio traffic records related to the Kenosha protests on December 19, 2024.

22. Attached as **Exhibit E** is a true and correct copy of City Defendants' February 13, 2025 email follow-up to Plaintiffs. It addresses prior emails about phone records, clarifies that phone data was produced in May and July 2024, and confirms the ESI agreement excludes searches of personal devices for non-party employees. The correspondence also clarified Joseph Nosalik's phone data was delayed due to a labeling error but would be provided. Nonetheless, prior to his deposition, Nosalik's communications with Chief Miskinis on the day of the shooting had already been produced. A meet and confer occurred on the February 13, 2025 as well to discuss these matters.

23. Attached as **Exhibit F** is a true and correct copy of City Defendants' City Defendants' Response and objections to Huber's Second Requests to Admit dated March 17, 2025, which sought personal cell phone numbers of non-party officers. The requests were overbroad, irrelevant, unduly burdensome, and raised privacy and safety concerns—contrary to the parties' agreement regarding ESI. City Defendants offered to meet and confer, but Plaintiffs did not engage before filing their motion to compel.

24. On October 4, 2024, this Court ordered the City of Kenosha to produce missing squad car videos (ECF No. 127). The City hired a third-party vendor, with plaintiffs' consent on November 23, 2024, to search its server. The Tennessee-based vendor traveled to Wisconsin to image the server before starting the review and data extraction. The City received the videos on February 18, 2025, and after review, produced dozens of them on March 21, 2025.

25. In the meantime, the parties jointly moved to extend fact discovery. Plaintiffs asserted that the City should produce any remaining text messages from the officers' phones identified in the parties' Rule 26(a) disclosures before any further depositions take place. (ECF. No. 128).

26. Attached as **Exhibit G** is a true and correct copy of the City Defendants' supplemental phone data and email production and response dated May 9, 2025. The City Defendants maintained redactions on West Allis phone data that pertained to unrelated law enforcement investigations (including with confidential informants) and personally identifiable information—content plainly outside the scope of discovery in this case.

27. Attached hereto as **Exhibit H** is a true and correct copy of Seargent Jurgens' MDC Chat messages bates-labeled CITYDEF003126 and CITDEF003260 that were produced during discovery in this matter on October 3, 2024, in response to Plaintiffs' First Set of Interrogatories, and Requests for Production of Documents.

28. Attached as **Exhibit I** is a true and correct transcript of Pep Moretti's direct examination in State v. Kyle Rittenhouse, Kenosha Case No. 20CF983.

29. Attached as **Exhibit J** is a true and correct excerpt from the February 19, 2025 deposition testimony of Sgt. Adam Jurgens regarding the armed individuals he observed at 52nd Street and 39th Avenue (which is not in the area of the unrest and/or the shootings).

30. Attached as **Exhibit K** is a true and correct excerpt from the February 19, 2025 deposition testimony of Sgt. Adam Jurgens regarding his patrol assignment during Kenosha Protests Avenue (which is not in the area of the unrest and/or the shootings).

31. Attached as **Exhibit L** is a true and correct excerpt from the February 19, 2025 deposition testimony of Sgt. Adam Jurgens regarding his MDC chat communications during the Kenosha unrest.

32. Attached as **Exhibit M** is a true and correct excerpt of Kyle Rittenhouse's direct examination in State v. Kyle Rittenhouse, Kenosha Case No. 20CF983.

33. City Defendants have continued to supplement their discovery responses. On May 9, 2025, they produced additional phone and email data and clarified that:

- Native and image phone files had been produced in May and July 2024, and spreadsheet-format versions were provided as a courtesy;

- No responsive texts exist for Inspector Hansche;

- Marc Levin and Troy Barnett were not City employees and had no responsive texts;

- Nosalik's August 23–September 1, 2020, texts are on the e-discovery platform;

- An alleged three-hour gap in Chief Miskinis's August 25–26, 2020, texts reflects no activity during that time, confirmed by a complete and sequential extraction;

- West Allis confirmed no records exist for Corwin's department-issued phone; responsive texts from West Allis Rule 26(a)(1) witnesses were reproduced and redactions updated after review; and

- City Defendants object again to Plaintiffs' overbroad demands for all officer phone data, especially personal phones of non-party officers, citing the parties' agreement regarding ESI and privacy concerns.

- Despite Plaintiffs' repeated demands, City Defendants have acted in good faith and fully met their discovery obligations.

34. Attached as **Exhibit N** is a true and correct excerpt from the October 28, 2024 deposition testimony of Joseph Nosalik.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: June 11, 2025.

                                              s/ *Clementine Uwabera*
                                              Clementine Uwabera