**[PLAINTIFFS' PROPOSED AGREED]
DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION**

**I.     PARTIES' AGREED-TO TERMS**

Pursuant to Federal Rule of Civil Procedure 26 and Principle 2.01 of the Seventh Circuit Electronic Discovery Pilot Program ("7th Cir. Pilot Program"), Plaintiffs John Huber, as Administrator of the Estate of Anthony Huber, and Gaige Grosskreutz, by their attorneys, and Defendants, by their respective attorneys, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "Discovery Plan").

**A.     SCOPE**

1. This Discovery Plan shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Principles Relating to the Discovery of Electronically Stored Information (the "Principles") of the 7th Cir. Pilot Program.

3. Nothing in this Discovery Plan shall supersede the provisions of any subsequent Stipulated Protective Order.

4. The Parties identify that emails, social media, and documents maintained on drives and servers that the custodians have access to are the categories of ESI most relevant to the Parties' claims or defenses in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a party's right to request additional ESI, or any party's right to object to production, the above categories of ESI are most likely to result in the production of information most relevant to the issues in the case to the best of the Parties' knowledge at this time.

5. E-discovery will initially be limited to ESI in the Parties' (or Third Parties') custody, possession, or control created on or after May 25, 2020.

6. The Parties initially identify the following Third Parties likely to have ESI relevant to this matter: all individuals listed in the parties' Rule 26(a)(1) disclosures. The Parties must continue to identify additional third-party custodians likely to have ESI relevant to this matter, on an ongoing basis, even if they do not appear on the parties' Rule 26(a)(1) disclosures.

7. The Parties will identify the data repositories and custodians likely to have ESI in the possession, custody, or control of the Parties that is relevant to this matter. The Parties represent initially that those data repositories and custodians are listed in the Parties' Rule 26(a)(1) disclosures and in Exhibit A to this Discovery Plan. The Parties agree that the custodians and repositories identified in Exhibit A may be supplemented or amended over the course of the litigation. The Parties must continue to identify additional custodians likely to have ESI relevant to this matter, on an ongoing basis, even if they do not appear on the parties' Rule 26(a)(1) disclosures.

8. The collection of ESI housed on any server maintained by a Party (or on a server to which a Party has access, e.g. through an email or social media account) shall be done in a timely manner and on a rolling basis as responsive documents are discovered.

**B. SEARCHING**

1. The Parties agree that relevant ESI may be identified for production by the following means:

   a. A manual search process conducted by the custodians for relevant and responsive non-email ESI.
   b. The use of Boolean search functions for email ESI. The parties agree that the search terms may be supplemented or amended over the course of the litigation. Moreover, notwithstanding the use of search terms to identify relevant and responsive email ESI, if a Party is aware of the existence of specific non-

privileged relevant and responsive documents maintained in hard copy or as ESI, then that Party shall produce such documents even if they do not include any of the search terms being applied generally to email ESI.
c. The use of native application search functionality native to the email program for email accounts used by the individuals identified in paragraph (A)(7), above, in their work-related email accounts (e.g., searching with Gmail or Outlook).
d. If a Party is aware of the existence of documents or data sources that contain responsive documents that are not reasonably searchable (e.g., images), the parties agree that applying search terms to these data sources will be insufficient to identify potentially responsive documents of this nature and will review such documents manually for responsiveness.

2. A list of ESI Data Repositories and Custodians is attached to this Discovery Plan as Exhibit A and is incorporated by reference.

3. A list search terms to be used during email ESI searches is attached to this Discovery Plan as Exhibit B and is incorporated by reference.

**C. PRODUCTION FORMAT**

1. **Document format.** Electronically stored information derived from email and other electronically created files (e.g. Microsoft Office files, WordPerfect) will be produced in a native format that retains typical metadata, such that they can be searched, for example, by dates, to/from, subject, etc. The parties' expectation is that the production of such electronically stored information will be consistent with the capabilities of common vendor-based document review systems, for example: as Bates-labeled single-page/multi-page TIFF, as described in Section 1 of Exhibit C; or in native format.

2. Plaintiffs reserve the right to request native files for documents that are difficult to understand after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol:

3

a. Plaintiffs shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format.

b. Within fourteen days of receiving this request, the Respondent will either (i) produce the requested native files to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

c. If the parties to this Discovery Plan are unable to agree as to the production of the request documents in native format, Plaintiffs may submit the matter to the Court.

