IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JOHN HUBER, in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER, | Case No. 21-cv-00969-LA |
| Plaintiff, | Hon. Lynn Adelman<br>District Judge |
| v. | |
| | JURY TRIAL DEMANDED |
| DAVID G. BETH, in his individual and official capacity as Kenosha County Sheriff, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| PAUL HENRY PREDIGER, | Case No. 21-cv-01192-LA |
| Plaintiff, | (Consolidated with Case No. 21-cv-00969-LA) |
| v. | Hon. Lynn Adelman<br>District Judge |
| THE CITY OF KENOSHA, *et al.*, | |
| Defendants. | JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION TO COMPEL MISSING TEXT MESSAGES [DKT. 129]**

Long gone are the days of pay phones, and rushing to the phone booths with a few quarters. Perhaps, Defendant Walworth County's cell phone policy says it best: cell phones have become increasingly "important in daily police business" because they are "use[d] by line personnel in their everyday duties."[1] Accordingly, standards must be prescribed for the use of

---
[1] Exh. 1 (Walworth County Cell Phone Policy)

cell phones. *Id.*

Defendants remain deafeningly silent about this reality, and ignore their own policies requiring them to preserve their officers' text messages, regardless of whether officers are using their government-issued or personal phones. They know these policies are vital to promote transparency by providing an objective record of police-civilian interactions. Text messages help to "tell the story" not only of officers' conduct, but their intentions. Even when officers do not want to disclose their misconduct, they know it is required for litigation and discovery, especially when lives have been lost.

Defendants provide no good reason to deny Plaintiffs' motion to compel their text messages. The obvious relevance of the text messages substantially outweighs any burden, and none of the Defendants have ever hired a third-party vendor who can actually investigate and retrieve the messages properly. This was required to finally get the 40 videos from the City of Kenosha that they claimed were non-existent.

To avoid production of text messages, Defendants give new, somewhat more creative excuses (e.g. transfer of data, reassignment, retirement) for why Anthony's Huber parents and Paul Prediger may never know why their employees allowed one of the most high profile shootings in recent American history to occur. The Court's authority is crucial to ensure the City produces perhaps the best evidence of what actually happened, namely, the text messages from the officers who were sworn to protect them.

I. **Defendants Have Not Established Text Messages Are Not Relevant**

Unable to rebut the obvious relevance of the text messages, Defendants attack Plaintiffs' non-dismissed claims and argue that they too have evidence that would show "the exact opposite" of what Plaintiffs allege. Dkt. 144 at 20. Regardless, the factual disputes cut in favor

of compelling discovery, not against it.

By way of illustration, rather than producing his text messages, Defendants acts as if their officers were not central to the protests. Consider their portrayal of Sgt. Jurgens as "far removed" from the area. Dkt. 144 at 20. These distortions of facts are improper given that, for instance, Jurgens was adamantly patrolling the protests and so close to the Rittenhouse shootings that, instead of apprehending Rittenhouse, he chased a black man who he feared had committed the shooting. Dkt. 144-22 at 60:16-63:19 (Jurgens Dep). Jurgens literally punched the man and kicked him in the stomach before realizing the innocent man was unarmed and not Kyle Rittenhouse. *Id*.

As another example, Defendants now argue that Plaintiffs only want Officer Moretti's text messages based on his "limited interaction" with Rittenhouse. Dkt. 144 at 3. For starters, his communications with Rittenhouse alone *would be sufficient* for discovery under Rule 26. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978) (holding that relevant information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case"). But Plaintiffs' due process claim entitle them access to *any text messages* showing the interactions between officers allowing illegally armed individuals to patrol the streets of downtown Kenosha with deadly weapons, inviting them to use police powers and/or funneling protestors toward them to be "dealt with," deputizing them, or ratifying their actions. Like his counterparts, Moretti falls in this bucket too. He not only spoke with Kyle Rittenhouse just moments after the shooting and knew Rittenhouse was a threat to law enforcement, but personally observed the militia patrolling the streets. Dkt. 129-17 at 31:20-32:7; 39:2-12;
3

120:23-25; 124:5-126:24. (Moretti dep).[2]

The government cell phones were unquestionably in the Defendants' exclusive possession. Yet they somehow have inexplicably disappeared with Defendants providing different explanations each time they are questioned about where they might have gone. This case demonstrates exactly why a party may seek an order to compel discovery if an opposing party fails to respond or provides evasive or incomplete answers. To the extent that thousands of text messages have actually disappeared central evidence, it is also why the spoliation tort exists and why sanctions are available.

