UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JOHN HUBER, in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER,<br><br>    Plaintiff,<br><br> v.<br><br><br>DAVID G. BETH *, et al.*,<br><br>    Defendants. | No. 2:21-cv-00969-LA<br><br>Hon. Lynn Adelman,<br>District Judge<br><br><br><br><br><br>JURY TRIAL DEMANDED |
| Paul Henry Prediger,<br><br>    Plaintiff,<br><br> v.<br><br><br>City of Kenosha., *et al.*,<br><br>    Defendants. | No. 2:21-cv-01192-LA<br><br>Hon. Lynn Adelman,<br>District Judge<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF JOHN HUBER'S RESPONSE TO**
**CITY DEFENDANTS' MOTION TO COMPEL [DKT. 153]**

  This is not a typical case. Since August 2020, Plaintiff Huber's life has been on the public stage. His son, Anthony, was killed on a live video stream for the entire world to see. His only role in this lawsuit is that he is the father of the deceased, he was appointed as the personal representative of his son's estate, and he has plainly suffered damages resulting from the death of his son. As part of purported damages discovery, Defendants ask for access to every record relating

1

to Plaintiff Huber, Anthony Huber, and Anthony Huber's mother that they can possibly conceive of—e.g., Anthony's ACT scores, the families' vacation records, and his wife's human immunodeficiency virus records. If he had all this information (which he does not), Defendants have provided no explanation for needing these records, other than the vague assertion that they somehow need the records to calculate damages.

Defendants' purported reason for filing their motion is that Plaintiff Huber will not execute all of their sweeping authorizations (some of which he has no authority over), or supplement responses to certain discovery requests (which is untrue). The authorizations and requests are largely irrelevant, overly broad, and intrusive. Defendants fail to explain why all these records are reasonably calculated to lead to the discovery of admissible evidence. While Plaintiff Huber has no issue with providing Defendants the documents they need to analyze damages, there must be limits.

Accordingly, Plaintiffs requested that Defendants simply notice specific subpoenas, directed at particular third parties, outlining the information they want to obtain. With specific requests in mind, Plaintiffs can consider whether they have any objection to the scope of the subpoenas, and they can raise any issues with the Court on a subpoena-by-subpoena basis. That is the normal method of discovering records; not some blanket authorization for an opposing party to obtain all documents from anyone about anything. To facilitate this process, Plaintiffs' lawyers even drafted the proposed HIPAA order for Defendants to file, so that obstacles to subpoenaing documents would not impede discovery.

But within a day of this Court entering the HIPAA order, and before conferring with Plaintiff's lawyers about next steps to access his records, the Defendants chose to file the instant motion, claiming that Plaintiff Huber has somehow "delayed" discovery. Dkt. 153 at 2.

The rushed filing—replete with misrepresentations and omissions, and without any legal authority—is without merit. In addition, it fails to comply with the rules of discovery. This Court should deny the motion for both of those reasons. Plaintiffs' attorneys have gone to great lengths to reach a compromise with Defendants, but rather than confer Defendants filed this motion. The Court should deny the motion and direct the parties to continue that the normal conferral process and issue appropriately targeted subpoenas. Defendants' demand for sweeping authorizations is both premature and far beyond the bounds of what is reasonably discoverable.

## BACKGROUND

I. **The City Defendants Demand Plaintiff Huber Sign Six Sweeping Authorizations With Limited Relevance**

On March 1, 2024, the City Defendants asked Plaintiff Huber to sign authorization letters[1] to release confidential information:

> **Health Care Records (Anthony and His Parents)** including but not limited to "alcohol, drug, developmental disability, HIV, AIDS and AIDS-related illness testing and treatment records" and "forms, tape recordings, reports, x-rays, medical imaging films, models, correspondence, records, invoices, statements, billing information, insurance records, authorizations, referrals, consults, inpatient and outpatient records, records received from other health care providers, patient histories, office notes, nurses' notes, therapists' notes, consultants' reports, psychiatric and psychological reports and records, treatment records, test results, laboratory records, histories, diagnoses and prognoses. Dkt. 153-1 at 41, 49, 43, 45.

In addition to the breadth of the request, there was no temporal limitation at all.

On March 1, 2024, the City Defendants also sent the following discovery requests:

**Request Nos. 16-17** asks Plaintiff Huber to get the health care authorizations signed to disclose his and Anthony's mother's health care information.

