IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JOHN HUBER, in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER,<br>    Plaintiff,<br>  v.<br><br>DAVID G. BETH, in his individual and Official capacity as Kenosha County Sheriff, et al.,<br>    Defendants. | No. 2:21-cv-00969-LA |
| PAUL HENRY PREDIGER,<br>    Plaintiff,<br>  v.<br><br>THE CITY OF KENOSHA, et al.,<br>    Defendants. | No. 2:21 cv 01192-LA<br>(Consolidated with<br>No. 2:21-cv-00969-LA) |

**CITY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS**

Defendants, Daniel G. Miskinis, Eric Larsen, John Doe Police Officers of the Kenosha Police Department, Menomonee Falls Police Department, West Allis Police Department, the City of Kenosha, Village of Menomonee Falls and the City of West Allis, (collectively the "City Defendants"), by their undersigned counsel, respectfully submit the following reply memorandum in support of their motion to Compel Discovery from Plaintiffs.

**INTRODUCTION**

Plaintiff John Huber ("Plaintiff" or "Plaintiff Huber") confirms what City Defendants have maintained from the start: discovery into the claimed physical and emotional distress of Plaintiff, Anthony Huber ("Anthony"), and Karen Bloom ("Bloom") is at a standstill because of their refusal

1

to cooperate. After months of delay—including a three-month wait last summer before telling City Defendants that no executed medical authorizations would be provided, and nearly a year to identify medical providers (limited to Anthony's medical examiner)—Plaintiff still refuses to execute medical authorizations, provides no verified supplemental responses or production, and relies on unsworn statements in briefing.

City Defendants have acted reasonably. They invited Plaintiff to propose revisions to the medical authorization, offered a temporal limit covering five years prior to the incident through the present, and even agreed to Plaintiff's request for a HIPAA-qualified protective order—despite an existing order already safeguarding medical information. Plaintiff, however, delayed over six months before circulating a draft HIPAA order and, even after its entry, has maintained the same stance: no medical authorizations and no verified supplemental responses.

Plaintiff now mischaracterizes both the law and the record. He accuses City Defendants of seeking "sweeping" medical authorization, ignoring the offered temporal limit. He invokes irrelevant hypotheticals about ACT scores and vacation photos—none of which appear in the medical authorizations. He points to Rule 45 subpoenas as a supposed alternative, while disregarding precedent establishing that medical authorizations are routine and compelled when medical, psychological, or emotional damages are claimed. And he misstates the holdings of cases like *Jackson* and *Ramirez*, omitting the very language that supports City Defendants' motion.

The law is clear: when a plaintiff alleges medical, psychological, or emotional distress, they place their condition at issue, thereby entitling the defendant to discovery of relevant medical and psychological records. Plaintiff must (1) provide complete, verified supplemental interrogatory responses, (2) itemize all claimed injuries and damages, (3) produce documents supporting his claimed emotional-distress damages, and (4) execute the medical authorizations. If he refuses, he should be barred from pursuing the very damages he has placed at issue.

# ARGUMENT

## I. PLAINTIFF HUBER MISREPRESENTS THE RECORD, SCOPE OF THE MEDICAL AUTHORIZATION, AND THE LAW IN OPPOSING EXECUTION OF MEDICAL AUTHORIZATIONS.

Plaintiff's objections to City Defendants' medical authorizations are baseless. He distorts the record and misstate the law. First, Plaintiff's refusal to propose any revisions to the medical authorizations undermines his objections—especially given that City Defendants already limited the medical information to five years before the incident through the present, a limitation Plaintiff simply ignores. Second, Plaintiff's proposal to substitute Rule 45 subpoenas is unworkable, wasteful, and designed to delay discovery. Third, Plaintiff's selective and misleading use of case law ignores the settled rule: a party seeking damages for medical, psychological, or emotional injuries must produce medical records and sign medical authorizations. Finally, Wisconsin law squarely confirms John Huber's authority to execute medical authorizations for Anthony Huber's records.

City Defendants therefore respectfully request that the Court compel execution of the medical authorizations so discovery can move forward.

