UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JOHN HUBER, in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER, <br><br> Plaintiff, <br><br> v. <br><br> DAVID G. BETH , *et al.*, <br><br> Defendants. | No. 2:21-cv-00969-LA <br><br> Hon. Lynn Adelman, District Judge <br><br><br> JURY TRIAL DEMANDED |
| Paul Henry Prediger, <br><br> Plaintiff, <br><br> v. <br><br> City of Kenosha., *et al.*, <br><br> Defendants. | No. 2:21-cv-01192-LA <br><br> Hon. Lynn Adelman, District Judge <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION TO QUASH
DEFENDANTS' OVERBROAD SUBPOENAS**

Plaintiffs John Huber and Paul Prediger, by their undersigned attorneys, respectfully move pursuant to Federal Rules of Civil Procedure 26 and 45 to quash Defendants' overbroad subpoenas. In support of this motion, Plaintiffs state as follows:

## INTRODUCTION

This motion arises from Defendants' improper use of third-party subpoenas to pursue expansive, untargeted discovery beyond the bounds of legitimate discovery. In a case involving wrongful death and violations of constitutional and other statutory rights during a public protest, Defendants served sweeping subpoenas on multiple carceral institutions seeking nearly fifteen years of "any and all" records concerning Plaintiff Prediger and Anthony Huber—records that are untethered to the claims or defenses in this action and include privileged attorney-client communications and highly sensitive personal information. Despite Plaintiffs' prompt objections and good-faith efforts to meet and confer, Defendants bypassed further discussion, issued the subpoenas, and allowed production to proceed, effectively circumventing the meet-and-confer process and seeking disclosure before judicial review could occur. As set forth below, these subpoenas reflect an impermissible fishing expedition, not targeted discovery, and they exceed the limits imposed by Rules 26 and 45. The Court should therefore quash them in their entirety.

## RELEVANT FACTUAL BACKGROUND

On December 9, 2025, Defendants provided notice of their intent to serve fifteen subpoenas on third parties in this case.[1] Seven of the subpoenas were directed to medical institutions and sought the medical records of Plaintiff Prediger and Anthony Huber from August 23, 2015 to the present. Ex. A (Group exhibit of medical subpoenas). Because those subpoenas were limited to the time period authorized by the HIPAA protective order entered in this case and were returnable to Plaintiffs, Plaintiffs did not object to their issuance.

The remaining eight subpoenas were directed to carceral institutions, including Dodge

---

[1] Notably, these subpoenas followed the issuance of thirty-four additional subpoenas served by Defendants in November 2025. Plaintiffs raised objections to certain aspects of those subpoenas, and the parties ultimately reached agreement to narrow their scope.

2

County Correctional Institution, Kenosha County Detention Center, Kettle Moraine Correctional Institution, Milwaukee County Community Reintegration Center (formerly the House of Corrections), Racine Correctional Institution, Waukesha County Jail, and the Wisconsin Department of Corrections. These subpoenas sought an expansive array of records concerning Plaintiff Prediger and Anthony Huber dating from 2011 to the present, including:

> any and all records maintained by the [subpoenaed institution] relating to the incarceration, supervision, classification, discipline, medical or mental-health care, movement, or programming of an individual. This includes, without limitation: (a) the inmate central file; (b) intake, assessment, and classification records; (c) conduct reports, incident reports, disciplinary hearing materials, findings, dispositions, and sanctions; (d) probation, parole, and extended supervision records, including chronological logs, agent notes, violation reports, revocation materials, and sanctions; (e) housing, movement, transfer, and facility assignment records; (f) program enrollment, participation, and completion records; (g) visitation logs, telephone logs and recordings (if retained), mail logs, internal communications, and electronic kiosk messages; (h) grievance and complaint records, including Inmate Complaint Review System filings and responses; (i) any use-of-force reports, reviews, photographs, audio or video recordings; (j) medical, mental-health, psychological, and Alcohol and Other Drug Abuse / Substance Use Disorder treatment records; and (k) any other documents, correspondence, reports, electronically stored information, audio, video, or data maintained by Dodge Correctional Institution concerning the individual, regardless of format or storage location. Ex. B (Group exhibit of carceral subpoenas).

