| | |
|---|---|
| JOHN HUBER, in his individual capacity ) <br> and as Personal Representative of the ) <br> ESTATE OF ANTHONY HUBER, ) <br>     Plaintiff, ) <br>     v. ) <br> ) <br> DAVID G. BETH, in his individual and ) <br> Official capacity as Kenosha County Sheriff, ) <br> et al., ) <br>     Defendants. ) | No. 2:21-cv-00969-LA |
| PAUL HENRY PREDIGER, ) <br>     Plaintiff, ) <br>     v. ) <br> ) <br> THE CITY OF KENOSHA, ) <br> et al., ) <br>     Defendants. ) | No. 2:21 cv 01192-LA <br> (Consolidated with <br> No. 2:21-cv-00969-LA) |

**CITY DEFENDANTS' MEMORANDUMIN IN OPPOSITION TO PLAINTIFFS' MOTION TO QUASH DEFENDANTS' OVERBROAD SUBPOENAS**

Defendants, Daniel G. Miskinis, Eric Larsen, John Doe Police Officers of the Kenosha Police Department, Menomonee Falls Police Department, West Allis Police Department, the City of Kenosha, Village of Menomonee Falls and the City of West Allis, (collectively the "City Defendants"), by their undersigned counsel, respectfully submit this memorandum in opposition to Plaintiffs' Motion to Quash Defendants' Overbroad Subpoenas ("Motion to Quash").

## INTRODUCTION

Plaintiffs' motion to quash is meritless. Rather than identifying any particularized

1

objections or proposing reasonable limitations, Plaintiffs rely on sweeping, conclusory claims of overbreadth, burden, privilege, and privacy, and now ask the Court to intervene while mischaracterizing the record.

This conduct reflects a broader pattern. Plaintiffs previously delayed basic discovery by refusing to execute medical authorizations and ignoring repeated invitations to propose reasonable revisions. (Dkt. 152–153, 161). Even after the Court directed Plaintiffs on October 7, 2025, to draft subpoenas in lieu of the authorizations (relief they had requested) and to confer with City Defendants, (Dkt. 164) Plaintiffs produced nothing despite repeated follow-ups. As a result, City Defendants drafted and served the subpoenas themselves, engaged in meaningful conferral with Plaintiffs, and have issued approximately 40 subpoenas to obtain records Plaintiffs had long delayed.

The eight narrowly tailored subpoenas at issue were directed to the correctional institutions where Plaintiffs were actually incarcerated or supervised. They seek records directly relevant to Plaintiffs' claims for emotional distress, humiliation, loss of enjoyment of life, loss of society and companionship, and pecuniary loss—claims each Plaintiff affirmatively values at $10 million. Contrary to Plaintiffs' assertions, the subpoenas were circulated with sufficient notice before Paul Prediger's deposition, and Plaintiffs were repeatedly invited to identify specific objections or propose reasonable limitations.[1] They declined, instead moving to quash subpoenas essential to evaluating damages.

For these reasons, Plaintiffs' Motion to Quash should be denied. They lack standing to

---

[1] Plaintiffs assert that the subpoenas were served on the "eve of Plaintiff Prediger's deposition," but that assertion is contradicted by the record. City Defendants noticed the subpoenas on December 9, 2025 and served them on December 18, 2025 (after meeting and conferring with plaintiffs' counsel and noting the January 8th deposition date). Rule 45(d)(2)(B) "suggests that 14 days is the benchmark time for compliance, and courts have found that fourteen days from the date of service is presumptively reasonable." *In re Subpoenas Issued to Holsen*, No. 22-MC-24-JPS, 2022 U.S. Dist. LEXIS 141254, at *3 (E.D. Wis. Aug. 9, 2022).

challenge subpoenas directed to third-party custodians, and their conclusory claims of privilege and privacy are unsupported, speculative, and legally insufficient. The subpoenas seek information that is plainly relevant and proportional to the claims at issue.

## RELEVANT FACTUAL BACKGROUND

On December 9, 2025, City Defendants served third-party subpoenas and corresponding riders on all counsel of record, directed to various healthcare and correctional institutions. (Declaration of Clementine Uwabera in Support Response to Plaintiffs' Motion to Quash (hereinafter "CU Decl."), ¶10, Ex. 1 at 11; Dkt. 167-2, at 1-49; Dkt. 167-3 at 1-2).

