**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| JOHN HUBER, in his individual capacity and as Personal Representative of the ESTATE OF ANTHONY HUBER,<br><br>Plaintiff,<br><br>v.<br><br>DAVID G. BETH, *et al.*,<br><br>Defendants. | No. 2:21-cv-00969-LA<br><br>Hon. Lynn Adelman,<br>District Judge<br><br>JURY TRIAL DEMANDED |
| Paul Henry Prediger,<br><br>Plaintiff,<br><br>v.<br><br>City of Kenosha, *et al.*,<br><br>Defendants. | No. 2:21-cv-01192-LA<br><br>Hon. Lynn Adelman,<br>District Judge<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION**
**TO QUASH DEFENDANTS' OVERBROAD SUBPOENAS**

Plaintiffs John Huber and Paul Prediger, by their undersigned attorneys, respectfully submit this reply in support of their motion to quash Defendants' overbroad subpoenas (Dkt. 167).

## INTRODUCTION

Defendants' response to Plaintiffs' motion to quash underscores the fundamental defect in the eight carceral subpoenas at issue: they are not tailored to obtain specific, relevant information tied to the claims and defenses in this case. Instead, they demand wholesale production of "any and all" records spanning more than a decade of incarceration—including attorney communications, medical and mental-health files, grievance records, inmate central files, intake and classification records, conduct and disciplinary logs, education and program participation records, probation and parole files, housing and movement logs, personal correspondence, and other private and irrelevant materials—without any limitation.

Faced with this overbreadth, Defendants invoke "damages" and "causation," at times conflating the two, as though those labels alone authorize boundless discovery. They do not. Rule 26 requires relevance and proportionality; it does not permit excavation of a litigant's entire life history from the moment they turn eighteen simply because emotional distress damages are sought. Nor does Rule 45 authorize subpoenas that function as generalized background investigations into a party's incarceration record.

Defendants' arguments rest entirely on speculation, conjecture, and hypothetical connections between old institutional records and the emotional distress and loss claims asserted by Plaintiffs. In their response, Defendants make no effort to cure the deficiencies in their subpoenas. Instead, they mischaracterize both the governing law and the record in an effort to justify sweeping requests that exceed the bounds of permissible discovery and to convince the Court that these subpoenas are permissible when they, in fact, are critically flawed.

Because Defendants have failed to demonstrate that the records sought in the eight carceral subpoenas are relevant, proportional, and compliant with the Federal Rules—and

because the requests intrude upon privileged and highly sensitive materials—the subpoenas should be quashed.

## ARGUMENT

### I. Plaintiffs Have Standing to Quash These Subpoenas

Defendants' argument that Plaintiffs somehow lack standing to challenge these carceral subpoenas is a nonstarter. As articulated in Plaintiffs' motion, Plaintiffs plainly have standing to quash these subpoenas. *See* Pls.' Motion to Quash, Dkt. 167 at 7-8.

A party has standing to quash a subpoena directed to a non-party if the subpoena implicates the movant's personal or privacy interests—even if minimal—or if the movant claims privilege over the information sought. *Id.* (listing cases in support). Both are at issue here. *Id.* at 7-8, 11-14. Further, numerous courts have held that any subpoena for a plaintiff's recorded communications grant that plaintiff standing as "an incarcerated individual possesses a sufficient privacy interest in the recordings of her phone calls, such that she has standing to quash a subpoena for those recordings." *DeLeon-Reyes*, No. 18-CV-1028, 2020 WL 7059444, at *2 (N.D. Ill. Dec. 2, 2020) (citing cases). As such, Plaintiffs have standing under Rule 45 to quash these subpoenas.[1]

### II. Defendants' Relevance Argument is Purely Speculative

In an apparent attempt to retroactively justify their overbroad subpoenas, Defendants now contend that their requests seek "records directly tied to the damages Plaintiffs themselves have placed at issue—emotional distress, loss of enjoyment of life, loss of society and companionship,

---

[1] In addition to the arguments made in Plaintiffs' motion, Plaintiffs would also have standing to quash these subpoenas as the subpoenas seek records that would fall under FERPA. *Iglesias v. Guevara*, No. 19 C 6508 (N.D. Ill.), Dkt. 134 (granting motion to quash subpoena for school records maintaining that "FERPA does not cloak the records with privilege, but it does confer on Plaintiff at least a minimal privacy interest in them, giving him standing to present the motion to quash.").

and pecuniary loss." *See* Defs.' Resp., Dkt. 169 at 9. This argument fails at the outset because it is entirely speculative and unmoored from any evidence in the case.