3. **Documents without standard pagination.** Documents without standard pagination, such as spreadsheets or desktop databases (such as Microsoft Access) maintained electronically, will be produced in native format, unless redactions are required. Documents without standard pagination that require redactions will be produced in PDF format.

4. **Web pages and social media information.** Web pages, social media data and other information not otherwise covered in subparts 13(a) or 13(b) above shall be produced as "screen shots," "screen captures," "print screen," or printed as a Bates-labeled PDF.

D. THIRD-PARTY ESI

1. A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

2. The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties. The Issuing Party is not required to process documents received in

4

response to third-party subpoenas and produce them to the other Parties in a format different than the format the Issuing Party receives those documents in.

E.     **E-DISCOVERY LIAISON**

1. The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.

2. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

3. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. The E-Discovery Liaison for Plaintiffs shall be Anand Swaminathan. The E-Discovery Liaison for Respondents shall be Kyle Engelke for the City Defendants, Sara Mills for the County Defendants, and Natalie Wisco for Defendant Rittenhouse. E-Discovery Liaisons may be substituted upon notification to counsel for the Parties.

F.     **PRIVILEGE**

1. Respondent shall produce responsive ESI (e.g., ESI that is responsive to Plaintiff's Subpoena for Documents). Any responsive ESI that Respondent deems is protected from disclosure by privilege shall be logged into a privilege log which identifies: (a) the Custodian of the ESI; (b) the date of its creation; (c) a description of the type of ESI; (d) all recipients; (e) sufficient information to assess the invocation of the privilege; and (f) the privilege(s) which the producing party contends protects the ESI from disclosure. However, no privilege log is required for communications between a party and any outside counsel appearing in this litigation from the time of the party retaining such counsel onward. This exception includes any communications

between outside counsel and their retained experts that would otherwise fall under any provision of Federal Rule of Civil Procedure 26(b)(4). The term "outside counsel" does not include in-house counsel, city attorneys, corporation counsel, investigators, or agents.

**G.     PRESERVATION OF ESI**

1.      The Parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. With respect to preservation of ESI, the Parties agree that absent a showing of good cause by the requesting party, Respondent shall not be required to modify the procedures used by them in the ordinary course of business to backup and archive data.

**H.     OTHER**

1.      In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

2.      This Discovery Plan shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

3.      Nothing in this Discovery Plan should require ESI and other tangible or hard copy documents that are not text-searchable to be made text-searchable. Nevertheless, counsel or the

Parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each Party. If a producing Party creates OCR of paper documents or non-text-searchable electronic images it produces for its own use, that producing Party should consider providing OCR to other Parties willing to pay a reasonable share of the cost of OCR.

      4. Nothing in this Discovery Plan shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

      5. Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

      6. Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

# EXHIBIT A

I. **ESI Data Repositories** (entities that house ESI)

~~[Defendants should please fill in, to include emails, texts, written dispatches, mobile data terminals/vehicle communication systems, etc. And to include personal text/email if used for any work-related communications.]~~

~~Repositories for production of ESI shall include all department-issued and department-controlled electronic communication systems, including emails, texts, and mobile data terminals/vehicle communication systems. Repositories should further include any emails and text messages sent to or from personal phone numbers or email addresses, to the extent such were used for any work-related communications.~~

Municipal Defendants shall search their respective department's servers for electronic communications (e.g. emails) pursuant to the search identified in Exhibit B. Municipal Defendants will also search any department issued phones for the time period August 23-September 1st for the search terms identified in Exhibit B.

II. **Custodians** (individuals that created, sent, or received ESI)

**The parties agree that "custodians" are the individuals identified on the Parties' respective Rule 26(a)(1) disclosures, to be supplemented if additional deployed officers are identified.**

# EXHIBIT B

Agreed upon search terms with a search time frame of _____ to \_\_\_\_\_: riot*; loot*; protest*; demonstrate(s)(d)(ing)(tion); demonstrator(s); marching; marches; marchers; "george floyd"; rittenhouse; "civil unrest"; uprising*; "anti-police"; "anti police"; "antipolice"; "war zone"; TPR; revolution; "people's revolution"; "riot kitchen"; BLM; "black lives"; "white lives"; "blue lives"; "thin blue line"; "right wing"; nigg*; monkey*; thug*; gangbanger*; gang banger*; ghetto*; rusten sheskey; "jacob blake"; mathewson; dominic black; balch; vigilante; "mutual aid"; curfew; "less lethal"; "less than lethal"; nonlethal; funnel*; huber; Grosskreutz; Rosenbaum; gravely; trump; freeland; "Kenosha Guard"; "Kenosha County Eye"; "national guard"; KKK; patriot*; militia*; armed; shooter; gunman; gunmen; gunfire; "long gun*"; "assault rifle*"; AR-15*; skateboard*; "crowd control"; "less lethal"; "less-lethal"; projectile; perimeter; chemical; "flash bang*"; deploy*; "tactical response"; TRT; "tactical enforcement"; TEU; "tactical unit"; skirmish (unit/line); "deal with them"; bearcat; MRAP; "command post"; pepperball; grenadier; "water bottle*"; bear cat*; "pepper spray"; "tear gas"; "rescue vehicle"; LRAD; SWAT; armored; boogaloo; bois; "proud boy*"; "three percenter*"; racis*; "First Amendment"; "Second Amendment"; "police violence"; "police brutality"; "equal protection"; "record police"; "record law enforcement".