Defendants put a lot of stock into recharacterizing applicable cases related to missing evidence. *See Whitehead v. Bond*, 680 F.3d 919, 933 (7th Cir. 2012) (finding evidence probative of officers' credibility and relevant under Rule 401 as it made one version of events more believable); *C.f. Schroeder v. City of Waukesha*, No. 13-CV-696-JPS, 2014 WL 1663531, *2 (E.D. Wis. Apr. 25, 2014) (lost evidence was "highly probative of the credibility of the defendants' witnesses," and "relevant because it makes the defendants' position and witnesses all the less credible (and may actually make [the plaintiffs'] version of events more believable.")); *Freese v. Honda Mfg. of Indiana, LLC*, No. 1:18-CV-4016-JMS-MPB, 2020 WL 6820828, at *2 (S.D. Ind. Oct. 8, 2020) (party "offers no explanation for the failure to disclose the [evidence] and does not offer any argument that the failure was substantially justified").

For example, the City Defendants argue that *C.f. Schroeder*, 2014 WL 1663531, *2 is not instructive because Plaintiffs have not yet shown that the City destroyed the text messages. Dkt.

---

[2] Despite the relevance of these text messages, Defendants offer a declaration from Lieutenant Hecker that Moretti was not "assigned" a KPD phone in 2020. Dkt. 142 at 2. But Moretti disputes this, and testified to the exact opposite - that he was only using his work phone while on duty. Dkt. 129-17 at 33:23-34:8; 33:10-16. Regardless, if Hecker is to be believed over Moretti, then Moretti must have been using his personal cell phone to conduct city-business throughout 2020, including during the protests. See, e.g. Dkt. 129-7 at 2. Yet Defendants have not identified a single text message for Moretti, despite Plaintiffs' repeated requests.

144 at 23-24. As another example, they attempt to distinguish *Freese,* 2020 WL 6820828, at *2 only because the City does not believe the text messages "must be produced". Dkt. 144 at 24. This is insufficient. The reality is that the City's poor excuses for missing evidence may justify spoliation. But Plaintiffs first need to know whether the text messages have been preserved at all and whether they are recoverable.

It is impossible to overstate how central each officers' communications are to Plaintiffs' claims and Defendants' defenses. This is not a fishing expedition. Plaintiffs made a similar case for the missing squad videos and, after the Court's order, they mysteriously appeared. Now, the text messages, whether they were on government or personal phones, were supposed to be preserved if officers communicated while on duty. If the text messages show what Plaintiffs allege, then Defendants' defense is untenable.

Someday, a jury may hear testimonial descriptions about what Defendants' officers claim happened on the night of the protests, especially on August 25, 2020, when Rittenhouse killed Anthony Huber and shot Paul Prediger. What the jury may never see are the officers' communications. Instead, the jury may simply learn that the text messages could still be on governments' servers, but they did not want to find out.

## II. The Defendants Have Not Conducted a Reasonable Investigation or Identified An Undue Burden

Defendants have not conducted a thoughtful, reasonable investigation for the missing text messages. Instead of searching their officers phones' thoroughly, they continuously point to non-responsive documents they have produced. *See, e.g.* Dkt. 135 at 14; (e.g. "chat messages" from some officers' computers); Dkt. 144 at 9 (federal government "ATF audio and video files from the federal arson investigation").

5

Defendants also attempt to discredit their own official cell phone list by complaining that it was not "signed", or has not been "authenticated". Dkt. 135 at 13. But these are not random lists; rather, they are Defendants' "official" emails and Incident Communications Plan, also known as the"ICS 205". Dkts. 129-7, 129-8. Defendants identified these cell phone numbers for the primary "method of communication" amongst each other and with neighboring law enforcement agencies. *Id.*

Despite these government documents demonstrating their cell phone usage, they know that their officers are ill-equipped to retrieve cell phone data from government phones, and that they need a third-party vendor. They oddly rely on a lieutenant's personal technique for searching cell phones that have not been produced. Dkt. 144 at 20-21; Dkt. 142 ¶8. Defendants' only explanation is incredible: their employee applied his "method"[3] for searching cell-phones, and he could not extract the information. *Id*. That's now how this works.