**Interrogatory No. 5** asks Plaintiff Huber to "Identify all health care providers who provided health care services, including mental health services" to him, his son, and Anthony's mother, as well as the health care facilities where services were provided since 2015 ("past 10 years").

---

[1] Defendants sent dozens of sweeping authorization letters. Dkt. 153-1 at 38-56.

**Interrogatory No. 14** asks Plaintiff Huber to "list all injuries [he] claims to have suffered as a result of the alleged incident which is the subject of this lawsuit. Itemize all losses and/or damages, including but not limited to, all medical, funeral and burial expenses, and/or special damages you are claiming in this lawsuit, and for each please identify the amount of item you are claiming, the nature of the item (i.e., funeral bill, etc.), the service provided, the date of the bill or loss, and provide the name and address of every person or entity that paid the bills."

**Request No. 6** asks Plaintiff Huber to provide "all documents that support your claim in paragraph 217 of the Amended Complaint that" he and Anthony's mother suffered, and continue to suffer, significant emotional distress and harm, including but not limited to the loss [sic] society and companionship with Huber.

## II. Defendants Refuse to Narrow Their Requests and Will Not Agree to A Qualified HIPAA Order

On April 16, 2024, Plaintiff Huber objected to signing the authorizations and to Request Nos. 16-17 on the grounds that they were vague, unduly burdensome, extremely overbroad with no temporal limitation, and harassing. Dkt. 153-3 at 25. Further, he explained that all this information sought was not relevant and not proportional to the needs of the case. *Id*. Plaintiff Huber also reminded Defendants that there was no HIPAA-qualified order in place in the case. Exh. A (Plaintiffs' 4.16.24 email correspondence). Similarly, Plaintiff explained that he would provide a further response to Request No. 6 upon entry of a HIPAA order.

Similarly, Plaintiff objected to Interrogatory No. 5 on the grounds that it sought protected health information which Plaintiff could not provide until the entry of a HIPAA-qualified protective order. Dkt. 153-3 at 8. Nevertheless, Plaintiff Huber identified Anthony's known treater and health care providers. However, Plaintiff Huber cannot presently identify other treaters for Anthony or for Anthony's mother going back 10 years. Dkt. 153 ¶ 14. Nor can he presently recall any of his treaters within that timeframe. *Id.*

Finally, in response Interrogatory No. 14 (detail all injuries and damages), Plaintiff Huber explained in detail injuries and damages caused by Defendants' misconduct and directed

Defendants to, among others, paragraphs 134, 135, 145, 146, 153, 154, 164, 165, 172, 173, 179, 180, 190, 196, 200, 216, and 217 in his operative complaint. Dkt. 153-3 at 12-13. He also explained that, he cannot presently provide a calculation or detail, in a single interrogatory, every aspect of his damages suffered. *Id*.

On July 8, 2024, the parties conferred. Plaintiff suggested that, rather than proceeding with broad authorizations, the Defendants simply notice specific subpoenas for health care providers Plaintiffs provided. Exh. B (Plaintiffs' 7.8.24 email correspondence). Plaintiffs also requested a HIPAA-qualified order before health care treaters produced any highly sensitive records, which any healthcare provider would require. Exh. C (Plaintiffs' 9.24.24 email). On November 9, 2024, Plaintiff again asked Defendants to notice the subpoenas and offered to confer within the week, but Defendants never responded. *Id*.

Although Defendants paint Plaintiff as "delaying" discovery, Defendants did not respond to Plaintiffs for nearly two months. Exh. C at 1 (11.22.24 email correspondence). They also remained adamant that a HIPAA order was unnecessary and suggested that "[p]roviding authorizations is standard practice in Wisconsin," without any legal authority. *Id.*

On December 9, 2024, the parties met again. Exh. D (Plaintiffs' 12.9.25 email correspondence). This time, Plaintiff's specifically asked the City about the irrelevant items included in the draft authorizations (e.g. HIV records), and Defendants conceded that much of the requested information in the authorizations was irrelevant. *Id.* But rather than narrow their requests, Defendants put the onus on Plaintiff Huber to have his lawyers write Defendants' own authorizations. *Id*. Needless to say, Plaintiff declined to do Defendants' work for them. *Id*. Plaintiff again asked Defendants to simply notice tailored subpoenas for relevant records, which could then be issued when a HIPAA order was in place. *Id*.