### A. City Defendants' Requests Are Narrow and Targeted.

Plaintiff labels Request Nos. 16–18 as "sweeping" and "blanket" authorizations. (ECF No. 160, pp. 2, 7.) That claim is false. City Defendants have agreed to limit medical information to five years before the incident through the present (ECF Nos. 153, ¶11; ECF No. 153-9, p. 3.) and apply only to those who put their medical and emotional conditions directly at issue: John Huber, Anthony Huber, and Karen Bloom. (ECF No. 153-1, pp. 49, 53-56.)

City Defendants repeatedly offered to negotiate the scope. Plaintiff flatly refused, stating he would not "do Defendants' work for them." (ECF Nos. 153-9, p. 7; 160, p. 5.) As the objecting party, Plaintiff bears the burden of showing the requests are improper. *Dauska v. Green Bay Packaging,*

3

*Inc.*, 291 F.R.D. 251, 258 (E.D. Wis. 2013). He has not come close. Furthermore, his stance violates Rule 34(b)(2)(B), which requires specific, supported objections—not vague accusations of overbreadth. (ECF No. 160, p. 3.); *see also* FRCP 34(b)(2)(C).

His articulated objections—to temporal scope and HIV records—collapse under scrutiny. (ECF Nos. 160, pp. 5, 8; 160-4) The temporal objection is moot; City Defendants already agreed to limit the time frame. (ECF Nos. 153, ¶11; 153-9, p. 3.) As for HIV-related records, Plaintiff baldly claims irrelevance without authority. (ECF Nos. 160, pp. 5, 8.) But relevance in discovery is construed broadly. Unlike the narrow claim in *Santelli v. Electro-Motive*, 188 F.R.D. 306 (N.D. Ill. 1999), which was limited to the plaintiff's emotional reaction to discrimination, Plaintiff here broadly alleges "significant emotional distress and harm." (ECF No. 27, ¶¶200, 217.) That puts a wide scope of medical history—including HIV status, if applicable—squarely within the zone of relevance, particularly given Plaintiff's claims for loss-of-life and pecuniary damages. (ECF Nos. 110-6, p. 4; 153-9, p. 7. ) Plaintiff identified objections to HIV records in general but never clarified whether that was the sole or controlling reason for refusing to execute authorizations. If it were, a simple statement would have permitted a targeted compromise. Yet Plaintiff refused to clarify whether any other issues or objections to the medical authorizations were preventing execution, leaving Defendants to guess at the true scope of his resistance. Rule 34 requires specific, supported objections; it does not allow Plaintiffs to obscure the basis for their refusal.

Finally, Plaintiff's assertion that City Defendants cite no authority for the medical authorizations is simply wrong. (ECF No. 160, pp. 3, 5.) He was provided *Terry v. Cnty. of Milwaukee, Ramirez v. Kranski*, and *Jacobs v. Frank*, all of which reject the very objections Plaintiff raises. *See* (ECF Nos. 153-9, pp. 2, 7; 153-8, p. 12.) [1]

---

[1] Plaintiff also misstates the standard for discoverability when he asserts that "Defendants fail to explain why all these records are reasonably calculated to lead to the discovery of admissible evidence." (ECF No. 160, p.

4

## B. Plaintiff's Rule 45 "Alternative" Is Unworkable and costly.

Plaintiff suggests City Defendants should rely on Rule 45 subpoenas instead of medical authorizations. (ECF No. 160, p. 2.) That proposal is neither practical nor made in good faith. Plaintiff identified only one provider for Anthony Huber (the medical examiner's office) and no medical providers at all for John Huber or Karen Bloom. (ECF No. 153 ¶14.) Subpoenas to a single, identified provider will not capture the full scope of relevant records.

The true purpose of Plaintiff's alternative is revealed in their insistence that any subpoenaed records be returned directly to his counsel. (ECF Nos. 153-9, p. 7; 160-4.) That is not a confidentiality safeguard—it is a transparent effort to maintain unilateral control. Moreover, Plaintiff never explains why negotiated medical authorization would be more intrusive than a subpoena of identical scope.