Plaintiffs immediately objected to the subpoenas as overly broad, unduly burdensome, disproportionate to the needs of the case, irrelevant to the claims and defenses at issue, infringing upon significant privacy interests, and seeking information protected by the attorney-client and work-product privileges. Plaintiffs thus requested to meet and confer. Ex. C (December 9, 2025 subpoena correspondence); Ex. D at 4-5 (December 17, 2025 subpoena correspondence). The parties met and conferred on December 17, 2025.

During the meet and confer, Plaintiffs reiterated their objections and explained that the subpoenas sought an expansive volume of documents bearing no connection to the claims or defenses in this case, including privileged materials, and therefore were subject to quashing

3

under Rule 45. Plaintiffs further noted that the subpoenas directed to carceral institutions impermissibly sought medical records outside the time period authorized by the HIPAA protective order entered in this case (and in fact, did not even include the HIPAA order or instructions governing the handling of protected health information). Plaintiffs advised that they would review any authority Defendants believed supported the discoverability of the subpoenaed documents but maintained their objections to the subpoenas as currently drafted. As a proposed compromise, Plaintiffs requested that Defendants identify any discrete categories of documents they believed were relevant and proportionate to the needs of the case so that Plaintiffs could evaluate whether agreement was possible. Defendants represented that they would provide supporting authority and identify such discrete categories for Plaintiffs' consideration. That did not happen.

Instead, the following day, Defendants provided limited case law purportedly supporting the subpoenas and proceeded to issue the carceral subpoenas without further discussion and without notifying Plaintiffs. Defendants also confirmed that the subpoenas sought recorded communications between Plaintiffs and their attorneys. Ex. D at 3.

Upon learning that the subpoenas had been issued before any additional conferral could occur, Plaintiffs immediately notified Defendants of their intent to move to quash and requested that Defendants instruct the subpoenaed third parties not to produce responsive materials pending resolution of the issue by the Court. Ex. D at 2-3. On January 2, 2026, Plaintiffs learned—through communication from a subpoenaed entity—that Defendants had not instructed the third parties to withhold production and were attempting to obtain the records at issue before Court resolution of the matter.

## LEGAL STANDARD

While the Federal Rules permit broad discovery, it is not without limits: "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In that regard, production pursuant to a subpoena resembles that of discovery for a non-privileged matter—it must be "relevant to any party's claim or defense and proportional to the needs of the case." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19-CV-50122, 2021 WL 5283946, at *2 (N.D. Ill. Aug. 10, 2021); *see also DeLeon-Reyes v. Guevara*, No. 18-CV-1028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) ("[T]he relevance and proportionality limits in Rule 26 . . . apply with equal force to nonparty discovery under Rule 45" and district courts must limit subpoenas that exceed discovery's "proportional and proper bounds[.]").

Rule 45(d)(3)(A)(iii-iv) provides that "the court for the district where compliance is required must quash or modify the subpoena that . . . [1] requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . [2] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv).[2] "Determining whether a subpoena subjects a witness to an 'undue burden' requires a court to inquire into the subpoena's reasonableness, balancing 'the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, No. 08-CV-693-JPS, 2009 WL 3347101, at *4 (E.D. Wis. Oct. 15, 2009) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d ed. 1995)); *see also Matter of Holsen,* No. 22-MC-24-JPS, 2022 WL 3213367, at *2 (E.D. Wis. Aug. 9, 2022); *Anthony v.*

---

[2] Such analysis aligns with Rule 26(c)'s provision that the Court may issue protective orders on certain types of discovery to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