For Anthony Huber, subpoenas were directed to the Wisconsin Department of Corrections (WDOC), Kenosha County Detention Center, Kettle Moraine Correctional Institution, Racine Correctional Institution, and Dodge Correctional Institution. Huber was incarcerated or supervised at these facilities from 2013 to 2019 pursuant to a probation sentence and subsequent revocations, all arising from convictions for Strangulation and Suffocation, Wis. Stat. § 940.235(1), False Imprisonment, Wis. Stat. § 940.30, in 2013, and Disorderly Conduct/Domestic Abuse, Wis. Stat. § 968.075(1)(a), in 2018. (CU Decl., ¶12, Ex. 3).[2]

For Paul Prediger, subpoenas were directed to the Wisconsin Department of Corrections (WDOC), Waukesha County Jail, and the Milwaukee County Community Reintegration Center (f/k/a House of Correction). Prediger was incarcerated or supervised at these facilities from

---

[2] This Court may take judicial notice of the Kenosha County Circuit Court proceedings involving Anthony Huber, including the April 23, 2013, sentencing hearing in State of Wisconsin v. Anthony Huber, Case No. 2012CF1346, the December 20, 2016 probation-revocation hearing in the same case, and the June 8, 2018 sentencing hearing in Kenosha County Case No. 2018CM000509. See e.g., *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) ("a court is of course entitled to take judicial notice of judicial proceedings"); *United States v. Doyle*, 121 F.3d 1078, 1088 (7th Cir. 1997) (taking judicial notice of district court's docket sheet). Plaintiff's criminal cases can be accessed via CCAP, available at:
https://wcca.wicourts.gov/caseDetail.html;jsessionid=20A3258A2AB4A8EE49D4C0DDC5A60BE8.render4?caseNo=2012CF001346&countyNo=30&mode=details and
https://wcca.wicourts.gov/caseDetail.html;jsessionid=20A3258A2AB4A8EE49D4C0DDC5A60BE8.render4?caseNo=2018CM000509&countyNo=30&mode=details

approximately 2013 to 2018 pursuant to sentences arising from Waukesha County Case No. 13CF62 (records not publicly accessible) and Milwaukee County Case No. 16CM1014, charging Go Armed with a Firearm While Intoxicated, Wis. Stat. § 941.20(1)(b). (CU Decl., ¶13, Ex. 4).[3]

The subpoenas seek correctional records from the subpoenaed institutions spanning the period from when Plaintiffs reached the age of majority—August 22, 2012, for Anthony Huber, and November 5, 2011, for Paul Prediger—through the present. Each subpoena requests "[subpoenaed institution] Correction Records," defined as any and all records maintained by the institution relating to an individual's confinement, custody, supervision, discipline, medical or mental-health care, housing, movement, programming, or communications. The subpoenas further specify that the requested records include, without limitation:

> (a) the inmate central file; (b) intake, assessment, and classification records; (c) conduct reports, incident reports, disciplinary hearing materials, findings, dispositions, and sanctions; (d) probation, parole, and extended supervision records, including chronological logs, agent notes, violation reports, revocation materials, and sanctions; (e) housing, movement, transfer, and facility assignment records; (f) program enrollment, participation, and completion records; (g) visitation logs, telephone logs and recordings (if retained), mail logs, internal communications, and electronic kiosk messages; (h) grievance and complaint records, including Inmate Complaint Review System filings and responses; (i) any use-of-force reports, reviews, photographs, audio or video recordings; (j) medical, mental-health, psychological, and Alcohol and Other Drug Abuse / Substance Use Disorder treatment records; and (k) any other documents, correspondence, reports, electronically stored information, audio, video, or data maintained by [subpoenaed institution] Institution concerning the individual, regardless of format or storage location.

---

[3] The Court may also take judicial notice of the January 4, 2017, sentencing hearing in Milwaukee County Case No. 2016CM001014, in which the court stayed a four-month "House of Correction" sentence and placed Prediger on twelve months' probation with standard conditions, including alcohol and drug treatment, counseling, DNA submission, payment of costs, and community service. The court denied his request for expungement. https://wcca.wicourts.gov/caseDetail.html;jsessionid=20A3258A2AB4A8EE49D4C0DDC5A60BE8.render4?caseNo=2016CM001014&countyNo=40&mode=details

(CU Decl., ¶11, Ex. 2)

Upon receipt, Plaintiffs requested a meet-and-confer, asserting only that they "object[ed] to certain subpoenas" without explanation. (CU Decl., ¶10, Ex. 1 at 11). City Defendants promptly scheduled a meet-and-confer and asked Plaintiffs to identify specific objections or propose revisions. (CU Decl., ¶10, Ex. 1 at 10). After several days without specific objections to the subpoenas (or the basis thereof), Defendants advised that subpoenas would be issued on December 17, 2025. (CU Decl., ¶10, Ex. 1 at 8). Plaintiffs then broadly objected on grounds of overbreadth, undue burden, irrelevance, privacy, and privilege but provided no particularized explanation. (CU Decl., ¶10, Ex. 1 at 5).