Rather than demonstrating any connection between the records they seek and damages alleged in this case, Defendants offer only vague assertions that "[t]he subpoenas allow Defendants to test the decedent's availability and engagement, including whether other factors affected the relationship quality." *Id.*

This reasoning is fundamentally flawed. Defendants ask the Court to assume—without any factual foundation—that decade-old carceral records, including inmate central files; intake and classification records; conduct and disciplinary logs; education and program participation records; probation and parole files; housing and movement logs; grievance filings; use-of-force reports; telephone and mail records (including communications with attorneys); electronic messages; and medical, mental-health, and substance-use treatment records will somehow illuminate the loss Plaintiff Huber suffered from the death of his son. Defendants make no effort to explain how these records could relate to pecuniary loss, and they provide no evidentiary connection to loss of companionship. Even for records that might plausibly bear on the relationship between Plaintiff Huber and his son—such as visitation logs—there is no justification for the sweeping and voluminous discovery Defendants demand across the eight subpoenas.

Such speculation is not sufficient to justify such an overbroad request. Courts have maintained that in order to make a showing of relevancy in discovery, the party seeking the discovery must "offer more than mere speculation that the [documents] could house relevant evidence." *See DeLeon-Reyes*, 2020 WL 7059444, at *5; *see also Russell v. City of Chicago,* No. 20-CV-1163, 2022 WL 294765, at *2 (N.D. Ill. Feb. 1, 2022).

Rather than make this showing, Defendants ask the Court to engage in extreme speculation: imagining connections between old carceral records and profoundly personal damages claimed by Plaintiffs. Rule 26 requires relevance grounded in fact, not conjecture. Courts have consistently rejected similar attempts to justify broad discovery based on hypothetical possibilities. *See, e.g., Johnson v. Guevara*, No. 20-cv-4156, Dkt. 87-1 (N.D. Ill. July 1, 2021) ("The fact that years-old disciplinary records may potentially contain information that could be used to impeach Plaintiff on collateral facts is not sufficient to justify the discovery."). The discovery Defendants propose is not calculated to uncover specific, relevant evidence—it is a fishing expedition disguised as diligence.

Defendants make a similar attempt to justify their requests for Plaintiff Prediger's records, claiming these documents pertain to both emotional damages and causation. This, too, is purely speculative. Defendants offer no evidentiary showing linking the records sought to Prediger's alleged damages or causation. Instead, they make sweeping, generalized assertions that "[t]hese records are necessary to establish what activities were realistically available to Plaintiffs, the stressors they faced, and whether claimed losses result from Defendants' conduct or preexisting conditions." *See* Defs.' Resp., Dkt. 169 at 10. Their speculation is compounded by the claim that "[e]ach category (of documents requested) provides contemporaneous, neutral evidence essential to evaluating baseline functioning, exposure to stressors, familial relationships, and potential alternative causes of emotional distress" with absolutely no basis for believing such documents (1) exist, and (2) actually contain any of this information. *Id.* at 12.

Defendants' arguments collapse under scrutiny. This case arises from the 2020 Kenosha protest in which Anthony Huber was fatally shot and Plaintiff Prediger was seriously injured. Plaintiffs have already provided extensive discovery regarding Prediger and Huber's medical and

mental-health records from 2015 to the present, including what preexisting conditions, if any, they had. Yet, five years into this litigation, Defendants attempt to recast a broad background investigation as "damages" or "causation" discovery, relying solely on speculation and hypothetical scenarios. Their subpoenas do not seek evidence relevant to the claims at issue—instead, they constitute a sweeping, untargeted inquiry into Plaintiff Prediger and Anthony Huber's personal histories that Rule 26 plainly does not authorize.

## III. The Subpoenas Remain Grossly Overbroad and Disproportionate

### A. Emotional Distress Does Not Open the Door to Unlimited Discovery

Defendants contend that because Plaintiffs seek damages for emotional distress and loss of society, they are entitled to every disciplinary report, every grievance, every housing assignment, every visitation log, every internal communication, every medical and mental-health record, every use-of-force report, every recorded call, and virtually every other record maintained by the correctional institutions at issue. This is not proportionate discovery— it is an impermissible, untargeted search through Plaintiff Prediger and Anthony Huber's history.