Agreed upon search terms with a search time frame of **August 23, 2020 to September 1, 2020**: armed; shooter; gunman; gunmen; gunfire; bullet*; tackle*; tire, slash*; civilian*; Rusten Sheskey; (Sheridan and 57th OR 58th OR 59th or 60th); Bradford High School; "civic center"; "civic center park"; "Citgo"; emergency operation*; emergency center*

9

# EXHIBIT C

The parties will address any challenges the arise with electronic discovery vendors, but the parties will endeavor to preserve the metadata listed below so that it will be transferred between the parties' respective electronic discovery vendors.

1. **IMAGES:**
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Black and White unless color is necessary to understand the meaning
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for files produced in Native form (see Section 2)
   - Original document orientation shall be retained

2. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
   - Production format: Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number

3. **LOAD FILE SPECIFICATIONS [***Insert modifications, if any, to fit the needs of the particular case***]:**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**: Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT**: Reference File Path to TEXT file in DAT file
   - **Native Files Produced**: Reference File Path to Native file in DAT file

4. **ESI PRODUCTION METADATA FIELDS [***Insert modifications, if any, to fit the needs of the particular case* **]:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **FileName**: Filename of the original digital file name
   - **NativeLink**: Path and filename to produced Native file
   - **EmailSubject**: Subject line extracted from an email message
   - **Title**: Title field extracted from the metadata of a non-email document
   - **Author**: Author field extracted from the metadata of a non-email document
   - **From**: From field extracted from an email message
   - **To**: To or Recipient field extracted from an email message
   - **Cc**: CC or Carbon Copy field extracted from an email message
   - **BCC**: BCC or Blind Carbon Copy field extracted from an email message

**Comments:**

**Commented [KE2]:** Sarah makes comment above about the TIFF issue. I will note again:

I haven't gone into as much tech detail with others, but I would anticipate that City of Kenosha could produce a search configuration txt file (so you know what we searched) and a csv results log file so you can review the results. I agree with Sarah that I typically work with PDFs and we get a pst of eml files so that we can review/bates number etc.

I am hoping this would be sufficient from a metadata standpoint but let me know if there are concerns because I am not sure how to ID and/or produce "Fingerprint / ProdVolume / Extracted Text" for example.

**Commented [AS3R2]:** We just need a solution that is going to allow us to load these files into a doc review platform, retaining basic information like to/from, etc. In other words, ESI will have to/from/subject/data fields inherently, and so those should be retained so that we can then run searches focused on particular people in the To field, or particular people in the From field, or emails sent in a particular time period, etc. Providing us with PDFs for ESI will cause that information to all be lost.

It sounds like we should have a call with the IT person/vendor for each Defendant so we can understand the abilities/limitations...

**Commented [AS4R2]:** We'll put Ex. C to the side for now, until you all have further insight from your vendors, per our discussion last week.

**Commented [KE5R2]:** I just added the language at the top of Exhibit C to summarize the comments here so they can be erased and we can sign this agreement.

**Formatted:** Font: Not Bold, No underline

- **DateRcvd**: Received date of an email message (mm/dd/yyyy format)
- **DateSent**: Sent date of an email message (mm/dd/yyyy format)
- **DateCreated**: Date that a file was created (mm/dd/yyyy format)
- **DateModified**: Modification date(s) of a non-email document
- **Fingerprint**: MD5 or SHA-1 has value generated by creating a binary stream of the file
- **ProdVolume**: Identifies production media deliverable
- **ExtractedText**: File path to Extracted Text/OCR File
- **Redacted**: "Yes," for redacted documents; otherwise, blank

6. **PAPER DOCUMENTS METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **ProdVolume**: Identifies production media deliverable