Plaintiffs are not required to rely on the lieutenant's "method" for extracting relevant text messages, retrieving metadata, or performing a forensic search of cell phone data. The same lieutenant claimed to search Sgt. Jurgens's phone; but at deposition, Jurgens admitted that noone has ever asked him about his text messages from the protests in the. Dkt. 129-4 at 90:23-91:15. Frankly, it is difficult to follow all of the excuses for why Defendants have not produced missing text messages, but (for the Court's sake) Plaintiff will try to condense it, starting with the City of Kenosha:

**A.  City of Kenosha**

1. Although hundreds of Kenosha Police officers responded to the protests (and the City lists nearly twenty officers in their 26(a) disclosures who were present at the presents), Lt. Hecker has used his personal "method" to search the

---

[3] It is unclear what Lt. Hecker's standard method entails.

6

Case 2:21-cv-00969-LA    Filed 07/03/25    Page 6 of 14    Document 147

government phones of a mere eight officers. Dkt. 144 at 10-11[4].
2. Apparently four of them were using personal phones because they did not have department-issued phones[5]; therefore, the City is not searching to produce them. *Id.* at 10.
3. The City cannot find one officer's messages because his phone was "reassigned". *Id*.
4. The City cannot find the officer's phone. *Id*.
5. The City has produced text messages for three of the officers: Nosalik, Howard, and Antaramian. *Id*.
6. The reason the City has not produced the missing text messages from Chief Miskinis is because they say his phone remained "dormant" and "may have been factory reset". *Id*. at 11.
7. The City is investigating whether a third-party vendor or the phone service provider can recover Miskinis's missing messages. *Id*. at 11. They have made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.
8. The City does not deny that Larsen has two phones during the protests. Dkt. 129-7; 129-8. (Exh. 5 at 2). They refuse to answer whether or not the cell phone Larsen was using to receive protest-related messages was his personal phone.
9. The City has neither preserved, searched for, nor produced any of the text messages officers were sending on their personal phones related to the protests.

**B.    City of West Allis**

1. The City of West Allis has searched for six officers' government phone messages. Dkt. 144 at 11.
2. Apparently two of the lead officers, Mussatti and Behnke, were using personal phones because they did not have department-issued phones; therefore, the City has not searched to produce them. *Id.*
3. The City has no explanation for the missing text messages for two officers: Madden and Gold. *Id*.
4. The City has made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.
5. The City has neither preserved, searched for, nor produced any of the text messages officers were sending on their personal phones related to the protests.

**C.    Village of Menomonee Falls**

1. The Village of Menomonee Falls admits that none of the Menomonee Falls officers had department issued- phones during the protests. *Id*. at 1.
2. The Village has made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.

---

[4] According to the City Defendants, they have reviewed and searched the department-issued phones of the following Rule 26(a)(1) witnesses: Eric Larsen, Joseph Labatore, Adam Jurgens, Joseph Nosalik, Thomas Hansche, Martin Howard, Benjamin Antaramian, and Officer Jeremy DeWitt.
[5] According to the City, Leo Viola, Patrick Patton, Pep Moretti, and Erich Weidner did not have government-issued phones.

7

3. The Village has neither preserved, searched for, nor produced any of the text messages officers were obviously sending on their personal phones related to the protests.
4. The Village has not produced a single text message for any officers

D. **Kenosha County**

1. Kenosha County has not produced a single text message for any of its officers.
2. Kenosha County has no good explanation for why the City of Kenosha produced text messages for Defendant Sheriff Beth that Kenosha County and Defendant Beth claim don't exist. *See* Dkt. 129-2 at 33.
3. Kenosha County admits their top brass had department-owned phones, but claim they were "replaced", and the old phones are stored with the County's IT department. According to Captain Gonzalez, he has reviewed records for a mere five officers and found no cellular data.[6] Dkt. 135 4. Apparently destroyed all of their communications even though they knew their cell phones were subject to civil litigation. Dkt. 129-11 at 1.
4. Kenosha County has made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.
5. Kenosha County has neither preserved, searched for, nor produced any of the text messages officers were obviously sending on their personal phones related to the protests.

E. **Racine County**

1. Racine County suggests that discovery of text messages is limited to the "two individuals" they've identified in their 26(a) disclosures. Dkt. 135 at 17. Racine County complains that Plaintiff had identified four additional officers they failed to name in their disclosures who were involved in responding to the Kenosha Protests. *Id*.[7]
2. Commander Fisher's cell phone displayed in Plaintiffs' motion was "recycled"; and they are not producing anything. *Id*. at 18
3. "[N]one of the data" could be transferred from one officers' phone. *Id*.
4. Another received his "current-department" issued cell phone and they have no explanation for the existence of his phone from August 2020.
5. Racine County admits that another 40 of their officers have "knowledge of facts" that relate to Plaintiff's claims. Dkt. 129-28 at 6-7.
6. The County has made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.
7. The County has neither preserved, searched for, nor produced any of the text messages officers were sending on their personal phones related to the protests.