5

### III. Plaintiff Drafts HIPAA Order, Defendants Delay for Months, and Then Defendants File the Instant Motion the Day After the Order Was Entered

In order to facilitate discovery, on January 17, 2025, Plaintiff's counsel circulated a proposed HIPAA order to Defendants. Exh. E (Plaintiffs' 1.17.25 email). A full eight months later—on August 12, 2025—Defendants finally sent their proposed revisions. Exh. F (8.12.25 email). On August 20, the parties moved for a protective order. Dkt. 150. The Court granted this order on August 21. Dkt. 151. On August 22, the next day, the City Defendants filed their motion, without further conferring with Plaintiff's counsel. Dkt. 152.

## ARGUMENT

Defendants' approach is confounding. Plaintiff suggested the parties obtain a HIPAA-qualified protective order to do exactly what Defendants' new motion contemplates — obtain sensitive records. Plaintiffs repeatedly proposed that the parties obtain such records via entry of a HIPAA order and noticing subpoenas, which could be narrowly tailored to particular documents and served on particular providers. After much delay, Plaintiffs' counsel sent Defendants a draft HIPAA order at the beginning of this year, to move things forward, and Defendants took months to make their proposed changes. After the order was entered, Defendants did not confer about next steps, but instead filed a slapdash motion reverting back to a request for authorizations that do nothing to limit or tailor the requests to prevent the production of all manner of personal and/or sensitive medical information that Defendants themselves admit would be swept up by their authorizations. The Defendants have not complied with their conferral obligations. Moreover, their proposed approach for obtaining sensitive records is impractical and overbroad, and will lead to a more protracted discovery process.

I.  **Plaintiff Huber Should Not Have to Sign Broadly Sweeping Authorizations Releasing All Sensitive Health Records From Throughout His Family's Entire Lifetime**

The Defendants demand that Plaintiff Huber facilitates the signing of sweeping authorizations simply because Defendants say it's "routine." Dkt. 152 at 2.

For starters, the opposite is true: the Court "does not generally compel adverse parties to disclose confidential, medical records if they choose not to do so." *See, e.g. Jackson v. Esser,*, 2021 WL 5492906, at *4 (W.D. Wis. Nov. 23, 2021) ("the court is not ordering Jackson to provide this authorization"). As a result, the Defendants' argument that this Court should compel these medical authorizations because they are "routine" and "standard" must fail. For example, Defendants rely on *Ramirez v. Kranski*, 2021 U.S. Dist. LEXIS 89607, at *2 (W.D. Wis. May 11, 2021). Dkt. 152 at 2. But *Ramirez* was a pro se lawsuit where the plaintiff never disputed the relevance of the medical records sought. Instead, he first wanted defendants to horse trade: requesting that defendants provide him with access to the video footage of a use of force incident first. *Id*. at *1. *Ramirez* actually says nothing about authorizations being "standard" or "routine," and in fact stated that the court would "not compel parties in a lawsuit to disclose confidential medical or psychiatric information if they choose not to." *Id.*

Here, by contrast, Plaintiffs are not opposed to disclosing health information, so long as it remains "confidential" and relevant. The fact that Defendants' lawyers routinely get plaintiffs to sign these broad authorizations Plaintiff Huber is irrelevant; it is not the appropriate way to ensure tailored subpoenas for relevant records regarding sensitive, confidential medical records. In short, reliance on *Ramirez*—where the content of the authorizations was never at issue—is misplaced.

Defendants also inappropriately rely on *West v. Dejoy*. 2023 WL 8376284, at *2 (E.D. Wis. Nov. 28, 2023). Dkt. 142 at 2 But in *Dejoy*, the court affirmed that "nothing in the Federal Rules explicitly authorizes a party to demand an opponent sign a release for records". *Id*.

7

To be clear, Plaintiff has no issue with permitting some discovery of sensitive medical and mental health records where there are logical connections between the records sought and the damages at issue in this case. But Defendants concede that their authorizations are sweeping and seek too much, on the one hand, and then nevertheless refuse to issue more tailored subpoenas based on a conferral process. Indeed, Plaintiff has repeatedly asked Defendants why all this information is pertinent to the case. Ex. D (12.9.25 Plaintiff's email). For example, why are they asking for Karen Bloom's HIV records? And why are they requesting records that may go back to the 1950s? Defendants have no answers. Ex. D (12.9.25 Plaintiff's email).