The practical consequences of relying on subpoena would be significant. Rule 45 would force Defendants to issue piecemeal subpoenas, pay witness fees, and litigate objections for each newly discovered provider. As the court in *Smith v. Logansport Cmty. Sch. Corp.*, noted, this approach is both costly and inefficient:

> "Court orders directing providers to produce their records often prove unsatisfactory since they require the party seeking production to apply to the court each time the identity of an individual provider is discovered. Subpoenas duces tecum, which must be accompanied by witness fees and records deposition notices, can prove costly and may result in additional delay. And orders directing the parties themselves to procure and produce their records give no assurance that all pertinent documents will be provided."

---

2). The governing standard under Rule 26(b)(1) is far broader: parties may obtain discovery into any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Importantly, the information sought need not be admissible at trial to be discoverable. This case is in the discovery phase, and Plaintiff himself has placed extraordinarily broad damages at issue—including vaguely defined "loss of life" damages for Anthony Huber—and has even filed a notice of claim seeking $10 million (whether per plaintiff or in the aggregate remains unclear). (ECF No. 110-6, p. 4.) Having demanded such expansive damages, Plaintiff cannot credibly resist proportionate discovery into the very claims he has chosen to assert.

*Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 649 (N.D. Ind. 1991). In *Smith*, the defendant's counsel attempted to obtain counseling records by subpoena; one provider refused to produce records without a court order or signed medical authorization, and another refused to produce personal notes. *Id*. The court therefore ordered the plaintiff to produce executed medical authorizations for her counseling records, observing that: "By asserting a claim for emotional distress, [the plaintiff ] has placed her mental and emotional condition in issue… obtaining written consents represents the least expensive and most efficient means of procuring information from medical or counseling providers." *Id*. at 649. Here, as in *Smith*, medical authorizations are the cost-effective, practical route.

If the Court nevertheless permits subpoenas returnable to Plaintiff's counsel, City Defendants request a protective order barring Plaintiff from redacting or otherwise withholding information he deems "irrelevant" or "private." *See West v. DeJoy,* No. 22-CV-1068, 2023 U.S. Dist. LEXIS 210942, at *5 (E.D. Wis. Nov. 28, 2023).

### C. Plaintiff Misstate the Holdings of the Controlling Case Law.

Plaintiff accuses City Defendants of filing a "rushed" motion "replete with misrepresentations and omissions." (ECF No. 160, p. 3.) In fact, it is Plaintiff who misrepresents relevant cases through selective quotations and omissions.

Plaintiff selectively quotes *Jackson v. Esser*, No. 18-cv-237-wmc, 2021 U.S. Dist. LEXIS 225678, at *13 (W.D. Wis. Nov. 23, 2021), claiming the court "does not generally compel adverse parties to disclose confidential, medical records if they choose not to do so." (ECF No. 160, pp. 7-8) But Plaintiff conveniently omits the critical language that changes the meaning of this quote. The court actually made it clear that:

> "However, Jackson needs to understand that his continued failure to

6

> comply would prevent him from seeking monetary damages for any physical or emotional damages suffered as a result of his conditions of confinement in May of 2013, unless he allows defendants to access medical records related to his physical and emotional conditions prior to the events that took place in May of 2013, and for a year after that date. If Jackson chooses not to provide this disclosure, then the court would have no choice but to preclude Jackson from pursuing damages related to any physical or emotional injuries he suffered as a result of those conditions of confinement."

*Id.*. Far from providing an excuse to withhold medical records, *Jackson* underscores the fundamental rule that a party cannot pursue damages while refusing to provide critical medical information. In fact, the court granted the defendants' motion to compel, directly holding that the plaintiff's refusal to disclose pertinent medical records would bar him from seeking damages related to his alleged injuries. *Id*.

Moreover, Plaintiff's reliance on *Ramirez v. Kranski*, No. 15-cv-365-wmc, 2021 U.S. Dist. LEXIS 89607, at *1 (W.D. Wis. May 11, 2021), is also misleading. (ECF No. 160, pp. 7.) Plaintiff asserts that in *Ramirez*, the *pro se* plaintiff did not dispute the relevance of the medical records sought, but instead "wanted defendants to horse trade" by first requesting video footage of a use-of-force incident. (*Id*.) Plaintiff further claims that *Ramirez* says nothing about medical authorizations being "standard" or "routine" and quotes the court's statement that it would "not compel parties in a lawsuit to disclose confidential medical or psychiatric information if they choose not to." *Id*. However, Plaintiff's quotation omits critical context that undermines his argument.