5

*O'Fallon Twp. High Sch. Dist. 203 Bd. of Educ.*, No. 23-CV-967-SPM, 2024 WL 4235726, at *2 (S.D. Ill. Sep. 19. 2024); *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22-CV-5757, 2023 WL 2974083, at *3-4 (N.D. Ill. Apr. 17, 2023); *Special Mkts. Ins. Consultants, Inc. v. Lynch*, No. 11-CV-9181, 2012 WL 1565348, at *3 (N.D. Ill. May 2, 2012) (addressing undue burden objection by party to a third-party subpoena); *Ultimate Timing, LLC v. Simms*, No. 3:09-MC-6-RLY-WGH, 2010 WL 378436, at * 2 (S.D. Ind. Feb. 1, 2010) (granting party's motion to quash third-party subpoena as unduly burdensome).

Factors courts are to consider while conducting this balancing test include "the relevance of the discovery sought, the subpoenaing party's need for the discovery, and the breadth of the request." *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015); *Parker v. Four Seasons Hotel, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013). For the purpose of this rule, a subpoena may also subject a person to an "undue burden" if his or her privacy interests are implicated by the subpoena. *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851, at *1-2 (C.D. Ill. Oct. 29, 2015). When a party objects to a subpoena under Rule 45, "the subpoenaing party must justify its pursuit." *Wilson v. O'Brien*, No. 7-C-3994, 2009 WL 763785, at *7 (N.D. Ill. Mar. 20, 2009) (alterations and internal quotation marks omitted).

**ARGUMENT**

Defendants' subpoenas seek fifteen years of sweeping, highly sensitive carceral records concerning Plaintiff Prediger and Anthony Huber—records that bear no connection to the claims or defenses in this case. As set forth below, the subpoenas are irrelevant to the issues in this case, grossly overbroad and disproportionate, improperly seek attorney-client communications, and intrude upon substantial privacy interests in a manner that appears calculated to harass rather than to obtain admissible evidence. Because Defendants have failed to justify either the

6

relevance or the necessity of the discovery sought, the subpoenas exceed the permissible bounds of Rule 45 and should be quashed.

### A. Plaintiffs Have Standing to Quash These Subpoenas

As a preliminary matter, Plaintiffs have standing to object to Defendants' subpoenas for Plaintiff Prediger and Anthony Huber's carceral records from the last fifteen years. A party has standing to quash a subpoena directed to a non-party if the subpoena implicates the movant's personal or privacy interests or if the movant claims privilege over the information sought. *See, e.g., United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *Architectural Iron Workers' Local No. 63 Welfare Fund,* 2023 WL 2974083, at *2; *In re Watts Coordinated Pretrial Proceedings*, No. 19 C 1717, 2024 WL 3470596, at *2-3 (N.D. Ill. July 19, 2024); *Special Markets Ins. Consultants, Inc.*, 2012 WL 1565348 at *1; *HTG Capital Partners, LLC v. Doe(s)*, No. 15 C 2129, 2015 WL 5611333 at *3 (N.D. Ill. Sept. 22, 2015). For standing purposes, the privacy interest can be minimal. *See Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 22, 2012).

Further, numerous courts have held that any subpoena for a plaintiff's recorded communications while incarcerated grants that plaintiff standing to quash. *See, e.g., Simon v. Northwestern University,* No. 15-CV-1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017); *Bishop v. White*, No. 16 C 6040, 2020 WL 6149567, at *3 (N.D. Ill. Oct. 20, 2020); *Pursley v. City of Rockford*, No. 18-CV-50040, 2020 WL 1433827, at *2 (N.D. Ill. Mar. 24, 2020); *Coleman v. City of Peoria*, No. 15-CV-1100, 2016 WL 3974005, at *3 (C.D. Ill. July 22, 2016); *Gonzalez v. Guevara, et al.*, No. 22-CV-6496, Dkt. 140 (N.D. Ill. Nov. 15, 2023); *DeLeon-Reyes,* 2020 WL 7059444 at *2. As such, Plaintiffs have standing under Rule 45 to quash these

subpoenas.[3]