During a telephonic meet-and-confer on December 17, 2025, Plaintiffs renewed their objections but offered no revisions or limitations. (CU Decl., ¶4). City Defendants explained that the subpoenas were narrowly limited to adult incarceration or supervision records at actual facilities and outlined the records' direct relevance to damages. (CU Decl., ¶¶5-7). City Defendants agreed to provide supporting authority and requested that Plaintiffs identify specific subpoena terms they found objectionable. (CU Decl., ¶8). City Defendants followed up by providing supporting authority and again requested that Plaintiffs identify specific subpoena terms they found objectionable. (CU Decl., ¶10, Ex. 1 at 4). Despite these efforts, Plaintiffs did not propose any revisions or limitations.

Given Plaintiffs' generalized objections and the impending January 8, 2026 deposition of Prediger, subpoenas were issued on December 18, 2025. (CU Decl., ¶11, Ex. 2).

WDOC partially objected on December 22, 2025, and produced partial records on January 2, 2026. (CU Decl., ¶17, Ex. 8). The City Defendants and their counsel have not reviewed or circulated copies of these records to other counsel of record. (*Id*.). WDOC has not produced any

supplemental records. (CU Decl., ¶19). Waukesha County Jail indicated it had no responsive records, and the subpoena is therefore withdrawn. (CU Decl., ¶18, Ex. 9). Other institutions have provided no objections or records. (CU Decl., ¶19).

Prediger's deposition proceeded on January 8, 2026, but City Defendants were unable to examine him with complete records, limiting their ability to question him regarding incarceration and supervision history, which is directly relevant to damages and causation.

## LEGAL STANDARD

A party may issue a subpoena to command production of documents in a non-party's possession or control under Fed. R. Civ. P. 45(a). The Court must quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). The burden rests on the objecting party to show why a request is improper. See generally *Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447, 450 (N.D. Ill. 2006) (holding that the burden rests on the objecting party to show why a discovery request is improper).

The scope of discovery that a party may seek in a subpoena is as broad as the rules of discovery allow. *Teed v. JT Packard & Assocs.,* No. 10-MISC-23, 2010 U.S. Dist. LEXIS 86113, at *3 (E.D. Wis. July 20, 2010). A subpoena may request information about "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

A motion to quash a third-party subpoena is proper only if the moving party has a personal

privilege or privacy interest in the information sought. *Teed,* 2010 U.S. Dist. LEXIS 86113, at \*6.; see also *DeMarco v. Chomas,* No. 08-CV-143, 2008 U.S. Dist. LEXIS 90031, at \*7 (E.D. Wis. Oct. 23, 2008) ("Outside of the context of a party claiming attorney-client privilege or some other personal right, only persons to whom subpoenas are directed have standing to challenge their validity through a motion to quash."). The movant bears the burden of showing privilege or privacy. *See WM High Yield v. O'Hanlon*, 460 F.Supp.2d 891, 895 (S.D. Ind. 2006*)* (the burden of persuasion in a motion to quash a subpoena is borne by the movant).

## ARGUMENT

Plaintiffs' motion fails for four independent reasons. First, Plaintiffs lack standing to quash subpoenas directed to non-party correctional institutions because they assert neither a valid claim of privilege nor a cognizable privacy interest. Second, the subpoenas seek relevant and proportional discovery directly tied to damages Plaintiffs have affirmatively placed at issue, including emotional distress, loss of society and companionship, and pecuniary loss. Third, the subpoenas do not seek attorney–client communications and therefore do not implicate privilege, particularly where institutional policies confirm that attorney calls are not recorded and communications on monitored lines are not confidential. Fourth, Plaintiffs' generalized privacy objections are legally insufficient and, in any event, are adequately addressed by existing protective orders. Finally, Defendants complied fully with Rule 45's notice requirements, and the meet-and-confer process does not apply here. Accordingly, the motion to quash should be denied in its entirety.

**I.     Plaintiffs Lack Standing to Quash City Defendants' Third-Party Subpoenas.**

"Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action[.]" *CMB Exp., LLC v. Atteberry*, 2014 U.S. Dist. LEXIS 201668, 2014

7

WL 12849793, at *3 (C.D. Ill. July 16, 2014) (internal quotations and citations omitted) Standing exists only when a party can show a legitimate interest threatened by the subpoena, such as attorney-client or work-product privilege, interference with business relationships, or disclosure of private information. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013); *Malibu Media, LLC v. Doe*, 287 F.R.D. 513, 516 (N.D. Ind. 2012).