Defendants' subpoenas demand an unprecedented sweep of nearly fifteen years of records, encompassing inmate central files, intake and classification materials, conduct and disciplinary records, education and program participation files, probation and parole supervision documents, housing and movement logs, grievance filings, use-of-force reports, visitation logs, telephone and mail records (including communications with attorneys), electronic messages (including attorney communications), and all medical, mental-health, and substance-use treatment records—without any limitation on subject matter. Defendants provide no explanation, and point to no evidentiary support, for how these records are relevant to any claim or defense in this action. Instead, they rely on the general fact that Plaintiffs seek emotional distress damages

as justification for indiscriminate access to Plaintiff Prediger and Anthony Huber's entire incarceration history.

This argument fundamentally misstates the law. Rule 26 requires that discovery be both relevant and proportionate to the needs of the case. The mere assertion of emotional distress damages does not entitle a party to comb through the entirety of a litigant's carceral history from the moment they turn eighteen. Courts routinely reject such sweeping requests, instead limiting discovery to narrowly targeted categories of records or defined timeframes tied to specific theories of causation. *See, e.g., Johnson*, No. 20-cv-4156, Dkt. 87-1; *Russell,* No. 20-CV-1163, 2022 WL 294765, at *2; *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-CV-2436, 2019 WL 6052366, at *3 ("Unless the requesting party can demonstrate the relevancy of the materials sought, judges 'should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'"); *Vakharia v. Swedish Covenant Hosp*., No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994) ("The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest."); *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851, at *2-3 (C.D. Ill. Oct. 29, 2015) (disallowing disclosure of extensive personal information to obtain minimal potentially relevant information); *Sokn v. Fieldcrest Cmty. Unit Sch. Dist*., No. 10-1122, 2013 WL 84702, at *2 (C.D. Ill. Jan. 7, 2013) (holding that the breadth of relevancy still does not permit "fishing expeditions"). Defendants, by contrast, demand wholesale production of every record ever created during Plaintiff Prediger and Anthony Huber's periods of incarceration at eight different facilities.

Moreover, the conduct at issue in this case arises from a public protest—not from

Plaintiffs' incarceration. Defendants' reliance on cases permitting limited evidence of prior imprisonment at trial, including *Cobige v. City of Chicago*, 651 F.3d 780 (7th Cir. 2011) and *Hernandez v. City of Peoria*, 135 F.4th 517 (7th Cir. 2025), does not justify the discoverability of collective decades' worth of carceral records. The leap from "some evidence of incarceration may be admissible for damages" to "we are entitled to fifteen years of any and all correctional records" is unsupported by Rule 26 and ignores the proportionality requirement.

Defendants could have narrowly tailored these subpoenas to focus on records arguably relevant to claims, defenses, or alleged damages in this case—for example, visitation logs, call logs, or select medical records pertaining to specific allegations. Plaintiffs invited Defendants to do so, but Defendants declined. Now, they attempt to retroactively justify their sweeping document requests as pertinent to the case. This post hoc rationalization underscores that the subpoenas are not grounded in any legitimate or appropriate evidentiary request, but instead represent an overbroad and unsupported inquiry.

### B. Identifying a Custodian Does Not Make a Subpoena Narrowly Tailored

Defendants repeatedly assert that the carceral subpoenas are "narrowly tailored" because they were directed solely to the correctional facilities where Plaintiff Prediger and Anthony Huber were incarcerated. This argument conflates the identity of a custodian with the scope of a request. Simply identifying where records might be located does not render a subpoena tailored; it merely identifies a repository. Defendants cite no authority suggesting that limiting a subpoena to a particular institution—while imposing no meaningful restrictions on subject matter or timeframe—renders a subpoena narrowly tailored.

As Plaintiffs explained in their motion, the subpoenas contain no substantive limitations. Dkt. 167 at 9-11. Courts have maintained higher standards on what qualifies as a narrowly

tailored subpoena. *See, e.g., McClendon v. City of Chicago,* 345 F.R.D. 322, 327 (N.D. Ill. 2024) (rejecting the notion that limiting the volume of requested documents automatically renders a subpoena narrowly tailored or limited in scope). Narrow tailoring requires concrete limitations tied to the claims and defenses at issue—not a mere instruction to a particular entity to produce all potentially relevant records.