---

[6] Marc Levin, Bob Hallisy, Horace Staples, Justin Miller, or Bill Beth in August

[7] Racine County makes this argument although the ESI order states that Defendants must continue to identify additional third-party custodians likely to have ESI relevant to this matter, on an ongoing basis, even if they do not appear on the parties' Rule 26(a)(1) disclosures. Dkt. 107.

8

F. **Sauk County**

1. After this motion to compel was filed, Defendant Sauk County claims that, on June 4, 2025, they produced "logs of text messages". Dkt. 135 at 19. Plaintiffs are that Sauk County has finally conducted a reasonable investigation, and will review.
2. The County has made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.
3. The County has neither preserved, searched for, nor produced any of the text messages officers were sending on their personal phones related to the protests.

G. **Waukesha County**

1. Waukesha has no explanation for the missing text messages of the nearly 15 officers in their department who responded to the Protests and they contend have "knowledge of facts" that relate to Plaintiff's claims. Dkt. 129-28 at 6-7.
2. The County has made no effort to have the third-party vendor locate the missing text messages for their remaining officers on-duty.
3. The County has neither preserved, searched for, nor produced any of the text messages officers were sending on their personal phones related to the protests.[8]

H. **Walworth County**

1. Walworth County has not produced a single text message for any of its officers.
2. Walworth County officers were only using personal cell phones to communicate while on duty. *Id*. at 22.
3. Walworth County has neither preserved, searched for, nor produced any of the text messages officers were obviously sending on their personal phones related to the protests.

I. **Washington County**

1. WashingtonCounty has not produced a single text message for any of its officers.
2. Washington County knew the officers' cell phones would be used in their everyday duties. Exh. 1.
3. Walworth County has neither preserved, searched for, nor produced any of the text messages officers were obviously sending on their personal phones related to the protests.

---

[8] Glaringly, Waukesha makes no mention of their officers personal cell phone messages knowing that they have no expectation of privacy when using cell phones while on duty. Dkt. 129-47 at 16. (Waukesha Policy Manual). The County has the right to search, review, audit, and access officers's personal cell phones. Id. Yet there is no indication that it has.

9

This is not an issue of relevance of whether or not officers were sending text messages, but of the Defendants' unwillingness to conduct the investigation necessary to meet their discovery obligations. If that requires enlisting a third-party vendor that can retrieve the text messages, then so be it. Plaintiffs have a right to know whether the text messages are there, or they are not. Either way, the burden is non-existent. Considering the high-profile shootings, massive protests, Plaintiffs cannot accept their officers' individual methods for cell phone extraction. Nor should this Court.

**III.   Defendants Cannot Avoid Discovery Under the Guise of Privacy**

It now undisputed that hundreds of Defendants' officers were communicating on personal cell phones. Many of them did not have government issued phones, and they only used their personal cell phones while on duty.[9] This is why Defendants have no answer for their own written policies in their brief. At bottom, they know that if their officers used personal phones for work-related purposes, they have limited expectations of privacy when using them. Any use of the personal cell phone for work-related business constitutes consent to inspect their phones, especially for litigation and discovery. Further, they are supposed to keep track of each officers' personal cell phone numbers and their communications are transferred directly to the department (ideally before the end of the officers' shift).

In seeking to avoid producing text messages, Defendants cite cases from inapposite circumstances. *See, e.g.* Dkt. 144 at (citing *Riley v. California*, 573 U.S. 373, 394 (2014)); Dkt. 144 (citing *Quillin v. Simon*, 2020 WL 6469269, at *3 (D.S.C. Nov. 3, 2020)).But the *Riley* opinion Defendants cite do not involve an officer's cell phone at all; rather, the officer seized an

---

[9] Kenosha County admits that the "vast majority" of the phones their officers were using during the protests were not department-issued cell phones. Dkt. 135   4.

10

Case 2:21-cv-00969-LA   Filed 07/03/25   Page 10 of 14   Document 147

arrestees' cell phone and the question was whether officers could search the phone without a warrant. *Riley*, 573 U.S. at 134.