There can be no real dispute that these authorizations are overly broad, irrelevant, and untailored. *See, e.g. Monroe v. Jewel Food Stores, Inc.*, 2023 WL 2018907, at *12 (N.D. Ill. Feb. 15, 2023) ("numerous courts have held that medical release form…may not be broader than necessary under the circumstances"); *Nawara v. Cty. of Cook*, 2019 WL 1399972, at *6 (N.D. Ill. Mar. 28, 2019) ("the forms in question in this case are broad medical release forms that are untailored for any specific type of fitness"). Defendants actually have no real authority to seek Plaintiffs' authorizations to obtain and file records that relate to their claims in this lawsuit. *Jackson v. Esser,* No. 18-CV-237-WMC, 2021 WL 5492906, at *4 (W.D. Wis. Nov. 23, 2021). Further, it is unclear whether Plaintiff Huber has the authority to sign authorizations other than those related to his own records.

II. **Plaintiff Has Responded to Defendants' Discovery Requests With Limited Health Care Information Within His Possession, Custody, and Control**

Plaintiff Huber has complied with discovery and provided all the health care information within his possession, custody, and control. His son, Anthony, was an adult. Plaintiff Huber was not responsible for his son's health care visits, or knowing his doctors' names. Nor was he responsible for Anthony's mother's health care treatment, as they lived apart. As for him, he does

8

not recall receiving any health care treatment within the last 10 years.

Further, Plaintiff Huber has also recognized the very real need to ensure that his son Anthony's health information is protected, and only limited to what is necessary in this case. Too much information has already become public. The other plaintiff had to change his legal name. That is why Plaintiff sought a HIPAA order, and proposed that the City Defendants notice document subpoenas.

Now that the order has been entered, Defendants should provide notice of reasonably tailored subpoenas. Plaintiff Huber will further supplement his responses with any additional treater information as he continues to investigate.

**III. Defendants Improperly Initiated This Motion for Health Records A Day After The Enter HIPAA Order, Violated Rules Governing Efforts to Resolve Discovery Disputes, and Warrants Dismiss with Prejudice.**

Plaintiff does not know why Defendants suddenly elected to ask the Court to compel health care records related to the HIPAA order. But the progress the parties had made toward resolution was suddenly—and unilaterally—undone.

Where one party engages in "good faith attempts to negotiate," and the other simply moves forward with a motion to compel without engaging with those efforts, the mere fact that the parties corresponded "does not constitute a good faith effort to confer" under "Rule 37(a)(1)." *Motamedi v. Wells Fargo Bank, N.A.*, 2014 WL 12618089, at *1 (S.D. Tex. Jan. 6, 2014). Defendants' Motion was not intended to address an impasse, it was intended to preempt compromise. Defendants are "not entitled to prevail on [their] motion to compel discovery because [they] failed to make a good-faith effort to resolve [this] discovery dispute[] before asking the [C]ourt to intervene." *Omegbu v. Milwaukee Cnty.*, 326 Fed. App'x 940, 943 (7th Cir. 2008) (citing Fed. R. Civ. P. 37(a)(1)). This appears to be purposeful, as Defendants' counsel was well aware that Plaintiffs' counsel had

9

offered several avenues of compromise, and wrote the HIPAA order that was granted the day before they preemptively filed the Motion. Because Defendants' counsel did not conduct himself throughout this discovery dispute in good faith, denial of the Motion should result.

Unsurprisingly, Defendants' rushed filing– exceeding the page limits with dozens of exhibits, bolstered by a multi-page declaration by their own attorney simply repackaging their unsupported arguments—is in violation of this Court's order:

> All discovery motions and non-dispositive pretrial motions must be filed pursuant to Civil L.R. 7(h), unless the court otherwise permits. The motion <u>must not exceed three pages in length</u>. No separate memorandum may be filed with the motion."

Dkt. 91 at 2. ¶5(b).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny the motion, with prejudice.

Respectfully Submitted,

JOHN HUBER

By: <u>/s/ Quinn K. Rallins</u>

*One of Plaintiff's Attorneys*

Jon Loevy
Dan Twetten
Anand Swaminathan
Steven Art
Quinn K. Rallins
Alyssa Martinez
LOEVY + LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
rallins@loevy.com