While it is true that the Ramirez plaintiff did not specifically dispute the relevance of the medical records, he actively resisted providing them by submitting heavily edited medical authorizations and rejecting records from certain medical providers. *Ramirez,* 2021 U.S. Dist. LEXIS 89607, at *2. The court addressed this resistance by directing the *pro se* plaintiff to sign a complete medical authorization in order to pursue damages for his physical and psychological injuries. *Id.* at *3. Importantly, the court clarified that while parties cannot be compelled to disclose confidential

7

medical information, refusal to provide such records would have consequences. *Id*. As the court emphasized, continued failure to provide the necessary records "likely will result in the court limiting [the plaintiff's] damages." *Id.* at *3–4.

Plaintiff likewise misreads *West v. DeJoy*, No. 22-CV-1068, 2023 U.S. Dist. LEXIS 210942, at *4 (E.D. Wis. Nov. 28, 2023). Although he focuses on the absence of explicit authorization for a party to demand an opponent sign an authorization for medical records under the Federal Rules, he omits the court's broader point: "such demands are routine in all sorts of litigation… courts will routinely threaten litigants with dismissal of their suits if they do not sign such releases. ." *Id*. at *4–5. (collecting cases).

Plaintiff also invokes Americans with Disabilities Act ("ADA") cases—*Monroe v. Jewel Food Stores, Inc.*, 2023 WL 2018907 (N.D. Ill. Feb. 15, 2023), and *Nawara v. Cty. of Cook*, 2019 WL 1399972 (N.D. Ill. Mar. 28, 2019)—to argue that broad medical authorizations are improper. Those cases arose in the context of fitness-for-duty examinations under the ADA, not discovery disputes. Indeed, Plaintiff even misapplied *Nawara*, omitting that the "broad release forms" at issue were tied specifically to fitness-for-duty exams. *Id.* at *22. Neither case is relevant here.

Finally, Plaintiff further argues that *Jackson* stands for the proposition that defendants lack "authority" to seek medical authorizations. Again, this is misleading. The language Plaintiff cites was from the court's discussion of a sanctions motion, explaining only that defense counsel had no *obligation* to seek authorization before filing medical records already in their possession. *Id.* at *14–15. That narrow point has nothing to do with whether courts may compel medical authorizations in discovery.

Plaintiff's response relies on selective quotations, mischaracterized holdings, and irrelevant authority. The law is clear: a party seeking damages for physical or emotional injury must provide medical authorizations or face limitation or exclusion of those claims.

8

### D. Wisconsin Law Confirms Huber's Authority to Execute Medical Authorizations.

Plaintiff argues John Huber lacks authority to sign medical authorizations for release of Anthony Huber's records. (ECF No. 160, pp. 2, 8.) Wisconsin law says otherwise. Wis. Stat. § 804.10(4) authorizes a personal representative to execute medical authorizations for a decedent, and makes custodians who refuse liable for costs of enforcement. John Huber, as personal representative of Anthony's estate, has authority to request his records. (ECF No. 27 ¶15.)

As for Karen Bloom, Plaintiff contends he cannot authorize the release of her medical records. If true, the solution is simple: Bloom must either (1) execute her own medical authorizations, or (2) stipulate that she is not seeking damages and will not provide any evidence to support a damages claim. Plaintiff cannot disclaim authority over Bloom's records while simultaneously relying on her alleged emotional distress—or her testimony—to bolster damages.

### II. PLAINTIFF MUST SUPPLEMENT AND VERIFY INTERROGATORY RESPONSES; UNSWORN ASSERTIONS DO NOT SATISFY RULE 33.

Plaintiff's vague, unsworn assertions about his medical history and damages do not satisfy his discovery obligations. City Defendants' Interrogatory No. 5 asks Plaintiff Huber to:

> "Identify all health care providers who provided health care services, including mental health services, to Huber, you and/or Karen Bloom, and all health care facilities at which such services were provided for the past 10 years."