### B. The Subpoenas Seek Information That Is Irrelevant to the Claims and Defenses

The scope of the subpoenas confirms their complete lack of relevance. Defendants seek *every conceivable category of records maintained by carceral institutions,* including inmate central files, intake and classification materials, conduct and disciplinary records, education records, probation and parole supervision files, housing and movement logs, program participation records, grievance filings, use-of-force reports, visitation logs, telephone logs and recordings (including with attorneys), mail logs, electronic messages (including with attorneys), and all medical, mental-health, and substance-use treatment records—without any subject-matter limitation and spanning nearly fifteen years. Defendants have offered no explanation as to how these materials could be relevant to any claim or defense in this action. Nor could they.[4]

Discovery must be directed toward the events and conduct at issue in the litigation, not toward a generalized search of Plaintiffs' background in the hope of uncovering collateral or prejudicial information. Discovery is broad, but it does not permit this type of dragnet fishing expedition. *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-CV-2436, 2019 WL 6052366, at *3 ("Unless the requesting party can demonstrate the relevancy of the materials sought, judges 'should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'"); *see also Vakharia v. Swedish Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994) ("The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest."); *Jump*, 2015 WL

---

[3] In some instances, courts construe motions to quash a subpoena as motions seeking protective orders, *DeLeon-Reyes*, 2020 WL 3050230, at *11, but the analysis is the same.
[4] They also have not even identified their basis to believe Plaintiff Prediger and Anthony Huber were incarcerated at the institutions they seek records from.

8

6558851, at *2-3 (disallowing disclosure of extensive personal information to obtain minimal potentially relevant information); *Sokn v. Fieldcrest Cmty. Unit Sch. Dist.*, No. 10-1122, 2013 WL 84702, at *2 (C.D. Ill. Jan. 7, 2013) (breadth of relevancy concept does not allow "fishing expeditions").

Further, there is a developed body of case law that specifically addresses inmate call recordings and electronic communications, and those courts have held that Defendants must offer "specific reasons these calls may be relevant." *McClendon v. City of Chicago*, No. 22-cv-5472, 2024 WL 260234, at *3 (N.D. Ill. Jan 19, 2024). That has not occurred here.

None of the categories of documents requested bears any relationship to the claims or defenses in this case, which arise from Defendants' conduct during a public protest and concern wrongful death and violations of constitutional rights occurring entirely outside any custodial setting. Whether Plaintiff Prediger or Anthony Huber were ever incarcerated, where they were housed, what programs they participated in, or what grievances they filed has no tendency to make any fact or consequence in this litigation more or less probable. Rule 26 does not permit discovery untethered from the operative events of the case, and Rule 45 does not authorize subpoenas that function as wholesale background investigations into a party's life history. Because the subpoenas seek information wholly unrelated to the operative facts of this case, they exceed the permissible scope of discovery and must be quashed.

### C. The Subpoenas Are Overbroad, Disproportionate to the Needs of the Case, and Disregard the HIPAA Protective Order in Place

Even if some limited portion of the requested records could conceivably have relevance—which Plaintiffs dispute—the subpoenas are facially overbroad and grossly disproportionate. They demand "any and all" records from eight carceral institutions over a period spanning more than a decade for two young men, without any subject-matter limitation or

9

Case 2:21-cv-00969-LA    Filed 01/03/26    Page 9 of 16    Document 167

tailoring to the issues in dispute. Such sweeping requests far exceed what Rule 26 permits. This is not targeted discovery; it is a dragnet.

The subpoenas are in no way narrowly tailored. When Plaintiffs raised this concern with Defendants, their response was that the subpoenas are narrowly tailored because they were only sent to facilities Defendants believed Plaintiff Prediger or Anthony Huber were housed in at some point. Ex. D at 3. That is not what any court has understood narrowly tailored to mean. *See, e.g., McClendon,* 345 F.R.D. at 327 (finding that even when a party reduces the documents it seeks, the subpoena is not automatically narrowly tailored or limited in scope). Here, Defendants refused to take part in *any* narrowing or limiting of scope and, as such, the subpoenas are wildly overbroad.