Plaintiffs rely on Illinois district court decisions suggesting that subpoenas for a plaintiff's recorded communications while incarcerated confer standing, but those cases do not control. District court decisions are not binding authority, even within the same district. *Van Straaten v. Shell Oil Prods. Co. LLC,* 678 F.3d 486, 490 (7th Cir. 2012). As discussed further in Sections III and IV, the subpoenas do not seek attorney-client communications and do not implicate any cognizable privilege or privacy interest. Plaintiffs have identified no calls with counsel, correctional facility policies confirm that attorney calls are not recorded, and communications made on recorded and monitored lines are not privileged.

Even assuming a minimal privacy interest could support standing, Plaintiffs identify no specific or concrete interest here. *Sunlust Pictures, LLC v. Doe*, No. 12 C 1546, 2012 U.S. Dist. LEXIS 121368, at *6 (N.D. Ill. Aug. 27, 2012). As explained further below, their generalized assertions that the subpoenas intrude "highly sensitive personal information" are insufficient. Accordingly, Plaintiffs lack standing to quash the subpoenas. *Malibu Media*, 287 F.R.D. at 516.[4]

---

[4] Plaintiffs also lack standing to object to the subpoenas as unduly burdensome. (Dkt. 167 at 3, 8–11; 167-4 at 5). Indeed, "it is for the subpoena recipient, not the party to the litigation, to evaluate the burden of responding" and the risk of privileged material. *Bianchi v. Tonigan,* No. 12 C 0364, 2012 U.S. Dist. LEXIS 167011, at *6 (N.D. Ill. Nov. 26, 2012); see also *Wi-Lan, Inc. v. LG Elecs., USA, Inc.*, No. 10 CV 7721, 2011 U.S. Dist. LEXIS 4606, at *5 (N.D. Ill. Jan. 18, 2011) ("The non-party opposing the subpoena must establish that it is unduly burdensome."). Notably, none of the recipients of the subpoenas have sought to quash them on grounds of undue burden or for any other reason. Moreover, Plaintiffs have not explained how the materials would impose any burden on themselves or the non-parties. See *Doe v. Purdue Univ., No. 2:17-CV-33-JPK, 2019 U.S. Dist. LEXIS 160413, at *10 (N.D. Ind. Sep. 19, 2019)*

## II. The Subpoenas Seek Relevant and Proportional Discovery.

Plaintiffs argue the subpoenas seek information "wholly unrelated" to the claims and amount to a generalized "background investigation." (Dkt. 167 at 11). That misstates both their scope and the standards under Rules 26 and 45. The information City Defendants' request in their subpoenas are relevant to this litigation within the meaning of Rule 26(b)(1), which applies "with equal force to nonparty discovery under Rule 45." *Deleon-Reyes v. Guevara,* No. 1:18-cv-01028, 2020 U.S. Dist. LEXIS 99772, at *9 (N.D. Ill. June 8, 2020). Discovery is not limited to the "operative events of the case"; it extends to damages and causation. Here, the subpoenas seek records directly tied to the damages Plaintiffs themselves have placed at issue—emotional distress, loss of enjoyment of life, loss of society and companionship, and pecuniary loss.

For John Huber and Karen Bloom, Wisconsin law ties damages for loss of society, companionship, and pecuniary support to the quality of their relationship with Anthony Huber, including the love, affection, and conduct of each toward the other, the child's contributions, the decedent's personality, character and disposition, and any pecuniary benefits received. WIS JI–CIVIL 1895; *Keithley v. Keithley*, 95 Wis. 2d 136, 138, 289 N.W.2d 368, 370 (Ct. App. 1980); *Peot v. Ferraro*, 83 Wis. 2d 727, 734, 266 N.W.2d 586, 590 (1978). The subpoenas allow Defendants to test the decedent's availability and engagement, including whether other factors affected the relationship quality. See *Cobige v. City of Chicago*, 651 F.3d 780, 785 (7th Cir. 2011) (holding that the district court erred in excluding evidence of the decedent's prior imprisonment, arrests, and drug addiction, which was relevant to the calculation of damages for emotional loss and loss of companionship; exclusion under Rules 404(b), and 609 was improper; remanded for a new trial

---

(finding party alleged subpoena to be broad but did not "connect this purported broadness to the imposition of a burden on himself or even the non-parties to whom the subpoena would be issued.").

limited to damages); *Hernandez v. City of Peoria*, 135 F.4th 517, 525 (7th Cir. 2025) (holding that "[t]he district court did not abuse its discretion in admitting evidence that Cruz was incarcerated at the time of his daughters' births, nor did it abuse its discretion when it admitted evidence of the Department of Child and Family Services investigation. Both pieces of evidence were directly relevant to the plaintiff's damages.")