Defendants also make no effort whatsoever to limit the call recordings and electronic communications they seek—another indicator that this discovery is a fishing expedition. In *Russell*, a case Defendants cite in their motion, the Court found that:

> Defendants' subpoena, as written, seeks the production of all of [Plaintiff's] recorded calls between September 2, 2015, and February 19, 2019. The record contains no evidence regarding the identity of all persons who were parties to such calls, the subject matter of such calls, or the total number of such calls. It is possible that there are dozens (or perhaps hundreds) of recorded calls between [Plaintiff] and unknown others that even defendants would concede are wholly irrelevant to the parties' claims or defenses in this case. Consequently, the Court finds that defendants' subpoena is overbroad to the extent that it seeks recordings of calls other than those identified.

No. 20-CV-1163, 2022 WL 294765, at *4; *see also, e.g., Simon v. Northwestern University,* No. 15-CV-1433, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017) (subpoena seeking all calls placed over a fifteen-year period was overbroad); *Bishop v. White,* No. 16 C 6040, 2020 WL 6149567, at *3 (N.D. Ill. Oct. 20, 2020) (subpoena encompassing all calls over a four-year period was overly broad); *Pursley v. City of Rockford,* No. 18-CV-50040, 2020 WL 1433827, at *2 (N.D. Ill. Mar. 24, 2020) (subpoena seeking six years of calls was overly broad). Further, the court in *Russell* found that the defendants' "blunderbuss" request for the production of all the plaintiff's recorded calls during his time incarcerated "unreasonably trample[d] on [p]laintiff's even minimal privacy interests." *Russell*, No. 20-CV-1163, 2022 WL 294765, at *4; *see also Bishop*, 2020 WL 6149567, at *4, 7. The same is true for the request in this case.

Here, Defendants imposed no meaningful restrictions on subject matter, timeframe, or category of records—including the call recordings—and they declined to engage in any meet-and-confer process to refine the scope.[2] Further, as noted above, Defendants did not make any effort to tailor their request to documents that they believed relevant to Plaintiffs' damages. The result is not a targeted request for relevant information, but an overbroad demand for entire swaths of irrelevant records—wholly inconsistent with the proportionality principles embedded in Rule 26.

### C. Defendants' Failure to Attach the HIPAA Order and Impose Time Limits Confirms the Subpoenas' Overbreadth

Defendants now suggest they are "willing" to provide the HIPAA protective order and to limit production to authorized timeframes. Dkt. 169 at 13. That belated concession proves Plaintiffs' point. As issued, the subpoenas sought medical and mental-health records beyond the scope permitted by the Court's HIPAA order. Defendants did not attach the order, incorporate its limitations into the subpoenas, or confine the requests to the authorized timeframe. In short, the subpoenas were facially noncompliant with the governing protective order and they were not narrowly tailored or proportionate to the case.

Indeed, Defendants' acknowledgment that the subpoenas must be modified to conform to the existing HIPAA order is itself an admission that the subpoenas were overbroad as served. A subpoena that requires retroactive limitation or judicial intervention to bring it within the bounds

[2] Plaintiffs note that Defendants' response contains several statements that Plaintiffs believe are inaccurate. These include: (1) the claim that "Plaintiffs were repeatedly invited to identify specific objections or propose reasonable limitations," (*id.* at 2) which is contradicted by the correspondence attached to Plaintiffs' motion, Dkt. 167; and (2) the assertion that the "City Defendants followed up by providing supporting authority and again requested that Plaintiffs identify specific subpoena terms they found objectionable," (*id.* at 5) which the same exhibits likewise refute. Plaintiffs respectfully submit that the record does not support these characterizations. In addition, Plaintiffs dispute certain statements in Attorney Uwabera's declaration, including paragraph 8. Plaintiffs do not suggest that counsel has intentionally misrepresented the facts to the Court. Rather, the parties appear to have differing recollections of what was discussed during the December 17, 2025 meet-and-confer. Should the Court find it helpful, Plaintiffs' counsel is prepared to submit a declaration addressing those discussions.

of an already-entered protective order was not properly tailored in the first instance. The same is true of the other documents the subpoenas request.