Similarly, in *Simon*, the reason the court rejected plaintiff's motion was because "Plaintiff has failed to identify, or discuss in briefing at all, the relevance of the information requested." *Simon*, 2020 WL 6469269, at *3. Nor did the plaintiff address the defendant's argument that any potential relevance would be greatly outweighed by security concerns beyond referencing protection orders. *Id*. None of that is at play here. On the contrary, as this Court noted in denying Defendants' motion to dismiss, Plaintiffs have claims for relief against the governmental defendants for due process - their funneling protestors, including Anthony Huber, into a confined area with the hostile armed individuals and failing to protect them from the resulting dangerous situation. Dkt 76 at 38. Plaintiffs have explained that, in order to prove Plaintiffs' due process claim, then, they must have access to any text messages showing the interactions between officers allowing illegally armed individuals to patrol the streets of downtown Kenosha with deadly weapons, inviting them to use police powers and/or funneling protestors toward them to be "dealt with," deputizing them, or ratifying their actions. Dkt. 129-2 at 27.

Put simply, whether pursuant to Defendants' policies, state law, or plain common sense, the text messages were required to be preserved. They should be on their servers (or somewhere). If they are not there, something has gone very wrong. That too, must be disclosed and explored. In a search for the truth, nothing less can be countenanced.

## IV. Plaintiffs' Discovery Requests Are Straightforward

Plaintiffs' requests for Defendants' officers' text messages are simple and straightforward. Yet County Defendants paint that Interrogatory No. 3 (law enforcement officers' communications relating to protests) as "grossly vague and overbroad". Dkt. 135 at 8. Perhaps, this would make sense if Plaintiffs had not gone through extensive effort to define the requests.

For example, Plaintiffs explain that communications are "the exchange of information between two or more Persons, whether orally, in writing". *See e.g.* Exh. 2 at 4 (Prediger Discover "Definitions"). To drill it down further, Plaintiffs further explained that it included "<u>text messages</u>." *Id.* Despite this specificity, after Plaintiffs asked to confer, the County Defendants refused to supplement its discovery responses from the start. Dkt. 129-28 at 1; Dkt. 129- 21 at 5 (" County Defendants will not be supplementing their response to Interrogatory No. 3").

The reality is these text messages should have been produced with little debate since they agreed to conduct the search under ESI protocol (Dkt. 107 ¶6). Despite these boilerplate objections, Plaintiffs have acted in the spirit of cooperation and asked the County to begin with producing the text messages for the officers specifically identified in their County's 26(a) disclosures. Dkt. 129-30 (Plaintiffs' 3.11.25 email).

## V. Plaintiffs' Rule 37 Certification Was Proper

For months, Plaintiffs have attempted to get answers to the Defendants' missing text messages through multiple discovery vehicles: requests for production, interrogatories, requests to admit, and depositions. Yet County Defendants believe more conferences were necessary. Dkt. 135 at 2-8. Plaintiffs last effort to avoid court intervention is indicative of the County Defendants' delay-and-wait approach. On May 2, Plaintiffs assumed they were at an impasse with the County Defendants regarding their deficient cell phone communications and requested they supplement their responses no later than May 5, 2025. Exh. 3 .On May 5, 2025, the County Defendants asked Plaintiffs' to identify all of the discovery requests related to the phone communications that they had failed to answer, which Plaintiff did. *Id*. As is customary with the County Defendants, Plaintiffs never heard from them again. After another 10 days of silence, Plaintiffs filed this motion.

Plaintiffs made a good faith effort to resolve the discovery dispute with the City and County Defendants without court action pursuant to Fed.R.Civ.P. 37(a)(1).

## Conclusion

For the foregoing reasons, Plaintiffs respectfully ask the Court to order Defendants to complete the above-described production of outstanding text messages in response to Request No. 3, supplement its interrogatory response to Interrogatory No. 3, and to conduct a reasonable search to admit or deny the Second Set of Requests to Admit.

    Respectfully Submitted,

    JOHN HUBER

    PAUL PREDIGER

    By: /s/ Quinn K. Rallins
    *One of Plaintiff's Attorneys*

Jon Loevy
Dan Twetten
Anand Swaminathan
Steven Art
Quinn K. Rallins
Alyssa Martinez
LOEVY + LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
rallins@loevy.com

Kim Motley
Motley Legal Services
PO Box 1433
Matthews, NC 28106
kmotley@motleylegal.com

**CERTIFICATE OF SERVICE**

  I, Quinn Rallins, an attorney, hereby certify that on July 2, 2025, I caused the foregoing motion to be filed via the Court's CM/ECF system and thereby served a copy on all counsel of record.

By: /s/ Quinn Rallins

*Attorney for Plaintiff*