(ECF No. 153-3, p. 8.)

Interrogatory No. 14 asks Plaintiff Huber to:

> "Please list all injuries You claim to have suffered as a result of the alleged incident which is the subject of this lawsuit. Itemize all losses and/or damages, including but not limited to, all medical, funeral and burial expenses, and/or special damages you are claiming in this lawsuit, and for each please identify the amount of item you are claiming, the nature of the item (i.e., funeral bill, etc.), the service provided, the date of the bill or loss, and provide the name and address of every person or entity that paid the bills."

9

(ECF No. 153-3, p. 12.)

In response, Plaintiff merely asserts in briefing—not under oath—that Huber has disclosed all responsive information within his "possession, custody, and control." (ECF No. 160, p. 8.) Plaintiff also claims Huber "does not recall receiving any health care treatment within the last 10 years," and disclaims responsibility for Anthony Huber's or Karen Bloom's medical history. (ECF No. 160, pp. 8–9.)

That is insufficient. Rule 33(b)(3) requires responses to interrogatories to be "answered separately and fully in writing under oath." Briefing or correspondence cannot substitute for verified interrogatory responses. If Plaintiff's position is truly that he lacks knowledge or records, he must say so in a sworn supplemental response.

Moreover, the record already identifies at least two providers for Plaintiff to investigate: (1) Anthony's identity was confirmed by a hospital bracelet, indicating he received medical treatment prior to August 25, 2020 (see ECF No. 153-13); and (2) Anthony named a psychologist he had seen during a sentencing hearing (see ECF No. 153-12). Plaintiff cannot claim lack of knowledge while disregarding this evidence of prior treatment providers.

Plaintiff's response to Interrogatory No. 14 is equally deficient. Directing City Defendants to general allegations in the Amended Complaint is not a substitute for the required itemization of damages, such as funeral and burial expenses. (ECF No. 160, pp. 4–5.) If no such damages exist, Plaintiff must say so under oath.

City Defendants are entitled to either (1) medical authorizations sufficient to obtain the records, or (2) verified interrogatory responses confirming none exist. Plaintiff cannot have it both ways.

### III. PLAINTIFF DEMANDED A HIPAA ORDER, DELAYED FOR MONTHS, AND STILL REFUSES TO SUPPLEMENT HIS DISCOVERY AFTER ITS ENTRY.

Despite insisting on a HIPAA-qualified protective order, Plaintiff has still not supplemented his responses or production now that the order is in place. Plaintiff represented that he would provide supplemental responses to both Request No. 6 (documents supporting emotional-distress damages) and Interrogatory No. 5 (identification of health care providers and facilities) once the order was entered. (ECF Nos. 153-3, pp. 8, 21; 160, p. 4.) Yet no verified responses or production have been provided. (CU Dec., ¶2)

Plaintiff's attempt to attribute the delay to City Defendants is contradicted by the record. Although Plaintiff insisted on the entry of a HIPAA-qualified protective order, he failed to circulate a draft for review despite repeated follow-ups from City Defendants beginning in May 2024. (ECF Nos. 153-5, pp. 5, 17; 153-9, p. 13.) Plaintiff did not agree to circulate a draft until December 2024 and did not provide one until January 17, 2025. (ECF No. 153-9, pp. 4–6.) Negotiations then continued until Plaintiff accepted City Defendants' revisions on March 31, 2025. (ECF No. 153-10, p. 2.) Throughout this process, City Defendants maintained that a HIPAA order was unnecessary, given the protections already afforded by the existing protective order, yet nonetheless accommodated Plaintiff's request in good faith.