The subpoenas are also disproportionate in light of the nature of the case, the absence of any demonstrated need for the requested materials, and the availability of less intrusive means of discovery. As noted, Defendants have not articulated how the requested records are relevant to any claim or defense, nor have they explained why they require "any and all" documents concerning Plaintiff Prediger and Anthony Huber's incarceration, without any subject-matter or temporal limitation, including records dating back a decade before the events alleged in the Amended Complaint. Moreover, during the five years this case has been pending, Defendants have not pursued more targeted or less intrusive avenues to obtain whatever permissible discovery they now claim to seek. Instead, Defendants issued these sweeping subpoenas on the eve of Plaintiff Prediger's deposition, currently scheduled for January 8, 2026, a timing that underscores the disproportionate and prejudicial nature of the requests.

Notably, the carceral subpoenas also improperly seek medical records outside the time period authorized by the HIPAA protective order entered in this case, notwithstanding

Defendants' agreement to those limitations. This alone warrants quashing the subpoenas, as Defendants may not use third-party subpoenas to circumvent negotiated discovery boundaries or court-ordered protections.

As Defendants have made no showing of necessity, have ignored less intrusive means of discovery, have refused to partake in any narrowing or limiting of scope, and have attempted to obtain medical records outside the timeframe authorized by the HIPAA protective order entered in this case, the subpoenas should be quashed.

### D. The Subpoenas Improperly Seek Privileged Attorney-Client Communications

The subpoenas seek categories of materials that necessarily encompass privileged attorney-client communications, including telephone logs and recordings, mail logs, internal communications, and electronic kiosk messages. These requests are not limited to non-legal communications, as confirmed by Defendants, and therefore sweep in confidential communications between Plaintiff Prediger, Anthony Huber, and their attorneys during periods of incarceration. This is improper.

A motion to quash must be granted where the subpoena seeks information protected by privilege. *Piercy v. Wilhelmi*, No. 16-MC-1008, 2016 WL 3034149, at *1 (C.D. Ill. May 27, 2016); *United States v. Newell*, 192 F.R.D. 587, 589 (N.D. Ill. 2000); *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2010 WL 3167277, at *3 (N.D. Ill. Aug. 6, 2010), *aff'd*, 468 F. App'x 960 (Fed. Cir. 2011) (holding that Rule 45 governs the issuance of subpoenas and provides that the court "must quash or modify a subpoena" that "requires the disclosure of privileged or other protected matter, if no exception or waiver applies."). The attorney-client privilege protects communications made in confidence by a client to an attorney for the purpose of obtaining legal advice. *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th

11

Cir. 2010). This privilege applies even to recorded phone calls made from a prisoner to his attorney, if the prisoner has no access to a private, nonrecorded line and intends the communications to be privileged. *See, e.g., United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (privilege attaches when client intends communications to be confidential); *Simon*, 2017 WL 66818, at *5 (acknowledging that the Seventh Circuit has not decided whether attorney-client privilege applies to recorded prison phone calls, and suggesting attorney-client privilege may apply if there was some "impediment to [the prisoner's] access to unrecorded calls"); *Pursley*, 2020 WL 1433827, at *5 (same); *Hernandez v. Guevara, et al.*, No 23-cv-1737 (N.D. Ill Nov. 14, 2024) (granting motion to quash a subpoena for plaintiffs' recorded calls and other communications with his attorney stating that the attorney-client privilege is "close to sacrosanct" and, without knowing whether there were feasible alternatives to seeking legal advice, the requesting party "just do[es]n't get" those recordings) (Ex. E); *Gonzalez,* No. 22-cv-6496, (N.D. Ill. Nov. 15, 2023), Dkts. 157, 161, 170 (granting a motion to quash a subpoena for plaintiff's recorded calls with postconviction attorneys).