Moreover, Paul Prediger and Anthony Huber have claimed broad damages—emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering. (Prediger, 21-cv-01192, Dkt. 5 at 41; Huber, Dkt. 27, ¶214). Prediger specifically seeks $10 million and does not limit his claim to emotional distress experienced during or immediately after the incidents; he continued to receive treatment nearly four years later.[5] (CU ¶20, Ex. 10 - Prediger Dep. 103:1-25-104:1-12; 213: 15-22.) Evaluating causation, scope, or alternative explanations requires correctional records showing incarceration, supervision, program participation, and medical/mental-health treatment. *Matthews v. Debus,* No. 14 C 6003, 2020 U.S. Dist. LEXIS 30498, at *5-6 (N.D. Ill. Feb. 19, 2020) (recognizing that where a plaintiff claims ongoing, broad emotional-distress damages, defendants have a "straight-faced argument" that the plaintiff's criminal history and imprisonment constitute an alternative cause of the claimed emotional injuries, or at least a contributing factor). These records are necessary to establish what activities were realistically available to Plaintiffs, the stressors they faced, and whether claimed losses result from Defendants' conduct or preexisting conditions.

---

[5] Plaintiff Huber himself has placed extraordinarily broad damages at issue—including vaguely defined "loss of life" damages for Anthony Huber—and has even filed a notice of claim seeking $10 million. (ECF No. 110-6, p. 4.)

The subpoenas are narrowly tailored, covering:

- **Inmate central files, intake, assessment, and classification records (a–b)** provide information about each Plaintiff's health, cognitive and emotional functioning, and prior limitations;

- **Conduct reports, incident reports, disciplinary hearings, findings, dispositions, and sanctions (c),** as well as **probation, parole, and extended supervision records (d),** show periods of restriction, confinement, or formal discipline that may have independently constrained daily activities, social interactions, and personal autonomy;

- **Housing, movement, transfer, and facility assignment records (e)** and **program enrollment, participation, and completion records (f)** demonstrate the availability, or lack thereof, of rehabilitative, educational, vocational, or recreational opportunities, directly relevant to restrictions on mobility, employment and lost enjoyment and fulfillment of life;

- **Visitation logs, telephone logs and recordings, mail logs, internal communications, and electronic kiosk messages (g)** document actual opportunities for interpersonal interaction, family contact, and relationship maintenance, which are critical to assessing claims for loss of society and companionship;

- **Grievance and complaint records, including Inmate Complaint Review System filings and responses (h),** reveal stressors, unmet needs, and institutional responses that bear on the mental and emotional impacts alleged;

- **Use-of-force reports, reviews, photographs, audio or video recordings (i)** establish exposure to traumatic or stressful events that plausibly contribute to claimed emotional distress;

- **Medical, mental-health, psychological, and AODA/substance-use disorder treatment records (j)** document treatment histories, preexisting conditions, and contemporaneous interventions, allowing the Court to distinguish harms attributable to Defendants' conduct from those arising from independent health factors;

- **Any other institutional documents, communications, reports, or electronically stored information (k)** capture additional relevant context concerning Plaintiffs' incarceration, supervision, and institutional environment that could affect the scope or severity of claimed damages.

Each category provides contemporaneous, neutral evidence essential to evaluating baseline functioning, exposure to stressors, familial relationships, and potential alternative causes of emotional distress. Defendants are entitled to verify these records for themselves; they cannot be expected to rely solely on Plaintiffs' testimony.

Contrary to Plaintiffs' claims, the subpoenas are not overbroad. They cover only the institutions where Plaintiffs were actually incarcerated or supervised and only the periods from when each reached the age of majority—August 22, 2012 for Huber and November 5, 2011 for Prediger—through the present. Public records show Huber's custodial or supervisory periods fell roughly between 2017 and 2019, following a 2013 probation sentence, and Prediger's incarceration and supervision arose from 2013 and 2016 convictions and concluded around 2018. Moreover, the subpoenas define "[subpoenaed institution] Correction Records" broadly to ensure completeness, but each category is directly relevant to incarceration, supervision, classification, discipline, medical or mental-health care, housing, movement, programming, and communications.

Plaintiffs' arguments that the subpoenas are disproportionate because other discovery methods could have been used are incorrect. (Dkt. 167 at 12.) Defendants previously sought relevant information through interrogatories, document requests, and deposition testimony, but

12

Plaintiffs either did not recall, had no responsive information, or claimed to be investigating without providing follow-up. (CU ¶20, Ex. 10 at Prediger Dep. 217:25-218:1-7; Dkt. 153-3 at 5, 10-11 26.) Subpoenas under Rule 45 are a routine and proper mechanism for obtaining records not otherwise accessible, and are entirely appropriate and contemplated to test a party's claims.