### IV. Defendants Are Impermissibly Seeking Attorney-Client Communications

Defendants' claim that their subpoenas "do not seek communications between Plaintiffs and counsel" is demonstrably false. *See* Dkt. 169 at 13. The text of the subpoenas, and the lack of any exclusion for attorney-client communications, contradicts that claim. Defendants' email to Plaintiffs contradicts that claim. Dkt. 167-4 at 3. Defendants' own response brief contradicts that claim. Dkt. 169 at 13-16. Defendants' underlying theory appears to be that any communication between a client and attorney through a medium that can be recorded—whether phone recordings, electronic messages, etc.—automatically waives privilege. No authority supports this proposition.

As Plaintiffs more fully explained in their motion, attorney–client privilege protects confidential communications made for the purpose of obtaining legal advice. *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). Courts recognize that this privilege extends even to communications from incarcerated clients when there are impediments to accessing a private line, provided the client intended the communications to be confidential. *See, e.g., United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (privilege attaches when client intends communications to be confidential); *Simon*, 2017 WL 66818, at *5 (acknowledging that the Seventh Circuit has not decided whether attorney-client privilege applies to recorded prison phone calls, and suggesting attorney-client privilege may apply if there was some "impediment to [the prisoner's] access to unrecorded calls"); *Pursley*, 2020 WL 1433827, at *5 (same); *Hernandez v. Guevara, et al*., No. 23-cv-1737 (N.D. Ill Nov. 14, 2024) (granting motion to quash a subpoena for plaintiffs' recorded calls and other communications

with his attorney stating that the attorney-client privilege is "close to sacrosanct" and, even without knowing whether there were feasible alternatives to seeking legal advice, the requesting party "just do[es]n't get" those recordings); *Gonzalez v. Guevara, et al.*, No. 22-cv-6496 (N.D. Ill. Nov. 15, 2023), Dkts. 157, 161, 170 (granting a motion to quash a subpoena for plaintiff's recorded calls with postconviction attorneys). Defendants' blanket assertion that "any privilege was [] waived by knowingly communicating on recorded lines" is therefore legally incorrect.[3] Dkt. 169 at 15.

Further, Defendants' argument that Plaintiffs cannot assert privilege because they have not identified the exact calls at issue misunderstands the law and how discovery was conducted in some of the applicable cases. For example, in many of the cases cited on this point, discovery into prison recordings was structured.[4] First, the defendants sought a call log to identify anyone a plaintiff called. Next, the parties would discuss what calls, if any, may be relevant to the case and then litigate the issue from there. *See, e.g., Hernandez,* No. 23-cv-1737; *Gonzalez*, No. 22-cv-6496. That is not possible here. Rather than attempt more limited initial discovery more suited to the facts of this case, Defendants' first set of subpoenas to these institutions were sweeping. It would be impossible for Plaintiffs to identify which specific calls may be privileged at this moment because no call log has ever been requested or produced. The inability to identify specific calls does not eliminate Plaintiffs' entitlement to assert attorney–client privilege over those communications; it merely reflects the overbreadth of Defendants' requests.

---

[3] For these same reasons, Defendants' assertion that "courts in this circuit consistently hold that calls knowingly made on recorded lines are not protected by attorney–client privilege" is inaccurate. Defendants seem to be speculating that certain warnings were perhaps given to Plaintiff Prediger and Anthony Huber when they used a recorded line and that choosing to speak with counsel on such a line meant they did not expect the conversation to be confidential, but that involves levels of speculation and is too far afield for the analysis here.
[4] Many of these cases are wrongful conviction cases wherein the contents of an inmate's calls are perhaps more relevant than the case at bar.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant their motion to quash Defendants' eight carceral subpoenas in their entirety, or alternatively, for an order halting the production of responsive materials and mandating Defendants confer with Plaintiffs about an appropriate and narrowly tailored scope for the subpoenas.

RESPECTFULLY SUBMITTED,

**JOHN HUBER & PAUL PREDIGER**

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*

Jon Loevy
Dan Twetten
Anand Swaminathan
Steve Art
Quinn Rallins
Alyssa Martinez
Maggie Filler
**LOEVY & LOEVY**
311 N. Aberdeen, Third Fl
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

Kimberly Cy. Motley
MOTLEY LEGAL SERVICES
P.O. Box 1433
Matthews, NC 28106
(704) 765-4887
kmotley@motleylegal.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, hereby certify that on February 9, 2026, I caused the foregoing document to be served on all counsel of record via the Clerk of the Court's electronic filing system.

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*