Now, even with the HIPAA order entered, Plaintiff offers only excuses: Plaintiff Huber claims he cannot recall his own medical history, lacks access to Anthony's or Bloom's medical records, or lacks authority to execute medical authorizations. (ECF No. 160, pp. 8-9.) He further asserts that his concern is protecting Anthony's medical information and limiting disclosure to what is necessary for this case. (*Id.*) These excuses are not genuinely protective. With both a HIPAA order and a protective order in place, there is no legitimate barrier to supplementing his responses or producing the requested

11

records.[2]

## IV. PLAINTIFF'S ARGUMENT ON TIMING AND LOCAL RULES IS MERITLESS.

Plaintiff claims City Defendants improperly initiated the motion in violation of local rules on meet-and-confer obligations and page limits, asserting this warrants dismissal. (ECF No. 160, pp. 9–10.) These arguments mischaracterize the record and ignore the extensive, documented history of negotiations.

City Defendants filed the motion to compel only after months of Plaintiff's delays in identifying medical providers, and repeated, categorical refusals to negotiate, execute medical authorizations. City Defendants repeatedly followed up, proposed compromises, and even agreed to a HIPAA-qualified protective order. (ECF No. 152, p. 5.)

Plaintiff's reliance on *Motamedi v. Wells Fargo Bank, N.A.*, 2014 WL 12618089, at *1 (S.D. Tex. Jan. 6, 2014), and *Omegbu v. Milwaukee Cnty.*, 326 Fed. App'x 940, 943 (7th Cir. 2008), is misplaced. Those cases involved parties that failed to make any meaningful good-faith effort before filing. Here, by contrast, extensive correspondence, conferences, and compromise offers preceded the motion.

Plaintiff also claims the motion violated the Court's page-limit order. (ECF No. 160, p. 10.) The City Defendants' motion was under three pages (excluding caption and signature blocks). Even if the Court finds the length excessive, the substance should control. The motion documents the

---

[2] Plaintiff's remaining objections—including vagueness, undue burden, harassment, lack of proportionality, medical/psychotherapist-patient privilege, and premature expert disclosure—to Interrogatories 5 and 14 and Requests Nos. 6 and 16–18 are largely boilerplate, vague, and undeveloped, and fail to satisfy the specificity requirements of the Federal Rule. (ECF No. 153-3, pp. 8, 12, 20-21, 25-26.) Courts consistently reject such empty objections as "unhelpful." *Raab v. Wendel*, No. 16-CV-1396, 2018 U.S. Dist. LEXIS 247056, at *8 (E.D. Wis. Feb. 15, 2018); see also *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) 'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered"). Plaintiff's objections should therefore be overruled, and he should be compelled to execute the medical authorizations and provide complete responses.

12

months-long HIPAA delay, Plaintiff's repeated refusals to execute medical authorizations, and multiple meet-and-confer efforts. Striking it and requiring a restart would be inefficient. Notably, Plaintiff already submitted a 10-plus-page response under the non-expediated briefing timeline.

## CONCLUSION

City Defendants respectfully request that the Court: (1) compel Plaintiff to provide full and verified responses to Interrogatory Nos. 5 and 14; (2) order the production of documents responsive to Request Nos. 6 and 39; and (3) compel the execution of medical authorizations for Requests Nos. 16–18.[3]

Dated: September 29, 2025.

STAFFORD ROSENBAUM LLP

By  s/ Clementine Uwabera
Kyle W. Engelke
State Bar Number 1088993
Ted Waskowski
State Bar Number 1003254
Clementine Uwabera
State Bar Number 1114847
Attorneys for City Defendants

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email: twaskowski@staffordlaw.com
       kengelke@staffordlaw.com
       cuwabera@staffordlaw.com
608.256.0226

---

[3] City Defendants' motion also sought to compel Plaintiff Paul Prediger to fully respond to Interrogatories Nos. 7–12, produce documents responsive to Request No. 8, and execute medical authorizations as requested by Request No. 10. (ECF No. 152, pp. 1 n.1, 2, 3 n.3.) Plaintiff's response brief did not address the deficiencies identified in the motion, nor has Plaintiff Prediger provided any supplemental responses or productions since the motion was filed. (CU Dec., ¶3.) Accordingly, City Defendants respectfully request an order compelling Plaintiff Prediger to provide complete responses to Interrogatories Nos. 7–12, produce all responsive documents to Request No. 8, and execute the medical authorizations required by Request No. 10.

13