Neither Plaintiff Prediger nor Anthony Huber ever made any waiver of their attorney-client privilege. Defendants may attempt to rely on the fact that Anthony Huber is deceased, but the Supreme Court has made clear that the attorney-client privilege survives the death of the client. *Swidler & Berlin v. United States*, 524 U.S. 399, 410 (1998). As such, Defendants should not be entitled to bypass such a sacrosanct bedrock of the criminal justice system—and certainly not when there is no relevance to the matter at issue.

### E. The Subpoenas Invade Privacy and Appear Intended to Harass

In determining whether to quash a subpoena, courts must also balance "the privacy interests of the person seeking to quash the subpoena against the relevance and the benefit of the

information sought." *Rodriguez v. City of Chicago,* No. 18-cv-7951, 2021 WL 2206164, at *1 (N.D. Ill. June 1, 2021). The subpoenas here intrude deeply into Plaintiffs' privacy interests by seeking highly sensitive personal information—including medical and mental health records spanning fifteen years, incarceration history, and internal grievance materials—none of which Plaintiffs have placed at issue in this litigation.

Plaintiffs retain a significant privacy interest in records from periods of incarceration, as well as in any recorded communications with loved ones and attorneys during those periods. Courts have repeatedly recognized that, in civil litigation, incarcerated individuals maintain privacy interests in such materials, including recorded communications. *See Pursley*, 2020 WL 1433827, at *2 ("While inmates would reasonably expect that their phone calls could be accessed by prison officials, they would not reasonably expect that the details of their recorded phone calls would be handed over to civil litigants."); *see also Bishop*, 2020 WL 6149567, at *3; *Simon*, 2017 WL 66818, at *2 ("This court doubts, for example, Simon anticipated his remarks to a friend about the weather, slights uttered in a heated lover's quarrel, or any unrelated conversation ranging from the most benign topics (the former) to the most intimate (the later) would find its way as an exhibit in this lawsuit."). These privacy concerns extend not only to Plaintiffs, but also to family members and loved ones whose only means of communication during incarceration was through recorded lines. The same privacy considerations apply with equal force to Plaintiff Prediger and Anthony Huber's other carceral records, particularly where—as here—Defendants have failed to identify any meaningful connection between the requested materials and the claims or defenses in this case.

The scope and manner of these subpoenas strongly suggest that they were not designed to obtain evidence relevant to the claims or defenses in this action, but instead to probe deeply into

13

Case 2:21-cv-00969-LA   Filed 01/03/26   Page 13 of 16   Document 167

Plaintiff Prediger and Anthony Huber's personal histories in a manner that risks harassment of Mr. Prediger and the surviving members of Mr. Huber's family. The subpoenas were served on numerous carceral institutions and seek more than a decade of highly sensitive records, untethered to the events at issue in this case. Such breadth indicates an impermissible effort to rummage through Plaintiff Prediger and Anthony Huber's backgrounds rather than to pursue targeted, proportional discovery.

The Federal Rules do not permit discovery to be used as a means of harassment, intimidation, or to impose unnecessary burdens unrelated to the merits of the litigation. Where, as here, subpoenas intrude upon significant privacy interests without any demonstrated relevance or necessity, they exceed the bounds of Rule 45 and should be quashed on that basis as well.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant this motion to quash Defendants' eight carceral subpoenas in their entirety or alternatively, for an order halting the production of responsive materials and mandating Defendants confer with Plaintiffs about an appropriate and narrowly tailored scope for the subpoenas.

RESPECTFULLY SUBMITTED,

**JOHN HUBER & PAUL PREDIGER**

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*

Jon Loevy
Dan Twetten
Anand Swaminathan
Steve Art
Quinn Rallins
Alyssa Martinez
Maggie Filler

14

LOEVY & LOEVY
311 N. Aberdeen, Third Fl
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

Kimberly Cy. Motley
MOTLEY LEGAL SERVICES
P.O. Box 1433
Matthews, NC 28106
(704) 765-4887
kmotley@motleylegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Alyssa Martinez, an attorney, hereby certify that on January 3, 2026, I served the foregoing document to be served on all counsel of record via the Clerk of the Court's electronic filing system.

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*