Plaintiffs' HIPAA objection is equally without merit. (Dkt. 167 at 12-13.) At no point during the meet-and-confer process did Plaintiffs raise the specific objection that the subpoenas seek medical records outside the timeframe authorized by the Court's Qualified HIPAA Protective Order. City Defendants remain willing to provide the Protective Order to the relevant correctional institutions and instruct them to limit production to the timeframe and scope specified therein.

Plaintiffs seek extensive damages while simultaneously attempting to shield records necessary to verify those claims. The subpoenas are targeted, relevant, and proportionate; Plaintiffs' motion to quash is therefore entirely without merit and should be denied.

### III. The Subpoenas Do Not Improperly Seek Privileged Attorney-Client Communications.

Plaintiffs' assertion that the subpoenas implicate attorney–client privilege is meritless. (Dkt. 167 at 13-14.) The subpoenas do not seek communications between Plaintiffs and counsel. They seek routine correctional records maintained in the ordinary course, including visitation logs, telephone logs and recordings (if retained), mail logs, internal communications, and electronic kiosk messages. By their nature, these records are not privileged, particularly where inmate communications are routinely monitored or recorded.

The Seventh Circuit strictly limits attorney–client privilege to confidential communications seeking legal advice from a lawyer acting in that capacity. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (1961)); see also S*andra T.E. v. S. Berwyn Sch. Dist.* 100, 600 F.3d 612, 618

13

(7th Cir. 2010). Because the privilege is in derogation of the truth-seeking process, it is narrowly construed, and the party asserting it bears the burden of establishing every element. *Evans,* 113 F.3d at 1461; see also *Pearlshire Capital Grp., LLC v. Zaid*, 490 F. Supp. 3d 1299, 1302 (N.D. Ill. 2020) ("The party hoping to withhold evidence from the proceedings—and, to degrees that vary from case to case, thwart the fact-finders' efforts at uncovering the truth—necessarily has the burden of establishing the applicability of the privilege it asserts...") (citations omitted)).

Plaintiffs cannot meet that burden. They identify no specific calls or communications with counsel. Instead, they rely on speculation and blanket assertions directed at broad categories of institutional records, none of which are facially privileged. Courts require a document-by-document showing; generalized claims are insufficient. *See Pearlshire Cap. Grp., LLC*, 490 F. Supp. 3d at 1307 ("Blanket or sweeping claims of privilege are impermissible in all contexts.")

Even if Plaintiffs could identify particular calls, they cannot establish confidentiality where the communications occurred on recorded lines. The privilege protects only communications intended to be confidential. *Evans*, 113 F.3d at 1462 (citing 8 Wigmore, Evidence § 2311). Inmates, including Plaintiff Huber and Prediger, are typically explicitly warned that calls from correctional facilities are recorded and monitored, see e.g., (CU Decl., ¶¶ 14-16, Exs. 5-7), and therefore could not reasonably believe those calls were confidential. *United States v. Mejia,* 655 F.3d 126, 134 (2d Cir. 2011); *Evans*, 113 F.3d at 1461. Indeed, "[i]t cannot be that Plaintiff intended his attorney phone calls to be confidential [where] he knew his phone calls were recorded and still communicated with his attorney[] via phone." *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 U.S. Dist. LEXIS 50513, at *15 (N.D. Ill. Mar. 24, 2020).

Nor do Plaintiffs identify any impediment to arranging unrecorded attorney calls. They rely on *Simon*, where the court suggested, in dicta, that an "impediment to [a prisoner's] access to

14

unrecorded calls" might preserve attorney-client privilege (Dkt. 167, at 14, citing *Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 U.S. Dist. LEXIS 2461, at *15 (N.D. Ill. Jan. 6, 2017)). To the contrary, correctional policies explicitly permit confidential attorney communications through approved, unrecorded channels. (CU Decl., ¶¶ 14-16, Exs. 5-7). The fact that such calls required prior approval does not establish a barrier to privilege, because Plaintiffs instead chose to use recorded lines. See *Bishop v. White*, No. 16 C 6040, 2020 U.S. Dist. LEXIS 194073, at *29 (N.D. Ill. Oct. 20, 2020)("[T]he fact that an unrecorded, confidential conversation was more difficult for [the plaintiff] to arrange does not mean he lacked access to such a call, or that he faced an insurmountable 'impediment.'").

Moreover, any privilege was also waived by knowingly communicating on recorded lines. Disclosure to third parties defeats the privilege, even where the client hoped the communication would remain confidential. See *Bishop,* 2020 U.S. Dist. LEXIS 194073, at *31; *Patrick v. City of Ch*i., 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015) ("Disclosure of confidential communications is inconsistent with the attorney-client relationship and almost invariably waives the privilege 'with respect to the world at large.'") (citation omitted); see also *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007) ("[O]rdinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential."); *Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina*, Inc., 91 F.R.D. 254, 258 (N.D. Ill. 1981) ("[E]ven inadvertent communication to third parties, such as bystanders or eavesdroppers, destroys the privilege."). [6]

---

[6] Plaintiffs cite *Hernandez v. Guevara*, No. 23-cv-1737 (N.D. Ill. Nov. 14, 2024), and *Gonzalez v. Guevera*, No. 22 CV 6496 (N.D. Ill. May 2, 2024), which allowed quashing subpoenas for recorded attorney calls. (Dkt. 167, at 12, Ex. E.) Those cases are inapposite. Here, several of the correctional institutions do not record attorney calls, and Plaintiffs have identified no specific privileged communications. Moreover, courts in this circuit consistently hold that calls knowingly made on recorded lines are not protected by attorney–client privilege. See Bishop, 2020 U.S. Dist. LEXIS 194073, at *28; *Prince v. Kato*, No. 18 C 2952, 2020 U.S. Dist. LEXIS 242704, at *11 (N.D. Ill. Dec. 28, 2020); *Pursley*, 2020 U.S. Dist. LEXIS 50513, at *16; *Simon*, 2017 U.S. Dist. LEXIS 2461, at *16. This accords with the

Finally, Anthony Huber's death does not alter the analysis. While privilege may survive death, it still requires a showing of applicability and non-waiver, which Plaintiffs have not made.

Accordingly, Plaintiffs' sweeping privilege assertions are speculative, unsupported, and legally insufficient. The motion to quash on attorney–client privilege grounds should be denied.

## IV. Plaintiffs' Privacy Objections Do Not Justify Quashing the Subpoenas.

Plaintiffs contend that the subpoenas "intrude deeply into Plaintiffs' privacy interests by seeking highly sensitive personal information—including medical and mental health records spanning fifteen years, incarceration history, and internal grievance materials—none of which Plaintiffs have placed at issue in this litigation." (Dkt. 167 at 15). These assertions misstate both the law and the facts.

Courts evaluating a motion to quash must balance "the privacy interests of the person seeking to quash the subpoena against the relevance and benefit of the information sought." *Rodriguez v. City of Chi.*, No. 18-cv-7951, 2021 U.S. Dist. LEXIS 102553, at *3 (N.D. Ill. June 1, 2021). Here, the balance plainly favors discovery. Plaintiffs have placed substantial emotional-distress, humiliation, loss of enjoyment of life, and pecuniary damages at issue, including a $10 million claim by Paul Prediger. See supra Section II. Where plaintiffs affirmatively put these matters in dispute, courts routinely conclude that any residual privacy interest is outweighed by the relevance and benefit of the requested records. *Russell v. City of Chi.,* No. 20-cv-1163, 2022 U.S. Dist. LEXIS 17809, at *7-11 (N.D. Ill. Feb. 1, 2022) (weighing privacy interests against relevance and benefit of requested records and permitting discovery of recorded phone calls with family members and attorney).

---

Seventh Circuit's narrow application of the privilege and requirement that all elements be met before withholding evidence. See *Evans*, 113 F.3d at 1461; *Valero Energy Corp.*, 569 F.3d at 630.

Privacy concerns regarding recorded calls fare no better. Plaintiffs make no specific showing that any calls were particularly intimate or sensitive. This stands in stark contrast to *Bishop*, where the plaintiff demonstrated that calls involved a spouse's illness, death, and a child's medical emergency. *Bishop*, 2020 U.S. Dist. LEXIS 194073, at *14-15. Plaintiffs make no comparable showing here (in fact, plaintiffs make no factual showing at all).

Moreover, incarcerated individuals are expressly warned that calls are monitored and recorded, and thus lack a reasonable expectation of privacy. *See Coleman v. City of Peoria,* No. 15-cv-1100, 2016 U.S. Dist. LEXIS 95752, at *11 (C.D. Ill. July 22, 2016) (finding that the impact on the plaintiffs' and third parties' privacy interests was less than that of a private citizen making calls at home, because the calls were known to be recorded, and concluding that the diminished privacy interests were insufficient to quash subpoenas). Attorney-client communications did not appear on the recorded lines, rendering Plaintiffs' reliance on these calls largely beside the point. See supra Section III.

Plaintiffs' objections regarding medical and mental health records are similarly unavailing, particularly where Plaintiffs have affirmatively placed such matters at issue. Moreover, any remaining concerns are already addressed by the Court's existing Protective Order (Dkt. 104), which instructs that confidential documents "may not be used by any party or person for any other litigation or non-litigation related purpose." Courts routinely reject motions to quash where protective orders adequately safeguard privacy interests. See, e.g., *Coleman,* 2016 U.S. Dist. LEXIS 95752, at *11 (privacy interests can be protected by making recordings confidential under a protective order); see also *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 U.S. Dist. LEXIS 66607, at *14 (N.D. Ill. Apr. 17, 2023) (denying confidentiality-based objections where a protective order barred use of confidential

information "for any purpose whatsoever other than in this litigation" and holding that the order "sufficiently protects the sensitivity of documents" implicating privacy concerns).

Plaintiffs also assert, without authority or factual support, a privacy interest in incarceration history and internal grievance materials, but identify no recognized legal protection for such records and fail to demonstrate any concrete or particularized harm from their disclosure. Conclusory invocations of privacy, unsupported by authority or factual development, are insufficient to justify quashing subpoenas.. See *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) (arguments that are unsupported by pertinent authority, are waived).

Because Plaintiffs' privacy objections are speculative and legally insufficient, the extraordinary remedy of wholesale quashing is unwarranted. The motion should be denied.

V. **Defendants Complied with Rule 45 and Did Not Circumvent the Meet-and-Confer Process.**

Plaintiffs' claim that Defendants "bypassed" the meet-and-confer process and rushed subpoenas into production misstates the record. (Dkt 167 at 2). City Defendants served notice of the subpoenas on December 9, 2025. (CU Decl., ¶10, Ex. 1). Plaintiffs responded only that they "object[ed] to certain subpoenas," without identifying which subpoenas, the grounds for objection, or any proposed limitations. (*Id.*) City Defendants repeatedly requested that Plaintiffs provide specific objections in advance of a meet-and-confer call and offered multiple dates beginning December 10. (*Id.*) By December 16, Plaintiffs had not provided the requested specific objections. (*Id.*) Defendants then advised that, absent clarification, the subpoenas would be issued on December 17. (*Id.*) Plaintiffs thereafter provided only generalized objections and, even after further follow-up, never proposed narrowing language or specific limitations. (*Id.*)

City Defendants complied with Rule 45(a)(4), which requires notice before service. *See O'Fallon Twp. High Sch. Dist. 203 Bd. of Educ.*, No. 23-CV-967-SPM, 2024 WL 4235726, at *2

18

(S.D. Ill. Sep. 19. 2024) (concluding that providing "only hours' notice" before service nevertheless satisfied Rule 45(a)(4)'s requirement that notice be given to the parties before the subpoenas were served.) The Plaintiffs' failure to identify any specific objections after receiving notice further undermines any claim of prejudice. Finally, Plaintiffs' reliance on Civil L.R. 37's meet and confer is misplaced: that rule governs motions, not the service of subpoenas. Plaintiffs' decision to move to quash wholesale, rather than engage meaningfully in narrowing discussions, does not convert Defendants' compliance with Rule 45 into procedural misconduct.

Plaintiffs' suggestion that City Defendants attempted to obtain records before Court resolution is inaccurate (and unclear how it would affect the foregoing analysis in any event). The subpoenas had already been properly served, and City Defendants' counsel communicated with counsel for two subpoenaed correctional institutions. Waukesha County Jail confirmed it had no responsive records. WDOC served objections and, after communicating with Plaintiffs' counsel, elected to produce records notwithstanding the being informed of a pending motion, which had not yet been filed or served. (*See* CU Decl. ¶17, Ex. 8). City Defendants did not otherwise communicate with WDOC regarding the subpoena and its production.

## CONCLUSION

For these reasons, the City Defendants respectfully request that the Court deny Plaintiffs' motion to quash in its entirety.

Dated: January 26, 2026.

STAFFORD ROSENBAUM LLP

<u>*Electronically Signed By Clementine Uwabera*</u>
Kyle W. Engelke (SBN: 1088993)
Clementine Uwabera (SBN: 1114847)
*Attorneys for Defendants Daniel G. Miskinis, Eric Larsen, City of Kenosha, Village of Menomonee Falls, City of West Allis and any John or Jane Doe Police Officers employed by the City of Kenosha, Village of Menomonee Falls or the City of West Allis*

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email:    kengelke@staffordlaw.com
             cuwabera@staffordlaw.com
608.256.0226